IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. |
| | ) | |
| ALL FUNDS ON DEPOSIT AT | ) | |
| Bank Julius Baer & Company, Ltd., | ) | |
| Guernsey Branch, account number | ) | |
| 121128, in the name of Pavlo Lazarenko, | ) | |
| last valued at approximately $2 million in | ) | |
| United States currency; | ) | |
| | ) | |
| ALL FUNDS ON DEPOSIT AT | ) | |
| Credit Suisse (Guernsey) Limited, | ) | |
| account number 41610, in the name of | ) | |
| Samante Limited as Trustees of the | ) | |
| Balford Trust, last valued at | ) | |
| approximately $143.8 million in United | ) | |
| States currency; | ) | |
| | ) | |
| ALL FUNDS DEPOSITED INTO | ) | |
| accounts held for the benefit of Pavel | ) | |
| Ivanovich Lazarenko at Eurofed Bank | ) | |
| Limited of Antigua and Barbuda | ) | |
| (in receivership), last valued  at | ) | |
| approximately $85.5 million in United | ) | |
| States currency; | ) | |
| | ) | |
| ALL FUNDS DEPOSITED INTO | ) | |
| accounts held for the benefit of | ) | |
| Alexander Milchenko at Eurofed Bank | ) | |
| Limited of Antigua and Barbuda | ) | |
| (in receivership),  last valued at | ) | |
| approximately $1.6 million in United | ) | |
| States currency; | ) | |
| | ) | |
| And all property traceable thereto, | ) | |
| Defendants *in rem.* | ) | |

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Plaintiff, United States of America, through its undersigned attorneys, respectfully brings this complaint and alleges as follows:

## I.   NATURE OF THE ACTION

1.      This is an action *in rem* to forfeit more than $230 million in property traceable to a series of criminal fraud, extortion, bribery, misappropriation, embezzlement, and money laundering activities of former Ukranian Prime Minister Pavlo Ivanovich Lazarenko and his associates.  These funds were illegally transported through the United States and/or laundered through financial institutions in the United States, and are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C), and Rules C and E of the Supplemental Rules for Certain Admiralty and Maritime Claims.  The defendants *in rem*, which were obtained through the abuse of public office and illegally transported and/or laundered through the abuse of financial institutions in the United States, are currently located in foreign bank accounts in Guernsey and Antigua and Barbuda.

## II.   JURISDICTION AND VENUE

2.      This Court has  jurisdiction over this action by virtue of 28 U.S.C. §§ 1345 and 1355(a) and 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

3.      Venue is proper in the District of the District of Columbia pursuant to 28 U.S.C. §§1355(b)(2) because the defendant properties are located in foreign countries and will be detained or seized pursuant to legal process or assistance from a competent authority of foreign governments.  The relevant portion of that provision provides that:

> Whenever property subject to forfeiture under the laws of the United States is located in a foreign country, or has been detained or seized pursuant to legal process or competent authority

of a foreign government, an action or proceeding for forfeiture may be brought
. . . in the United States District Court for the District of Columbia.

4.      Upon the filing of this Complaint, Plaintiff will seek the issuance of warrants of arrest *in rem* for the defendant properties located in certain bank accounts in Guernsey and Antigua and Barbuda and will transmit the applicable warrants to the appropriate legal authorities in these countries pursuant to formal letters rogatory to be requested from this Court, in accordance with such treaties to which the Government of the United States of America and these nations are Parties, or in accordance with such other relevant provisions of United States and foreign law.

### III.    THE DEFENDANTS *IN REM*

5.      The defendants *in rem* consist of the following property:

(a)     All funds on deposit at Bank Julius Baer & Company, Ltd., Guernsey Branch, (also known as Bank Julius Baer (Guernsey) Limited) in account number 121128, in the name of Pavlo Lazarenko.  These funds are located in Guernsey, one of the Channel Islands.  These defendant funds were last valued at approximately $2,096,355.83 in United States currency.

(b)     All funds on deposit at Credit Suisse (Guernsey) Limited, in account number 41610 in the name of Samante Limited as Trustees of the Balford Trust.  These funds are located in Guernsey, one of the Channel Islands.  These defendant funds were last valued at approximately $143,813,862.11 in United States currency;

(c)     All funds held for the benefit of Pavlo Ivanovich Lazarenko at Eurofed Bank Limited of Antigua and Barbuda (herein after "Eurofed"), in receivership.  Eurofed was placed in

receivership by the Supervisor of International Bank and Trust Corporations of Antigua and Barbuda on November 15, 1999, and these defendant funds are now under the supervision, management, and/or control of the receivers Charles Walwyn and Robert Wilkinson of PricewaterhouseCoopers. As of the date of receivership in November 1999, these defendant funds were valued at approximately $85,502,589.95 in United States currency. The defendant funds include, but are not limited to, all funds derived from deposits at:

(i)     Account Number 137978, in the name of Pavlo I. Lazarenko;

(ii)    Account Number 132907, in the name of Lady Lake Investments Corporation;

(iii)   Account Number 134936, in the name of Fairmont Group, Ltd.;

(iv)    Security deposits held for Lady Lake Investments Corporation and Fairmont Group, Ltd.;

(v)     Account Number 119648 in the name of Guardian Investment Group, Ltd.;

(vi)    Account Number 133923, in the name of Firstar Securities, Ltd.;

(vii)   Account Number 196317, in the name of Nemuro Industrial Group;

(viii)  Accounts in the name of Orby International, Ltd.;

(d)   All funds held for the benefit of Alexander Milchenko (deceased) at Eurofed Bank Limited of Antigua and Barbuda, in receivership. These defendant funds are now under the supervision, management, and/or control of the receivers Charles Walwyn and Robert Wilkinson of PricewaterhouseCoopers, and as of the date of receivership in November 1999, were valued at approximately $1,616,632.99 in United States

-4-

currency;

(e)     And all funds traceable thereto, including but not limited to, any interest accrued.

## IV.   OVERVIEW

6.      Between 1992 and 1998, Pavlo Ivanovich Lazarenko, aka Pavel Lazarenko,
(hereinafter "Lazarenko"), served in various political positions in Ukraine, including Representative of
the President of Ukraine in the Dnepropetrovsk District (March 1992-June 1994); Chairman of the
Dnepropetrovsk District Council of People's Deputies (June 1994-July 1995); Head of the
Dnepropetrovsk District Government (July 1995-September 1995); First Vice Prime Minster of
Ukraine (September 1995-September 1996); Prime Minister of Ukraine (May 1996-July 1997);
Member of Parliament of the Ukraine (1998).

7.      During this period, Lazarenko held no other substantial position of paid employment.
Indeed, Lazarenko's combined reported income for 1996 and 1997 was less than the equivalent of
$15,000 in United States dollars.

8.      Nevertheless, between 1992 and 1998, Lazarenko exerted enormous influence over
the economy and state institutions, first in the Dnepropetrovsk region and then on a national level in the
Ukraine. During this period he used that influence to amass a personal fortune of more than $230
million in United States currency through the abuse of his official office.

