UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

)
UNITED STATES OF AMERICA,                   )
                                            )
        Plaintiff,                          )
                                            )
    v.                                      )        Civil Action No. 04-0798
                                            )
ALL ASSETS HELD AT                          )
BANK JULIUS BAER & COMPANY, LTD.,           )
Guernsey Branch, Account Number             )
121128, in the name of Pavlo Lazarenko      )
last valued at approximately $2 million     )
in United States dollars, et al.,           )
                                            )
        Defendants in rem.                  )
_____)

OPINION

        This matter came before the Court on the motion to dismiss of claimants Pavel

Lazarenko and Alexander Lazarenko on their own behalf and on behalf of Ekaterina Lazarenko

and Lecia Lazarenko ("Claimants" or "Lazarenko Claimants").[1]  Plaintiff, the United States of

America, has filed an action in rem against various bank accounts located in foreign nations

around the world containing assets totaling over $250 million.  The United States brings this

action pursuant to two separate provisions of the civil forfeiture statute -- 18 U.S.C.

§ 981(a)(1)(C) and 18 U.S.C. § 981(a)(1)(A) -- seeking both direct forfeiture of alleged criminal

proceeds and forfeiture of property allegedly involved in or traceable to money laundering.

_____

[1]      Although the movants are referred to as "Claimants" in this Opinion, the Court notes that
they are not the only claimants in this case.  The non-moving claimants include Eurofed Bank
Limited (in liquidation), by and through its receivers; Alexei Ditiatkovsky; Universal Trading &
Investment Co., Inc.; Oao Gazprom; Mervin Onyshko; Maria de Los Angeles Collazo Garcia;
and Alan Mark Postles and Jacqueline Postles.

Claimants moved to dismiss the First Amended Verified Complaint for Forfeiture *In Rem* ("Amended Complaint") pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The Court heard oral argument on this motion on January 23, 2007.[2]  Upon consideration of the motion, the opposition, the reply and the arguments made at the motions hearing, the Court denied Claimant's Motion to Dismiss by Order of March 29, 2007.[3]  The reasons underlying that Order are set forth in this Opinion.

## I.  BACKGROUND

### A.  Factual Background

The following facts are alleged by the government in its First Amended Verified Complaint for Forfeiture *In Rem*:

Claimant Pavel Ivanovich Lazarenko, a.k.a. Pavlo Lazarenko, was a dominant figure in the Ukrainian government and economy from approximately 1992 to 1998, first in the heavily industrial Dnepropetrovsk District, and later throughout the Ukraine.  First Amended Verified Complaint for Forfeiture *In Rem* ("Am. Compl.") ¶¶ 6, 21-24, 35.  During this period, Lazarenko received more than $326 million in payments from various individuals and businesses

---

[2]      The Court heard argument from the Lazarenko Claimants, the United States, and claimant Eurofed Bank.  The other claimants in this case did not request or present any oral argument at the motions hearing.

[3]      The briefs submitted in connection with this motion are: (Lazarenko) Claimants' Motion to Dismiss First Amended Verified Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can Be Granted ("Mot."); United States' Opposition to the Lazarenko Claimants' Motion to Dismiss ("Opp."); Lazarenko Claimants' Reply Memorandum in Support of Motion to Dismiss First Amended Verified Complaint ("Reply"); and United States' Notice of New Authority.

through wire transfers occurring in the United States, while reporting an income of less than $6,000 per year in 1996 and 1997, having no other substantial employment, and declaring that he had no money in banks or other financial institutions.  Id. ¶¶ 7, 8, 26, 28, 34, 38, 41-44, 49, 50-54.

Those directing payment to Lazarenko during this period allegedly also obtained millions of dollars through their association with Lazarenko.  Am. Compl. ¶ 9.  One such associate was Peter Nikolayevich Kiritchenko, who was formally named as and served as an advisor to Lazarenko when he was First Vice Prime Minister and Prime Minister of Ukraine.  Id. Associates such as Kiritchenko allegedly would accept payments on behalf of Lazarenko in order to conceal them from Ukrainian and other law enforcement authorities, and then pass the payments through to accounts outside of Ukraine in the name of shell corporations under Lazarenko's control.  Id. ¶¶ 25, 27, 29, 34, 38-40, 42-43, 49, 53, 55, 59.

Through such criminal acts, the United States alleges, Lazarenko and his associates were able to acquire hundreds of millions of United States dollars.  Am. Compl. ¶ 10. Their schemes included, but were not limited to: skimming funds in United States dollars from multimillion dollar contracts for the distribution of natural gas imports in Ukraine and providing kickbacks to Lazarenko; obtaining property by wrongful use of fear or under color of official right; making payments to Lazarenko to influence or induce him to act or refrain from an official act; manipulating state businesses to provide millions of dollars in goods to private businesses and individuals that would share their profits with Lazarenko; diverting millions of United States dollars to their personal use by using fraudulent contracts to purchase goods for state enterprises at inflated prices or to falsify the purchase of goods that were not purchased; and concealing Lazarenko's association with corporations doing business with the local and national

3

governments to deprive Ukraine of the honest services of its employees.  Id.

These criminal acts allegedly occurred, in part, in the United States and were conducted in United States dollars through transactions with or through United States financial institutions.  Am. Compl. ¶¶ 11, 12.  For example, on January 14, 1994, Kiritchenko allegedly transferred approximately $216,000 from his Account Number 61310 in the name of Orphin at American Bank of Poland in Warsaw, Poland, through Chase Manhattan Bank in New York, to Lazarenko's Kato-82 account at Credit Lyonnais in Switzerland.  Id. ¶ 31.  Similar transfers allegedly were made by Claimant Ditiakovsky, Energy Systems of Ukraine ("UESU") and its affiliates, ITERA International Energy Corporation and its affiliates, Pacific Modern Homes, and Mykhola Agafonov, among others.  Id. ¶¶ 34, 36, 40, 43.  In addition, persons and businesses alleged to have transferred the proceeds of their fraudulent activities to Lazarenko, such as Agafonov, UESU, United Energy International, Ltd. ("UEIL"), ITERA, and Somolli Enterprises, Ltd., allegedly did so through financial institutions in the United States.  Id. ¶¶ 39, 40.

