UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,              )<br>                                                            )<br>            Plaintiff,                            )<br>                                                            )<br>       v.                                                )<br>                                                            )<br> ALL ASSETS HELD AT                      )<br> BANK JULIUS BAER & COMPANY, LTD.,   )<br> Guernsey Branch, Account Number   )<br> 121128, in the name of Pavlo Lazarenko, )<br> last valued at approximately $2 million  )<br> in United States dollars, <u>et al.</u>,           )<br>                                                            )<br>            Defendants <i>in rem</i>.                )<br>                                                            ) | Civil Action No. 04-0798 |

OPINION

In this civil forfeiture action *in rem,* individuals Maria de Los Angeles Collazo Garcia, Allan Ronald Munro, Mervin Michaelson Onyshko, Alan Mark Postles and Jacqueline Postles (collectively, "the individual claimants") have filed claims to the defendant assets sought by the United States.[1] The United States has requested the Court to strike those claims or enter judgment against the claimants. See Plaintiff's Motion to Strike the Claims Filed by [the Individual Claimants], or, in the Alternative, Motion for Summary Judgment ("Mot."). By Order of September 30, 2009, the Court granted the motion filed by the United States and struck

---

[1] The above-named individuals are not the only natural persons who have filed claims in this case. See Verified Claim of Alexei Ditiatkovsky, Verified Claim of Alexander Lazarenko, Verified Claim of Pavel Lazarenko. For the purposes of this Opinion, when the Court uses the term "individual claimants," it refers only to Ms. Collazo, Mr. Munro, Mr. Onyshko, Ms. Postles and Mr. Postles.

1

the claims in question. As an alternative disposition, the Court also rendered judgment in favor of the United States on all claims except that of Ms. Collazo. This Opinion explains the reasoning behind that Order.[2]

## I. BACKGROUND

At issue for the purposes of the present motion is a large amount of money — tens of millions of dollars — traceable to an Antiguan bank, Eurofed Bank Limited. See Mot. at 2-3. The United States alleges that those funds were generated by the criminal activities of Pavlo Ivanovich Lazarenko, a Ukrainian politician who, with the aid of various associates, was "able to acquire hundreds of millions of United States dollars through a variety of acts of fraud, extortion, bribery, misappropriation and/or embezzlement" committed during the 1990s. Plaintiff's Amended Complaint ("Am. Compl.") ¶ 10. The United States alleges that in 1997 Lazarenko and an associate, Peter Kiritchenko, obtained control of Eurofed, id. ¶ 66, and then proceeded to cycle almost $100 million through various Eurofed accounts in order to launder the funds, which were proceeds of Lazarenko's criminal activities. Plaintiff's Statement of Facts ("Pl.'s Statement") ¶ 1. Lazarenko's funds constituted the bulk of Eurofed's deposits, id. ¶ 2, although the bank did hold the assets of some depositors who were not affiliated with Lazarenko or his associates ("third-party depositors"). See id. ¶ 6.

In 1999 Eurofed was placed in receivership and subsequently entered liquidation. Pl.'s Statement ¶ 5. A large amount of money held for Eurofed in offshore accounts, including

---

[2] The Court's September 30, 2009 Order denied the United States' motion for summary judgment on the claim of Ms. Collazo because the Court has not reached the merits on that matter. That denial was without prejudice, and by separate Order issued today, the September 30 Order will be amended to reflect that fact.

approximately $85 million held in United States financial institutions, was returned to Antigua. Mot. at 3; Am. Compl. ¶ 76. The bank's liquidators then proceeded to set aside approximately $20 million of the bank's collected assets for distribution among "third party depositors and creditors" of the bank. Pl.'s Statement ¶ 6. Approximately $14 million of that money has since been disbursed to parties whose claims against the bank have been validated by Eurofed's liquidators. Id. ¶ 7. While around $3 million thus remains to satisfy any still-outstanding claims of third-party depositors and creditors, Eurofed's liquidators estimate that the amount still owed to those parties is greater than $11 million. Mot., Ex. 2 at 16. Of the other Eurofed assets held in Antigua, all those "designated to Pavlo Lazarenko and associated companies" have been frozen by the Antiguan High Court. Mot. at 3.

