UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
UNITED STATES OF AMERICA,               )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )          Civil Action No. 04-0798 (PLF)
                                        )
ALL ASSETS HELD AT                      )
BANK JULIUS BAER & COMPANY, LTD.,       )
Guernsey Branch, Account Number         )
121128, in the name of Pavlo Lazarenko  )
last valued at approximately $2 million )
in United States dollars, *et al.*,     )
                                        )
          Defendants *in rem*.          )
_____)


OPINION


          The United States, proceeding as the plaintiff in this civil forfeiture action, has

filed a motion for judgment on the pleadings against claimant OAO Gazprom ("Gazprom"). The

Court heard oral argument on the motion on May 14, 2010. Upon consideration of the parties'

arguments, the relevant authorities, and the entire record in this case, the Court concludes that

Gazprom lacks standing to challenge the proposed forfeiture.[1] The motion for judgment on the

pleadings therefore will be granted.

_____

     [1]     The papers reviewed by the Court in connection with this decision include the
following: plaintiff's amended complaint ("Am. Compl."); Gazprom's verified claim ("Gazprom
Cl."); Gazprom's amended answer to the complaint ("Am. Ans."); plaintiff's renewed motion for
judgment on the pleadings against Gazprom (Docket No. 143) ("MJP"); Gazprom's opposition to
the motion for judgment on the pleadings ("Opp."); and plaintiff's reply ("Reply").

          The Court has also reviewed its earlier substantive opinions in this case: United
States v. All Assets Held at Bank Julius Baer & Co., Ltd., 664 F. Supp. 2d 97 (D.D.C. 2009); id.,
Memorandum Opinion and Order (D.D.C. Aug. 6, 2009); id., 571 F. Supp. 2d 1 (D.D.C. 2008).

I.  BACKGROUND

The United States initiated this litigation in order to seek the forfeiture of more than $250 million scattered throughout bank accounts located in Guernsey, Antigua & Barbuda, Switzerland, Lithuania, and Liechtenstein.  Am. Compl. ¶ 1. The money in those accounts is allegedly "traceable to a series of" acts of "criminal fraud, extortion, bribery, misappropration, and money laundering"carried out by, among others, Pavlo Ivanovich Lazarenko, a Ukrainian politician who, with the aid of various associates, was "able to acquire hundreds of millions of United States dollars through a variety of acts of fraud, extortion, bribery, misappropriation and/or embezzlement" committed during the 1990s. Id. ¶ 10.  According to the United States, those illegal acts, and subsequent attempts to launder the resulting criminal proceeds, involved the transfer of large sums of U.S. dollars into and out of United States financial institutions. Id. ¶¶ 11-13.  Plaintiff, the United States, claims ownership of those sums of money pursuant to federal statutes that provide for the forfeiture to the United States government of funds traceable or otherwise related to criminal activity that occurred at least in part in the United States. See id. ¶ 1.

The funds at issue in this action allegedly derive in part from what the United States terms "the UESU energy scheme." See Am. Compl. at 16.  According to the amended complaint, Mr. Lazarenko served in 1995 and 1996 as the First Vice Prime Minister of Ukraine. Id. ¶ 35.  During that time Mr. Lazarenko "was in charge of the energy sector of the Ukrainian economy and presided over a re-organization of the natural gas importation and distribution system." Id.  He used that position to award highly lucrative energy contracts to certain companies. See id. ¶ 36.  In particular, Mr. Lazarenko conferred upon United Energy Systems of

Ukraine ("UESU"), a corporation "controlled by Lazarenko associate Yulia Tymoshenko and others," the exclusive right "to distribute natural gas to the Dnepropetrovsk region of Ukraine." Id. ¶ 36. In order to exercise that right, UESU entered into contracts to purchase natural gas from Gazprom, a large Russian energy company. Id. Pursuant to those contracts, Gazprom supplied natural gas to UESU from late 1995 through 1997. Id.

During the relevant time period, UESU was eighty-five percent owned by United Energy International, Ltd. ("UEIL"), an entity "created on October 17, 1995, at the direction of" Lazarenko associate Yulia Tymoshenko. Am. Compl. ¶ 37. UESU transferred title to the natural gas it had purchased from Gazprom to UEIL. Id. Payments from Ukrainian consumers who used that natural gas were in turn collected in bank accounts registered to UEIL. Id. In 1996, UEIL transferred some $140,000,000 from those accounts to "Somolli Enterprises, a Cypriot company that was registered in Cyprus on October 8, 1992, and was controlled by Yulia Tymoshenko and others." Id. ¶ 37. Ms. Tymoshenko and affiliated individuals in turn used Somolli Enterprises and other business entities under their control as vehicles for payments to Mr. Lazarenko of "at least $162,000,000 in 1996 and 1997." Id. ¶ 38. The United States alleges that some portion of the defendant assets in this case is traceable to those illicit payments. Id. ¶ 20.

