UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                )
UNITED STATES OF AMERICA,                        )
                                                )
            Plaintiff,                           )
                                                )
      v.                                         )        Civil Action No. 04-0798 (PLF)
                                                )
ALL ASSETS HELD AT                               )
BANK JULIUS BAER & COMPANY, LTD.,                )
Guernsey Branch, Account Number                  )
121128, in the name of Pavlo Lazarenko          )
last valued at approximately $2 million          )
in United States dollars, *et al.*,              )
                                                )
            Defendants *in rem*.                 )
_____          )


OPINION

      On March 1, 2010, the United States, acting as plaintiff in this civil forfeiture

action, moved for judgment on the pleadings against Universal Trading & Investment Company,

Inc. ("UTICo"), which claims an interest in the assets named as defendants in the complaint.

UTICO quickly moved on March 24, 2010, for leave to file an amended claim and answer, a

motion that, if granted, would render moot the plaintiff's motion for judgment on the pleadings.

The Court heard oral argument on the motion to amend and related matters on May 14, 2010.

      After the hearing, UTICo filed a barrage of additional related motions in which it

requested (1) permission to "supplement evidence" to be considered in connection with the

plaintiff's motion for judgment on the pleadings; (2) a round of briefing by the parties addressing

the law of Guernsey; (3) judicial notice of various documents; and (4) leave to file a surreply

regarding the motion for judgment on the pleadings. Upon consideration of the parties'

arguments, the relevant legal authorities, and the entire extensive record in this matter, the Court will deny UTICo's various motions and grant the plaintiff's motion for judgment on the pleadings against UTICo.[1]

## I. BACKGROUND

### A. Nature of the Forfeiture Action

The United States initiated this litigation in order to seek the forfeiture of more than $250 million scattered throughout bank accounts located in Guernsey, Antigua and

---

[1]     The documents reviewed by the Court in resolving the pending motions include the following: plaintiff's amended complaint ("Am. Compl."); UTICo's first amended claim ("1st Am. Cl."); UTICo's first amended answer ("1st Am. Ans."); plaintiff's Renewed Motion for Judgment on the Pleadings Against Universal Trading & Investment Company ("MJP"); UTICo's opposition to the plaintiff's motion ("MJP Opp."); the plaintiff's reply to UTICo's opposition ("MJP Reply"); UTICo's Motion for Leave to File Its Amended and Supplemental Claim and Answer ("Mot. Am."); the plaintiff's opposition to UTICo's motion ("Am. Opp."); UTICo's reply to plaintiff's opposition ("Am. Reply"); plaintiff's surreply in response to UTICo's reply ("Am. Surreply"); UTICo's proposed second amended complaint, attached to Mot. Am. ("Prop. 2d Am. Cl."); UTICo's proposed second amended answer, attached to Mot. Am. ("Prop. 2d Am. Ans."); UTICo's Motion to Supplement Evidence in Support of Its Motion for Leave to File Amended and Supplemental Claim and Answer ("Mot. Supp."); UTICo's Motion for Order to Schedule Rule 44.1 Briefing for Determination of Foreign Law ("Foreign Law Mot."); UTICo's Request for Judicial Notice ("JN Mot."); and UTICo's motion to file a surreply in response to MJP Reply ("Surreply Mot.").

The Court has also reviewed its earlier substantive opinions in this case: United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 664 F. Supp. 2d 97 (D.D.C. 2009); id., Memorandum Opinion and Order (D.D.C. Aug. 6, 2009); id., 571 F. Supp. 2d 1 (D.D.C. 2008).

Finally, the Court notes that, after the hearing held in May, UTICo submitted several notices purporting to identify "new authority" applicable to its claims. The Court has reviewed the "new" authorities identified by UTICo, but finds that they do not stand for the propositions that UTICo claims they do. The Court has reviewed a wide range of judicial opinions, including many that were only recently issued, in considering the matters discussed in this Opinion, and is satisfied that the decisions announced herein are consistent with the law of this circuit.

Barbuda, Switzerland, Lithuania, and Liechtenstein. Am. Compl. ¶ 1. The money in those accounts is allegedly "traceable to a series of" acts of "criminal fraud, extortion, bribery, misappropriation, and money laundering" carried out by, among others, Pavlo Ivanovich Lazarenko, a Ukrainian politician who, with the aid of various associates, was "able to acquire hundreds of millions of United States dollars through a variety of acts of fraud, extortion, bribery, misappropriation and/or embezzlement" committed during the 1990s. Id. ¶ 10. According to the United States, those illegal acts, and subsequent attempts to launder the resulting criminal proceeds, involved the transfer of large sums of U.S. dollars into and out of United States financial institutions. Id. ¶¶ 11-13. The plaintiff seeks to claim ownership of those sums of money pursuant to federal statutes that provide for the forfeiture to the United States government of funds traceable or otherwise related to criminal activity that occurred at least in part in the United States. See id. ¶ 1.

