UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:04-cv-00798-PLF |
| | ) |
| | ) |
| ALL ASSETS HELD AT BANK JULIUS | ) |
| BAER & COMPANY, LTD., GUERNSEY | ) |
| BRANCH, ACCOUNT NUMBER 121128, | ) |
| IN THE NAME OF PAVLO | ) |
| LAZARENKO, LAST VALUED AT | ) |
| APPROXIMATELY $2 MILLION IN | ) |
| UNITED STATES DOLLARS, *ET AL.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**CLAIMANT PAVEL LAZARENKO'S OPPOSITION TO PROPOSED
SETTLEMENT AND REQUEST FOR EVIDENTIARY HEARING**

Pursuant to Local Civil Rule 7 of the United States District Court for the District of Columbia, Claimant Pavel Lazarenko, by and through counsel, requests that the Court conduct an evidentiary hearing to determine whether a sufficient factual basis exists for the proposed settlement between Plaintiff United States and Claimant Liquidators of European Federal Credit Bank, In Liquidation (the "Liquidators"). Docket Entry No. 314.

**FACTUAL BACKGROUND**

In 1999, the Antiguan government placed European Federal Credit Bank ("Eurofed") in receivership. Docket Entry No. 269-19. Subsequently, the receivership was converted to a liquidation proceeding. As an offshore bank, Eurofed possessed a number of non-Antiguan accounts in Lithuania, St. Kitts, Switzerland, Ukraine, and the United States. Some of those funds were transferred back to Antigua; other funds remained abroad.

Claimant Lazarenko initially filed a claim in the liquidation in the amount of $105,402,000.[1] Docket Entry No. 297-3; No. 286, p. 123. The claim included one account in his name and seven accounts held in the name of six corporate nominees. This claim was rejected. It appears that the Liquidators have continued to dispute his beneficial ownership to these funds despite the fact that no other claimant has come forward and despite the various records (which have been proffered) that demonstrate he is the beneficial owner of the accounts. The Liquidators have acknowledged that if Mr. Lazarenko can validate his claims, he is entitled to approximately $85,500,000, plus interest (presumably less any costs of the liquidation). Docket Entry No. 311.

Although the undersigned counsel have not been able to obtain any significant information about the Liquidation, after conferring with counsel in Antigua and reviewing the records in this case, we believe the following facts are not in dispute:

1. In 2001, the Liquidators had previously set aside reserves of about $4,000,000 to cover administrative costs (*e.g.*, accounting and attorneys' fees) for foreign litigation. Docket Entry No. 311.

2. According to a balance sheet prepared by the Liquidators in 2001, Eurofed's assets exceeded its liabilities by about $15,000,000. This figure included the Lithuanian, Swiss, and Ukrainian assets of the bank, which total about $38,000,000. Docket Entry No. 311. (The disposition of the Ukrainian assets is unknown to the undersigned.)

3. Under Antiguan law, each account holder was paid an initial $20,000. After those payments, the bank reported $20,718,570 in customer deposits as a liability. Docket Entry No. 311.

---

[1] Mr. Lazarenko believes but has not confirmed that the amount was later reduced by $12,000,000.

4. By 2003, Eurofed had $88,520,617 in assets in Antigua. In November 2003, the Antiguan courts split the assets of Eurofed on a *pro rata* basis. The Liquidators were given $19,954,229 to pay the claimants. Docket Entry No. 286 at 326. The balance, $66,759,620, was placed in an account with the Registrar. *Id*. ¶ 314-1.

5. The Liquidators received additional funds in the amount of $2,485,791 from the criminal forfeiture case against Mr. Lazarenko. Docket Entry No. 311 (California Criminal Action, Docket Entry No. 1590). The Ninth Circuit also awarded attorneys' fees to Eurofed in the forfeiture case as well.

6. In 2010, Eurofed identified $40.3 million in overseas accounts as being restrained.[2] Docket Entry No. 286, at 331.

7. The Liquidators have paid claims to third-party claimants of $14,650,756. Docket Entry No. 286, at 281.

8. The Liquidators had $3,887,413 in unrestrained funds that had not been distributed as of April 2010. Docket Entry No. 286, at 281.

