**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>            v.<br><br>ALL ASSETS HELD AT BANK JULIUS BAER & COMPANY, LTD., GUERNSEY BRANCH, ACCOUNT NUMBER 121128, IN THE NAME OF PAVLO LAZARENKO, LAST VALUED AT APPROXIMATELY $2 MILLION IN UNITED STATES DOLLARS, *ET AL.*,<br><br>    Defendants. | )<br>)<br>)<br>)<br>) Civil Action No. 1:04-cv-00798-PLF<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CLAIMANT LAZARENKO'S RESPONSE IN PARTIAL OPPOSITION TO**
**PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER**

Pursuant to Federal Rule of Civil Procedure 26(c), Claimant Pavel Lazarenko, by and through his attorneys of record, respectfully submits this response in *partial* opposition to Plaintiff's motion for a protective order (Docket Entry No. 342). Claimant Lazarenko has no objection to the entry of the government's previously-agreed upon protective order as long as two sentences are included on page 1, at the end of the first paragraph. Claimant asks that the Court insert the following language:

> The protective order shall not apply to any documents produced in the prior criminal action, *United States v. Lazarenko*, 00-cr-284 (N.D. California), unless they were designated Protected by a protective order in that case. Claimant Pavel Lazarenko's bank records (and the bank records for any entity over which he has dominion and control) shall not be designated as Protected.

If these two sentences are inserted, Claimant would not oppose the motion for a protective order. The government has refused this offer, stating that this would merely be the "insertion of new,

1

confusing and complicating exemptions to otherwise agreed text." Memorandum for Protective Order at p. 2 (Docket Entry No. 342-1).

In light of the government's apparent plan to designate so many records as protected, the Court should address the burden of proof regarding confidentiality in the protective order itself. Claimant would have no objection to applying the burden of proof for designation in the case cited by the government. For the Court's convenience, Claimant has attached a revised draft of the protective order incorporating these two changes to the *previously agreed upon* draft (which is not what the government filed).

## BACKGROUND

**A.   Discovery in the Criminal Case**

Claimant was indicted in 2000 by a grand jury in the Northern District of California. *See United States v. Lazarenko*, 00-cr-284 (N.D. Cal.). First Silversmith Declaration, Exhibit 3.[1] As part of discovery, the government produced at least 70,000 records. First Silversmith Declaration, ¶ 5; Defense Exhibit BB (D.E. #345-30); Exhibit 51 (Letter from USAO, dated February 10, 2003).

Only a very small number of these records were produced pursuant to a protective order. In response to the government's motion for protective order, counsel for Claimant has reviewed the hearings and correspondence filed in that case. Claimant's counsel located two categories of records produced in the criminal proceedings pursuant to a protective order. First, in June 2003, the parties traveled to Kiev to depose about two dozen government witnesses. During the depositions, it was revealed that the United States government had requested some protocols of

---

[1] To aid the Court, Claimant will continue using the exhibit numbering from his motion to compel (docket entry no. 336). Exhibit 42 will be updated and re-filed in the Third Declaration of Jed Silversmith along with Exhibits 51 to 63.

interview (*i.e.*, the Ukrainian equivalent of an FBI FD-302) about an open investigation in the Ukraine (presumably having to do with the Naukovy Farms payments referenced in the government's Amended Complaint in this action). The protocols of interview involved the depositions of a small number of witnesses, namely the witnesses who were to be deposed during the week of June 16, 2003. The Ukrainian government only agreed to produce these protocols of interview if the records would be subject to a protective order. *See* Exhibit 52 (Letter, June 10, 2003).

Claimant attached a copy of the protective order, which is dated June 11, 2003, to his pending motion to compel. *See* Exhibit 49 (filed under seal). It is not clear from the face of the protective order which records were to be designated as protected. There were three hearings where the protective order was discussed. Exhibit 53 (June 10, 2003 Hearing); Exhibit 54 (June 13, 2003 Hearing) and Exhibit 55 (June 17, 2003 Hearing). The government prepared a list of these records that it was designating as confidential. Exhibit 53, p. 13:6-7, Exhibit 55, p. 4:23-5:24. The government apparently memorialized this list in an MLAT to the Ukraine. Exhibit 54, p. 6:1-8. The record makes clear that these documents were truly a fraction of the overall scope of discovery, which involved tens of thousands of documents. The following statements were made at the first hearing:

> Mr. Rosenthal (Claimant's Lawyer):  There are two big fat notebooks sitting in the courtroom on protocols that they told us yesterday they were not going to turn over without a protective order.
> …
> Martha Boersch (AUSA): There were binders [the GPOU] had, but I think there were multiple copies of the documents in there[,] so whatever Mr. Rosenthal saw probably was exaggerated to some extent in terms of the amount that was there.