9.      Lazarenko's associates also obtained multi-million dollar fortunes through their
association with Lazarenko while he was a government official in the Ukraine. One such associate was
Peter Nikolayevich Kiritchenko (hereinafter "Kiritchenko"), who was formally named as and served as
an advisor to Lazarenko while Lazarenko was First Vice Prime Minister and Prime Minister, until he

and Lazarenko were dismissed by Ukrainian Cabinet of Ministers Directive 677 on July 3, 1997. Other associates of Lazarenko who amassed multi-million dollar fortunes through their association with Lazarenko included Yulia Tymoshenko, Igor Makarov, Mykhola Agafonov, and others.

10.     Lazarenko and his associates were able to acquire hundreds of millions of dollars in United States currency through a variety of acts of fraud, extortion, bribery, misappropriation, and embezzlement.  These schemes included, but were not limited to, skimming funds in United States currency from multimillion dollar contracts for the distribution of natural gas imports in the Ukraine and providing kickbacks to Lazarenko, obtaining property by wrongful use of fear or under color of official right, making payments to Lazarenko to influence or induce him to act or refrain from an official act, manipulating state businesses to provide millions of dollars in goods to private businesses and individuals that would share their profits with Lazarenko, diverting millions of dollars in United States currency to their personal use by using fraudulent contracts to purchase goods for state enterprises at inflated prices or to falsify the purchase of goods that were not purchased, and concealing Lazarenko's association with corporations doing business with the local and national governments to deprive the Ukraine of the honest services of its employees.

11.     These criminal acts of fraud, extortion, bribery, misappropriation, and embezzlement occurred, in part, in the United States in violation of United States law.  In addition to other conduct, it was an essential characteristic of all or most of these criminal acts that they were conducted in United States currency and through transactions through financial institutions in the United States.

12.     Between 1992 and 1998, Lazarenko and his associates also illegally transported the proceeds of their fraud, extortion, bribery, misappropriation, and embezzlement schemes into and

through the United States in violation of United States law.

13.    In addition, between 1992 and 1998, Lazarenko and his associates, including

Kiritchenko, opened bank accounts in the United States, Switzerland, Antigua, Guernsey, Poland, and

Cyprus, among other countries, and transferred the proceeds of their criminal acts of fraud, extortion,

bribery, misappropriation, and embezzlement into and out of these accounts in an effort to conceal and

disguise the nature, location, source, ownership, and control of these funds.  Lazarenko and his

associates conducted these money laundering transactions in United States currency into and out of

financial institutions in the United States in violation of United States law.

14.    In 1997, in part through negotiations occurring in the United States, Lazarenko and

Kiritchenko purchased a controlling interest in Eurofed Bank Limited (Antigua) in a further effort to

conceal and disguise the nature, location, source, ownership, and control of the proceeds of their

criminal acts of fraud, extortion, bribery, misappropriation, and embezzlement.  Lazarenko and his

associates further transferred the proceeds of their criminal conduct into and out of accounts maintained

by Eurofed at other financial institutions, including in the United States, in order to conceal and disguise

the nature, location, source, ownership, and control of these funds.

15.    Lazarenko has been charged in the Ukraine with abuse of public office in violation of

Article 165 of the Ukrainian Penal Code, among others.

16.    In June 2000, a Swiss court convicted Lazarenko of money laundering after Lazarenko

accepted charges of money laundering.

17.    A grand jury in the United States District Court for the Northern District of California

has indicted Lazarenko on violations of 18 U.S.C. § 1956(h) (conspiracy to commit money laundering;

18 U.S.C. § 1956(a) (money laundering); 18 U.S.C. §§ 1343 and 1346 (wire fraud and honest

services fraud);18 U.S.C. § 2314 (transportation of stolen property); 18 U.S. C. § 2 (aiding and

abetting), based on some of the conduct identified herein.

18.     In addition, in 2002 Lazarenko associate Kiritchenko pled guilty to a charge of receipt

of property which had crossed a State or United States boundary after being stolen, unlawfully

converted or taken, in violation of 18 U.S.C. § 2315, which charge was related to his participation in

conduct set forth herein.

## V.     THE CRIMINAL SCHEMES

19.     Among other things, the defendant funds are traceable to the following criminal conduct

of Lazarenko and his associates:

## A.     Transfer and Concealment of Business Interests

20.     Beginning in at least 1992, Lazarenko, by virtue of his government positions, exerted

influence over the economic and governmental structures within the Dnepropetrovsk region of Ukraine.

In the early 1990's, the majority of the economic activity in the Dnepropretrovsk region was conducted

through state owned businesses, which ranged from large factories to agricultural businesses to smaller

enterprises.

21.     Among other things, Lazarenko was able to arrange for the dismissal or appointment of

the directors of state enterprises operating within the Dnepropetrovsk region and other governmental

institutions in the region, including law enforcement authorities.  Lazarenko was also able to direct state

owned enterprises to conduct business with certain private corporations and individuals.

22.     Later, between 1995 and 1997, when Lazarenko became First Vice Prime Minister

and Prime Minister, he exerted similar influence over business relationships in other areas of Ukraine,
particularly in the energy sector.

23.     While Lazarenko was a government official, certain business persons understood that in
order to conduct their business and to receive the necessary licenses or other official rights and/or
privileges, they had to pay Lazarenko a portion of their business or a percentage of the profits of their
businesses or both.  As a result, these business persons transferred substantial ownership rights in their
corporations and shares of their profits to Lazarenko.

24.     It was further part of the criminal scheme to conceal Lazarenko's interests in these
corporations and his receipt of payments from these business persons and corporations.  Payments
from these corporations were initially made primarily to accounts in Switzerland.  Later, these monies as
well as additional payments to Lazarenko were transferred to accounts held by Lazarenko in Antigua,
Liechtenstein, Guernsey, and other locations.  Once payments were made to Lazarenko and/or entities
or accounts under his control, Lazarenko and his associates invested this money in real estate,
brokerage accounts, and other investment vehicles in the United States and other places, generating
further revenue for Lazarenko.

25.     For example, in approximately 1992, Kiritchenko operated a business under the name
of Agrosnabsbyt/ASS that engaged in trade in metals, food products, and other goods.  In 1992,
Lazarenko met in his office in Dnepropetrovsk with Kiritchenko and again in Warsaw, Poland in 1993,
where Agrosnabsbyt/ASS had an account in United States currency.  Lazarenko informed Kiritchenko
that he worked with everyone on a 50/50 percentage basis.  As a result, Kiritchenko transferred 50
percent of the profit of his company and 50 percent of the ownership rights to Agrosnabsbyt/ASS to

Lazarenko. Lazarenko also received 50% of the profits of other businesses controlled by Kiritchenko, such as Orphin and GHP. Between 1992 and 1997, payments from Kiritchenko and his businesses to Lazarenko included at least $30,000,000 in United States currency.

26.     Lazarenko and his associates concealed his ownership interest in Agrosnabsbyt/ASS by placing Lazarenko's corporate ownership interest in the name of Ekaterina Semionovna Karova, a relative of Lazarenko's wife. Lazarenko, Kiritchenko and their associates also concealed Lazarenko's receipt of payments of the profit of Agrosnabsbyt/ASS by directing payments to accounts Lazarenko controlled outside of Ukraine, including, but not limited to, account 502.607 in the name of LIP Handel A.G. at Union Bank of Switzerland in Fribourg, Switzerland and account 08-05785-3 in the name of Kato-82 at Credit Lyonnais (Suisse) in Switzerland.