Between 1992 and 1999, Lazarenko and his associates also opened bank accounts in the United States, Switzerland, Antigua, Guernsey, Poland, Liechtenstein and Cyprus, among other countries, and allegedly transferred the proceeds of their criminal acts into and out of these accounts in an effort to conceal or disguise the nature, origin, location, source, ownership or control of these proceeds and property.  Am. Compl. ¶ 13.  For example, criminal proceeds deposited into accounts in the name of Kato-82 and Lip Handel in Switzerland allegedly were transferred to the United States and back to other Swiss accounts, such as Carpo-53 and Nihpro. Id. ¶ 61.  Payments received in Kiritchenko's accounts in Switzerland and Poland were also allegedly transferred across the United States boundaries and in and out of United States financial institutions into accounts in Switzerland.  Id. ¶¶ 31, 36, 50, 88.  Lazarenko and his

4

associates conducted these transactions in United States dollars.  Id.

In 1997, in part through negotiations that allegedly occurred in part in the United States, Lazarenko and Kiritchenko allegedly purchased a controlling interest in an Antiguan bank, the European Federal Credit Bank ("Eurofed"), in order to further conceal or disguise the nature, origin, location, source, ownership or control of the proceeds of their criminal acts.  Am. Compl. ¶¶ 14, 66.  Their ownership and control of Eurofed, which maintained depositors' funds not in Antigua, but primarily at investment accounts and correspondent accounts in the United States, allowed the defendant properties to be maintained at financial institutions in the United States while appearing to be on deposit in Antigua.  Id. ¶¶ 66-67, 70-75.

On June 3, 2004, a jury in the United States District Court for the Northern District of California found Lazarenko guilty on 29 criminal counts.  Am. Compl. ¶¶ 17, 18.  The jury's verdict included specific findings that Lazarenko engaged in a conspiracy to launder the proceeds of foreign extortion, wire fraud, and illegal transportation through the United States of property stolen or taken by fraud.  Am. Compl. ¶ 18.  After the trial judge granted in part and denied in part Lazarenko's motion for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, Lazarenko stands convicted of eight counts of money laundering and money laundering conspiracy, five counts of wire fraud, and one count of interstate transportation of property stolen, converted or taken by fraud.  See Opp. at 9-10 and 10 n.2; Docket, Criminal No. 00-00284, N.D.Cal.[4]  Kiritchenko pled guilty in the United States to the receipt or transportation of property stolen, converted or taken by fraud.  Am. Compl. ¶ 19; Opp. at 10.

---

[4]     Lazarenko was sentenced to 109 months in prison.  His criminal case currently is on appeal to the United States Court of Appeals for the Ninth Circuit.

In June 2000, "a Swiss court convicted Lazarenko of money laundering after Lazarenko accepted charges of money laundering related to abuse of power committed to the detriment of Ukraine."  Am. Compl. ¶ 16.  In addition, Lazarenko has been charged in Ukraine with abuse of public office.  Id. ¶ 15.  The defendants *in rem* in this case were obtained based on some of the conduct that led to Lazarenko's indictments and convictions and are currently located in foreign bank accounts in Guernsey, Antigua & Barbuda, Switzerland, Lithuania, and Liechtenstein.  Id. ¶¶ 1, 17-19.

## B.  Overview of Claims

The United States brings eight claims for forfeiture falling into two general categories.  The First, Second, Third and Fourth Claims for Relief allege the direct forfeiture of criminal proceeds pursuant to 18 U.S.C. § 981(a)(1)(C), which provides for the direct forfeiture of proceeds from violation of certain enumerated criminal statutes or any offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7).  See Am. Compl. ¶¶ 120-139.  The Fifth, Sixth, Seventh and Eighth Claims for Relief allege forfeiture of property involved in money laundering violations pursuant to 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of any property involved in or traceable to a violation of the money laundering provisions of 18 U.S.C. §§ 1956 and 1957.  Am. Compl.  ¶¶ 140-155.  The United States argues that all of the defendant properties are forfeitable under either theory.  Claimants argue both that the Court lacks subject matter jurisdiction and that the government has failed to state a claim with respect to each claim.

1.  Section 981(a)(1)(C) Direct Forfeiture Claims

The direct forfeiture claims, brought under 18 U.S.C. § 981(a)(1)(C), allege that the defendant properties are the proceeds of four offenses occurring, in part, in the United States or affecting the interstate or foreign commerce of the United States, and two foreign offenses for which direct forfeiture is specifically authorized by law.   Under 18 U.S.C. § 981(a)(1)(C), the following property is subject to forfeiture to the United States:

> Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section 215, 471, 472, 473, 474, 476, 477, 478, 479, 480, 481, 485, 586, 487, 488, 501, 502, 510, 542, 545, 656, 657, 842, 844, 1005, 1006, 1007, 1014, 1028, 1029, 1030, 1032, or 1344 of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

The four offenses for which a part of the criminal conduct allegedly occurred in the United States are: interstate transportation or receipt of property stolen or taken by fraud in violation of 18 U.S.C. §§ 2314 and 2315 (First Claim); Hobbs Act extortion in violation of 18 U.S.C. § 1951 (Second Claim); and wire fraud, including property and honest services fraud, in violation of 18 U.S.C. §§ 1343 and 1346 (Third Claim).  The two foreign offenses for which direct forfeiture is alleged and authorized by law are: an offense against a foreign nation of extortion, and an offense against a foreign nation of bribery of a public official, misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official; these offenses are enumerated in 18 U.S.C. §§ 1956(c)(7)(B)(ii) and (iv) (Fourth Claim).