The United States initiated this proceeding on May 14, 2004, seeking the civil forfeiture of various Lazarenko assets pursuant to federal statutes that provide for the forfeiture to the government of funds traceable or otherwise related to criminal activity that occurred at least in part in the United States. See Am. Compl. ¶ 1. Among the Lazarenko assets sought is approximately $85.5 million currently held in Antigua under the control of the Eurofed liquidators and Antigua's High Court Registrar. Id. ¶ 5(d). Those funds derive from various now-liquidated accounts that were allegedly opened at Eurofed for Lazarenko's benefit, either in his own name or that of one or more associates or affiliated organizations. Id. ¶¶ 5(d)-(e). In addition to those Eurofed funds held in Antigua, the United States has named as defendants *in rem* the contents of still-existing accounts opened in the name of Eurofed at a variety of offshore

financial institutions, including Banque SCS Alliance S.A. (Geneva), Vilniaus Bankas, and several banks in Liechtenstein.  See id. ¶¶ 5(f)-(i).[3]

In February 2008, the United States mailed to third-party depositors of Eurofed a letter listing the assets named as defendants in this action and informing the depositors that to intervene in the pending forfeiture action, they would need to file a claim and an answer pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"), which are a subset of the Federal Rules of Civil Procedure. See Mot., Ex. 4.  Between March 3, 2008, and July 17, 2008, four documents purporting to contain claims to portions of the defendant funds were filed by the five individual claimants, all of whom are proceeding *pro se*.[4]  The United States filed the pending motion to strike those claims on December 9, 2008.  Although the Court warned the claimants, through an Order issued on May 22, 2009, that any failure on their part to oppose the United States' motion could result in the striking of their claims, only one claimant, Mr. Onyshko, submitted any kind of response. None of the claimants has filed an answer to the complaint.

## II.  DISCUSSION

The United States maintains that the claimants have failed to meet their obligations under Rule G of the Supplemental Rules because they have neither established

---

[3] The Court previously held that the United States has adequately stated claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See United States v. All Assets Held at Bank Julius Baer & Co., 571 F. Supp. 2d 1, 17 (D.D.C. 2008).

[4] Two of the five claimants, Alan Mark Postles and Jacqueline Postles, filed a joint notice of claim.

statutory standing nor complied with the Rule's procedural requirements.  See Mot. at 1-2.[5]  A third potential ground for ruling against the claimants arose after the United States filed its motion: none of the individual claimants filed a proper response to the motion.  The Court will discuss the consequences of this procedural default before turning to the other arguments.

### A.  Failure to Respond

Under the Local Rules of this Court, a party's failure to oppose a motion in a timely manner by submitting  "a memorandum of points and authorities" authorizes the Court to deem that motion conceded.  See L. Civ. R. 7(b); see also Fox v. Am. Airlines, Inc., 389 F.3d 1291, 1294 (D.C. Cir. 2004); Bell v. Library of Congress, 539 F. Supp. 2d 411, 413 (D.D.C. 2008).  In this case, pursuant to Fox v. Strickland, 837 F.2d 507 (D.C. Cir. 1998), and Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992), the Court issued an Order on May 22, 2009, in which it warned the individual claimants, all proceeding *pro se*, that their failure to respond to the pending motion could lead to the dismissal of their claims.  It also instructed the claimants to file an opposition to the motion on or before July 15, 2009.

Despite this Order, and the many months that have passed since the United States initially filed its motion to strike, the individual claimants have failed to submit a proper opposition.  Only Mr. Onyshko has filed any response whatsoever, and that response consists only of an affidavit in which Mr. Onyshko sets forth no facts, but states his personal belief that he has a "good and valid claim against Paulo Ivonovich Lazarenko and Associates."  See Affidavit of Mervin Michaelson Onyshko ¶ 3.  In the absence of any direct answer by the

---

[5] The United States also argues that the individual claimants lack constitutional standing.  For further discussion of that issue, see *infra* note 7.

claimants to the legal and factual arguments made by the United States, this Court has the discretion under Rule 7 of the Local Civil Rules to grant the motion. Because the parties here are individuals proceeding *pro se*, however, and because the practical outcome will be the same whether the motion is adjudicated on the merits or deemed conceded, the Court will address the arguments presented by the United States and explain why the claims of the individuals in question cannot succeed.