During roughly the same time period that Ms. Tymoshenko and associates were allegedly shifting money from UESU to UEIL and ultimately to Mr. Lazarenko, UESU failed to make the payments required by its contracts with Gazprom. Am. Compl. ¶ 37. Gazprom, which does not contest the foregoing account of the UESU energy scheme, see Am. Ans. ¶¶ 36-38, claims that, as a result of the UESU energy scheme and UESU's failure to meet its contractual

obligations to Gazprom, Gazprom has an ownership interest in some of the defendant assets at issue in this forfeiture action.  See Gazprom Cl. at 5.

## II.  STANDARD OF REVIEW

In a forfeiture action brought *in rem* pursuant to a federal statute, the United States "may move to strike a claim or answer" at "any time before trial."  SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE ACTIONS [hereinafter SUPP. R.], Rule G(c)(i).  Such a challenge to a party's claim and answer "may be presented as a motion for judgment on the pleadings."  Id. G(c)(ii)(B).

Rule 12(c) of the Federal Rules of Civil Procedure states that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  The standard of review for motions for judgment on the pleadings is essentially the same as that for motions to dismiss under Rule 12(b)(6).  See Schuchart v. La Taberna Del Alabardero, Inc., 365 F.3d 33, 35 (D.C. Cir. 2004).  On either motion, the Court "must accept as true all of the factual allegations contained in the [claim]." Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The claim "is construed liberally in the [claimant's] favor, and [the Court should] grant [the claimant] the benefit of all inferences that can be derived from the facts alleged."  Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nevertheless, the Court need not accept inferences drawn by the claimant if those inferences are unsupported by facts alleged in the claim and answer, nor must the Court accept the claimant's legal conclusions.  See id.; see also Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).  As with

a motion to dismiss under Rule 12(b)(6), a court may grant judgment on the pleadings only if the facts alleged in the claim and answer do not "raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. at 555, or fail to "state a claim to relief that is plausible on its face." Id. at 570.

As with a motion to dismiss, the Court may not rely on facts "outside" the pleadings in deciding a motion for judgment on the pleadings. See Kowal v. MCI Commc'ns Corp., 16 F.3d at 1276. The Court may consider, however, documents "upon which [a party's pleading] necessarily relies," even if those documents are not physically attached to the filed pleading. Hinton v. Corrections Corp. of Am., 624 F. Supp. 2d 45, 46 (D.D.C. 2009); accord 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed. 2004). In this case, Gazprom relies in its claim and answer upon its contractual relationship with UESU, see Am. Ans. ¶ 36; id. at 29-30, and a judgment in its favor issued by the Arbitrazh Court of Moscow on May 7, 2001. See id. at 30. Gazprom attached copies of those documents to its memorandum in opposition to the plaintiff's motion for judgment on the pleadings. See Opp., Exs. G, H, M, & N. Because Gazprom relies on those documents in its pleadings and has provided copies of the documents whose authenticity is not disputed, the Court considers those documents in rendering its decision on the plaintiff's motion.

## III. APPLICABLE LAW AND THIS COURT'S JURISDICTION

The United States brings this action pursuant to 18 U.S.C. § 981, which authorizes the forfeiture of property "involved in," "derived from," or "traceable to" a variety of specified federal crimes. 18 U.S.C. § 981(a)(1). Gazprom, however, claims that United States

law is inapplicable to this proceeding because the defendant assets are located in foreign financial institutions.  See Opp. at 23-33.  According to Gazprom, to determine whether assets in, say, Antigua are subject to forfeiture, this Court must apply the forfeiture laws of Antigua.  See id. at 25.  The sole legal authorities cited by Gazprom in support of this entirely unpersuasive assertion are the set of treaties that address, among other things, the extent to which one signatory shall release property in its control to another signatory who claims that the property is subject to forfeiture.  See id. at 23-24; id., Exs. O ("Antigua and Barbuda MLAT"); P ("U.K. MLAT"); Q ("Liechtenstein MLAT"); R ("E.U. MLAT"); S ("Switzerland MLAT").  But those documents, known as Mutual Legal Assistance Treaties ("MLATs"), provide no support for Gazprom's argument.