The funds at issue in this action allegedly derive in part from what the United States terms "the UESU energy scheme." See Am. Compl. at 16. According to the amended complaint, Mr. Lazarenko served in 1995 and 1996 as the First Vice Prime Minister of Ukraine. Id. ¶ 35. During that time Mr. Lazarenko "was in charge of the energy sector of the Ukrainian economy and presided over a re-organization of the natural gas importation and distribution system." Id. He used that position to award highly lucrative energy contracts to certain companies. See id. ¶ 36. In particular, Mr. Lazarenko conferred upon United Energy Systems of Ukraine ("UESU"), a corporation "controlled by Lazarenko associate Yulia Tymoshenko and others," the exclusive right "to distribute natural gas to the Dnepropetrovsk region of Ukraine." Id. ¶ 36. In return for his patronage, Mr. Lazarenko and affiliated individuals and entities

received large sums of money from UESU.  Id. ¶¶ 36-38.  Because large portions of that
unlawfully obtained money were allegedly laundered through United States financial institutions
on their way to Mr. Lazarenko and his associates, the United States asserts that those assets are
subject to forfeiture.  See id. ¶¶ 39, 123, 128,134, 139, 143, 147, 151, 155.

### B.  Allegations of UTICo's First Amended Claim and Answer

UTICo has intervened in this action to assert and defend a claimed interest in
some of the defendant assets allegedly paid to Mr. Lazarenko and associates by UESU.  See 1st
Am. Cl. ¶¶ 14-20.  In support of its claim, UTICo alleges the following: In 1994 UTICo, a
Massachusetts corporation "engage[d] in domestic and international business and consulting," id.
¶ 2, entered into a contract with Cube Ltd., the "corporate predecessor" of UESU.  Id. ¶ 14.  In
1997, UESU filed a lawsuit against UTICo in Massachusetts federal district court.  Id. ¶ 15.
UTICo filed counterclaims against UESU and, in 2005, after UESU stopped participating in the
litigation, received a default judgment against UESU ("the UESU judgment") in the amount of
$18,344,480.  Id. ¶ 17.

UTICo further alleges that it has never been able to collect on its 2005 judgment
against UESU, at least in part because Mr. Lazarenko, "who secretly held a 50% interest" in
UESU, conspired with other UESU principals "to dissipate UESU's assets and to defraud
creditors."  1st Am. Cl. ¶ 15.  In particular, a large amount of UESU's assets, including some of
the assets named as defendants in this forfeiture action,  "were converted by or placed under
control of Lazarenko" in the late 1990s in order to "avoid[] creditors."  Id. ¶ 19; see id. ¶¶ 26-74
(detailing the movement of alleged "UESU proceeds" into and out of various accounts from 1996

through 1998). More than $100 million in money deriving from UESU is currently being held

for Mr. Lazarenko's benefit at Credit Suisse (Guernsey), in an account opened in the name of

"Samante as Trustees for the Balford Trust" ("the Balford Trust account"). Id. ¶ 40-41. The

contents of that account are named as defendants *in rem* by the United States' complaint in this

matter. See Am. Compl. ¶ 5(b). UESU itself is currently "inoperative." 1st Am. Cl. ¶ 18.

In 2008, UTICo registered the UESU judgment granted by the Massachusetts

federal district court by filing a certified copy of it in this Court pursuant to 28 U.S.C. § 1963.

1st Am. Cl. ¶ 1.

### C. Allegations of Proposed Second Amended Claim and Answer

The United States has twice filed motions for judgment on the pleadings against

UTICo. The first motion, filed on December 9, 2008, was directed at the claim and answer

originally submitted by UTICo on October 11, 2005, and was rendered moot when the Court

allowed UTICo to file an amended claim and answer on August 17, 2009. After the United

States again moved for judgment on the pleadings on March 1, 2010, UTICo sought leave to file

a second set of amended pleadings. The second amended claim and answer that UTICo now

proposes to file differ from the first set of amended pleadings mainly in that the newer pleadings

recount actions allegedly taken by UTICo after March 1, 2010 — after the filing of the United

States' second motion for judgment on the pleadings against UTICo, and long after the initiation

of this litigation.

According to the second set of amended pleadings that UTICo seeks to file, after

registering the UESU judgment in this Court in 2008, UTICo also filed that judgment in the

Superior Court of the District of Columbia, seeking to "g[i]ve that judgment the force and effect of a local judgment." Prop. 2d Am. Cl. ¶ 3. Upon application by UTICo, the Superior Court issued on March 17, 2010, a writ of attachment "directed at garnishee Credit Suisse AG Bank," allegedly the same entity as or the parent entity of Credit Suisse (Guernsey), the financial institution in Guernsey that holds an account in the name of the Balford Trust whose contents are named as defendants *in rem* in this litigation. Id. ¶ 4. The writ of attachment, which purported to attach the contents of the Balford Trust account, was served "on the authorized officer of the Credit Suisse AG bank in Washington, D.C." on March 19, 2010. Id. ¶ 6.