9. Presently, the Liquidators have identified about $10,000,000 in unpaid claims. The Liquidators have identified the following:

    a. $3,232,425 for validated claimants. Docket Entry No. 286, at 281, 339.

    b. $1,180,957 for non-validated claimants, meaning individuals who, after 15 years, have not filed a claim with a bank for the return of their funds. Docket Entry No. 286, at 331.

---

[2] This figure does not reconcile with what we understand the offshore funds to be, namely $35,371,748. Docket Entry No. 314-1 ¶ 17.

      c. $5,829,489 for accounts frozen by the Antiguan government.  Docket Entry No. 286, at 331.  The status of these claims and whether these funds are available to the Liquidators is unknown.

10. Previously, the Liquidators attempted to access the interest accruing on the $66 million account to pay non-Lazarenko claimants.  However, the Court of Appeals stated the interest was the sole property of Mr. Lazarenko (or subject to forfeiture), writing as follows:  "The interest element cannot be alienated from the principal to make the interest a part of funds available to liquidators. …The interest is as much a part of the alleged proceeds of crime as the principal sum."  Docket Entry No. 286, at 184-85.

11. The Registrar's account in Antigua now has at least $4,279,721 in interest on Mr. Lazarenko's *pro rata* share.  Docket Entry No. 314-1, ¶ 14.

12. Presently, there are about $3,235,276 in unrestrained funds that have not been distributed.  Docket Entry No. 314-1, ¶ 16.  Based on the foregoing, and even accounting for inconsistencies in the various filings, the Liquidators have collected $22,440,020, but only disbursed $14,650,756.  Mr. Lazarenko is unable to determine how the difference between the funds collected, the funds disbursed and the funds remaining (our computation is about $4,553,998) were accounted for by the Liquidators.

On June 25, 2014, the United States and the Liquidators filed a proposed settlement.  The proposed settlement sought to take about $9,000,000 in funds that were previously identified as not accessible to the Liquidators.  Specifically, the United States and the Liquidators proposed taking 22.54% of the interest that has accrued on Mr. Lazarenko's *pro rata* portion of the

Antiguan funds (roughly $4,100,000). These are funds that had been previously set aside by the Antiguan courts for Mr. Lazarenko. The settlement also included payment of about 75% of the Antiguan funds belonging to Alexander Milchenko. The parties also proposed taking funds from the accounts in Lithuania and Switzerland, again 22.54% of these funds. This Court had previously held that the Liquidators had not established standing to access these funds.

After speaking with Mr. Lazarenko's attorney in Antigua, Sir Richard Cheltenham, the undersigned represented that Sir Cheltenham believed he could resolve the outstanding issues pertaining to both the Liquidation and the Antiguan forfeiture action. On August 20, 2014, Claimant Lazarenko, through the undersigned counsel, contacted the settling parties to propose a counteroffer seeking a broader resolution of all outstanding issues in Antigua as well as a 90-day joint stay. Upon a resolution of these matters, the undersigned proposed transferring all or substantially all of Eurofed's assets (*i.e.*, Antiguan, Lithuanian, and Swiss) back to the United States. Mr. Lazarenko's proposal was rejected as insufficiently detailed by the government. As of the date of filing of this objection, Claimant Lazarenko has not received any formal response from the Liquidators. Because the proposed settlement seems to be arbitrary at best and draws from funds that courts in Antigua and the United States have held are unavailable to the Liquidators, Claimant Lazarenko requests an evidentiary hearing.

## ARGUMENT

In order for the Court to approve a settlement, there must a sufficient factual basis to support the distribution of the funds. *United States v. Dreier,* 952 F. Supp. 2d 582, 584 (S.D.N.Y. 2013). This Court has previously stated that: "For the plaintiff to obtain summary judgment against Eurofed …, it must demonstrate the absence of any genuine issue of material fact about the lack of any remaining *bona fide* Eurofed liquidation claims that have not yet been

validated." Docket Entry No. 304. The converse is also true. The Liquidators need to present evidence at a hearing to justify their receipt of an additional $9,000,000. It appears that the proposed settlement does not have a sufficient basis – factually or legally. Accordingly, Mr. Lazarenko requests an evidentiary hearing.