Exhibit 53 at p. 18:21-24 and p. 22:6-9 (June 10, 2003 Hearing).

The government also produced one or more statements for Claimant Alexei Ditiatkovksy pursuant to a protective order. Exhibit 56. Claimant's counsel has been advised by prior defense counsel that nothing else was produced pursuant to a protective order – none of the other thousands of pages of witness statements (*e.g.*, Exhibit 51), none of the bank records, none of the communications with the Swiss and Ukrainian governments; and none of whatever excerpts of the Melnychenko tapes may have been produced. Indeed, it was the criminal prosecutor's practice to file witness interviews in open court. We attach several samples. *See, e.g.*, Exhibit 57 (Criminal Docket Entry No. 562, Opposition to Preclude Kleshnya deposition, dated Jan. 30, 2004); Exhibit 58 (Criminal Docket Entry No. 572, Motion in Limine to Admit Prior Witness Statements Under 801(d)(1)(A), 803(5), and 803(24) dated January 30, 2004); Exhibit 59 (Criminal Docket Entry No. 596, Addendum to Motion in Limine on Prior Witness Statements); Exhibit 60 (Criminal Docket Entry No. 652, Statement of Clarification, dated March 8, 2004); Exhibit 61 (Criminal Docket Entry No. 658, Response to Additional Kleshnya briefing, dated March 10, 2004).[2] Counsel for Claimant redacted the personal identifiers; the government attorneys who filed the documents did not previously do so.

The case received substantial media coverage during the course of the criminal trial, particularly in the Ukraine. In fact, the lead prosecutor from the Ukraine, Nikolai Obikhod, published a book about Mr. Lazarenko and Julia Tymoshenko that relies heavily on non-public information gleaned from the investigation. Mr. Lazarenko also shared, directly or indirectly, relevant information with third parties. Third Silversmith Decl., ¶ 6. Claimant can provide additional information in an *ex parte* declaration which lists names with whom he has shared these records.

---

[2] Counsel has removed the Ukrainian documents from the original filing as they cannot be readily redacted.

### B.    Discovery in the Civil Case

This civil forfeiture case was filed on May 14, 2004.  Upon the entry of the undersigned firm into this case in mid-July 2014 on behalf of Claimant, counsel for the government suggested that Claimant not serve discovery.  *See*, *infra,* Section E.  Indeed, Claimant's counsel discovered that some of the discovery previously provided to Mr. Lazarenko in the criminal case had been either lost or, in the case of electronic files, inadvertently corrupted.  To that end, counsel for Claimant asked the government to reproduce the electronic discovery that was furnished in the criminal case.  Because Plaintiff had represented "much of the documentation obtained in the course of the investigation in California has been scanned into digital form is readily moveable from one location to another," Claimant viewed this as a reasonable request.  *See* Civil Docket Entry No. 57 at p. 18 (Opposition to Motion to Transfer).  Counsel for Claimant also asked that the government produce all of the law enforcement witness memoranda (*e.g.*, FBI FD-302s) as the government had previously limited its production to *Jencks* Act statements.  Exhibit 42, p. 15-16.  To accommodate the government's concerns about commencing discovery, counsel for Claimant made this request on an informal basis.

On September 2, 2014, the parties discussed this informal request.  Counsel for Claimant was told that he could not have either set of records.  First Silversmith Decl., ¶¶ 7-33 and Exhibit 42, p. 15-16.  Subsequently, on September 19, 2014, the undersigned served what the government characterizes as wide-ranging discovery.  To date, the government has produced only:  the government's admitted trial exhibits from the criminal proceedings; the criminal trial transcript; and most, but not all, of the Rule 15 deposition transcripts and videos.[3]  The government claims that everything else must to be produced subject to a protective order.