27.     Similarly, in approximately 1993, Lazarenko received an ownership interest in Dneproneft, a corporation formed by Alexei Alexandrovich Dityatkovsky, a resident of the Ukraine. Lazarenko received a 50% interest in Dneproneft, and a percentage of the profits of Dityatkovsky's businesses. Between 1992 and 1997, payments from Dityatkovsky and his businesses to Lazarenko included at least $5,886,000 in United States currency.

28.     Lazarenko and his associates concealed his ownership of Dneproneft by placing his ownership interest in the name of Lazarenko's former driver and associate, Leonid Gadyatsky. Lazarenko, Dityatkovsky, and their associates concealed Lazarenko's receipt of payments of the profits of Dityatkovsky's businesses by directing payments to accounts Lazarenko controlled outside of Ukraine, including, but not limited to, account 502.607 in the name of LIP Hanel A.G. at Union Bank of Switzerland in Fribourg, Switzerland and account 08-05785-3 in the name of Kato-82 at Credit

-10-

Lyonnais (Suisse) in Switzerland. Lazarenko and Dityatkovsky further concealed payments to Lazarenko by channeling them through accounts of corporate entities controlled in part by Kiritchenko, such as account 5383 in the name of Bainfield Limited at Banque SCS Alliance in Switzerland and account 875709-72 in the name of Paddox Limited at Credit Suisse in Switzerland. These funds were later transferred to accounts under the sole control of Lazarenko.

29.     Lazarenko, while a government official, induced the transfer of these and other assets for his personal use, and his associates transferred these and other assets to Lazarenko in an effort to influence him to take actions in their favor by virtue of his official position.

30.     Lazarenko and his associates executed the transfer of these other assets and the concealment of his receipt of these payments in United States currency, in part, through transactions through the United States. For example, on or about January 14, 1994, Kiritchenko transferred approximately $216,000 from his account 61310 in the name of Orphin at American Bank of Poland in Warsaw, Poland, through Chase Manhattan Bank in New York, to Lazarenko's Kato-82 account at Credit Lyonnais in Switzerland. Similarly, on or about February 15, 1994, approximately $1,236,000 was transferred from Dityiakovsky to Lazarenko's Kato-82 account via an account at a financial institution in New York.

**B.    The Naukovy Agriculture Schemes:**

31.     During 1992 and 1993 Lazarenko's official responsibilities included overseeing two state enterprises, Nikopolsky Metallurgical Works ("Nikopolsky") and Naukovy State Farm ("Naukovy"). Lazarenko's associate, Mykhola Agafonov ("Agafonov"), was the chief administrator of Naukovy. Together they orchestrated the sale of tens of millions of dollars of metal products from

-11-

Nikopolsky and elsewhere in Dnepropetrovsk in exchange for the sham purchase of millions of dollars worth of wheat (which was never actually purchased) and the purchase of livestock at grossly inflated prices for Naukovy. It was part of the conspiracy to use these types of schemes to divert government funds generated from the mineral and metal sales for the personal use of Lazarenko and his associates between approximately 1992 and 1996. As a result of this scheme, the Government of Ukraine was defrauded of at least $23,400,000.

32.    Lazarenko and his associates acquired the proceeds of the Naukovy Agricultural schemes in transactions through financial institutions in the United States. The fraudulent and overvalued contracts involved in the Naukovy Agricultural schemes were executed through payments in United States currency.

33.    Lazarenko's share of this scheme to defraud state enterprises was at least $14,191,000 in United States currency, which he acquired through transactions through the United States. At least $12,986,000 in United States currency was diverted in this scheme from an account at a financial institution in Leewarden, Netherlands through financial institutions in the United States to accounts controlled by Lazarenko and his associates in Switzerland. At least another $1,205,000 in United States currency was diverted in transactions from an account in Leewarden, Netherlands through a financial institution in the United States to an account in the name of Naukovy and under the control of Agafonov at a financial institution in Poland, and then through a financial institution in the United States to an account in the name of Lip Handel under the control of Lazarenko at a financial institution in Switzerland.

**C.    The UESU and ITERA Energy Schemes:**

34.    While Lazarenko was employed as First Vice Prime Minister of Ukraine between September 1995 and May 1996, he was in charge of the energy sector of the Ukrainian economy and presided over a re-organization of the natural gas importation and distribution system.  This re-organization granted exclusive rights to private companies to purchase natural gas from Russian Gazprom (RAO Gazprom), the Russian supplier of billions of dollars a year worth of natural gas to Ukraine, and re-sell it to particular regions in Ukraine.

35.    During Lazarenko's tenure as Vice Prime Minister in charge of energy, United Energy Systems of Ukraine (UESU) was one such corporation that was granted various privileges, including the authority to distribute natural gas to the Dnepropetrovsk region of Ukraine.  UESU was controlled by Lazarenko associate Yulia Tymoshenko and others.  From approximately December 1995 until some time in 1997, UESU received deliveries of natural gas from RAO Gazprom pursuant to contracts entered into under this authority.  In addition, on or about December 31, 1996, while Prime Minister of Ukraine, Lazarenko authorized execution of a $200,000,000 guaranty in favor of RAO Gazprom for the delivery of natural gas by UESU, thereby causing the Ukrainian government to pledge to use state funds to repay debts of UESU to RAO Gazprom.

36.    Beginning in approximately January 1996, UESU conveyed title to the imported natural gas to United Energy International, Ltd. ("UEIL"), an 85% shareholder of UESU that was created on October 17, 1995, at the direction of Yulia Tymoshenko, and diverted to foreign bank accounts belonging to UEIL the payments from Ukrainian customers for the natural gas delivered by UESU. Between April 8, 1996, and December 31, 1996, rather than pay RAO Gazprom for the delivered gas

with the money that had been transferred to UEIL, UEIL transferred approximately $140,000,000 to Somolli Enterprises, a Cypriot company that was registered in Cyprus on October 8, 1992, and was controlled by Yulia Tymoshenko and others.

37.     Tymoshenko and her associates further used corporate entities under their control, such as UESU, UEIL, and Somolli Enterprises, Ltd. to make payments to Lazarenko in the amount of at least $97,000,000 in 1996 and 1997.  Lazarenko obtained these funds as a result of his position as a Ukrainian public official.

38.     Lazarenko and his associates received payments from the UESU, Somolli, and UEIL schemes in United States currency and through transactions through financial institutions in the United States.  Diversion of these funds included transactions in United States currency from an account in the name of UEIL at National Westminster Bank in London, United Kingdom, through financial institutions in the United States, including Corestates Bank, N.A. in Philadelphia, Pennsylvania, to an account in the name of Somolli Enterprises, Ltd. at the Bank of Cyprus, in Cyprus.  Other conduct involved in this scheme included transfers from a Somolli Enterprises, Ltd. account at Bank of Cyprus in Cyprus through financial institutions in the United States, including Bankers Trust Company, New York and Credit Suisse, New York, to accounts controlled by Lazarenko and/or Kirichenko at Bank SCS Alliance in Geneva, Switzerland, Banque Populaire Suisse in Geneva, Switzerland, and American Bank in Poland, Inc. in Warsaw, Poland.