2.  Section 981(a)(1)(A) Money Laundering Forfeiture Claims

The money laundering forfeiture claims, brought under 18 U.S.C. § 981(a)(1)(A), allege that the defendant properties were involved in or are traceable to property involved in

money laundering transactions or attempted money laundering transactions.  The violations of

money laundering law alleged in the complaint include: conduct designed to conceal the nature,

location, source, ownership or control of proceeds of a specified unlawful activity under 18

U.S.C. § 1956(a)(1)(B)(i) (Fifth Claim); international transportation, transmission or transfer of

proceeds of a specified unlawful activity under 18 U.S.C. § 1956(a)(2)(B)(i) (Sixth Claim);

engaging in or attempting to engage in monetary transactions affecting interstate or foreign

commerce with more than $10,000 in proceeds of a specified unlawful activity under 18 U.S.C.

§ 1957 (Seventh Claim); and conspiracy to engage in money laundering under 18 U.S.C.

§ 1956(h) (Eighth Claim).  The United States alleges the same four predicate offenses occurring,

in part, in the United States, and the same foreign extortion predicate as in its direct forfeiture

claims as a basis for the money laundering allegations.  Foreign official bribery,

misappropriation, theft, or embezzlement, as enumerated under 18 U.S.C. § 1956(c)(7)(B)(iv), is

not alleged as a basis for money laundering forfeiture.

## II.  DISCUSSION

### A.  Subject Matter Jurisdiction

Claimants argue that the complaint must be dismissed pursuant to Rule 12(b)(1)

of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction because: (1) there

is no statutory or non-statutory basis for exercising jurisdiction in this case; (2) the *ex post facto*

clause bars the retroactive application of statutory jurisdiction based on statutes that were not

part of the civil forfeiture statute at the time of the alleged offenses, but were incorporated later;

and (3) the money laundering statutes, 18 U.S.C. §§ 1956 and 1957, do not provide a basis for

subject matter jurisdiction.  Mot. at 6-16.[5]  The United States maintains that the Court has

subject matter jurisdiction pursuant to 28 U.S.C. § 1355 and 18 U.S.C. §§ 981(a)(1)(A) and

981(a)(1)(C).  The United States, as the plaintiff in this case, bears the burden of establishing by

a preponderance of the evidence that the Court has subject matter jurisdiction.  See Kokkonen v.

Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); Moms Against Mercury v. Food and Drug

Admin., 482 F.3d 824, 828 (D.C. Cir. 2007) (citing Georgiades v. Martin-Trigona, 729 F.2d 831,

833 n.4 (D.C. Cir. 1984)).

> This Court has original jurisdiction "of any action or proceeding for the recovery

or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act

of Congress, except matters within the jurisdiction of the Court of International Trade [setting

forth exception under 18 U.S.C. § 1582]."  28 U.S.C. § 1355(a).[6]  The Court therefore must turn

to the question of what statutory authority exists for this Court to exercise subject matter

jurisdiction over the defendant properties.  As already noted, the United States asserts that the

authority to forfeit the defendant properties exists pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).

---

[5]      The Court notes that Claimants set forth several arguments in their motion that appear
redundant to other of their arguments that are addressed in this Opinion.  For example, Claimants
argue that the United States' reliance on the use of United States dollars or of United States
financial institutions to commit foreign crimes involving foreign banks is an inadequate basis for
jurisdiction.  Mot. at 6-7.  This argument is seemingly the same as Claimants' assertion that the
money laundering statutes, 18 U.S.C. §§ 1956, 1957, do not provide a basis for subject matter
jurisdiction, discussed below.  The Court therefore addresses Claimants' argument in the context
of that discussion.  See infra at 16-22.

[6]      Venue is proper in this Court because all of the defendant properties are located in
foreign bank accounts, and  "[w]henever property subject to forfeiture under the laws of the
United States is located in a foreign country . . . an action or proceeding for forfeiture may be
brought . . . in the United States District Court for the District of Columbia."  28 U.S.C.
§ 1355(b)(2).

B.  *18 U.S.C. § 981(a)(1)(C):  Claims One Through Four*

1.  *Ex Post Facto* Clause

Claimants first argue that the First, Second, Third and Fourth Claims must be dismissed because forfeiture of defendant properties pursuant to 18 U.S.C. § 981(a)(1)(C) would violate the *Ex Post Facto* Clause.  Specifically, they argue that because Mr. Lazarenko's alleged criminal conduct which provides the basis for forfeiture occurred prior to the incorporation of that conduct into the statute, application of 18 U.S.C. § 981(a)(1)(C) in this case would constitute the retroactive application of a penal statute and therefore would violate the *Ex Post Facto* Clause.  Mot. at 10-11.  The United States responds that the *Ex Post Facto* Clause is not applicable because the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub.L. No. 106-185, 114 Stat. 202, 205, is remedial in nature, not penal.  The United States further maintains that CAFRA is an expressly and permissibly retroactive civil statute, as demonstrated by its express language, which by its terms reaches conduct -- and was intended to reach conduct -- that occurred before its enactment.

The *Ex Post Facto* Clause proscribes the retroactive application of legislation that is criminal or penal in nature, rather than civil or remedial.  Lynce v. Mathis, 519 U.S. 433, 440-41 (1997) (*Ex Post Facto* Clause prohibits making "innocent acts criminal after the event" or aggravating an offense by providing a greater punishment after the event than was permissible for the crime when committed); Landgraf v. UFI Film Products, 511 U.S. 244, 266 (1994) ("The *Ex Post Facto* Clause flatly prohibits retroactive application of penal legislation.").  The Supreme Court in United States v. Ursery, 518 U.S. 267 (1996), set forth a two-part analysis to determine whether a statute should be considered criminal or civil for purposes of the Double Jeopardy Clause, and its analysis has been held equally applicable to the *Ex Post Facto* Clause.