*B.  Procedural Omissions*

To contest the forfeiture of property that has been named as a defendant in a civil forfeiture action, a claimant must proceed "in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims [and Asset Forfeiture Actions]," which are themselves a subset of the Federal Rules of Civil Procedure. 18 U.S.C. § 983(a)(4)(A). Rule G of the Supplemental Rules, which governs forfeiture actions *in rem* brought pursuant to federal statutes, sets out detailed procedural requirements to be followed by a person or entity seeking to challenge the government's attempt to seize defendant assets. See SUPP. R. G(5), (6). Within the amount of time prescribed by Supplemental Rule G(5)(a)(ii), a would-be claimant must file with the court presiding over the forfeiture action a claim that (1) "identif[ies] the specific property claimed," (2) "identif[ies] the claimant and state[s] the claimant's interest in the property," and (3) is "signed by the claimant under penalty of perjury." SUPP. R. G(5)(a)(i)(A)-(C). She or he must also file either a motion to dismiss the government's complaint or an answer to that complaint no more than 20 days after first filing her verified claim. SUPP. R. G(5)(b). In requiring a claimant to follow these procedures, the Supplemental Rules "ensur[e] that putative claimants come forward as quickly as possible after the initiation of forfeiture proceedings so

that the court may hear all interested parties and resolve the dispute without delay." United States v. Funds from Prudential Securities, 300 F. Supp. 2d 99, 104 (D.D.C. 2004) (referring to Rule G's predecessor, Rule C(6)).

Because the procedures prescribed by the Supplemental Rules play an important role in structuring forfeiture suits and ensuring that they proceed efficiently, a court is authorized to strike the claim and/or answer of any claimant who fails to follow the Rules' procedural dictates. See SUPP. R. G(8)(c)(i)(A). Courts generally expect claimants to adhere strictly to those requirements. See United States v. $83,686.00, 498 F. Supp. 2d 21, 24 (D.D.C. 2007) (citing United States v. $104,674.00, 17 F.3d 267, 268-69 (8th Cir. 1994) and United States v. Amiel, 995 F.2d 367, 371 (2d Cir. 1993)). In some circumstances, however, especially where claimants are proceeding *pro se*, courts may excuse some minor procedural failings so long as "the underlying goals of" the Supplemental Rules "are not frustrated." United States v. Funds from Prudential Securities, 300 F. Supp. 2d at 104 (collecting cases).

The United States argues that the claims at issue here should be stricken because (1) of the four claims, only Ms. Collazo's was signed under penalty of perjury as required by Supplemental Rule G(5)(a)(i)(C), see Mot. at 20-21; and (2) the claimants have not filed answers to the complaint as required by Supplemental Rule G(5)(b). See Mot. at 13-16.[6] Because the Court finds the second failing dispositive, it does not address the first.

---

[6] The United States also argues that the claimants have failed to file proper claims because those claims do not "identify the specific property claimed" or "the claimant's interest in the property." See Mot. at 16,18. The Court addresses the sufficiency (or lack thereof) of the claimants' substantive assertions *infra* at 12-15.

The answer to a complaint serves to "apprise the opponent of those allegations in the complaint that stand admitted and will not be in issue at trial and those that are contested and will require proof to be established to enable the plaintiff to prevail." 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1261 (3d ed. 2004). As of the date of this Opinion, more than a year after the individual claimants made their appearances in this case, not one of them has filed the answer required by the Supplemental Rules. The complaint filed by the United States in this case consists of 155 detailed paragraphs concerning the origins, transfer, ownership and distribution of tens of millions of dollars. Unless the claimants file an answer to that complaint, the United States — and the Court — must guess at which allegations in that complaint are undisputed or irrelevant to a particular claimant and which will have to be proven by a preponderance of the evidence. Although the individual claimants are *pro se* and so are entitled to some leniency, "the less stringent standard for *pro se* litigants does not allow them to simply disregard the applicable Local and Federal Rules of Civil Procedure or render the court [or the opposing party] the decisionmaker of 'what claims a [litigant] may or may not want to assert.'" United States v. Funds from Prudential Securities, 362 F. Supp. 2d 75, 82 (D.D.C. 2005) (citing Jarrell v. Tisch, 656 F. Supp. 237, 239 (D.D.C. 1987)).

Moreover, the circumstances that have sometimes been held to excuse a failure to file an answer are not present in this case. A court may consider the following, among other things, in determining whether a claimant's procedural default should be excused: the claimant's good faith attempts to comply with procedural requirements; the date upon which the claimant received notice of the pending forfeiture action; any requests by the claimant to amend the pleadings or for an extension of time; any reasons proffered by the claimant for the omission; and whether prejudice to the United States will result from excusing the claimant's procedural

errors. See United States v. $83,686.00, 498 F. Supp. 2d at 24. Here, the claimants were personally notified of this forfeiture action by letter in February 2008. See Pl.'s Statement ¶ 8. That letter specifically informed each claimant of the obligation to file an answer to (or a motion to dismiss) the United States' complaint. See Mot., Ex. 4 at 1. The claimants were again apprised of that duty by the pending motion to strike, which explains the claimants' procedural obligations in some detail. See Mot. at 13-16. Finally, the Court by an Order issued May 22, 2009, apprised the claimants of the consequences of their failure to respond to the present motion.