Each of the foreign jurisdictions that is home to one or more of the financial institutions holding the defendant assets at issue in this case — Guernsey, Antigua and Barbuda, Switzerland, Lithuania, and Liechtenstein — is party to an MLAT with the United States which provides for international cooperation in forfeiture proceedings under certain circumstances.  See Opp., Exs. O-S.  Under each of those MLATs, the United States may request that the other signatory party ("the co-signatory") transfer into the United States' possession any property within the co-signatory's territory that the United States believes to be subject to forfeiture ("forfeited property").  See Antigua & Barbuda MLAT, art. 16; U.K. MLAT, art. 16; Liechtenstein MLAT, art. 17; E.U. MLAT, art. 16; Switzerland MLAT, art. 1.  With the exception of the U.S.-Switzerland MLAT, each of those documents provides that the co-signatory will "dispose" of the forfeited property "in accordance with the laws [of the co-signatory]." E.U. MLAT, art. 16, ¶ 3; see Antigua & Barbuda MLAT, art. 16, ¶ 3 (similar

6

language); U.K. MLAT, art. 16, ¶ 3 (similar language); Liechtenstein MLAT, art. 17, ¶ 3 (similar language).[2]  In other words, under the plain language of the treaties, the United States may request, say, Liechtenstein, to transfer possession of property or assets to the United States, but it is up to Liechtenstein to decide, in accordance with the laws of Liechtenstein, whether to comply with that request in a particular case.

Gazprom contends that because the MLATs applicable to Antigua, Guernsey, Lithuania, and Liechtenstein provide that each of those countries will dispose of forfeited property according to its own laws, this Court must apply the law of each of those countries in these forfeiture proceedings.  See Opp. at 23-25.  This argument is, frankly, frivolous. Obviously, as just noted, the country that has physical control over property sought by the United States will determine, by application of that country's own law, whether it will release any property to the United States upon request; the United States cannot use its own domestic law to force another country to relinquish property.  But whether the assets are subject to forfeiture in the first place and whether forfeiture orders should issue is a question of United States law.  See, e.g., United States v. All Funds in Account Nos. 747.034/278, 295 F.3d 23, 27 (D.C. Cir. 2002) (applying federal law to determine the statute of limitations applicable to a forfeiture action brought against assets in foreign bank accounts); United States v. Approx. $1.67 Million (US), 513 F.3d 991, 998-1000 (9th Cir. 2008) (applying United States law to determine whether defendant property, located in the Cayman Islands, was subject to forfeiture).

---

[2]        The U.S.-Swiss MLAT is of an entirely different form from the other MLATs and provides only that the two signatory countries will "undertake to afford each other . . . mutual assistance in . . . effecting the return to the requesting State . . . of any objects, articles or other property or assets belonging to it and obtained through [certain criminal offenses]."  Switzerland MLAT, art. 1, ¶ 1.

Similarly unavailing is Gazprom's argument that, in the interest of "international comity," this Court should decline to exercise jurisdiction over the plaintiff's claims.  See Opp. at 33-37.  "Under the international comity doctrine, courts sometimes defer to the laws or interests of a foreign country and decline to exercise jurisdiction that is otherwise properly asserted." Sarei v. Rio Tinto, PLC, 487 F.3d 1193, 1211 (9th Cir. 1997).  As a threshold matter, however, a court will abstain from exercising jurisdiction in the interests of international comity only where "'there is a true conflict between domestic and foreign law.'"  Id. (citation omitted).  Gazprom has identified no such conflict in this case.  Its sole attempt to do so is its claim that it is "'legally entitled . . . under rights bestowed by foreign law'" to some portion of any assets traceable to UESU.  Opp. at 33.  As explained further in the remainder of this Opinion, however, Russian law has not conveyed any entitlement to the defendant assets upon Gazprom.  Consequently, the United States does not frustrate any decisions of the Russian judiciary or legislature by seeking the forfeiture of the assets.[3]

As an additional preliminary objection to the Court's adjudication of this matter, Gazprom argues that the Court's exercise of jurisdiction over the defendant assets raises "significant due process concerns."  Opp. at 38.  Such concerns are easily allayed.  The Due Process Clause of the Fifth Amendment applies only to "person[s]."  U.S. Const. amend. V ("nor

---

[3]    The Court also notes that a case in which the United States is the plaintiff would seem a particularly unsuitable candidate for abstention on international comity grounds.  Where, as here, the executive branch has decided that a forfeiture action is in the interests of the United States, declining jurisdiction out of deference to the interests of a foreign nation would be inappropriate.  See Laker Airways Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909, 937 & n.104 (D.C. Cir. 1984) ("[F]oreign laws ought to be given force in domestic forums only 'so far as they do not prejudice the power or right of other governments, or of their citizens.'" (quoting JOSEPH STORY, COMMENTARIES ON THE CONFLICT OF LAWS 30, 32-33 (1834) (Arno Press ed. 1972))).

shall any person . . . be deprived of life, liberty, or property, without due process of law"). The

currency named as a defendant in this case is not a person and so lacks due process rights. See

Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 92, 95-96 (D.C. Cir. 2002)

(explaining that any entity that is not a "person" within the meaning of the Fifth Amendment has

no right to due process). To the extent that Gazprom protests that its own due process rights

have been violated — because Gazprom is being forced "to adjudicate [its] interests in a U.S.

court simply because [the defendant] funds allegedly passed 'through' a U.S. bank at some point

in time," Opp. at 39 — the Court is not convinced by Gazprom's conclusory argument, which

fails to cite any legal authority for the proposition that an intervenor in a forfeiture action has

some amorphous due process right to bring its claims in a convenient forum.