On March 18, 2010, UTICo recorded the UESU judgment by filing a certified copy of it with the Recorder's Office for the District of Columbia. Prop. 2d Am. Cl. ¶ 9.

## D. Subsequent Allegations

Since submitting its motion for leave to file a second amended claim and answer, UTICo has filed a flurry of additional motions, some seeking, on the pretense of requesting other relief, to supplement UTICo's pleadings — that is, to amend further its proposed second set of amended pleadings — with further factual allegations concerning actions taken by UTICo after March 24, 2010. UTICo's Motion to Supplement Evidence in Support of Its Motion for Leave to File Amended and Supplemental Claim and Answer, filed on May 25, 2010, alleges that in April and May of 2010, UTICo submitted in the District of Columbia, Massachusetts, Texas, and Connecticut a "National UCC-1 Form" claiming a security interest in the Balford Trust account based on the UESU judgment. See Mot. Supp. at 2-3. In a motion entitled "Request for Judicial Notice of Governmental Public Records," filed on June 28, 2010, UTICo repeats its allegations

concerning the UCC-1 forms filed in the District of Columbia, Massachusetts, Texas, and Connecticut, and further alleges that in late May and June of 2010, it filed similar UCC-1 forms in Georgia, Alabama, and Florida.  JN Mot. at 1-2.

### E.  Other Motions

In addition to its so-called motions to "supplement evidence" and for judicial notice, UTICo has responded to the plaintiff's motion for judgment on the pleadings by filing a Motion for Order to Schedule Rule 44.1 Briefing for Determination of Foreign Law.  The "foreign law" in question is that of Guernsey — a set of islands in the English Channel, a British Crown Dependency, and the location of the financial institution holding the Balford Trust account.

UTICo has also moved for leave to file a surreply in response to the plaintiff's reply in support of its motion for judgment on the pleadings.

## II.  STANDARD OF REVIEW

### A.  Motion for Judgment on the Pleadings

In a forfeiture action brought *in rem* pursuant to a federal statute, the United States "may move to strike a claim or answer" at "any time before trial."  SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE ACTIONS [hereinafter SUPP. R.], Rule G(c)(i).  Such a challenge to a party's claim and answer "may be presented as a motion for judgment on the pleadings."  Id. G(c)(ii)(B).

Rule 12(c) of the Federal Rules of Civil Procedure states that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on

the pleadings." FED. R. CIV. P. 12(c).  The standard of review for motions for judgment on the

pleadings is essentially the same as that for motions to dismiss under Rule 12(b)(6).  See

Schuchart v. La Taberna Del Alabardero, Inc., 365 F.3d 33, 35 (D.C. Cir. 2004).  On either

motion, the Court "must accept as true all of the factual allegations contained in the [claim]."

Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 555 (2007).  The claim "is construed liberally in the [claimant's] favor, and [the Court

should] grant [the claimant] the benefit of all inferences that can be derived from the facts

alleged." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nevertheless,

the Court need not accept inferences drawn by the claimant if those inferences are unsupported

by facts alleged in the claim and answer, nor must the Court accept the claimant's legal

conclusions.  See id.; see also Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).  As with

a motion to dismiss under Rule 12(b)(6), a court may grant judgment on the pleadings only if the

facts alleged in the claim and answer do not "raise a right to relief above the speculative level,"

Bell Atlantic Corp. v. Twombly, 550 U.S. at 555, or fail to "state a claim to relief that is

plausible on its face." Id. at 570.

      As with a motion to dismiss, the Court generally may not rely on facts "outside"

the pleadings in deciding a motion for judgment on the pleadings, but it may consider "matters

incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters

of public record."  5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE &

PROCEDURE § 1357 (3d ed. 2004).  The Court notes that UTICo has attached to its motion papers

numerous materials that may not be considered on a motion for judgment on the pleadings.  See,

e.g., MJP Opp., Exs. 1, 2. Those materials therefore were excluded from the Court's consideration of the plaintiff's motion.

## B. Motion for Leave to File Amended Pleadings

As already noted, UTICo has moved for leave to file a second amended claim and answer. The Court will "freely give leave [to amend a pleading] when justice so requires," FED. R. CIV. P. 15(a)(2), and "'[i]t is common ground that Rule 15 embodies a generally favorable policy toward amendments.'" Howard v. Gutierrez, 237 F.R.D. 310, 312 (D.D.C.2006) (quoting Davis v. Liberty Mutual Ins. Co., 871 F.2d 1134, 1136–37 (D.C. Cir. 1989)). Where amendment would be futile, however, the Court may in its discretion deny such a motion. See Vreven v. AARP, 604 F. Supp. 2d 9, 13 (D.D.C. 2009) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Amendment of a complaint — or in this case, a claim and answer — is futile where the proposed amendment does not modify the substance of the complaint, Hantzis v. Grantland, Civil Action No. 08-cv-2190, 2009 WL 3490757, at *1 n.2 (D.D.C. Oct. 30, 2009), or where the pleading as amended would "not survive a motion to dismiss or for judgment on the pleadings." Jung v. Assoc. of Am. Med. Colls., 226 F.R.D. 7, 9 (D.D.C. 2005).