### A. The Settlement Seeks to Draw From Funds to Which Liquidators Are Not Entitled

Here, the parties are using money, which they do not have a right to access, to fund the settlement. First, the Liquidators seek to draw upon the interest that has accrued on Mr. Lazarenko's *pro rata* share of the Antiguan funds. As noted above, the Court of Appeals, Antigua and Barbuda, has previously held that these funds are not to be apportioned to the Liquidators to pay non-Lazarenko claims. Therefore, it is improper to include them in the settlement in this action. Second, the settlement includes funds from banks in Lithuania and Switzerland. The Liquidators take the position that they are entitled to access this money because the money is necessarily a part of the liquidation. *This Court*, however, pointed out that the Liquidators did not possess standing in this litigation over these funds. Docket Entry No. 304 at 54-56. Accordingly, Mr. Lazarenko fails to see how either party can justify using either pool of funds to fund this settlement.[3]

### B. The Liquidators Must Make a Factual Showing to Justify the Additional $9,000,000 Expenditure

Claimant Lazarenko is not opposed to releasing funds to make the validated claimants whole. Mr. Lazarenko's overriding concerns are: (1) the disincentive of the Liquidators to complete the liquidation; (2) a lack of accounting by the Liquidators; and (3) employing funds that tribunals have held cannot be employed to fund the settlement. First, the Liquidators seem

to have taken an overly broad interpretation of their mandate. In one of its filings, the government includes an affidavit from Nicollete M. Doherty, an Antiguan attorney, who notes the liquidation proceeding is governed in part by the United Kingdom Insolvency Rules. Docket Entry No. 288-2, ¶ 9. One of the Insolvency Rules states:

> When the liquidator has realised all the company's assets or so much of them as can, in his opinion, be realised without needlessly protracting the liquidation, he shall give notice, under Part 11 of the Rules, either of his intention to declare a final dividend or that no dividend, or further dividend, will be declared.

Docket Entry No. 290-5, p. 51 (Insolvency Rule 4.186). Claimant Lazarenko has substantial concern that the Liquidators have protracted this liquidation, which has been ongoing since 1999. As a result, the Liquidators have continued to incur substantial expenses to recover seemingly insubstantial sums. We note that, in April 2010, the Liquidators reported unpaid claims of $3,154,952 to the validated claimants, and an additional contingent liability of $7,010,455. Three years later, the Liquidators had spent at least $650,000 (by Mr. Lazarenko's count), but they had validated no additional claims and their contingent liabilities remained the same. At this point, the Liquidators' sole *raison d'être* appears to be completing the validation process for Mr. Lazarenko and awaiting other non-validated claimants. However, Mr. Lazarenko's claim should be undisputed at this point in time. As to the second point, the government pointed out that it "strains credulity" that non-validated claimants will appear twelve and one half years later.

Second, as noted above, it appears that the Liquidators have received substantial sums to pay outstanding claimants. Prior to the division of assets in 2003, but after the initial payout, the Liquidators identified customer deposits of $20,718,570. Docket Entry No. 311. The Antiguan government subsequently provided $19,954,229 to the Liquidators to pay all claimants – some of

---

[3] The Liquidators' position is itself inconsistent. On the one hand, they assert a right to remain in this proceeding to collect the funds that belong to non-Lazarenko claimants. On the other hand, they are asserting a claim to all

whom subsequently failed to come forward.  While some of these $19 million in funds were used to pay accounting and attorneys fees, the bulk were purportedly used to pay back validated claimants.  Docket Entry No. 286, at 281.  Subsequently, the Liquidators were infused with additional cash from the criminal forfeiture (as well as an award of attorney's fees).  In 2010, there was sufficient cash on hand to pay all validated claimants.  Those funds have dwindled but the validated claimants remain unpaid.   As noted, Claimant Lazarenko believes there is at least $4.5 million unaccounted for by the Liquidators.