---

[3] Counsel for Claimant already had copies of these records (except for six depositions), so this production did not

As a practical matter, it should not take five months to negotiate a protective order to deal with the disclosure of personal identifiers. The government's statement of facts is self-serving. Counsel for Claimant has previously outlined attempts to meet and confer in the motion to compel filed on behalf of Claimant, Docket Entry No. 336. Contrary to the government's assertions, Counsel believes that those efforts were more than sufficient under the circumstances. Counsel for Claimant would just advise the Court of the following:

- The government circulated a draft protective order on November 7, 2014, seven weeks after being served with discovery. Among other things, the draft stated that Claimant personally could not review any records produced thereunder. Additionally, the protective order allowed the government to simply designate documents as confidential by labeling the CD or thumb drive bearing the documents, rather than engaging in a page-by-page demarcation as is customary. Exhibit 42, p. 44.

- Claimant identified these significant deficiencies in the protective order to the government by letter dated November 12, 2014. Exhibit 42, p. 45. (The government failed to mention this letter in its motion.)

- Counsel for the government filed this motion for a protective order on February 23, 2015, over five months after being served with Claimant's Requests for Production. The government's motion for a protective order itself contained new language in ¶ 2 to which the parties had not previously agreed. *See* Exhibit 62 (Comparison of January 23 (Exhibit 42, p. 118 draft with Proposed Order (D.E. #342-2)).[4]

All drafts of the protective order limit to whom the documents may be disclosed. *E.g.*, Docket Entry No. 342-2 at pp. 5-9. All drafts of the protective order also require that the records be returned to the government following the end of the litigation. *E.g.*, Docket Entry No. 342-2 at pp. 11-12.

---

move the case forward.

[4] The government did furnish counsel with Claimant a redlined version of the proposed order that identified this new language on February 18, 2015. However, while insisting on its new language, the government refused to add Claimant's proposed language.

**ARGUMENT**

Federal Rule of Civil Procedure 26 provides:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery. . . .

Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise. *United States v. Microsoft Corp.*, 165 F.3d 952, 959 (D.C. Cir. 1999). Factors considered in determining whether it is appropriate to grant a protective order include "the requester's need for the information from this particular source, its relevance to the litigation at hand, the burden of producing the sought-after material, and the harm which disclosure would cause to the party seeking to protect the information." *Burka v. HHS*, 87 F.3d 508, 517 (D.C. Cir. 1996); *Hines v. Wilkinson*, 163 F.R.D. 262, 266 (S.D. Ohio 1995) ("the Rule's incorporation of the concept of 'good cause' implies that a flexible approach to protective orders may be taken, depending upon the nature of the interests sought to be protected and the interests that a protective order would infringe").

The government has suggested that nearly all of the discovery to be produced is governed by the Privacy Act, 5 U.S.C. § 552a. The Privacy Act, however, exempts investigatory materials compiled for law enforcement purposes, including materials collected by the FBI and the IRS. 5 U.S.C. § 552a(k)(2); 28 C.F.R. § 16.96(a)(1)(FBI records) and 31 C.F.R. § 1.36(c)(vii)(IRS-CI records). Further, the Privacy Act applies to records collected by U.S. agencies and only applies to U.S. citizens or resident aliens. 5 U.S.C. §552a(a)(1)&(2). Given the extraterritorial nature of this case, few of the criminal discovery records would be governed by the Privacy Act even if

law enforcement materials were not exempt. The Privacy Act also exempts routine uses of information. 5 U.S.C. §552a(b)(3). The Criminal Division has a routine use exception to the Privacy Act that clearly governs materials furnished in discovery such as civil forfeiture actions. *See* 63 Fed. Reg. 8,671 (Aug. 7, 2007) (listing as a routine use for the DOJ Criminal Division a disclosure made to "an actual or potential party to litigation or administrative proceeding, or the party's authorized representative for the purpose of negotiation or discussion of such matters as settlement, plea bargaining, or in informal discovery proceedings."). Exhibit 63.

The government claims to seek a "blanket protective order" which will allow it to designate to every document as protected. Such a designation is problematic because Claimant and others previously disseminated much of this information, which was not subject to any protective order in the criminal case. Information in the public domain is not considered confidential. *See Aristotle, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 21, 24-25 (D.D.C. 2015). Further, Claimant has a legitimate need for some of these records as discussed below Therefore, requiring that the records be returned and/or limiting their use is burdensome, and frankly, given the limited privacy interests at stake, unnecessary.