39.     For example, on or about September 13, 1996, $8,000,000 in United States currency was wired from UEIL's account at National Westminster in London through Corestates Bank, N.A. in Philadelphia, Pennsylvania, to an account of Somolli Enterprises, Ltd. at Bank of Cyprus.  By way of

-14-

additional example, on or about September 2, 1996, $2,600,000 in United States currency was

transferred from Somolli Enterprises, Ltd. through an account at Bankers Trust Company, New York,

to an account under the control of Kirichenko at Bank SCS Alliance in Switzerland.

     40.     During Lazarenko's tenure as First Vice Prime Minister and Prime Minister, exclusive

gas distribution rights and other benefits were also awarded to a corporation under the control of a

Lazarenko associate named Igor Makarov, and his partners Ted Karvaleiros and Raissa Frenkel,

which, in turn, also made payments to Lazarenko and his associates.  Makarov and his associates

operated a series of affiliated corporate entities, including ITERA International Energy, Corporation,

(incorporated in the United States), ITERA International L.L.C. (incorporated in the United States),

ITERA Group BV (incorporated in the Netherlands), Omrania Trading Limited (incorporated in

Cyprus), ITERA-Ukraine, and other entities.  In 1996, the ITERA corporations received deliveries of

natural gas and other commodities for distribution in Ukraine pursuant to this authority.

     41.     In 1996, Markarov and his associates used corporate entities under their control, such

as the ITERA corporations, Omrania Trading, Ltd., Kelvin Associated, Ltd. to make payments of at

least $28,482,832 in United States currency through the United States to Lazarenko and his associates.

Lazarenko obtained these funds as a result of his position as a Ukrainian public official.

     42.     Lazarenko and his associates received payments from the ITERA scheme in United

States currency and through transactions through financial institutions in the United States.  In 1996,

ITERA made transfers of at least $25,283,000 in United States currency from an ITERA account at

Bank Paribas in Geneva, Switzerland through the United States to an account in the name of Bainfield,

Ltd. at Bank SCS Alliance, Switzerland, under the control of Lazarenko and Kiritchenko.  Omrania

Trading Limited made additional transfers totaling at least $3,199,832 in United States currency

through financial institutions in the United States to the same account in the name of Bainfield, Ltd. at

Bank SCS Alliance, Switzerland, under the control of Lazarenko and Kiritchenko.

**D.   The PMH/GHP Scheme:**

43.     In 1997, while Prime Minister of Ukraine, Lazarenko exercised his official authority in

favor of GHP Corporation by ensuring that the Ukranian Cabinet of Ministers entered into a contract

with GHP Corporation for the purchase of six prefabricated homes.

44.     On January 24, 1997, GHP Corporation entered into a contract with Pacific Modern

Homes ("PMH") of Elk Grove, California, in which GHP Corporation agreed to purchase six

prefabricated homes for a total price of $524,763, to be shipped to the Ukrainian Cabinet of Ministers

by PMH.

45.     On January 27, 1997, GHP Corporation entered into a contract with the Ukrainian

Cabinet of Ministers in which GHP Corporation agreed to sell to the government of Ukraine six

prefabricated homes for a total price of $1,416,000.

46.     When the homes were delivered to Ukraine, representatives of GHP Corporation

presented false invoices to the Kiev Regional Customshouse to make it appear as though GHP

Corporation was the shipper of the homes and had paid $1,416,000, as provided in the contract

between GHP Corporation and the Ukrainian Cabinet of Ministers, when in fact PMH had shipped the

homes and the homes actually cost only $524,763.

47.     In this way, Lazarenko and his associates concealed their personal benefit from the

Ukrainian government's purchase of the homes and used false invoices and his position as Ukrainian

Prime Minister to cause the Government of Ukraine to overpay for the homes and to defraud the

Government of Ukraine of $889,749 above the purchase price of the homes actually paid, and to

conceal the benefit.  At least half of these funds were transferred to Lazarenko.

### E.   Proceeds of Fraud, Extortion, Bribery, Misappropriation, Embezzlement, Honest Services Fraud, and other Criminal Conduct:

48.     Between 1993 and 1997, through the conduct outlined above and other criminal acts,

Lazarenko, as a result of his position as a public official in Ukraine, received over $224 million in

United States currency from companies and individuals doing business in Ukraine and with Ukrainian

state enterprises, including, but not limited to, the following entities and approximate amounts:

(a)     In 1996, Lazarenko received at least $84,000,000 from Somolli Enterprises;

(b)     In 1996, Lazarenko received at least $65,000,000 from United Energy International Limited (UEIL);

(c)     Between 1994 and 1998, Lazarenko received at least $30,000,000 from businesses established by Kirichenko, such as Agrosnabsbyt/ASS and GHP Corporation;

(d)     In 1996, Lazarenko received at least $25,000,000 from ITERA Corporation and its affiliates;

(e)     Between 1993 and 1994, Lazarenko received at least $14,000,000 from Naukovy State Farm;

(f)     In 1997, Lazarenko received at least $13,000,000 from United Energy Systems of Ukraine (UESU);

(g)     Between 1993 and 1996, Lazarenko received at least $5,886,000 from Dityatkovsky and Dneproneft;

(h)     In 1994, Lazarenko recieved at least $375,000 from Nakosta Metal Products, a business owned by Alex Kurkaev.

49.     Indeed, in 1996 and 1997 deposits into just two accounts under Lazarenko's control,

exceeded $224 million.  These accounts included account 5353 in the name of Carpo-53 at Banque

SCS Alliance and account 21678 in the name of Nihpro at Banque Popular Suisse in Switzerland,

which together received deposits of more than $141,000,000 in United States currency in 1996 alone.

These same two accounts also received at least $55,200,000 in 1997.  Lazarenko also maintained

other accounts outside of Ukraine between 1992 and 1998, which received criminal deposits.

50.     In contrast and despite these enormous deposits into foreign accounts, in 1997,

Lazarenko represented to the people and Government of Ukraine that his total income for the year

1996 was 9,397 hryvni (the Ukranian national currency), or approximately $5,040.  In 1998,

Lazarenko represented to the people and government of the Ukraine that his total income for the year

1997 was 10,386 hryvini, or approximately $5,570.  In both disclosures, Lazarenko further

represented to the people and Government of Ukraine that he had no income from any business

activities, and that he had no money in any banks or other financial institutions.

51.     Instead of disclosing these payments and his substantial funds held in financial

institutions, Lazarenko and his associates actively sought to conceal the fact that he was receiving multi-

million dollar payments from corporations doing business before the state and that he controlled multi-

million dollar bank accounts.  Many of the payments to Lazarenko, particularly from the UESU and

ITERA gas schemes, involved indirect transfers through corporate entities controlled by Kiritchenko to

accounts of shell companies controlled by Lazarenko.