10

See United States v. Certain Funds (Hong Kong and Shanghai Banking Corporation), 96 F.3d 20, 26 (2d Cir. 1996). The analysis requires the Court, first, to consider congressional intent, and second, to inquire whether the forfeitures at issue are "so punitive in form and effect as to render them criminal despite Congress' intent to the contrary." United States v. Ursery, 518 U.S. at 277-78, 288-90.

In United States v. Ursery, the Supreme Court examined two forfeiture statutes, including the one at issue in the instant case -- 18 U.S.C. § 981. With respect to the first prong of the test -- determining the intent of Congress -- the Court held that "there is little doubt that Congress intended [21 U.S.C. § 881 and 18 U.S.C. § 981] forfeitures to be civil proceedings." United States v. Ursery, 518 U.S. at 288. The Court cited numerous factors in support of its conclusion, including the *in rem* nature of the proceedings at issue, as opposed to the *in personam* nature of criminal proceedings; it also noted the title of 18 U.S.C. § 981: "Civil Forfeiture." Id. at 288-89. With respect to the second prong, the Court found "little evidence . . . that forfeiture proceedings under 21 U.S.C. §§ 881(a)(6) and (a)(7), and 18 U.S.C. § 981(a)(1)(A), are so punitive in form and effect as to render them criminal." Id. at 290. While the specific subsection at issue in Ursery was 18 U.S.C. § 981(a)(1)(A), a reading of the Chief Justice's opinion for the Court makes clear that the same analysis applies to 18 U.S.C. § 981(a)(1)(C).[7]

Prior to 2000, certain statutory offenses relied on by the government as predicate offenses for its claims for relief under 18 U.S.C. § 981(a)(1)(C) -- 18 U.S.C. §§ 1343, 1346, 1951, 2314, 2315 -- were not listed in Section 981(a)(1)(C). And when CAFRA was enacted in

---

[7]    Indeed, at some places in the opinion, the Chief Justice refers to 18 U.S.C. § 981 in general and not to any particular subsection.

2000, it did not amend Section 981(a)(1)(C) itself by adding these specific statutes to the list of offenses from which property is derived or is traceable.  Rather, CAFRA added to Section 981(a)(1)(C) the catch-all phrase "or any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title. . . ."  While the statutory sections relied on by the government are not themselves cited in Section 1956(c)(7), the term "specified unlawful activity" in 18 U.S.C. § 1956(c)(7) includes any act or activity constituting an offense listed in 18 U.S.C. § 1961(1), see 18 U.S.C. § 1956(c)(7)(A), and that section references, among many other statutes, 18 U.S.C. §§ 1343, 1346, 1951, 2314 and 2315 -- the statutes prescribing the predicate acts for the first three claims in the Amended Complaint.  In addition, the term "specified unlawful activity" in 18 U.S.C. § 1956(c)(7) also includes -- with respect to a financial transaction occurring in whole or in part in the United States -- "an offense against a foreign nation involving" extortion, fraud, any scheme or attempt to defraud a foreign bank, and bribery of a public official.  18 U.S.C. § 1956(c)(7)(B)(ii) and (iv).

CAFRA -- and the addition in 18 U.S.C. § 981(a)(1)(C) of the reference to "specific unlawful activity" as defined in 18 U.S.C. § 1956(c) (7) -- was enacted on April 25, 2000 and became effective 120 days thereafter, on August 23, 2000.  The Court sees no evidence either to contradict the clear intent of Congress that CAFRA is a civil statute, or that forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) is so punitive as to render it an effectively penal statute rather than a remedial one.  The *Ex Post Facto* Clause therefore does not prohibit the retroactive application of it to the defendant assets at issue in this case.

12

2.  Retroactivity

Apart from the *Ex Post Facto* Clause's prohibition on the retrospective application of criminal legislation, there is a separate issue as to whether CAFRA should be applied retroactively as a civil statute.  Under the two-step test the Supreme Court articulated in Landgraf v. UFI Film Products, 511 U.S. at 280, the Court must first determine whether Congress has expressly exercised its authority to enact a civil statute that applies to events prior to its enactment.  If so, the inquiry is over, and "there is no need to resort to judicial default rules."  Id.  Where congressional intent is not clear -- that is, when the statute "contains no such express command" -- "the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."  Id.  In such a case, the Court must default to the traditional presumption against such a retroactive effect.  Id.

The language of CAFRA clearly expresses Congress's intent that it apply retroactively by stating in clear and unequivocal terms that the CAFRA amendments "shall apply to any forfeiture proceeding commenced on or after the date that is 120 days after the date of enactment of this Act."  8 U.S.C. § 1324.  See United States v. Real Property Identified As: Parcel 03179-005R, 287 F. Supp. 2d 45, 54 (D.D.C. 2003); see also United States v. All Funds on Deposit in Dime Savings Bank of Williamsburg Account No. 58-400738-1, 255 F. Supp. 2d 56 (E.D.N.Y. 2003).  As another court considering this same issue stated:

> Had Congress wanted to exclude from CAFRA's reach cases that
> are commenced after the effective date of the Act but where the
> underlying fraudulent conduct occurred prior to the effective date
> of the Act, it could have done so . . . . Since it did not, and since
> there is nothing ambiguous in the statute's language concerning its

13

reach or applicability, there is no need to conduct the Landgraf retroactivity analysis.

United States v. All Funds on Deposit in Dime Savings Bank of Williamsburg Account No. 58-400738-1, 255 F. Supp. 2d at 60-61. The CAFRA provisions at issue are tied to the effective date of the Act and the timing of the forfeiture proceedings brought in court, and not to the timing of the predicate criminal acts underlying the forfeiture action. See id. at 61.