Despite these warnings, not one of the claimants has filed an answer, offered reasons for the failure to file, or requested an extension of time. As a result, the Court can only conclude that the individual claimants either are unwilling or unable to take the actions necessary to preserve their claims, and that to permit those claims to remain on the record despite the claimants' silence would prejudice the United States, which cannot be certain of its discovery obligations until it has some idea of the facts that will be disputed by each party to this suit. The Court has stricken the claims in light of the individual claimants' failure to file answers to the complaint.

### C. The Claimants' Interest in the Defendant Property

Supplemental Rule G(5)(a)(i) requires that a claimant in a forfeiture action *in rem* "assert[] an interest in the defendant property." Without such an interest, the claimant lacks standing under the Supplemental Rules to challenge the forfeiture. See SUPP. R. G(8)(c)(i)(B); United States v. Funds from Prudential Securities, 300 F. Supp. 2d at 103 (referring to Supplemental Rule C(6), the predecessor of Supplemental Rules G(5) and G(6)); John K. Rabiej,

Supplemental Rule G Governing Pretrial Procedures in Forfeiture in Rem Actions, PRAC. LITIG., May 2008, at 47, 55.  "The extent of the interest in the defendant property sufficient to meet this standing requirement is left to case law."  Rabiej, *supra*, at 55; see also United States v. Funds from Prudential Securities, 300 F. Supp. 2d at 103 (claimant must "demonstrat[e] an interest . . . sufficient to satisfy the court of his standing").  Ultimately, a claimant must do more than merely *assert* such an interest; she or he bears the burden of proving its existence by a preponderance of the evidence.  See SUPP. R. G(8)(c)(ii)(B).[7]  Because Mr. Munro, Mr. Onyshko and the Postles have produced no evidence that suggests they could meet that burden at a trial or hearing, the Court granted summary judgment to the United States on their claims.  See id.

1. Standard of Review

If a claimant lacks standing or does not comply with the procedures set out in Supplemental Rule G, the United States may move, as it has here, to dispose of the claim.  SUPP. R. G(8)(c)(i)(A)-(B).  Such a motion may "be presented" in either of two ways: "as a motion for judgment on the pleadings or as a motion to determine . . . by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence."  SUPP. R. G(8)(c)(ii)(B).  In this case, since the United States has phrased its motion as a request

---

[7] The United States has characterized this standing requirement as constitutional, see Mot. at 23-26, but it is embedded in the text of Supplemental Rule G.  See SUPP. R. G(5)(a)(i) (requiring a claimant to "assert[] an interest" in the defendant property); SUPP. R. G(6) (permitting the United States to serve interrogatories regarding the claimant's "relationship to the defendant property"); SUPP. R. 8(c)(ii)(B) (allowing the United States to move for summary judgment as to "whether the claimant can carry the burden of establishing standing by a preponderance of the evidence").  The Court therefore thinks it more logical to characterize the obligation of the claimant to demonstrate a particular kind of interest in the defendant property as a statutory standing requirement rather than a constitutional one.  It does not opine on the injury that a claimant must assert in order to have Article III standing.

either for judgment on the pleadings or for summary judgment, see Mot. at 2, the Court must decide which standard of review is more appropriate for the situation at hand.

The pending motion is better framed as a request for summary judgment rather than judgment on the pleadings. The latter is permitted only "[a]fter the pleadings are closed." FED. R. CIV. P. 12(c). Since none of the individual claimants has filed an answer to the complaint, the pleadings in this case technically are not closed, making judgment based on those pleadings inappropriate. See 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1369 (3d ed. 2004). Furthermore, each of the claimants has attached materials outside the pleadings — letters, bank statements, other financial records, and affidavits — to his or her statement of claim, making review under a summary judgment standard proper. See FED. R. CIV. P. 12(d). Finally, in styling its motion in part as one for summary judgment, the United States obligated the claimants to respond by "set[ting] out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). If the claimants have failed to do so, then under a summary judgment standard, the motion of the United States should be granted. See id.