Gazprom raises one last objection to this Court's jurisdiction on the ground that

there is "a real possibility that any decision by this Court will be an impermissible advisory

opinion or will fail the redressability requirement of Article III" because the defendant assets are

under the control of foreign nations that may not be willing to release them to the United States.

Opp. at 39. The court of appeals has previously rejected this type of objection to a court's

exercise of jurisdiction in a forfeiture action, stating:

> It may well be that a forfeiture order of a United States court will
> not have its full effect until the res — the money — is brought
> within the territory of the United States. [The foreign nation in
> possession of the res] may be expected to live up to its treaty
> obligations, even if it would not otherwise be required to effectuate
> the judgments of United States courts. But [that foreign nation's]
> compliance and cooperation determines only the effectiveness of
> the forfeiture orders of the district courts, not their jurisdiction to
> issue those orders.

United States v. All Funds in Account Nos. 747.034/278, 295 F.3d at 27 (citation omitted).

Consequently, the Court accords no weight to this argument. Despite all of Gazprom's

arguments to the contrary, the Court has the authority and the obligation to exercise jurisdiction

in this case, and the controlling substantive law is that of the United States.

## IV. STANDING IN CIVIL FORFEITURE ACTIONS

Civil forfeiture proceedings such as this one are governed by 18 U.S.C. § 983 and

Supplemental Rule G of the Federal Rules of Civil Procedure. See 18 U.S.C. § 1983 (titled

"General Rules for Civil Forfeiture Proceedings"); Supp. R. Fed. Civ. P. [hereinafter "Supp. R."]

G(1) ("This rule governs a forfeiture action in rem arising from a federal statute."). Both the

statute and the rule require that a claimant in a forfeiture action in rem "assert[] an interest" in

"specific property" that is named as a defendant asset. 18 U.S.C. § 983(a)(2)(C); Supp. R.

G(5)(i). Without such an interest, the claimant lacks standing to challenge the forfeiture. See

SUPP. R. G(8)(c)(i)(B); United States v. Funds from Prudential Securities, 300 F. Supp. 2d 99,

103 (D.D.C. 2004) (referring to Supplemental Rule C(6), the predecessor of Supplemental Rules

G(5) and G(6)); John K. Rabiej, Supplemental Rule G Governing Pretrial Procedures in

Forfeiture in Rem Actions, PRAC. LITIG., May 2008, at 47, 55. "The extent of the interest in the

defendant property sufficient to meet this standing requirement is left to case law." Rabiej,

supra, at 55; see also United States v. Funds from Prudential Securities, 300 F. Supp. 2d at 103

(claimant must "demonstrat[e] an interest . . . sufficient to satisfy the court of his standing"). [4]

---

[4] Most courts have characterized the rule that a claimant must have an "interest" in specific defendant property as a standing requirement arising from Article III of the Constitution. See, e.g., United States v. One-Sixth Share of James Bulger, 326 F.3d 34, 40 (1st Cir. 2003); United States v. One Lincoln Navigator, 328 F.3d 1011, 1013 (8th Cir. 2003); United States v.

10

In the preliminary stages of a forfeiture action, a claimant must establish standing by pleading "a colorable interest in the property, for example, by [alleging] actual possession, control, title, or financial stake." United States v. 475 Martin Lane, 545 F.3d 1134, 1140 (9th Cir. 2008) (citation and internal quotation marks omitted); see also United States v. $148,840 in U.S. Currency, 521 F.3d 1268, 1275 (10th Cir. 2008); United States v. One Lincoln Navigator, 328 F.3d 1011, 1013 (8th Cir. 2003). While a variety of types of property interests in defendant assets thus may confer standing upon a claimant, "[t]he federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property." United States v. One-Sixth Share, 326 F.3d 36, 41 (1st Cir. 2003) (citing United States v. $20,193.39, 16 F.3d 344, 346 (9th Cir. 1994)); see also United States v. BCCI Holdings (Luxembourg), S.A., 46 F.3d 1185, 1191 (D.C. Cir. 1995) (holding, in a forfeiture action brought pursuant to 18 U.S.C. §§ 1961-1968, that "a general creditor can never have an interest in specific forfeited property"). The nature of a claimant's asserted property interest in defendant assets is "defined by the law of the State" — or here, nation — "in which the interest arose." United States v. One Lincoln Navigator, 328 F.3d at 1013; see United States v. $100,348 U.S. Currency, 354 F.3d 1110, 1119 (9th Cir. 2004); United States v. One-Sixth Share, 326 F.3d at 45.