## III. GOVERNING LAW

The United States brings this action pursuant to 18 U.S.C. § 981, which authorizes the forfeiture of property "involved in," "derived from," or "traceable to" a variety of specified federal crimes. 18 U.S.C. § 981(a)(1). According to UTICo, however, before determining the forfeitability of the defendant assets under United States law, this Court must first determine whether those assets would be subject to forfeiture under the laws of Guernsey

and/or the other foreign nations in which defendant assets are located.  See Foreign Law Mot. at

1-2; MJP Opp. at 33-43.  That argument is frivolous, and the Court rejects it for the reasons

provided this same day in its Opinion granting the motion of the United States for judgment on

the pleadings against claimant OAO Gazprom.  See United States v.  All Assets Held at Bank

Julius Baer & Co., Ltd., Civil Action No. 04-0798, Opinion Dismissing Claim of OAO Gazprom,

at 5-7 (D.D.C. Mar. 25, 2011).

 Civil forfeiture proceedings such as this one are governed by 18 U.S.C. § 983 and

Supplemental Rule G.  See 18 U.S.C. § 1983 (entitled "General Rules for Civil Forfeiture

Proceedings"); SUPP. R. G(1) ("This rule governs a forfeiture action *in rem* arising from a federal

statute.").  Both the statute and the rule require that a claimant in a forfeiture action *in rem*

"assert[] an interest" in "specific property" that is named as a defendant asset.  18 U.S.C.

§ 983(a)(2)(C); Supp. R. G(5)(i).  Without such an interest, the claimant lacks standing to

challenge the forfeiture.  See SUPP. R. G(8)(c)(i)(B); United States v. Funds from Prudential

Securities, 300 F. Supp. 2d 99, 103 (D.D.C. 2004) (referring to Supplemental Rule C(6), the

predecessor of Supplemental Rules G(5) and G(6)); John K. Rabiej, Supplemental Rule G

Governing Pretrial Procedures in Forfeiture in Rem Actions, PRAC. LITIG., May 2008, at 47, 55.

"The extent of the interest in the defendant property sufficient to meet this standing requirement

is left to case law."  Rabiej, supra, at 55; see also United States v. Funds from Prudential

Securities, 300 F. Supp. 2d at 103 (claimant must "demonstrat[e] an interest . . . sufficient to

satisfy the court of his standing"). [2]

---

[2] Most courts have characterized the rule that a claimant must have an "interest" in
specific defendant property as a standing requirement arising from Article III of the Constitution.
See, e.g., United States v. One-Sixth Share of James Bulger, 326 F.3d 34, 40 (1st Cir. 2003);

In the preliminary stages of a forfeiture action, a claimant must establish standing by pleading "a colorable interest in the property, for example, by [alleging] actual possession, control, title, or financial stake."  United States v. 475 Martin Lane, 545 F.3d 1134, 1140 (9th Cir. 2008) (citation and internal quotation marks omitted); see also United States v. $148,840 in U.S. Currency, 521 F.3d 1268, 1275 (10th Cir. 2008); United States v. One Lincoln Navigator, 328 F.3d 1011, 1013 (8th Cir. 2003).  While a variety of types of property interests in defendant assets thus may confer standing upon a claimant,  "[t]he federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property."  United States v. One-Sixth Share, 326 F.3d 36, 41 (1st Cir. 2003) (citing United States v. $20,193.39, 16 F.3d 344, 346 (9th Cir. 1994)); see also United States v. BCCI Holdings (Luxembourg), S.A., 46 F.3d 1185, 1191 (D.C. Cir. 1995) (holding, in a forfeiture action brought pursuant to 18 U.S.C. §§ 1961-1968, that "a general creditor can never have an interest in specific forfeited property").  The nature of a claimant's asserted property interest in defendant assets is "defined by the law of the State" or other jurisdiction "in which the interest arose." United States v. One Lincoln Navigator, 328 F.3d at 1013; see United States v. $100,348 U.S. Currency, 354 F.3d 1110, 1119 (9th Cir. 2004); United States v. One-Sixth Share, 326 F.3d at 45.

United States v. One Lincoln Navigator, 328 F.3d 1011, 1013 (8th Cir. 2003); United States v. 475 Martin Lane, 545 F.3d 1134, 1140 (9th Cir. 2004).  There is some suggestion, however, that the standing requirements imposed on a claimant in a forfeiture action are statutory or prudential, not constitutional, in nature.  See United States v. $557,933.89, More or Less, 287 F.3d 66, 78 n.9 (Sotomayor, J.) ("[I]t might very well be argued that, at least as far as Article III — as opposed to statutory — standing goes, the claimant bears no burden at all, as it is really the government which is invoking the power of the federal courts to effect the forfeiture.").  Because the source of the standing requirement has no effect on the outcome of Gazprom's claim, the Court does not address further whether that requirement is more properly considered statutory, prudential, or constitutional.