Although this Court cannot adjudicate whether the liquidation has been needlessly protracted, the Liquidators should be required to provide this Court with evidence justifying the payment of funds.  It remains unclear why the Liquidators do not have enough funds to complete the liquidation and pay all validated claimants.  There are also factual issues as to whether the non-validated claimants are contingent or merely fictitious liabilities.  Presumably, at this point, the statute of limitations for filing a claim has expired.  Accordingly, before this Court disburses any funds, the Liquidators must provide a sufficient factual basis to allow for payment of these non-validated claimants.

### C. The Liquidators' Claimed Need for Antiguan Secrecy Is Without Merit

The Liquidators have consistently resisted providing a full accounting under the claim that they cannot release information pursuant to the Antiguan International Business Corporations Act (the "IBC Act").  One particular provision states that it is the duty of the bank to protect confidential affairs of its customers.  IBC Act § 244.  Mr. Lazarenko has never asked for a list of accountholder names.  Rather, Mr. Lazarenko seeks an accounting of the funds and has raised legitimate questions about the length of the validation process.  In response, the

---

$66,000,000 in Antigua as well as (unsuccessfully) to the funds in Lithuania and Switzerland.

Liquidators have resisted providing information that would enable the United States and subsequently this Court to render a proper accounting.

Furthermore, the Liquidators' conduct shows that the Antiguan bank secrecy provision is being honored in the breach. Counsel for the Liquidators have filed documents with this Court identifying Mr. Lazarenko and stating that he has $85 million in deposits at Eurofed.[4] *See* Docket Entry No. 297-3. Counsel for the Liquidators and the United States subsequently filed a stipulation which stated:

> The Parties do not anticipate that Antiguan law will require the Liquidators to make future distributions to Pavel Lazarenko because his claims in Eurofed's liquidation proceedings are not expected to exceed the sum of (1) $66,759,619.60 currently held in Antigua in the account in the name of the Registrar, (2) 77.46% of the Antiguan Interest, and (3) 77.46% of the European funds.

Docket Entry No. 314-1, ¶ 23. These filings confirm that the Liquidators can provide information about the Liquidation and still not run afoul of the Antiguan bank secrecy laws. As such, we fail to see how the Liquidators can credibly claim that they need not answer questions about Eurofed's balance sheet or the fifteen-year validation process.

---

[4] The United States has also freely filed documents from the liquidation. Applying the Liquidators' interpretation, this would be an egregious violation of the Antiguan bank secrecy laws.

## **CONCLUSION**

For the foregoing reasons, Claimant Lazarenko respectfully requests that the Court set an evidentiary hearing at which time a representative of the Liquidators can provide evidence establishing (1) the legal right to claim the funds that they seek to have distributed; and (2) a factual basis for the amount of the settlement.

Dated: September 5, 2014.

Respectfully submitted,

**BLANK ROME LLP**

By: __/s/ Ian M. Comisky_____
      Ian M. Comisky (D.C. Bar No. 927608)
      Matthew D. Lee (D.C. Bar No. 453529)
One Logan Square, 130 N. 18th Street
Philadelphia PA  19103
Phone:  (215) 569-5646
Fax:  (215) 832-5646
Comisky-im@blankrome.com
Lee-m@blankrome.com


**SMITH & ZIMMERMAN, PLLC**

By: __/s/ David B. Smith_____
      David B. Smith (D.C. Bar No. 403068)
108 N. Alfred St.
Alexandria, VA 22314
Phone:  (703) 548-8911
Fax: (703) 548-8935
Dsmith@smithzimmerman.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 5, 2014, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court for the District of Columbia, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means. I also certify that parties not so noticed have been served in accordance with Fed. R. Civ Pr. Pr. 5(d).

                                                    ___/s/ Ian M. Comisky____