### A. Discovery from the Criminal Case was not Protected Then and Does Not Need to be Protected Now.

As detailed above, nearly all of the discovery in the criminal case was produced without a protective order. Claimant himself, as was his right, disseminated much of this information to third parties. Third Silversmith Decl. ¶ 6. Claimant has reviewed third-party publications such as the book written by Mr. Obikod that discuss in substantial detail the contents of many of the witness interviews the government now seeks to protect. Third Silversmith Decl. ¶¶ 5-6. There is simply no need to limit the disclosure of these records for the first time at this juncture. As Claimant has provided clear evidence of where a protective order was entered in the criminal

case, the onus is on the government, as the movant, to show that additional protective orders were granted or that the records now need to be designated as confidential twelve years later. It has made no such showing.

Claimant's counsel also notes that the documents that the government has already produced contained a host of personal identifiers. For example, the admitted trial exhibit production included a large number of bank records that contained home addresses, passport numbers, and bank account numbers. Similarly, the deponents, during the Rule 15 depositions, were asked to provide their respective home addresses. Although some of the Rule 15 depositions were never played in open court, all of these records have been produced without a protective order. The government's claim that personal identifiers in other documents warrant protection is somewhat arbitrary. And, as noted above, the criminal prosecutors filed witness interviews with the Clerk in the Northern District without redacting any personal identifiers. Exhibits 57 to 61.

Most importantly, the government's apparent plan to designate every record as confidential is inconsistent with the *Gillard* case that it cites in its own brief. In *Gillard v. Boulder Valley School Dist. Re.-2*, 196 F.R.D. 382 (D. Col. 2000), the court noted that the designating party is required to make a page-by-page designation in good faith.[5] This suggests

---

[5] It should be noted that *Gillard* is not precisely on point. This case dealt with domestic discovery where the litigation itself involved records that are generally afforded a heightened level of protection by statute. In *Gillard*, the district court entered a blanket protective order in a suit involving an alleged sexual assault between two minors at a public school. All of the records in *Gillard* were governed by the Federal Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. §1232g, which has very stringent disclosure rules. The other case cited by the government, *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66 (S.D.N.Y. 2010), a class action employment discrimination case, is also not on point. At the outset, the *Duling* court remarked: "[t]he fact that sensitive information is involved in litigation gives a party neither an absolute nor automatic right to have the discovery process hindered. . . ." *Id.* at 72. Still, the court entered a blanket protective order for certain personnel files stating: "[g]iven how few of the documents contained in the personnel files are likely to lack any privacy implications, a comprehensive approach is more sensible here than a piecemeal one." *Id.*

The other cases cited by the government also are also inapposite. The government cites *D'Onofrio v. SFX Sports Group, Inc.*, 256 F.R.D. 277, 280-81 (D.D.C. 2009). This case enters an "attorney-eyes only" protective

that the government is seeking an umbrella protective order. The authority cited by the government even states that an umbrella protective order, which "designates all discovery as protected ***without any prior review*** whatsoever, by either a court or the parties, …. are disfavored." *Gillard*, 196 F.R.D. at 386 (emphasis added).

It is unclear how the government can certify in good faith that every record needs to be designated as protected for several reasons. First, at the time the government was making this demand, it had not even located the records at issue. Second, even if the government produced the records, the bulk of the records are in Ukrainian and have not been translated. A number of additional records are in French, German, and Russian, and also have not been translated. Claimant's counsel understands that the Ukrainian document production consists primarily of public decrees, records from Naukovy Farms (which has been defunct for 20 years), and records from UESU (which has been defunct for 15 years). Since the records have not been translated, it is unclear how the government can possibly designate them as confidential. Finally, since many of the records at issue were produced before without any confidentiality designation, it is difficult (if not impossible) to imagine why they would need to be – let alone how they could be – designated as protected now.[6] Accordingly, a wholesale blanket protective order is not warranted.

---

order for a limited set of documents, whose disclosure would constitute the release of a trade secret to a competitor. The government also cites *Peskoff v. Faber*, 230 F.R.D. 25, 33 (D.D.C. 2005). In that case, Magistrate Judge Facciola entered a protective order because the "acrimonious tenor of the pleadings and motions in this action, more than any of the arguments proffered by the plaintiff or the defendant, convinces this Court of the futility of any confidentiality order that does not encompass both personal and business/commercial information."

[6] In any event, based on the Declaration provided by the FBI's paralegal, which is attached to its Opposition to the Motion to Compel as Exhibit W (D.E. # 345-25), Claimant understands that the government has redacted the personal identifiers from these records. The government has stated that it has searched three files for FBI FD-302s. Claimant assumes that two of the files were those of Claimant and Mr. Kiritchenko. Those records do not need to be designated as confidential as they were mostly part of the criminal discovery productions unless they contain statements by a confidential informant. The undersigned preliminarily has no objection to designating records from the third investigation as confidential, but reserves his right to object to any improper designation upon receiving it.