52.     Through the schemes enumerated herein and through additional means, between 1992

and 1998, while Lazarenko was a government official in Ukraine, Lazarenko and his associates devised

an artifice or scheme using kickbacks and other payments to defraud the people of Ukraine; to obtain

money and property by means of false and fraudulent pretenses, representations and promises; to make

or offer bribe payments to Lazarenko and his associates, to embezzle funds from Ukrainian state

enterprises; to obtain property from persons with their consent, induced by wrongful use of actual or

threatened fear of economic harm and under color of official right; and to deprive the people of Ukraine

of his honest and faithful services.

**F.   Scheme to Conceal and Layer Criminal Proceeds**

53.   While a government official in Ukraine and continuing until 1999, Lazarenko and his

associates also devised a means of disguising and concealing the money they were receiving from fraud,

extortion, bribery, misappropriation and embezzlement.  By creating and causing the creation of various

shell corporations, trusts, and bank accounts, Lazarenko and his associates would deposit or direct the

deposit of money from individuals and businesses in Ukraine, and transfer or direct the transfer of

money to Lazarenko or to entities he and his associates controlled.

54.   Between 1992 and 1999, Kiritchenko, Lazarenko and their associates caused more

than $224,000,000 involved in or constituting the proceeds of acts of fraud, extortion, bribery,

misappropriation and/or embezzlement to be transferred into or through bank and brokerage accounts

in the United States in violation of United States laws concerning the interstate transportation of

property stolen or taken by fraud (18 U.S.C. §§ 2314, 2315 and 2), wire fraud, including honest

services fraud (18 U.S.C. §§ 1343,1346 and 2), extortion (18 U.S.C. § 1951), conspiracy to commit

such offenses (18 U.S.C. § 371), and money laundering (18 U.S.C. §§ 1956 and 1957).  These

transactions included, but were not limited to, millions of dollars in transactions through the following

-19-

financial institutions in the United States:

     (a)    Credit Suisse First Boston in New York;

     (b)    Bank of New York in New York;

     (c)    Commercial Bank of San Francisco in California;

     (d)    Pacific Bank in California;

     (e)    Corestates Bank in Philadelphia, Pennsylvania;

     (f)    Mellon Bank in Pittsburgh, Pennsylvania.

**i.**    **Swiss and related accounts**

55.    In March 1993, Lazarenko opened account 502.607 in the name of LIP HANDEL

A.G. at Union Bank of Switzerland in Fribourg, Switzerland.   Lazarenko also opened an account 08-

05785-3 in the name of KATO-82 at Credit Suisse in Switzerland.   These accounts received many of

the initial transfers of the proceeds of the Naukovy Scheme and payments to Lazarenko from

Kirtichenko and Dityatkovsky's business enterprises.

56.    Beginning sometime in 1994, Kiritchenko, upon Lazarenko's instructions, opened

and/or managed bank accounts Kiritchenko and Lazarenko established in Switzerland and Poland to

receive and transfer money obtained from acts of fraud, extortion, bribery, misappropriation and/or

embezzlement and to conceal and disguise the nature, origin, location, source, ownership and control of

the money.  The accounts opened and managed by Kiritchenko included:  accounts in the name of

GHP Corporation at Banque SCS Alliance (account 5452) and at Banque Populaire Suisse (account

823896-2); accounts in the name of ORPHIN, SA at American Bank in Poland (account 61310) and

at Banque Populaire Suisse (account 21383); an account in the name of BAINFIELD Company, Ltd.

at Banque SCS Alliance (account 5383); an account in the name of WILNORTH, Inc. at Banque SCS

Alliance (account 5451); and an account in the name of PADDOX INDUSTRIES at Credit Suisse

(account 0251-875709-7).

57.     Beginning in 1994, Lazarenko caused money to be deposited into Kiritchenko's

accounts, and thereafter caused money obtained from acts of fraud, extortion, bribery,

misappropriation and/or embezzlement to be transferred through the United States to accounts

controlled by Lazarenko.

58.     In addition to the KATO-82 and LIP HANDEL accounts, the accounts Lazarenko

opened and controlled included, but were not limited to, an account in the name of CARPO-53 at

Banque SCS Alliance (account 5353); an account in the name of NIHPRO at Banque Populaire Suisse

(account 21768), and later at Credit Suisse (account 988882-52); an account in the name of PAVLO

LAZARENKO at Credit Suisse in Zug, Switzerland (account 221053); an account in the name of

LADY LAKE at Bank SCS Alliance (Bahamas) (account 20171); and an account in the name of

FAIRMONT GROUP, Ltd. at Bank SCS Alliance (Bahamas) (account 20170).

59.     Beginning in July of 1994 Lazarenko began to pool, some but not all, of the funds from

his different criminal schemes into his Carpo-53 account at Banque SCS Alliance and his Nihpro

account at Banque Populaire Suisse in Switzerland.  These accounts received funds withdrawn from

Lazarenko's Kato-82 and Lip Handel accounts, including through transactions into and out of accounts

under the control of Kiritchenko in the United States.  These accounts also received additional funds

from other criminal conduct such as the UESU and ITERA energy schemes.

60.     Between October of 1994 and September of 1997, more than $107,700,000 in

additional United States were deposited into Lazarenko's Nihpro account in Switzerland.  As set forth

below, many of these funds were later transferred through financial institutions in the United States and

deposited into a Lazarenko-controlled account in Guernsey.

61.     Similarly, between July of 1994 and July of 1997, more than $117,307,000 in United

States Currency was deposited into Lazarenko's Carpo-53 account in Switzerland. Lazarenko and his

associates continued to launder the criminal proceeds deposited into his Carpo-53 account through

transactions in United States currency through financial institutions in the United States, including, but

not limited to the following transactions:

62.     On or about August 7, 1997, Lazarenko and his associates withdrew $96 million in

United States currency from Lazarenko's Carpo-53 account through the issuance of two, sequentially

numbered $48 million checks made payable to "BEARER" and drawn upon Banque SCS Alliance's

account at Credit Suisse in New York.

63.     These funds were subsequently deposited into account 20170 in the name of Fairmont

and account 20171 in the name of Lady Lake, both at Banque SCS Alliance in Nassau, Bahamas.

Pavel Lazarenko was the signatory on both the originating account, Carpo-53, and the recipient

accounts, Fairmont and Lady Lake.

### ii.     Eurofed Bank in Antigua

64.     Between May and August of 1997, including within the United States, Kiritchenko and

Lazarenko began negotiations to purchase and purchased a majority share of European Federal Credit

Bank Limited located in St. John's, Antigua in order to facilitate the transfers of money and to further

conceal and disguise the nature, origin, location, source, ownership and control of money derived from

acts of fraud, extortion, bribery, misappropriation and/or embezzlement. On April 16, 1998, European

Federal Credit Bank Limited changed its name to Eurofed Bank Limited (hereinafter both entities

referred to as "Eurofed").

65.     Between May 1997 and at least September 1998, Lazarenko transferred or caused the

transfer of at least $95,000,000 that Lazarenko obtained from acts of fraud, extortion, bribery,

misappropriation and/or embezzlement through correspondent accounts of Eurofed into accounts he

and Kiritchenko controlled at Eurofed in Antigua.  These accounts were used in part to conceal and

disguise the nature, origin, location, source, ownership and control of the money paid for the benefit of

Lazarenko.