Claimants argue that the decisions by Judge Walton in Real Property Identified As: Parcel 03179-005R, 287 F. Supp. 2d 45, and by Magistrate Judge Levy in All Funds on Deposit in Dime Savings Bank, 255 F. Supp. 2d 56, are incorrect, citing INS v. St. Cyr, 533 U.S. 289 (2001), for the proposition that the "mere promulgation of an effective date for a statute does not provide sufficient assurance that Congress specifically considered the potential unfairness that retroactive application would produce." Mot. at 11 n.5 (quoting INS v. St. Cyr, 533 U.S. at 317). The Court rejects this argument for two reasons. First, the Supreme Court concluded in INS v. St. Cyr that the statute at issue and the intent of Congress were ambiguous, and it therefore proceeded to the second step of the Landgraf analysis. INS v. St. Cyr, 533 U.S. at 318-20. Here, the Court concludes that CAFRA's language regarding retroactivity is unambiguous, and it therefore need not proceed to the second step of Landgraf. Second, as the court noted in All Funds on Deposit in Dime Savings Bank, 255 F. Supp. 2d at 62, "CAFRA is distinguishable from the statute at issue in St. Cyr, since its clear language does much more than merely announce an effective date." Congress specified that CAFRA "shall apply to any forfeiture proceeding" filed after its effective date. Id. For these reasons, Claimants' argument regarding INS v. St. Cyr is unavailing as applied to CAFRA. See United States v. Real Property

Identified As:  Parcel 03179-005R, 287 F. Supp. 2d at 54-55.[8]

### 3.  Claim Four

Claimants next assert a separate *ex post facto* challenge with regard to one of the two foreign specified unlawful activities enumerated as a specified unlawful activity in 18 U.S.C. § 1956(c)(7)(B)(iv) and alleged as a basis for forfeiture in the Fourth Claim: "bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official."  18 U.S.C. § 1956(c)(7)(B)(iv); see Mot. at 15.  Because this offense was not added to the statute until the Patriot Act was enacted in 2001, Claimants argue that it should not apply to events that occurred prior to its adoption.  Id.

---

[8]     Claimants also assert that the United States has not adequately established jurisdiction over Claims One, Two and Three under 18 U.S.C. § 981(a)(1)(C) because that statute requires proof of violations of specific, substantive, United States laws, and the complaint does not suggest that Lazarenko's crimes violated any United States laws.  Mot. at 9-10.  Furthermore, claimants say, a contrary view would give the underlying predicate statutes extraterritorial effect. Id. at 10 n.4.  This argument seemingly is identical to Claimants' assertion under Rule 12(b)(6) of the Federal Rules of Civil Procedure that the Amended Complaint does not state offenses cognizable under the forfeiture statutes.  Id. at 16.

As the government properly explains, jurisdiction for forfeiture is provided by the specific predicate statutes underlying Claim One (18 U.S.C. §§ 2314 and 2315), Claim Two (18 U.S.C. § 1951) and Claim Three (wire fraud, 18 U.S.C. §§ 1343 and 1346).  Wire transfer into and out of the United States and bank checks drawn on United States accounts and clearing through the United States financial system, both of which are alleged here, are sufficient to satisfy both the interstate transportation requirement of Sections 2314 and 2315 and the "use of the wires" element of Section 1343.  See Pasquintino v. United States, 544 U.S. 349, 371-72 (2005); United States v. Tran, 75 Fed. Appx. 598 (9th Cir. 2003) (unreported); United States v. Goldberg, 830 F.2d 459, 463-65 (3rd Cir. 1987); United States v. Gilboe, 684 F.2d 235, 237-38 (2d Cir. 1982); United States v. Brauerman, 376 F.2d 249, 251 (2d Cir. 1967); cf. United States v. Monroe, 943 F.2d 1007, 1015-16 (9th Cir. 1991); United States v. Davila, 592 F.2d 1261, 1263-64 (5th Cir. 1979).  The same reasoning applies to the predicate statute underlying Claim Two (extortion under 18 U.S.C. § 1951).  In this case, according to the United States, *all* of the $250 million whose forfeiture it seeks has been in or was transferred through the United States at some point.  See January 24, 2007 Tr. at 38:4-18.

The legislative history of 18 U.S.C. § 1956(c)(7)(B) makes clear that Congress added this offense as a specified unlawful activity in the 2001 Patriot Act in order to "send a strong signal that the United States will not tolerate the use of its financial institutions for the purpose of laundering the proceeds of such activities."  H.R. REP. NO. 107-250 (2001).  In describing the 2001 Patriot Act's amendment to 18 U.S.C. § 981(a)(1)(B), the Conference Committee report explained that the "list of foreign crimes to which this section applies is determined by cross-reference to the foreign crimes that are money laundering predicates under § 1956(c)(7)(B)," and that "[t]his section will permit the forfeiture of property involved in conduct occurring before the effective date of the Act."  Id.[9]  Because Congress made it plain that the amendments were to apply retroactively, and because it is applied under a civil forfeiture law, the Court concludes that 18 U.S.C. § 1956(c)(7)(B)(iv) can serve as a predicate act under 18 U.S.C. § 981(a)(1)(C) in the present action.[10]

### C.  Money Laundering Statutes:  Claims Five Through Eight

The Fifth, Sixth, Seventh, and Eighth Claims allege forfeiture of property involved in a money laundering transaction pursuant to 18 U.S.C. § 981(a)(1)(A).  Primarily at issue is whether the money laundering statutes -- 18 U.S.C. §§ 1956(a)(1)(B)(i) (Fifth Claim), 1956(a)(2)(B)(i) (Sixth Claim), 1957 (Seventh Claim), and 1956(h) (Eighth Claim) -- apply to

---

[9]     The 2001 Patriot Act amended 18 U.S.C. § 981(a)(1)(B), but did not amend 18 U.S.C. § 981(a)(1)(C).