The Court therefore will grant the United States' motion only if the claimants cannot prevail under the standard of review appropriate for a summary judgment motion. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d at 895

(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007);  Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.

"[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006).  The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial.  See FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The nonmovant is required to provide evidence that would permit a reasonable jury to find in his or her favor.  Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.

2.  Analysis

As explained above, to mount a successful challenge to the United States' complaint against the defendant property, the claimants must, among other things, prove by a preponderance of the evidence that they have a cognizable interest in the assets potentially subject to forfeiture.  See United States v. Funds from Prudential Securities, 300 F. Supp. 2d at 103.  At the summary judgment stage, that means that each claimant must point to some evidence in the record that would allow a reasonable factfinder to conclude that such an interest

exists. Of the five individuals claimants discussed here, only Ms. Collazo can even arguably meet this requirement.

(a) Mr. Munro's Claim

Mr. Munro submitted a declaration in which he explains that he lost some $80,000 in a "Quantum Gold Scam" and expresses his hope that he may recover some of those funds in the pending forfeiture action. See Dkt. No. 71 (Munro Claim) at 9. The only reference to any entity affiliated with this case contained in his declaration or the attached exhibits is a credit card statement in the name of one Michael Dale that bears Eurofed's name on its letterhead. Id. at 4. Mr. Munro does not explain how or whether Eurofed, Lazarenko, or any of the assets at stake in this action relate to the scam to which he apparently fell prey. He neither alleges nor provides evidence to support an inference that he has a legal interest in any of the defendant assets.

(b) Mr. Onyshko's Claim

According to Mr. Onyshko, he is the sole shareholder of an entity called Ventura International Ltd. that deposited roughly $70,000 (Canadian) at Eurofed in 1998 "and/or 1999." Statement of Claim of Ventura International Ltd. & Mervin Michaelson Onyshko ¶ 3. By Mr. Onyshko's own admission, he "has lost his records of such deposits and the exact amount thereof" and thus cannot point to any evidence whatsoever to support his claim against the defendant assets. Id. ¶ 4. He therefore cannot demonstrate his standing to contest the pending forfeiture action.

(c)  The Postles' Claim

Alan Mark Postles and Jacqueline Postles state that they placed $105,000 in a specified account at Eurofed in 1999.  See Postles' Claim ¶ 1.  Attached to their claim letter is a second letter, this one from a Mr. Vladimir Ivanov, who thanks the Postles for opening an account at Eurofed.  See id., Ex. 1.  While the Postles may well have had an account at Eurofed, they have produced no evidence showing the amount of funds in that account or suggesting that the account remained open at the time of the bank's liquidation.  Thus, they, too, have failed to provide evidence of a cognizable interest sufficient to support statutory standing.  In light of that failure, their claim, like those of Mr. Onyshko and Mr. Munro, must be rejected.

(d)  Ms. Collazo's Claim

Ms. Collazo claims that she placed $136,914 in a specified account at Eurofed prior to its liquidation.  See Claim of Maria de Los Angeles Collazo Garcia ("Collazo Claim") ¶ 8.  She has already recovered $100,000 of that amount from the funds reserved for third-party depositors by the bank's liquidators, id. ¶ 2, but claims that the remaining $36,914 "was transferred or mixed with the asset of this case."  Id. ¶ 4.

The unnumbered exhibits attached to Ms. Collazo's statement of claim do suggest that Ms. Collazo did in fact have an account with Eurofed with a closing balance of $136,914 at the time of liquidiation.  The United States urges that even this showing is insufficient to establish a question of fact regarding Ms. Collazo's interest in the defendant assets, because the Eurofed assets at issue in this suit are those held for Lazarenko or his associates, not for other creditors of the bank.  See Mot. at 24-26.  But this argument raises potential legal questions that the Court is unprepared to answer in the absence of an opposition to the United States' motion.

14

As a result, since Ms. Collazo's claim is disposed of on other grounds in this Opinion, see *supra* at 6-9, the Court does not rule on this aspect of the United States' motion for summary judgment.

### III.  CONCLUSION

For the reasons set forth in this Opinion, the Court issued an Order on September 30, 2009, in which it granted the motion to strike the claims of Ms. Collazo, Mr. Munro, Mr. Onyshko and the Postles.  It also ordered summary judgment entered for the United States as to the claims of Mr. Munro, Mr. Onyshko and the Postles.  The individual claimants are advised that the September 30, 2009 Order, as amended by separate Order issued today, disposes of their claims in this litigation.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  October 20, 2009