_____

475 Martin Lane, 545 F.3d 1134, 1140 (9th Cir. 2004). There is some suggestion, however, that the standing requirements imposed on a claimant in a forfeiture action are statutory or prudential, not constitutional, in nature. See United States v. $557,933.89, More or Less, 287 F.3d 66, 78 n.9 (Sotomayor, J.) ("[I]t might very well be argued that, at least as far as Article III — as opposed to statutory — standing goes, the claimant bears no burden at all, as it is really the government which is invoking the power of the federal courts to effect the forfeiture."). Because the source of the standing requirement has no effect on the outcome of Gazprom's claim, the Court does not address further whether that requirement is more properly considered statutory, prudential, or constitutional.

Gazprom contends that it has an "ownership interest" in some of the defendant assets under one or more of several legal theories. Opp. at 44; see id. at 44-49. Those theories may be classified into two categories. The first category includes Gazprom's various arguments to the effect that either United States or Russian law confers upon Gazprom a cognizable legal interest in specific defendant assets because UESU breached its contract with Gazprom at around the same time that it paid large kickbacks to Mr. Lazarenko in 1996 and/or 1997. See id. at 44-46, 47-49. In the second category are Gazprom's attempts to demonstrate that a 2001 Russian judgment obtained by Gazprom subsidiary OOO Gaskomplektimpex against UESU gave Gazprom a secured interest in $65 million worth of the defendant assets. See id. at 46-47. Neither category of arguments is persuasive.

*A. Interests Allegedly Created Directly by the Breach of Contract and Payment of Kickbacks to Mr. Lazarenko*

Because this is an action *in rem*, Gazprom must show that it has a property or ownership interest in the funds in the accounts that are the subject of this case. See 18 U.S.C. § 983(a)(2)(C), d(6)(A); Supp. R. G(5)(i). According to Gazprom, it has such an interest because UESU paid kickbacks to Pavlo Lazarenko in 1996 "rather than pay[ing] RAO Gazprom" as contractually required. See Am. Compl. ¶ 37. Gazprom says that as a result it is a "fraud victim" of Mr. Lazarenko and/or UESU and acquired an "ownership interest" in the money paid to Mr. Lazarenko as part of the UESU energy scheme. Opp. at 44-45. No authority cited by Gazprom actually supports this gloss on the legal implications of the facts alleged in the pleadings.

Both Gazprom and the United States appear to agree that Russian law controls whether any property or ownership interest in the defendant assets was created in Gazprom as a

result of the UESU energy scheme.  <u>See</u> Opp. at 44;  Reply at 8-10.[5]  In support of its claim that

it is a "fraud victim" under Russian law and that it has a property interest in defendant assets

because those assets were paid to Mr. Lazarenko instead of to Gazprom, Gazprom cites no legal

authority other than two provisions of the Russian Civil Code:

> 1.  A person who without grounds established by a law, other legal
> acts, or transaction acquired or saved property (acquirer) at the
> expense of another person (victim) shall be obliged to return to the
> last property unfoundedly acquired or saved (unfounded
> enrichment) . . . .
>
> 2.  The Rules provided for by the present Chapter shall be applied
> irrespective of whether the unfounded enrichment is a result of the
> behavior of the acquirer of the property, the victim himself, third
> persons, or occurred outside their will.

Civil Code (Butler), art. 1102 (quoted in Opp. at 45).  Presumably, Gazprom means to suggest

that Mr. Lazarenko "acquired" the payments made to him by UESU "at the expense" of Gazprom

because UESU could have used those payments to meet its contractual obligations to Gazprom,

but did not.  Mr. Lazarenko therefore, according to Gazprom, is "obligated to return" those

payments to Gazprom.

---

[5]  "In determining foreign law, the court may consider any relevant material or source, . . . whether or not submitted by a  party. . . . The court's determination must be treated as a ruling on  a question of law."  FED. R. CIV. P. 44.1.   The Court relies upon three different translations of the Russian Civil Code (Grazhdanskii Kodeks Rossiiskoi Federatsii) in order to ascertain the meaning of various code provisions.  First, Gazprom has relied upon the translation of the Code appearing in *William E. Butler, Civil Code of the Russian Federation* (2002), which the Court will call "Civil Code (Butler)" in future references.  Second, the Court has consulted the version of the Code published and updated regularly by Garant-Service of Moscow State University; that document is available on Lexis, citation GARANT 5081586 ("Civil Code (Garant)").  Finally, the Court has reviewed the translation of legislation forming the basis of the Code in *W.E. Butler, Russian Company and Commercial Legislation* (2003) ("Commercial Legislation (Butler)").