# IV.  DISCUSSION

UTICo has advanced a wide variety of theories under which it supposedly has standing to participate in this litigation; indeed, each new filing from UTICo seems to include new theories, even if the factual allegations upon which those theories rely appear nowhere in either UTICo's currently operative or proposed amended pleadings.  Those theories, although numerous, are also profoundly unpersuasive, whether based on the first amended claim and answer or the second amended set of pleadings that UTICo seeks leave to file.  The Court therefore will grant the plaintiff's motion for judgment on the pleadings and deny as futile UTICo's motion to amend its claim and answer yet again.

The Court addresses each of UTICo's theories of standing in turn, beginning with theories based solely on the first amended claim and answer and ultimately reaching theories arising from new allegations made in the proposed second amended claim and answer or, in some cases, from allegations made only in UTICo's motion papers.

## A.  UESU Judgment

In its first amended answer UTICo suggests that it is "the innocent title holder to $18.3 million due under the [UESU] judgment."  1st Am. Ans. at 30.  This assertion misstates the law and falls far short of establishing a cognizable interest in the defendant assets.  Even if the Court assumes for the sake of argument that any of the defendant assets are currently owned by UESU — an allegation that UTICo does not make — UTICo's status as the holder of an *in personam* judgment against UESU does not give UTICo an interest in "specific property," as is required to establish standing in this action *in rem*.  See United States v. One-Sixth Share, 326

12

F.3d at 44 (holder of an *in personam* judgment is a "general creditor" without standing); <u>United States v. BCCI Holdings (Luxembourg), S.A.</u>, 46 F.3d at 1191 ( "[A] general creditor can never have an interest in specific forfeited property.").

### B. Constructive Trust

UTICo contends in both its first amended and proposed second amended answer that when UESU transferred assets to Mr. Lazarenko, "a constructive trust in favor of [UTICo] attached to the funds by virtue of Lazarenko's fraud." 1st Am. Ans. at 30; Prop. 2d Am. Ans. at 35. Although UTICo declares in an entirely conclusory manner that "[a] constructive trust should be imposed with regard to UTICo's judgment debt," MJP Opp. at 26, there is no basis in any relevant body of law for the conclusion that UTICo is or could be — based on the allegations in the operative or proposed amended pleadings — the beneficiary of a constructive trust imposed over any of the defendant assets. Furthermore, even if UTICo did have the status of such a beneficiary, that status would, under the law of this circuit, be insufficient to confer standing upon the company. <u>See</u> <u>United States v. BCCI Holdings (Luxembourg), S.A.</u>, 46 F.3d 1185 (D.C. Cir. 1995).

As a general principle, and without accounting for variations in the common law of different states, a constructive trust is said to arise "[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." Restatement (First) of Restitution § 160 (1937). So, for example, if "a fraudster acquires property from a victim by fraud," a court may find that "the fraudster holds the property in constructive trust for his victim," and thus may be compelled

to return the property.  <u>United States v. $4,224,958.57</u>, 392 F.3d 1002, 1004 (9th Cir. 2004).

Under the common law of some states, a constructive trust is said to arise automatically upon the

commission of the act — fraud, for example — resulting in the unjust enrichment of one party

and injury to another.  <u>See</u>, <u>e.g.</u>, <u>id</u>.  In other states, the trust arises only at the time that a court

orders it imposed as a remedy.  <u>See</u>, <u>e.g.</u>, <u>United States v. One Silicon Valley Bank Account</u>, 549

F. Supp. 2d 940, 954 (W.D. Mich. 2008) ("Under Michigan law, a constructive trust does not

exist until so ordered by a court.").

   Constructive trust doctrine has proven useful for would-be claimants in forfeiture

actions because it may permit a party who has neither title, nor possession, nor a secured interest

in the defendant property to claim standing to challenge the forfeiture on the ground that the

party has an equitable interest in the property arising from the automatic imposition of a

constructive trust upon the occurrence of some act of fraud or mistake.  <u>See</u>, <u>e.g.</u>, <u>United States v.</u>

<u>$4,224,958.57</u>, 392 F.3d at 1004.  Even where a claimant has never litigated the underlying

unjust enrichment claim, so that no constructive trust has yet been imposed by a court, some

courts have found that the mere assertion of the claim, which may someday be remedied by the

imposition of a trust, is sufficient to demonstrate an interest in the defendant property and so to

confer standing upon the claimant.  <u>See</u>, <u>e.g.</u>, <u>Torres v. $36,256.80</u>, 25 F.3d 1154, 1157 (2d Cir.

1994).  Those courts reason that if a trust is ultimately imposed, it will be found to have arisen at

the time of the act causing unjust enrichment, and so to have existed when the claimant originally

intervened in the forfeiture action.  <u>See</u>, <u>e.g.</u>, <u>id</u>.; <u>United States v. 116 Emerson Street</u>, 942 F.2d

74, 79-80 (1st Cir. 1991).