Finally, and perhaps most importantly, the government inserted new language in the draft proposed order (D.E. # 342-2) that had never been discussed by the parties. Specifically, it seeks to define personal identifying information ("PII") not just as personal identifiers but also

> any information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information that is linked or linkable to a specific individual…

*See* Exhibit 62 (comparing D.E. # 342-2 with Exhibit 42, p. 118). The language would allow the government to designate almost anything as protected. Given the government's plan to broadly designate records as protected, and given that the parties did not agree to such language, the Court should not adopt such language.

### B. The Court Should Not Permit the Government to Designate Every Bank Record as Confidential.

The government seeks to designate a number of bank records as confidential, including the records for the *in rem* defendants. Claimant requested these records on September 19, 2014. Exhibit 1 and 42, pp. 20-25. On December 16, 2014, counsel for the government advised Claimant's counsel that it could only produce these records pursuant to a protective order. Claimant's counsel voiced multiple objections to this unnecessary and burdensome designation and continued to ask the government to justify its position. Third Silversmith Decl. ¶ 7; Exhibit 42, pp. 111, 132, 162-66.

As a general matter, just because litigation involves bank records, there is not necessarily a need for a protective order. Federal Rule of Civil Procedure 5.2 and Local Rule 5.4(f) both prohibit a party in a civil suit from filing certain personal identifiers on PACER. These rules must be complied with regardless of whether a protective order is in place. In *Grewal & Associates, P.C. v. Hartford Cas. Ins. Co.*, 2010 WL 3909491, at *5 (W.D. Mich. Sept. 30, 2010), the plaintiff requested that the court quash certain subpoenas issued to it, or that the court

11

issue a protective order allowing it to redact client identities and other information, such as client bank account numbers and social security numbers, to protect the confidences of the firm's clients. The court denied this request holding that to "the extent that plaintiff is concerned about the filing of social security numbers or other personal identifiers in the court record, counsel are reminded of the redaction obligations imposed by Fed. R. Civ. P. 5.2." This reasoning applies equally to this proceeding. Moreover, in this case (as is common practice), the account numbers for the *in rem* defendants are in the caption of the case, refuting any argument that these numbers are somehow confidential.

The government has not articulated why bank records need to be treated any differently than any of other materials collected in the criminal case. It was only on February 18, 2015, that the government agreed to produce *some* bank records without a protective order. In response to this concession, counsel for Claimant asked that the government produce a list of bank accounts, which, it planned to designate as confidential. Exhibit 42, p.148-52. The government, stating additional dialogue was not necessary, declined to do so, instead filing this motion. *Id. It still has not produced the non-confidential bank records.* Third Silversmith Decl., ¶ 8.

Other than Claimant's own bank records, Claimant has no idea what the government intends to designate as confidential. The government's argument that it does not know what accounts are claimed as owned or controlled by Claimant is easily met. If the government provides a list of the bank accounts, Claimant may easily respond whether the records were his or under his control. The parties then should be able to reach an agreement as to what is marked as subject to a protective order and what is not. Claimant made this request before the government filed its motion for a protective order, but the government refused this offer. Exhibit 42, pp. 162-66.

In its motion for a protective order, the government asserts that a number of relevant accounts were held in bearer form, and that as a result, the true account holder cannot be identified. Of course, the government neglects to mention that these accounts were Swiss bank accounts, and Swiss law required that the true account holder sign a Form 1A, which identifies the beneficial owner of the account. Moreover, Claimant's counsel believes that the only accounts that were held in bearer shares were Peter Kiritchenko's accounts, and that those accounts have been closed for almost two decades. These were also part of the admitted trial exhibit production. As such, there is no basis for designating records from these accounts as confidential.

In sum, Claimant submits that the most logical approach is for the Court to order the government to produce the bank records for the *in rem* defendants now, without a protective order and for accounts where the government claims ownership is not clear, a list of the accounts for Claimant's response. Subject to Claimant's right to object to improper confidentiality designations, the remaining bank records can be designated as confidential.