66.     Accounts at Eurofed in Antigua that Lazarenko and his associates used to receive

deposits of property involved in their criminal activity included:  an account controlled by Kiritchenko in

the name of Orphin (account 151897); an account controlled by Lazarenko in the name of Lady Lake

(account 132907); an account controlled by Lazarenko in the name of Fairmont (account 134936); an

account controlled by Lazarenko in the name of Guardian Investments Group, Ltd. (account 119648);

an account controlled by Lazarenko in the name of Nemuro Industrial Group, Ltd. (account 196317);

an account controlled by Lazarenko in the name of Firstar (account 133923); and a personal account

of Lazarenko's (account 137978).

67.     In addition, Lazarenko controlled account 112436 at Eurofed in Antigua in the name of

Orby International, Ltd., that received deposits of income derived from his investment of criminal

proceeds in Eurofed.

### iii.     **Transfers involving Defendant accounts**

68.     Examples of the types of transactions Lazarenko and his associates conducted with the

proceeds of their criminal activity that affected the accounts in which the defendant funds are located

are set forth below.

69.     These transactions involve many, but not all of the transactions through which

Lazarenko and his associates transferred the proceeds of their criminal conduct into the defendant

accounts.  These transactions include transfers in United States currency through the United States, but

also include further transactions made within Eurofed with property involved in the illicit activities of

Lazarenko and his associates after it had been transferred through accounts in the United States into

accounts at Eurofed.

70.     In addition to these representative transactions, Lazarenko and his associates

conducted additional transactions through accounts in which the defendant funds were deposited.

Moreover, the defendant funds include additional substantial payments of interest and return on

investments generated by the proceeds of and property involved in the criminal conduct of Lazarenko

and his associates.

<u>a.</u>      <u>Account 121128 at Bank Julius Baer &amp; Company, Ltd., Guernsey<br>Branch, in the name of Pavlo Lazarenko:</u>

71.     On or about May 12, 1998, Lazarenko caused approximately $13,295,018.34 in

United States currency to be transferred from an account under his control at Bank Julius Baer in

Zurich, Switzerland, through an account at Bankers Trust in New York to account 121128 at Bank

Julius Baer & Company, Ltd., Guernsey Branch,  in the name of Pavlo Lazarenko.  This was the initial

transfer into the account Lazarenko established at Bank Julius Baer & Company, Ltd., Guernsey

Branch .

72.     A portion of these funds in the amount of $12,000,000 in United States currency were

-24-

subsequently transferred approximately ten weeks later from Lazarenko's Bank Julius Baer account in

Guernsey through the Bank of New York in New York to account 0142.806, in the name of Orilles

Stiftung and under the control of Lazarenko, at LGT Bank in Liechtenstein;

> **b.** **Account 41610 at Credit Suisse (Guernsey) Limited, in the name of Samante, Limited as Trustee for the Balford Trust:**

73.     Lazarenko, is the Settlor and Protector of the Balford Trust and is the beneficial owner

of the funds maintained in account 41610 at Credit Suisse (Guernsey) Limited.  Other nominal

beneficiaries of the trust are members of Lazarenko's family.

74.     On or about the dates April 20, 1998 through April 23, 1998, four transfers totaling

approximately $106,975,123 in United States currency were made from Lazarenko's account in the

name of Nihpro at Bank Popular Suisse, in Geneva, Switzerland, through an account at Credit Suisse

First Boston in New York, New York, to account 41610 at Credit Suisse (Guernsey) Limited, in the

name of Samante, Limited as Trustee for the Balford Trust.

75.     On or about April 20, 1998, approximately $15,781,998 in United States currency

was transferred from account 3875555, under the control of Tamara Lazarenko (Lazarenko's wife) at

Credit Suisse, in Geneva, Switzerland, through an account at Credit Suisse First Boston in New York

to account 41610 at Credit Suisse (Guernsey), in the name of Samante, Limited as Trustee for the

Balford Trust.

> **c. (i).** **Account 137978 in the name of Pavlo I. Lazarenko:**

76.     On August 1, 1997, Lazarenko and his associates used a series of transactions and

their control of accounts at Eurofed to transfer criminal proceeds in the amount of $36,200,000 in

United States currency from Switzerland through the United States to Antigua for the benefit of Lazarenko.

77.     These transactions included a transfer in the amount of $14,000,000 from Lazarenko's account 5353 at Banque SCS Alliance in the name of Carpo-53 to Eurofed's account at Pacific Bank, N.A. in California for credit to Kiritchenko's account 151897 in the name of Orphin at Eurofed in Antigua.  A second transfer of $14,000,000 was made on the same date from Lazarenko's Carpo-53 account to Eurofed's account at Commercial Bank of San Francisco in California for credit to the same Kiritchenko account 151897 in the name of Orphin.  A third transfer of $8,200,000 was made from the GHP Corporation account 5452 that Kiritchenko had opened at Banque SCS Alliance in Switzerland to a Merrill Lynch account at Mellon Bank in Pittsburgh, Pennsylvania for credit to Eurofed, which in turn credited it to the same Kiritichenko Orphin account.

78.     Once pooled into Kiritchenko's Orphin account at Eurofed, these funds were again transferred into Lazarenko's personal account 137978 at Eurofed in Antigua.

79.     All of these transactions occurred on August 1, 1997.

   **c. (ii), (iii), (iv).**        **Account 132907, in the name of Lady Lake Investments**
                                     **Corporation, Account 134936 in the name of Fairmont**
                                     **Group, Ltd.; and Security Deposits held for Lady Lake**
                                     **Investments Corporation and Fairmont Group, Ltd.:**

80.     On or about August 17, 1998, Lazarenko and his associates withdrew a total of $78,777,248 from Lazarenko's personal account 137978 at Eurofed and deposited $39,388,624 each into account 132907 in the name of Lady Lake Investment Group and account 134936 in the name of Fairmont Group.  All of these accounts were under the control of Lazarenko.

81.     On or about March 1, 1999, Lazarenko and his associates caused the transfer of $5,800,000 in United States currency from account 132907 in the name of Lady Lake Investment Group and under Lazarenko's control to a security deposit account at Eurofed.  Similarly, on or about October 15, 1999, $1,100,000 was transferred from account 134936 in the name of Fairmont Group Limited and $1,110,331.10 was transferred from Lazarenko's Lady Lake account 132907 to a security deposit account.

### c. (v).   Account 119648 in the Name of Guardian Investment Group Limited:

82.     On or about July 24, 1998, approximately $18,000,000 in United States currency was transferred in two separate transactions of $9,000,000 each from a Lazarenko controlled account in Bahamas through accounts in New York and California to a Lazarenko controlled account at Eurofed in Antigua.

83.     In one of these transactions $9,000,000 was transferred from account 20171, in the name of Lady Lake Investments and under the control of Lazarenko, at Banque SCS Alliance in the Bahamas to a correspondent account of Eurofed at Commercial Bank of San Francisco in California. In the other transaction, an additional $9,000,000 was transferred from the same Lady Lake account at Banque SCS Alliance in the Bahamas through an account at Bank of New York in New York, in the name of Bankas Hermis, for further credit to Eurofed's correspondent account 073721 at Bankas Hermis in Lithuania.