[10]     To be clear, 18 U.S.C. § 1956(c)(7)(B)(iv) defines "specified unlawful activity" to mean "with respect to a financial transaction occurring in whole or in part in the United States, an offense against a foreign nation involving . . . bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official."  18 U.S.C. § 1956(c)(7)(B)(iv).  The United States has represented that these offenses were always crimes in Ukraine.  See January 24, 2007 Tr. at 49-51, 56.

defendant properties that were transferred from a foreign bank, through a United States financial

institution, and then to another foreign bank.  Claimants argue that jurisdiction cannot be based

on these provisions because the funds or the transactions did not originate in or end in the United

States or involve a United States person.  Mot. at 11-12.  The United States responds that each of

Claims Five through Eight describes "financial transactions and other money laundering conduct

in the United States and affecting interstate or foreign commerce with the proceeds of 'specified

unlawful activity'" and thus constitutes money laundering activities under 18 U.S.C. §§ 1956

and 1957.  Opp. at 36-37.

> The Fifth Claim is based on 18 U.S.C. § 1956(a)(1)(B)(i), which states:
>
> > Whoever, knowing that the property involved in a financial
> > transaction represents the proceeds of some form of unlawful
> > activity, conducts or attempts to conduct such a financial
> > transaction which in fact involves the proceeds of specified
> > unlawful activity . . .  knowing that the transaction is designed in
> > whole or in part . . . to conceal or disguise the nature, the location,
> > the source, the ownership, or the control of the proceeds of
> > specified unlawful activity . . . shall be sentenced to a fine of not
> > more than $500,000 or twice the value of the property involved in
> > the transaction, whichever is greater, or imprisonment for not more
> > than twenty years, or both.

18 U.S.C. § 1956(a)(1)(B)(i).  The four requirements of this statute are that the defendant:

> > (1) knowingly conducted a "financial transaction," (2) which he
> > knew involved funds that were the proceeds of some form of
> > unlawful activity, (3) where the funds involved in the financial
> > transaction in fact were the proceeds of a "specified unlawful
> > activity," and (4) that the defendant engaged in the financial
> > transaction knowing that the transaction was designed in whole or
> > in part to conceal or disguise the nature, location, source,
> > ownership, or control of the proceeds of such unlawful activity.

United States v. Tarkoff, 242 F.3d 991, 994 (11th Cir. 2001).  Claimants argue that the

transactions alleged in the complaint do not satisfy the first element of Section1956(a)(1)(B)(i)

because the term "financial transaction" does not include transfers through the United States from and to places outside the United States.  Mot. at 12.  The United States asserts that only minimal conduct within the United States is required in order to sustain a violation of Section 1956(a)(1).  Opp. at 39-40.  The Court agrees that the United States has alleged the necessary conduct within the United States to sustain a forfeiture under this provision of the statute.

A "financial transaction," as defined in 18 U.S.C. § 1956(c)(4), includes

> a transaction which in any way or degree affects interstate or foreign commerce . . . involving the movement of funds by wire or other means or . . . a transaction involving a financial institution, which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree.

As Judge Joyce Hens Green has properly noted, "In a complex routing transaction, each transfer of funds, if it affects interstate or foreign commerce, can be a separate § 1956(a)(1) violation." BCCI Holdings (Luxembourg) Societe Anon. v. Khalil, 56 F. Supp. 2d 14, 54 (D.D.C. 1999), aff'd in part, rev'd in part and remanded on different grounds, 214 F.3d 168 (D.C. Cir. 2000); see also United States v. Tarkoff, 242 F.3d at 994-95 (holding that telephone communications between the United States and Israel, necessary to effectuate the bank transactions at issue, were sufficient to bring wire transfers that occurred wholly outside the United States within the definition of a "financial transaction").

In its Amended Complaint, the United States has alleged numerous transfers into and out of United States financial institutions.  See, e.g., Am. Compl. ¶¶ 31, 34, 40, 43.  The United States has asserted that the monies sought to be forfeited are all "either the proceeds or property involved in US crimes or property that is the proceeds of foreign crimes that was (sic) in the US and has been removed."  January 24, 2007 Tr. at 38:10-12.  All of the money against which the government has brought this *in rem* action was "in the United States at some point."

18

Id. at 38:17-18.  Viewing each transfer separately, the United States has identified numerous transactions that occurred via United States financial institutions.  To require more would be to suppose that Congress did not intend to criminalize the use of United States financial institutions as clearinghouses for criminal money laundering and conversion into United States currency.

Claimants maintain that because United States institutions necessarily must be used to convert foreign currency into United States currency, the money had to go through a bank in the United States; but, according to claimants, such a transfer through U.S. banks is an insufficient basis to provide jurisdiction in this Court.  It follows, they say, that the United States cannot bring actions against any criminal proceeds that are thus converted.  In fact, the converse is true.  If, as Claimants assert, United States currency has been the bedrock of international trading and commerce, then Congress was justified in attempting to oversee the use of United States financial institutions and in seeking to prevent their use as clearinghouses for criminals.  At oral argument, Claimants suggested that such an assertion would make the United States the "policeman of the world."  January 24, 2007 Tr. at 70:21-22.  In fact, it only makes the United States government the police of criminal conduct that takes place, at least in part, in this country.

The Sixth Claim is based on 18 U.S.C. § 1956(a)(2), which prohibits individuals from engaging, with the requisite intent or knowledge in the

> transport [], transmittal, or transfer [] [of] a monetary instrument or funds from a place in the United States to or through a place in the United States from or through a place outside of the United States . . . .