The flaws in this attempt to wring a property interest out of Russian law as applied to the facts alleged are numerous. At the time that UESU arranged for payments to be made to Mr. Lazarenko, Gazprom had no claim to or property interest in the money used to make those payments — even if that money came from consumers paying UESU for their use of natural gas originally supplied by Gazprom. Gazprom had a claim against UESU for the amount of money specified in the contract between those two entities; the contract did not specify that Gazprom had a claim to any *particular* money or fund of money, such as the money paid by consumers for natural gas. See Opp., Ex. G at 4 (contract for the provision of natural gas to UESU by Gazprom in 1996 in exchange for "a monetary amount equivalent to U.S. $541.44 million"); id., Ex. H at 4 (contract for the provision of natural gas to UESU by Gazprom in 1997 in exchange for "an amount equivalent to US$ 639,683.0 thousand, in cash"). Furthermore, Gazprom nowhere contends that the funds transferred from UESU to Mr. Lazarenko were the only financial resources with which UESU could have paid its contractual debt to Gazprom.[6] As a result, when Mr. Lazarenko accepted the kickbacks paid to him by UESU via various shell

---

[6] This point marks an important distinction between the arguments advanced by Gazprom and those of UTICo, another claimant in this action whose claims are addressed in another Opinion issued this same day. Unlike UTICo, which contends that shifting of money from UESU to Mr. Lazarenko was a fraudulent transfer intended to deprive UESU of the resources to pay creditors, see United States v. All Assets Held at Bank Julius Baer & Co., Ltd., Civil Action No. 04-0798, Opinion Dismissing Claim of Universal Trading & Investment, Co., Inc., at 4-5 (D.D.C. Mar. 25, 2011), Gazprom's fraud claims are based on the idea that Gazprom was entitled to the particular money paid to UESU by natural gas consumers, and that Mr. Lazarenko wrongfully diverted that money from Gazprom. See Opp. at 44-45 ("Lazarenko stole funds that should have been paid to Gazprom for the gas supplied; Gazprom's binding agreements for the relevant time period created an ownership interest in the payments under Russian law.").

corporations, he did not do so "at the expense of" Gazprom, and he could not be obligated to "return" *that* money to Gazprom, which never owned the money in the first place.

Furthermore, the sequence of events which gave rise to any loss suffered by Gazprom — the provision of natural gas by Gazprom to UESU, and the failure of UESU to meet its contractual obligations to make prompt payments — did not occur "without grounds established by a law, other legal acts, or transaction"; the transaction was provided for by contract, meaning that Gazprom had remedies for its asserted losses arising from Russian contract law, which is extensive. See Civil Code (Garant), ch. 21 ("The Concept and Aspects of an Obligation"); id. art. 393 ("The debtor shall be obliged to recompense to the creditor the losses, caused to him by the non-discharge or by an improper discharge of the obligations."). Because Gazprom experienced a loss resulting from the breach of a contract, Article 1102 of the Civil Code, governing unjust enrichment claims, is inapplicable. Cf. Overview of Handling Disputes Associated with Application of the Norms on Unjust Enrichment §§ 1 & 4, Information Letter of the Presidium of the Supreme Arbitration Court of the Russian Federation, No. 49 (Jan. 11, 2000), *available at* GARANT 12018081 (Lexis) (Article 1102 may be invoked to prevent unjust enrichment where a contract has been rescinded after partial performance (no contract exists), or where a transaction between parties is not addressed by the terms of an existing contract (contract exists but is inapplicable)).[7]

_____

[7] It appears that Russian law in this regard thus mirrors United States law: Where a party's alleged damages arise from the breach of a valid contract, that party cannot recover on a claim for unjust enrichment. 26 RICHARD A. LORD, WILLISTON ON CONTRACTS § 68:5 (4th ed. 2010) ("Where the plaintiff has *no alternative right on an enforceable contract*, the basis of the plaintiff's recovery is the unjust enrichment of the defendant." (emphasis added)); see also In re Rail Freight Fuel Surcharge Antitrust Litigation, 593 F. Supp. 2d 29, 36 (D.D.C. 2008) (unjust enrichment claim is a plea for an "extra-contractual" remedy). Because UESU and Gazprom

15

*B. Asserted Pledge Right to Defendant Assets*

In a surreply to the United States' motion for judgment on the pleadings, Gazprom argues for the first time that it has a secured interest in some of the defendant assets under Russian contract law.  See Surreply at 2-6.  Specifically, Gazprom cites the following provision of the Russian Civil Code concerning "payment for goods sold on credit":

> Unless otherwise stipulated by the contract of sale, the goods sold on credit from the time of their transfer to the buyer and to their payment shall be recognized as held in pledge by the seller for the guaranteed execution by the buyer of his duty to make payment for the goods.

Civil Code (Butler), art. 488, ¶ 5 (quoted in Surreply at 3).  The right of pledge "is a means of securing obligations under which the creditor-pledgeholder acquires the right in the event of the failure of the debtor to perform the obligation to receive satisfaction at the expense of the pledge property preferentially before other creditors, with the exceptions provided for by law."  Law of the Russian Federation on Pledge, Law No. 2872-1, No. 23, Item 1151 (1992), as amended by Federal Law No. 102-FZ, No. 29, Item 3400 (1998) (codified as amended at Civil Code, art. 334, ¶ 1), *translated in* Commercial Legislation (Butler) [hereinafter "Law of RF on Pledge"].  The holder of a pledge right in particular property thus has an interest similar to a secured interest under United States law.