The United States Court of Appeals for the District of Columbia Circuit does not subscribe to this theory of standing in forfeiture cases. In United States v. BCCI Holdings (Luxembourg), S.A., 46 F.3d 1185 (D.C. Cir. 1995), the court of appeals considered the claims of an intervenor in a forfeiture action brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 (1988 and Supp. V 1993). A number of intervening parties claimed to be "entitled to a constructive trust over the funds [to be forfeited] because the alternative . . . would unjustly enrich BCCI." United States v. BCCI Holdings (Luxembourg), S.A., 46 F.3d at 1188. The court of appeals rejected the notion that such a constructive trust could be asserted as a cognizable interest under the forfeiture statute. Under the applicable statute, a third-party's interest in the property could trump the government's only if that interest was superior "at the time of the commission of the acts which gave rise to the forfeiture of the property." 18 U.S.C. § 1963(l)(6)(A). "[A] third party's claim" is thus "to be measured not as it might appear at the time of litigation, but rather as it existed at the time the illegal acts were committed." United States v. BCCI Holdings (Luxembourg), S.A., 46 F.3d at 1190. But a constructive trust, as "a remedy that a court devises after litigation," could not "be[] shown to exist at the time the acts were committed." Id. at 1191.

Furthermore, the court of appeals reasoned that because the forfeiture statute provides that "all criminally acquired property of the defendant . . . 'vest[s] in the United States upon the commission of the act giving rise to the forfeiture,'" the statute creates a "remedial scheme that reaches back to the time of the criminal acts to forfeit the property to the United States." United States v. BCCI Holdings (Luxembourg), S.A., 46 F.3d at 1191 (quoting 18 U.S.C. § 1963(c)). That "retroactive legal fiction" is "similar to a constructive trust for the

15

benefit of the United States," and "[i]t is not open to a court to fashion another remedy (a competing fiction) that also reaches back to snatch the property away from the United States — which is exactly what a constructive trust would do."  Id.

Although this case is brought pursuant to 18 U.S.C. §§ 981 and 983 rather than under the RICO statute, the same reasoning applied by the court of appeals in BCCI applies here. Like the RICO statute, 18 U.S.C. § 981 provides that "[a]ll right, title, and interest in property [subject to forfeiture] . . . shall vest in the United States upon commission of the act giving rise to forfeiture."  18 U.S.C. § 981(f).  Thus, like the RICO statute, Section 981 reaches back in time to forfeit property to the government and pre-empts competing legal fictions, such as a constructive trust.  Because the government's interest is considered to vest at the time of the commission of the acts giving rise to forfeiture, and interests acquired after that point are cognizable only if they are the interests of a "bona fide purchaser or seller for value," see 18 U.S.C. § 983 (d)(3)(A), claimed third-party interests are measured as of the time at which the criminal acts in question occurred, as under 18 U.S.C. § 1963.  As stated by the court of appeals, a constructive trust not yet imposed by a court cannot "be[] shown to [have] exist[ed] at" that time.  United States v. BCCI Holdings (Luxembourg), S.A., 46 F.3d at 1191.

Under the law of this circuit, therefore, UTICo's claim that it is the beneficiary of a constructive trust is not cognizable in this forfeiture action and does not suffice to confer standing.  Even if such an interest were cognizable, however, the end result would be the same, for the simple reason that UTICo has failed to state a claim for the imposition of a constructive trust.

Unsurprisingly, given the cursory and at times incoherent discussion of constructive trusts contained in UTICo's motion papers, see MJP Opp. at 25-26, UTICo does not make any attempt to identify the state under whose law it is supposedly the beneficiary of a constructive trust over defendant assets. In its first amended claim, however, UTICo asserts that Massachusetts law is applicable to its fraudulent transfer claims, see 1st Am. Cl. ¶ 105, and indeed, it appears, based on the allegations contained in the complaint, that no state other than Massachusetts would have any interest in the adjudication of those claims. See Drs. Groover, Christie & Merritt, P.C. v. Burke, 917 A.2d 1110, 1117 (D.C. 2007) (District of Columbia determines law applicable to substantive claims by using "'governmental interests' analysis, under which . . . governmental policies underlying the applicable laws" are analyzed to "determine which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review"). UTICo is a Massachusetts corporation, and its claim to the assets of UESU arises from a judgment entered by a Massachusetts court. No substantial connection between UTICo's claims and any other U.S. state is discernible from the complaint or any of the papers filed by UTICo. UTICo also provides no remotely convincing arguments that it holds a constructive trust under any applicable foreign law.