### C.     The Protective Order Should Clarify the Burdens on Designation.

The protective order prepared by the government states that the non-producing party may object to the designation of certain records. Docket Entry No. 342-2. That said, given the government's plan to designate almost everything as confidential, counsel for Claimant would refer the Court to language in *Gillard*, which states:

> After receiving documents, the opposing party has the right to contest those documents which it believes not to be confidential. At this stage, the party seeking the protection shoulders the burden of proof in justifying retaining the confidentiality designation. Thus, the burden of proving confidentiality never shifts from the party asserting that claim – only the burden of raising that issue.

13

*Gillard*, 196 F.R.D. at 386 (quoting *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*, 121 F.R.D. 264, 268 (M.D.N.C. 1988)). Claimant requests that the Court insert the following language into the protective order before the last sentence in ¶ 10:

> In the event that the non-producing Party objects to the designation of a document or other item as protected, the burden to show that the records need to be protected shall remain with the producing Party.

Counsel for Claimant believes that this additional sentence will clarify the respective burdens and may help prevent improper designation. At any rate, the language cited by the government in the text of the proposed protective order, namely that the designation "shall be limited to documents, testimony, or other materials produced in this case that the producing party reasonably believes not to be in the public domain" still places an undue burden on Claimant. *See* Protective Order (D.E. # 342-2 ¶ 1).

### D. The Protective Order's Limitation on Claimant's Use and Retention of Records is Unwarranted.

Claimant has a continued need for the records provided by the government. Claimant is presently litigating related causes of action in Antigua, Liechtenstein, and the Ukraine. The government's protective order, as written, limits with whom Claimant may share these records. The protective order also requires that Claimant return the records to the government upon the conclusion of this litigation. Given that the bank records among others are the Claimant's own records or were previously produced without a protective order, this is an unwarranted and unnecessary burden.

"[It] is well established that the Federal Rules of Civil Procedures create no automatic prohibition against using discovery obtained in one litigation in another litigation" unless the request to use these records in other litigation is made in bad faith. *Duling*, 266 F.R.D. at 75-76

14

& n.8; *see also Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19-20 (2d Cir. 1992) (district court did not abuse its discretion by declining to enter a protective order prohibiting parties from using discovery from that litigation in another action in the United Kingdom) (cited in *Duling*). The *Duling* court did state that sharing between litigation would not be appropriate where the information is "private or potentially embarrassing." 266 F.R.D. at 78. In this matter, neither side has proffered that the files contain anything that would be personal in nature such as the contents of an employment file.

Under the protective order as drafted, Claimant cannot make use of these records in other proceedings. This places an undue and unnecessary burden on Claimant, with no justification from the government as to why such a requirement is appropriate. If the Court does not wish to accept Claimant's suggested modification appearing on page 1 of this Opposition, Claimant would ask that the Court still permit Claimant to make use of the criminal trial records and certain bank records in other litigation.

## **CONCLUSION**

Claimant views the government's claimed need for such a broad protective order as an excuse for delaying its discovery obligations. As a practical matter, because it is Claimant seeking these records, he clearly has no incentive to delay. The government has repeatedly urged Claimant not to begin discovery or for discovery to be stayed. *See* Exhibit 42, pp. 1, 17, 32, 48.

Claimant respectfully requests that the Court modify the protective order as requested. For the Court's convenience, Claimant has attached the protective order to which the parties had previously agreed along with Claimant's proposed additions from pages 1 and 15 of this Opposition, in both final and redlined format.

Dated: March 11, 2015.

>Respectfully submitted,
>
>**BLANK ROME LLP**
>
>By: /s/ Ian M. Comisky
>    Ian M. Comisky (D.C. Bar No. 927608)
>    Matthew D. Lee (D.C. Bar No. 453529)
>One Logan Square, 130 N. 18th Street
>Philadelphia PA 19103
>Phone: (215) 569-5646
>Fax: (215) 832-5646
>Comisky-im@blankrome.com
>Lee-m@blankrome.com
>
>**SMITH & ZIMMERMAN, PLLC**
>
>By: /s/ David B. Smith
>    David B. Smith (D.C. Bar No. 403068)
>108 N. Alfred St.
>Alexandria, VA 22314
>Phone: (703) 548-8911
>Fax: (703) 548-8935
>Dsmith@smithzimmerman.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 11, 2015, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court for the District of Columbia, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.  I also certify that parties not so noticed have been served in accordance with Fed. R. Civ. Pr. 5(d).

                                                                                          /s/ Ian M. Comisky