84.     The funds from both of these transactions were credited to account 119648 at Eurofed in Antigua, in the name of Guardian Investment Group Limited and under the control of Lazarenko.

-27-

**c. (vi).**     **Account 133923 in the Name of Firstar Securities, Limited:**

85.     On or about August 11, 1998, approximately $10,000,000 in United States currency was transferred from account 0142.806 at LGT Bank in Liechtenstein, in the name of Orilles Stiftung and under the control of Lazarenko and his associates, through an account at Bank of New York in New York in the name of Bankas Hermis, for further credit to Eurofed's correspondent account 073721 at Bankas Hermis in Lithuania.  These funds were credited to account 133923 at Eurofed Bank in Antigua, in the name of Firstar and under the control of Lazarenko.

86.     On or about August 11, 1998, approximately $11,000,000 in United States currency was transferred from account 0142.808 at LGT Bank in Liechtenstein, in the name of Lesja Stiftung and under the control of Lazarenko and his associates, through an account at Bank of New York in New York in the name of Bankas Hermis, for further credit to Eurofed's correspondent account 073721 at Bankas Hermis in Lithuania.  These funds were credited to account 133923 at Eurofed Bank in Antigua, in the name of Firstar and under the control of Lazarenko.

87.     On or about August 13, 1998, approximately $25,000,000 in United States currency was transferred from account 0142.807 at LGT Bank in Liechtenstein, in the name of Gruztam Stiftung and under the control of Lazarenko and his associates to account 1752902 at Commercial Bank of San Francisco in California, in the name of European Federal Credit Bank.  These funds were credited to account 133923 at Eurofed Bank in Antigua, in the name of Firstar and under the control of Lazarenko.

**c. (vii).**     **Account 196317 in the Name of Nemuro Industrial Group:**

88.     On or about April 24, 1998, approximately $1,880,584.53 in United States currency was transferred from account 221053 in the name of Pavlo Lazarenko at Credit Suisse in Zug,

Switzerland to an account at Commercial Bank of San Francisco in California, in the name of European Federal Credit Bank. These funds were credited to account 196317 at Eurofed in Antigua, in the name of Nemuro Industrial Group Limited and under the control of Lazarenko.

### c. (viii).    Accounts in the name of Orby International:

89.    On or about February 26, 1999, Lazarenko's Orby International account at Eurofed received approximately $996,960 in United States currency as a dividend payment from Eurofed. This transaction constituted returns on Lazarenko's investment of criminal proceeds in the purchase of a share of Eurofed.

### d.    Accounts in the name of Alexander Milchenko:

90.    Lazarenko associate Alexander Milchenko received at least $1,479,000 in property involved in the illicit activities of Lazarenko and his associates. Transactions included a transfer of $500,000 in United States currency on May 20, 1997, and a transfer of $979,000 in United States currency on September 10, 1997, from Kiritchenko's Orphin account 15187 at Eurofed to Milchenko's account 120512 at Eurofed.

### FIRST CLAIM FOR RELIEF

### (18 U.S.C. § 981(a)(1)(C) for violations of 18 U.S.C. §§ 2314, 2315 – ITSP)

91.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 90 above.

92.    Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity" or a conspiracy to commit such offense is subject to forfeiture to the United States.

93.     Pursuant to 18 U.S.C. §§1956(c)(7) and 1961(1), the illegal transportation or receipt of property stolen or taken by fraud in violation of 18 U.S.C. §§ 2314 and 2315 constitutes "specified unlawful activity" for purposes of  18 U.S.C. § 981(a)(1)(C).

94.     Pavel Ivanovich Lazarenko and/or his associates caused to be transported, transmitted, or transferred in interstate or foreign commerce goods, securities or money of a value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud in violation of 18 U.S.C. § 2314; and/or received, possessed, concealed, stored, bartered, sold, or disposed of goods, securities or money of a value of $5,000 or more, which had crossed a State or United States boundary, knowing the same to have been stolen, unlawfully converted or taken in violation of 18 U.S.C. § 2315.

95.     All defendants *in rem* are property that constitute or are derived from proceeds traceable to violations of 18 U.S.C. §§ 2314 and/or 2315, and are, therefore, subject to forfeiture to the United States in accordance with 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM FOR RELIEF

### (18 U.S.C. § 981(a)(1)(C) for violations of 18 U.S.C. § 1951 – Extortion)

96.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 95 above.

97.     Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity" or a conspiracy to commit such offense is subject to forfeiture to the United States.

98.     Pursuant to 18 U.S.C. §§1956(c)(7) and 1961(1), the unlawful taking or obtaining of property from another by wrongful use of fear or under color of official right in violation of 18 U.S.C. §

1951 constitutes "specified unlawful activity" for purposes of 18 U.S.C. § 981(a)(1)(C).

99.     Pavel Ivanovich Lazarenko and/or his associates affected or conspired to affect

commerce or the movement of an article or commodity in commerce by extortion, including by

obtaining property from another, with his consent, induced by wrongful use of fear or under color of

official right, in violation of 18 U.S.C. §§ 1951, and 2.

100.     All defendants *in rem* are property that constitute or are derived from proceeds

traceable to violations of 18 U.S.C. §1951, and are, therefore, subject to forfeiture to the United States

in accordance with 18 U.S.C. § 981(a)(1)(C).

## THIRD CLAIM FOR RELIEF

### (18 U.S.C. § 981(a)(1)(C) for violations of 18 U.S.C. §§ 1343, 1346 – Wire Fraud)

101.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs

1 through 100 above.

102.     Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which

constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified

unlawful activity" or a conspiracy to commit such offense is subject to forfeiture to the United States.

103.     Pursuant to 18 U.S.C. §§1956(c)(7) and 1961(1), wire fraud in violation of 18 U.S.C.

§§ 1343 and 1346 constitutes "specified unlawful activity" for purposes of 18 U.S.C. § 981(a)(1)(C).

104.     Pavel Ivanovich Lazarenko and/or his associates having devised or intending to devise

a scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent

pretenses, representations, or promises, and to deprive the people of Ukraine of his honest and faithful

services, used or caused someone to use the wire or radio in interstate or foreign commerce in violation

of 18 U.S.C. §§ 1343, 1346 and 2.

105.   All defendants *in rem* are property that constitute or are derived from proceeds

traceable to wire fraud in violation of 18 U.S.C. §§ 1343 and 1346, and are, therefore, subject to

forfeiture to the United States in accordance with 18 U.S.C. § 981(a)(1)(C).

## FOURTH CLAIM FOR RELIEF

### (18 U.S.C. § 981(a)(1)(C) – proceeds of offenses against a foreign nation)

106.   Plaintiff repeats and realleges each and every allegation set forth in paragraphs

1 through 105 above.

107.   Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which

constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified

unlawful activity" or a conspiracy to commit such offense is subject to forfeiture to the United States.

108.   Pursuant to 18 U.S.C. §§1956(c)(7)(B)(ii) and (iv) offenses of extortion, bribery of a

public official, and the misappropriation, theft or embezzlement of public funds by or for the benefit of a

public official constitute "specified unlawful activity" for purposes of 18 U.S.C. § 981(a)(1)(C).