18 U.S.C. § 1956(a)(2).  Claimants contend that because the transactions at issue here merely passed through the United States, there was no "transfer" under Section 1956(a)(2).  See January 24, 2007 Tr. at 17:16-18:15.  They ask the Court to view the transactions at issue as a single

transfer -- that is, for example, that a transaction that began in Poland, went from Poland to a United States financial institution, and from that United States financial institution to Switzerland, should be viewed as a single transaction or transfer from Poland to Switzerland. The Court disagrees with Claimants' analysis of the movement of the assets.

The Second Circuit, dealing specifically with the issue of electronic transactions and citing 18 U.S.C. § 981(a)(1)(A), stated:

> With each EFT [electronic funds transfer] at least two separate transactions occurred:  first, funds moved from the originating bank to the intermediary bank; then the intermediary bank was to transfer the funds to the destination bank, a correspondent bank in Colombia.  While the two transactions can occur almost instantaneously, sometimes they are separated by several days.

United States v. Daccarett, 6 F.3d 37, 54 (2d Cir. 1993). Cf. United States v. Dinero Express, Inc., 313 F.3d 803, 806 (2d Cir. 2002) ("[b]ecause money is inherently fungible, a person is sensibly considered to have engaged in a "transfer" of money whenever he accepts money in one location and, pursuant to an overall course of conduct, causes the delivery of related money to another location.").

Claimants cite an Eleventh Circuit case, United States v. Kramer, 73 F.3d 1067 (11th Cir. 1996), for the proposition that Section 1956(a)(2) applies only when the transaction begins or ends in the United States.  The Kramer decision is inapposite to the situation presented here because in Kramer, the transfer at issue went directly from Switzerland to Luxembourg; at no time did funds pass through a United States financial institution.  United States v. Kramer, 73 F.3d at 1070, 1072-73.  The Eleventh Circuit, therefore, was addressing a situation where the relevant conduct occurred wholly outside of the United States, not a situation where, as here, the defendant properties went to and then from United States financial institutions.  If anything,

Kramer undermines the Claimants' argument, as the court in Kramer expressly stated in its

opinion that the statutory language and legislative history of Section 1956(a)(2) "indicate that

each transaction or transfer of money constitute a separate offense."  Id. at 1072.

      Finally, Claimants argue that 18 U.S.C. § 1956(a)(2) does not apply to any of the

funds at issue in the Amended Complaint because the offense of money laundering requires that

the funds transferred involve the proceeds of a "specified unlawful activity."  Mot. at 14.

Section 1956(c)(7) defines "specified unlawful activity" as, among other things,  "extortion

against a foreign nation."  Claimants assert that plaintiff, in its Amended Complaint, improperly

identifies "extortion against a foreign nation" as a predicate offense under Section

1956(c)(7)(B)(ii) because the allegations in the Amended Complaint at most describes bribery or

corruption.  Id.  The Court disagrees with the Claimants' characterization of the Amended

Complaint.  It also notes that this argument appears to be more properly an argument to dismiss

for failure to state a claim upon which relief can be granted, rather than an argument going to the

Court's subject matter jurisdiction.

      The Seventh Claim is based on 18 U.S.C. § 1957, which claimants assert does not

apply because it requires that the offense take place within the United States or, if takes place

outside the United States, it must involve a "United States person."  18 U.S.C. § 1957(d).

Section 1957 makes it unlawful to knowingly engage or attempt to engage in a monetary

transaction involving property of a value greater than $10,000 derived from specified unlawful

activity.  18 U.S.C. § 1957(a).  The term "monetary transaction" is defined in § 1957(f)(1) as:

> the deposit, withdrawal, transfer, or exchange, in or affecting
> interstate or foreign commerce, of funds or a monetary instrument
> (as defined in section 1956(c)(5) of this title), by, through, or to a
> financial institution (as defined in 1956 of this title), including any
> transaction that would be a financial transaction under section

1956(c)(4)(B) of this title . . . .

Because the term "monetary transaction" includes a "financial transaction" as defined under Section 1956(c)(4)(B), the Court's analysis of the term with respect to its use in Section 1956(a) is also applicable to Section 1957. <u>See</u> <u>supra</u> at 18-19. Accordingly, the Court finds that plaintiff has sufficiently identified transactions that occurred to and from United States financial institutions that are engaged in interstate or foreign commerce.

With respect to the Eighth Claim, the claimants argue only that it is "defective for the reasons previously identified with respect to the earlier claims." Mot. at 27. This argument fails, therefore, for the same reasons discussed with respect to those claims.

### D.  Failure to State a Claim:  Rule 12(b)(6) Standard Or a Heightened Standard Under Asset Forfeiture Rules?

#### 1.  Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6). The Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" <u>Id</u>. at 1965 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)); <u>see</u> <u>also</u> <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007); <u>Aktieselskabet AF 21 v. Fame Jeans Inc.</u>, 525 F.3d 8, 15 (D.C. Cir. 2008). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to

22

relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1964-65; see also Papasan v. Allain, 478 U.S. 265, 286 (1986).  The Court stated that there was no "probability requirement at the pleading stage," Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1965, but "something beyond . . . mere possibility . . . must be alleged[.]"  Id. at 1966.  The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," id. at 1965, or must be sufficient "to state a claim for relief that is plausible on its face." Id. at 1274.  The Court referred to this newly-clarified standard as "the plausibility standard." Id. at 1968 (abandoning the "no set of facts" language from Conley v. Gibson).  The D.C. Circuit has noted that Twombly "leaves the long-standing fundamentals of notice pleading intact." Aktieselskabet AF 21 v. Fame Jeans Inc., 525 F.3d at 15.

On a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint."  Erickson v. Pardus, 127 S. Ct. at 2200; see also Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1965; Summit Health, Ltd. v. Pinhas, 500 U.S. 322, 325 (1991); Aktieselskabet AF 21 v. Fame Jeans Inc., 525 F.3d at 15.  The complaint "is construed liberally in the plaintiffs' favor, and [the Court should] grant plaintiffs the benefit of all inferences that can be derived from the facts alleged."  Kowal v. MCI Communications Corp., 16 F.3d at 1276; see also Aktieselskabet AF 21 v. Fame Jeans Inc., 525 F.3d at 15.  While the complaint is to be construed liberally in plaintiff's favor, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint; nor must the Court accept plaintiff's legal conclusions.  See Kowal v. MCI Communications Corp., 16 F.3d at 1276; Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).