As an initial matter, the Court notes that Gazprom's arguments concerning pledge rights were first made in a surreply and therefore were waived.  See Marbury Law Group, PLLC v. Carl, 729 F. Supp. 2d 78, 82 (D.D.C. 2010) ("[A] surreply is limited to addressing only new

---

were parties to contracts whose enforceability is not in dispute, Gazprom can have no unjust or unfounded enrichment claim.  Gazprom's rights are under the contract.

arguments raised for the first time by the opposing party in [its] reply briefing.").  Even if those arguments had been timely raised, however, they would be of no help to Gazprom, for the simple reason that Gazprom cannot point to any provision of Russian law that conveyed upon Gazprom a pledge right in the natural gas proceeds that were allegedly transferred from UESU to Mr. Lazarenko.  Article 488 of the Civil Code, upon which Gazprom relies, would at most confer upon Gazprom a secured interest in the "goods sold on credit" to UESU — that is, the natural gas itself, not the money that consumers paid for it.

Contrary to Gazprom's arguments, any pledge right that Gazprom might once have held in the natural gas conveyed to UESU could not be the source of a secured interest in subsequent consumer payments.  Gazprom attempts to prove otherwise by relying on the following provision of the Civil Code:

> The rights of the pledgeholder (right of pledge) to a thing which is the subject of pledge shall extend to its appurtenances unless provided otherwise by contract.  The right of pledge shall extend to fruits, products, and revenues received as a result of the use of the pledge property in the instances provided for by contract.

Civil Code (Butler), art. 340, ¶ 1 (quoted in Surreply at 5).  Gazprom suggests that the second sentence of this provision means that whenever pledged property is used to generate income in a manner "contemplated by" the underlying contract, the pledge right extends to that income. Surreply at 5.  The Court disagrees.  The more logical reading of the second sentence is as follows:  "In the instances provided for by contract, the right of pledge shall extend to fruits, products, and revenues received as a result of the use of the pledge property."  In other words, where the underlying contract specifies that the right of pledge will extend to income generated by use of pledged property, Russian law will give effect to that contractual provision.  By default,

however, in the absence of such a provision in the contract, the right of pledge does not extend to income.

A review of alternative translations of the Code provision at issue confirms that the Court's reading of the Code is correct. See Civil Code (Garant), art. 340, ¶ 1 ("To the fruits, products and incomes, obtained as a result of the use of the pledge property, *the right of pledge shall be extended in the law-stipulated cases*." (emphasis added)); Law of RF on Pledge, art. 6, ¶ 2 ("[T]he right of pledge to a thing may include separable fruits . . . only in the instances, within the limits, and in the procedure provided by law or contract."). Gazprom's contracts with UESU did not provide that Gazprom had any interest in income realized upon the sale of the natural gas, see Opp., Exs. G-H, and Gazprom has identified no provision of Russian law that did so. As a result, Gazprom does not now and has never held a pledge right to the money in question.

### C. Constructive Trust

Gazprom suggests that if this Court determines that the company has no property interest in the defendant assets under Russian law, United States law should be applied to define Gazprom as the beneficiary of a constructive trust over some of the defendants *in rem*. See Opp. at 47. The Court rejects that suggestion. First, "U.S. law" does not create constructive trusts; such remedies are imposed under state, not federal, law. See, e.g., United States v. Ramunno, 599 F.3d 1269, 1274 (11th Cir. 2010) (characterizing "the requirements of a constructive trust" as a "state law question"). Furthermore, Gazprom cites no authority suggesting that either federal or state law defines its ownership interests in this case. Finally, as discussed more fully in this Court's Opinion dismissing the claim of Universal Trading & Investment Co., Inc., from

18

this case, see United States v. All Assets Held at Bank Julius Baer & Co., Ltd., Civil Action No. 04-0798, Opinion Dismissing Claim of Universal Trading & Investment Co., Inc., at 14-16 (D.D.C. Mar. 25, 2011), the legal fiction of a constructive trust may not be asserted to defeat the claims of the United States to forfeitable property. See United States v. BCCI Holdings (Luxembourg), S.A., 46 F.3d 1185, 1190-91 (D.C. Cir. 1995).