UTICo's claims that a constructive trust should be imposed on any of the defendant assets derive solely from its contention that UESU effected the fraudulent transfer of those assets to Mr. Lazarenko and/or other affiliates in order to evade its creditors. See, e.g., 1st Am. Cl. ¶¶ 4, 6, 15, 21. Under Massachusetts law, however, claims that a transfer from one party to another disadvantaged a third-party creditor are governed by the Uniform Fraudulent Transfer Act, a statute that pre-empts constructive trust claims of the sort advanced by UTICo. See

<u>Cavadi v. DeYeso</u>, 941 N.E.2d 23, 39 (Mass. 2011). That statute provides that the creditor of a debtor who has made fraudulent transfers to a third party may seek to attach the transferred assets or to void the fraudulent transfers. <u>See</u> Mass. Gen. Laws ch. 109A, § 8. It does not provide that the creditor obtains any equitable interest in the transferred property at the time the transfer takes place. UTICo thus may have the option under Massachusetts law to attempt to attach the assets that it contends were fraudulently transferred by UESU. It currently does not have any property interest in the transferred assets. <u>See</u> <u>Shrewsbury v. Seaport Partners Ltd. Partnership</u>, 826 N.E.2d 203, 207 (Mass. App. Ct. 2005) (a plaintiff claiming fraudulent transfer does not have an interest in the transferred property, but rather has only a potential "right to require the party to whom the [debtor] conveyed [the property] to reconvey it back to the [debtor] in order to enable the [plaintiff creditor] to satisfy a judgment").

The Court notes that UTICo appears to suggest that Guernsey law confers an interest in the Balford Trust on UTICo. <u>See</u> MJP Opp. at 29-30; JN Mot. at 2. None of the copious and largely irrelevant foreign legal authorities cited by UTICo supports that proposition.

### C.  Allegations of Proposed Second Amended Claim

UTICo seeks to file a second amended claim and answer so that it may assert an interest in defendant assets based on actions taken by UTICo in or after March 2010 — namely, recording the UESU judgment as certified by this Court, and obtaining a writ of attachment from the Superior Court. <u>See</u> Mot. to Amend at 5-7. UTICo fares no better with its proposed second amended claim than it does with its current one; the new allegations made in the proposed claim

fail to state an interest in specific property. Because the second amended claim does not cure the defects in the first, the Court will deny as futile UTICo's motion to amend its claim and answer.

### 1. Interests Acquired After the Initiation of Forfeiture Litigation

As an initial matter, the Court notes that even if UTICo had managed to obtain a lien on any of the defendant assets by means of actions taken beginning in March 2010, such a lien would likely not constitute a cognizable interest sufficient to confer standing. Under 18 U.S.C. § 983, a would-be claimant must state its interest in the property named as a defendant in a forfeiture action at a specific time: "not later than 30 days after the date of service of the Government's complaint or, as applicable, not later than 30 days after the date of final publication of notice of the filing of the complaint." 18 U.S.C. § 983(a)(4)(A). Although a claim is merely a pleading and so need not be highly detailed, the requirement that a claimant state its interest at the commencement of a forfeiture action suggests that the interest must be in existence at that time. Other provisions of Section 983 confirm that proposition. A claimant cannot defeat the government's claim to forfeitable property by asserting an interest acquired after the commission of the criminal acts leading to the forfeiture unless the claimant "did not know and was reasonably without cause to believe that the property was subject to forfeiture" at the time the interest was acquired. 18 U.S.C. § 983(d)(3)(A)(ii). The statutory structure of Section 983 thus does not contemplate that a claimant may, as UTICo claims to have done, acquire an interest years after first asserting a claim in forfeiture litigation.

Even if such an interest were cognizable under the statute, UTICo's claim would still fail, as the interests that it claims to have acquired in the defendant assets since March 2010 do not exist.

## 2. Writ of Attachment

UTICo alleges in its proposed second amended claim that it has a secured interest in specific defendant assets because it requested and obtained a writ of attachment, directed at the Balford Trust, in the Superior Court of the District of Columbia. <u>See</u> Prop. 2d Am. Cl. ¶ 7. The United States disputes UTICo's contention that the writ was properly served on an agent capable of accepting service on behalf of Credit Suisse (Guernsey), the institution holding the Balford Trust. <u>See</u> Amend Opp. at 13-15. The Court need not resolve that question. Even if UTICo did effect proper service of the writ, it has no lien on or other interest in the Balford Trust.

"In order to reach personal property of a debtor held by a third party, a judgment creditor must — following entry of judgment — request the court to issue a writ of attachment." <u>Consumers United Ins. Co. v. Smith</u>, 644 A.2d 1328, 1351 (D.C. 1994) (citing D.C. CODE § 16-542). Once the third-party holding the targeted property — the garnishee — is served with the writ, the judgment creditor has "a valid lien . . . on the debtor's property held by the garnishee." <u>Id</u>. at 1352. That lien is not final, however. In order to obtain the attached property, the judgment creditor must, after serving the writ of attachment, move for the entry of judgment against the garnishee. <u>See</u> D.C. CODE § 16-556. The motion for judgment must be made within four weeks of (1) the submission by the garnishee of answers to the interrogatories served with the writ of attachment, or (2) the garnishee's failure to respond to the interrogatories. D.C.