109.   Pavel Ivanovich Lazarenko and/or his associates committed offenses against a foreign

nation of extortion, bribery of a public official, and/or the misappropriation, theft, or embezzlement of

public funds by or for the benefit of a public official.

110.   All defendants *in rem*, which are held in United States currency, were acquired through

transactions involving United States financial institutions, and/or transferred through financial institutions

in the United States, are property that constitute or are derived from proceeds traceable to acts against

-32-

a foreign nation of extortion, bribery of a public official, and/or the misappropriation, theft, or

embezzlement of public funds by or for the benefit of a public official, and are, therefore, subject to

forfeiture to the United States in accordance with 18 U.S.C. § 981(a)(1)(C).

### FIFTH CLAIM FOR RELIEF
### (18 U.S.C. § 981(a)(1)(A) for violations of
### 18 U.S.C. §§ 2, 1956(a)(1)(B)(i) – money laundering)

111.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs

1 through 110 above.

112.    Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in a

transaction or attempted transaction in violation of 18 U.S.C. § 1956(a)(1)(B)(i) or any property

traceable to such property is subject to forfeiture to the United States.

113.    Pavel Ivanovich Lazarenko and/or his associates caused or intended to cause a

financial transaction involving the proceeds of "specified unlawful activity", to wit – the transfer or

receipt of property that was stolen, unlawfully converted, or taken by fraud in violation of 18 U.S.C. §§

2314 or 2315; extortion in violation of 18 U.S.C. § 1951; wire fraud in violation of 18 U.S.C. §§1343

and 1346; and/or extortion against a foreign nation, as specified in 18 U.S.C. §§ 1956(c)(7)(B)(ii) –

knowing that the funds involved in the transaction represented the proceeds of some form of unlawful

activity and knowing that such transaction was designed in whole or in part to conceal or disguise the

nature, the location, the source, the ownership or the control of the proceeds of a "specified unlawful

activity."

114.    All defendants *in rem* are property involved in transactions or attempted transactions in

violation of 18 U.S.C. § 1956(a)(1)(B)(i) , or are property traceable to such property, and, therefore,

are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SIXTH CLAIM FOR RELIEF

### (18 U.S.C. § 981(a)(1)(A) for violations of
### 18 U.S.C. § 1956(a)(2)(B)(i) – international money laundering)

115.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 114 above.

116.    Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956(a)(2)(B)(i) or any property traceable to such property is subject to forfeiture to the United States.

117.    Pavel Ivanovich Lazarenko and/or his associates caused or intended to cause the transportation, transmission, or transfer of funds from a place in the United States to or through a place outside the United States and/or from a place outside the United States to or through a place in the United States knowing that the funds involved in the transfer represented the proceeds of some form of unlawful activity and knowing that such transportation transmission or transfer was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of a "specified unlawful activity," to wit: the transfer or receipt of property that was stolen, unlawfully converted, or taken by fraud in violation of 18 U.S.C. §§ 2314 or 2315; extortion in violation of 18 U.S.C. § 1951; wire fraud in violation of 18 U.S.C. §§1343 and 1346; and/or extortion against a foreign nation, as specified in 18 U.S.C. §§ 1956(c)(7)(B)(ii).

118.    All defendants *in rem* are property involved in transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(2)(B)(i), or are property traceable to such property, and, therefore,

are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SEVENTH CLAIM FOR RELIEF

### (18 U.S.C. § 981(a)(1)(A) for violations of 18 U.S.C. §§ 2, 1957 – money laundering)

119.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 118 above.

120.    Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957 or any property traceable to such property is subject to forfeiture to the United States.

121.    Pavel Ivanovich Lazarenko and/or his associates engaged in or attempted to engage in monetary transactions involving criminally derived property of a value greater than $10,000 and derived from some "specified unlawful activity," to wit: the transfer or receipt of property that was stolen, unlawfully converted, or taken by fraud in violation of 18 U.S.C. §§ 2314 or 2315; extortion in violation of 18 U.S.C. § 1951; wire fraud in violation of 18 U.S.C. §§1343 and 1346; and/or extortion against a foreign nation, as specified in 18 U.S.C. §§ 1956(c)(7)(B)(ii).

122.    All defendants *in rem* are property involved in transactions or attempted transactions in violation of 18 U.S.C. § 1957, or are property traceable to such property, and, therefore, are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## EIGHTH CLAIM FOR RELIEF

### (18 U.S.C. § 981(a)(1)(A) for violations of
### 18 U.S.C. § 1956(h) – money laundering conspiracy)

123.   Plaintiff repeats and realleges each and every allegation set forth in paragraphs

1 through 122 above.

124.   Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in a

transaction or attempted transaction in violation of 18 U.S.C. § 1956(h) or any property traceable to

such property is subject to forfeiture to the United States.

125.   Pavel Ivanovich Lazarenko and/or his associates knowingly conspired to conduct or

attempt to conduct transactions in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(a)(2)(B)(i), and/or

1957, which transactions involved the proceeds of "specified unlawful activity", to wit – the transfer or

receipt of property that was stolen, unlawfully converted, or taken by fraud in violation of 18 U.S.C. §§

2314 and 2315; extortion in violation of 18 U.S.C. § 1951; wire fraud in violation of 18 U.S.C.

§§1343 and 1346; and/or extortion against a foreign nation, as specified in 18 U.S.C. §§

1956(c)(7)(B)(ii).

126.   All defendants *in rem* are property involved in transactions or attempted transactions

in violation of 18 U.S.C. § 1956(h) , or are property traceable to such property, and, therefore, are

subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, plaintiff, the United States of America, requests that this Honorable Court issue a warrant and summons for the arrest and restraint or seizure of the defendant property; that notice of this action be given to all persons known or thought to have an interest in or right against the property; that the defendant property be forfeited and condemned to the United States of America; that the plaintiff be awarded its costs and disbursements in this action and such other and further relief as this Honorable Court deems proper and just.

Respectfully submitted,

_Roscoe C. Howard, Jr. /em_
ROSCOE C. HOWARD, JR.
(D.C. Bar No. 246470)
United States Attorney


_Eileen C. Mayer_
EILEEN C. MAYER
(D.C. Bar No. 294215)
LINDA OTANI MCKINNEY
(D.C. Bar No. 416548)
Assistant United States Attorneys
Office of the United States Attorney
    for the District of Columbia
Criminal Division
555 Fourth Street, N.W., 5th Floor
Washington, D.C.  20530
Telephone: (202) 514-7061

_Daniel H. Claman_
JOHN ROTH
Chief
LINDA M. SAMUEL
Deputy Chief
DANIEL H. CLAMAN
Senior Trial Attorney
Asset Forfeiture and Money
    Laundering Section
Criminal Division
United States Department of Justice
1400 New York Avenue, N.W., 10th Floor
Washington, D.C. 20530
Telephone: (202) 514-1263


Attorneys for Plaintiff
UNITED STATES OF AMERICA

<u>VERIFICATION</u>

I, Special Agent Debra LaPrevotte, hereby verify and declare under penalty of perjury that I am a Special Agent with the United States Federal Bureau of Investigation, that I have read the foregoing Verified Complaint *in rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the United States Federal Bureau of Investigation.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated:

Debra LaPrevotte
Special Agent
United States Federal Bureau of Investigation