23

2.  Supplemental Rules for Asset Forfeiture Actions

Prior to 2006, complaints in forfeiture actions were governed by Rule E(2)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims.  Rule E(2)(a) provided then and provides now:

> In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

In 2006, these Rules were amended and renamed the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules").  The 2006 Amendments added a new Rule G, supplanting Rule E(2)(a) and governing procedures in civil forfeiture actions.  See Rule E of Supplemental Rules, advisory committee's note; Rule G of Supplemental Rules, advisory committee's note on 2006 adoption; see also 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3261 (2d ed. Supp. 2008).

Under Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, a complaint in an in rem forfeiture case must:

(a) be verified;

(b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue;

(c) describe the property with reasonable particularity;

(d) if the property is tangible, state its location when any seizure occurred and – if different – its location when the action is filed;

(e) identify the statute under which the forfeiture action is brought; and

(f) state sufficiently detailed facts to support a reasonable belief

24

that the government will be able to meet its burden of proof at trial.

Rule G(2) of Supplemental Rules.  The Advisory Committee's Note clarifies that it adopts the standard that evolved in case law interpreting the earlier Rule E(2)(a) requirement and is intended to "carr[y] forward this forfeiture case law without change."  Rule G of Supplemental Rules, advisory committee's note on 2006 adoption (citing <u>United States v. Mondragon</u>, 313 F.3d 862, 865 (4th Cir. 2002)).

The Amended Complaint in this case was filed, and the motion to dismiss was briefed, prior to the enactment of Rule G.  The standard under which the Court must consider the arguments is unchanged by the enactment of the new Rule.  Under Rule E(2)(a), "[t]he complaint must contain more than conclusory allegations; although it need not plead evidence, it must plead facts to support its allegations."  <u>United States v. One Partially Assembled Drag Racer</u>, 899 F. Supp. 1334, 1340 (D.N.J. 1995).  "Claimant must be able to respond to it with something more than a general denial."  <u>Id</u>.  Claimants argue that courts have read this Rule to require a more particularized complaint and a heightened standard.

The United States agreed at the time this motion was briefed that "[t]he burden to plead facts particular enough to satisfy Rule E(2) is distinct from the burden to plead facts sufficient to state a cause of action under the Rule 12(b)(6) standard."  Opp. at 24 (quoting <u>United States v. Funds in the Amount of $29,266.00</u>, 96 F. Supp. 2d 806 (N.D. Ill. 2000)).  The United States argued, however, that this distinct burden is not a *heightened* standard from the Rule 12(b)(6) standard, and that even if it was, the United States has met it.  Opp. at 26 n.20.  It asserted that "post-CAFRA cases have simply held that a complaint under Rule E(2) must 'allege sufficient facts to support a reasonable belief that the property is subject to forfeiture.'"  Opp. at 24 (quoting <u>United States v. All Funds on Deposit in Dime Savings Bank</u>, 255 F. Supp.

2d at 69 (quoting <u>United States v. Mondragon</u>, 313 F.3d at 865).  The United States also points to the fact that in adopting the CAFRA, Congress enacted 18 U.S.C. § 983(a)(3)(D), which provides that "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property."  Opp. at 25.

The Court agrees with Claimants that Rule G (and its predecessor Rule E(2)) creates a heightened burden for pleading on the plaintiff.  <u>See United States v. Mondragon</u>, 313 F.3d at 865 (discussing Rule E(2)'s "heightened particularity in pleading requirement" and citing cases); <u>see also</u> 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, <u>Federal Practice and Procedure</u> § 3242 (2d ed. 1997) (Rule E(2) "requires a more particularized complaint than is demanded in civil actions generally, or even in admiralty actions in which the special remedies provided for by Supplemental Rules B, C, and D are not sought.")  The additional burden of pleading requiring "added specifics is thought appropriate because of the drastic nature of those remedies.  Thus, it fortifies the procedural-due-process protections against improper use of these remedies."  12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, <u>Federal Practice and Procedure</u> § 3242 (2d ed. 1997).  The conclusion that Supplemental Rule G requires a higher standard of pleading than Rule 8 of the Federal Rules of Civil Procedure is further supported by a simple comparison of the language of Rule 8(a), which governs pleading in more typical civil actions, with that of Supplemental Rule G.  Rule 8 requires only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).  Supplemental Rule G, by contrast, requires that a complaint in a forfeiture action *in rem* "must . . . state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."  Rule G(2)(f) of Supplemental Rules.

26

Upon review of the Amended Complaint under this heightened burden, the Court agrees with the United States that it has adequately alleged facts supporting "a reasonable belief that the government will be able to meet its burden of proof at trial" with respect to each of its eight claims.  Rule G(2)(f) of Supplemental Rules.  Stated another way, the Court concludes that the government's amended complaint sets forth very detailed allegations, see supra at 2-6, including "sufficient facts to support a reasonable belief that the property is subject to forfeiture."  United States v. Mondragon, 313 F.3d at 865.  Furthermore, as discussed supra at 15 n.8 regarding Claims One through Three; supra at 15-16 regarding Claim Four; and supra at 16-22, regarding Claims Five through Eight, each claim is adequately pleaded under this heightened standard.  The Court therefore denied Claimants' motion to dismiss for failure to state a claim upon which relief may be granted.

## III.  CONCLUSION

For the reasons set forth in this Opinion, the Court denied the Lazarenko Claimants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted in an Order dated March 29, 2007.

SO ORDERED.

_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  July 9, 2008