Gazprom argues for the imposition of a constructive trust on the ground that Mr. Lazarenko allegedly "siphoned" Gazprom's assets, thereby becoming unjustly enriched. See Opp. at 48.[8] Such a claim would be assessed under the law of the jurisdiction "which, with respect to that issue, has the most significant relationship to the occurrence and the parties." Restatement (Second) of Conflict of Laws § 145 (1971); see United States v. One Silicon Valley Bank Account, 549 F. Supp. 2d 940, 953-54 (W.D. Mich. 2008) (in a civil forfeiture action, applying the Restatement to determine which state's law should be applied to constructive trust claim); see also Drs. Groover, Christie & Merritt, P.C. v. Burke, 917 A.2d 1110, 1117 (D.C. 2007) (to determine law applicable to tort claims, courts in District of Columbia conduct a "'governmental interest'" analysis which includes analyzing the factors identified by Section 145 of the Restatement) . The fraud allegedly perpetrated by Mr. Lazarenko, a Ukrainian citizen, related to a transaction conducted between a Russian company and a Ukrainian company entirely outside of the United States. That transaction concerned the delivery of Russian natural gas for

---

[8]     The factual predicate for Gazprom's constructive trust claims is precisely the same as the one that underlies the company's claims to be a "fraud victim" under Russian law: Mr. Lazarenko committed "theft" of Gazprom's assets by receiving money from UESU at around the same time that UESU breached its contract with Gazprom. See Opp. at 48. Whether Mr. Lazarenko's actions actually constitute "theft," fraud or unjust enrichment under United States law is irrelevant, as U.S. law is not applicable to the dispute existing solely between and among Mr. Lazarenko, UESU, and Gazprom.

sale in Ukraine. Under no conceivable analysis would the United States be considered the

jurisdiction with "the most significant relationship" to the alleged fraud and the involved parties,

and so no constructive trust could be imposed as a result of the claimed fraud under United States

law. If neither Ukrainian nor Russian law created a constructive trust over some portion of the

defendant assets for Gazprom's benefit — and Gazprom cites no authority suggesting that it did

— then Gazprom is simply not the beneficiary of any constructive trust.[9]

## VI.  JUDGMENT OF THE ARBITRAZH COURT OF MOSCOW[10]

In 2001, the Russian Arbitrazh Court issued a judgment in which it ordered that

Gazprom subsidiary Gaskomplektimpex had the right to recover $65,401,331.77 from UESU.

See Opp., Ex. M at 3. According to that court, Gaskomplektimpex was entitled to the money in

question because UESU had breached its contractual obligations. Under a contract signed by

UESU and Gazprom on December 31, 1996, Gazprom was to supply a specified amount of

natural gas to UESU. Id. at 2-3; see Opp., Ex. H (Gazprom-UESU contract). In return, UESU

agreed that it would "deliver material and technical resources" worth more than $600 million to

Gaskomplektimpex. Opp., Ex. M. at 3. UESU failed to deliver the full amount of "material and

technical resources" owed to Gaskomplektimpex. Id. Consequently, the Arbitrazh Court ruled

---

[9]    It may be, as the United States suggests, that the reason Gazprom cites no such authority is that "there is no such thing as a constructive trust in Russian jurisprudence." Reply at 8.

[10]    The Arbitrazh court system consists of city or regional trial-level courts throughout the Russian Federation, as well as appellate circuit courts and the Supreme Arbitrazh Court. The Arbitrazh trial courts hear cases involving business disputes, banking, tax, bankruptcy, and corporate governance. Such cases may arise from disputes between business entities or between business entities and the state.

that UESU was liable to Gaskomplektimpex in an amount equal to the value of the resources owed but not supplied — $65,401,331.77. Id.

Gazprom now contends that because the Russian court issued a judgment against UESU for roughly $65 million, Gazprom has a secured interest in $65 million of the defendant assets. See Opp. at 46-47; Am. Ans. at 30. The logic of this position is not apparent. Even assuming Gazprom has standing to assert the claims of its subsidiary, the judgment of the Russian court is plainly expressed as an award assessed against UESU, not against particular assets. In other words, it is an *in personam* judgment that does not create any interest in particular property of the defendant. Gazprom suggests that a secured interest in particular assets arose because under Russian law, "'[t]he right of ownership in property on which execution is levied shall terminate in the owner from the moment that the right of ownership arises in the withdrawn property in the person to whom this property passes.'" Civil Code art. 237 (quoted by Opp. at 47). But that provision of the Civil Code is inapplicable on its face to Gazprom's situation. The sole basis for Gazprom's suggestion that "execution" has been "levied" by Gazprom or Gaskomplektimpex against the defendant assets is the Russian judgment — but nothing in the form or content of that judgment indicates that Gazprom or Gaskomplektimpex has any interest in particular assets of UESU. As a result, the decision of the Arbitrazh Court did not create in Gazprom a cognizable interest in any specific property of UESU, and it certainly did not create such an interest in the assets that are named as defendants in this case.

## VII.  CONCLUSION

For the foregoing reasons, the Court concludes that Gazprom lacks standing to participate in this forfeiture action because it has no cognizable interest in the defendant property. The motion of the United States for judgment on the pleadings against Gazprom therefore will be granted.  An Order consistent with this Opinion will issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:   March 25, 2011