SUPER. CT. R. 69-I(e). If the judgment creditor fails to move for judgment within the appropriate time period, "the garnishment and attachment shall stand dismissed." Id.; see Pride Transport, Inc. v. Northeastern Penn. Shippers Cooperative Ass'n, Inc., 832 A.2d 163, 167-68 (D.C. 2003) (as soon as time period specified by Rule 69-I(e) passes without the entry of judgment or a motion for entry of judgment, attachment is dissolved "by operation of law").

UTICo never suggests in its papers or in its proposed second amended complaint that it ever moved for or obtained entry of judgment in connection with the writ of attachment directed at the Balford Trust, and a review of the Superior Court docket, which this Court may properly consider, see Meijer, Inc. v. Biovail Corp., 533 F.3d 857, 867 n.* (D.C. Cir. 2008), reveals that it never did so. See United Energy Systems of Ukraine PFG v. Universal Trading & Investment Co. Inc., No. 2009 CA 1119, Docket (District of Columbia Superior Court) ("Super. Ct. Docket"). UTICo alleges that the appropriate garnishee was served with the writ of attachment on March 19, 2010. Prop. 2d Am. Cl. ¶ 6. The garnishee was obligated to respond within ten days. See D.C. Code § 16-552(a). It never responded. See Super. Ct. Docket. UTICo therefore was obligated by the law of the District of Columbia to move for entry of judgment within four weeks after those ten days had passed. See D.C. Super. Ct. R. 69-I(e). It failed to do so. See Super. Ct. Docket. As a result, "by operation of law," the writ of attachment "was effectively dismissed" in May 2010. Pride Transport, Inc. v. Northeastern Penn. Shippers Cooperative Ass'n, Inc., 832 A.2d at 167-68.

### 3.  Recording of UESU Judgment

UTICo's allegation that it has registered and recorded the UESU judgment in the District of Columbia is irrelevant to the question of standing.  Under District of Columbia law, a recorded judgment "constitute[s] a lien on all the freehold and leasehold estates . . . of the defendants bound by such judgment,"  D.C. Code § 15-102(a), but the Court has found, and UTICo has cited, no District of Columbia legal authority providing that such a recorded judgment creates a lien on property other than real estate.  The mere recording of the UESU judgment thus did nothing to give UTICo an interest in specific property, such as the contents of bank accounts named as the defendants *in rem* in this litigation.

### D.  *Allegations Made Only in Motions*

In motion papers filed after its motion for leave to file yet another amended complaint, UTICo asserts that beginning in April 2010, it submitted in several states UCC filings in which it claimed a security interest in the Balford Trust.  <u>See</u> JN Mot. at 1-2; Mot. Supp. at 1-2.  As allegations of fact contained nowhere in either UTICo's operative pleadings or its proposed amended pleadings, these claims are not appropriate responses to the plaintiff's motion for judgment on the pleadings.  <u>See</u>, <u>e.g.</u>, <u>Bender v. Jordan</u>, 612 F. Supp. 2d 62, 66 (D.D.C. 2009) (parties "cannot enlarge the allegations of their [pleadings] by arguments made in an opposition to a motion").  Even if they were, they do not serve to bolster UTICo's assertions of standing.  Since, as already explained, UTICo does not actually have any lien on the Balford Trust, it has no security interest to record — and it has cited no law suggesting that the mere execution and filing of a UCC form creates an interest that previously did not exist.  In any case,

interests deriving from court judgments are not addressed by the UCC, as the very forms that UTICo executed and filed indicate. <u>See</u> Uniform Commercial Code National Forms § 1:2, ¶ 5 (Instructions for Official Form UCC1, UCC Financing Statement) (indicating that a "judgment lien" <u>is</u> "not a UCC security interest filing").

In another factual allegation not found in any existing or proposed pleading, UTICo also claims that the United States District Court in Massachusetts issued Letters Rogatory in 2006 that were sent to Guernsey in an attempt by UTICo to discern the provenance of the Balford Trust. MJP Opp. at 30. UTICo states that those letters "have operated as a local lien as to the Balford Trust." <u>Id</u>. That rather ludicrous assertion is unsupported by any citation to relevant law and so is rejected.

## V. CONCLUSION

For the foregoing reasons, the Court concludes that UTICo lacks standing to challenge the plaintiff's complaint for forfeiture. The plaintiff's motion for judgment on the pleadings therefore will be granted, and UTICo's motion for leave to file a second amended claim and answer will be denied as futile. Because UTICo has failed to demonstrate that the law of Guernsey is relevant to the motions under review, UTICo's motion for a round of briefing on Guernsey law will be denied, as will UTICo's motions to "supplement evidence" and for judicial notice, which the Court construes as improper attempts to make additional factual allegations in motion papers. Finally, since the Court does not rely upon any of the arguments of the United

States to which UTICo wishes to respond by filing a surreply, UTICo's motion for leave to file a surreply will also be denied.  An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:   March 25, 2011