# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

         **v.**                            **Civil Action No. 04-798 (PLF/GMH)**

**ALL ASSETS HELD AT BANK JULIUS**
**BAER & COMPANY, LTD., GUERNSEY**
**BRANCH, ACCOUNT NUMBER 121128,**
**IN THE NAME OF PAVLO LAZARENKO,**
***ET AL.*,**

      **Defendants *In Rem*.**

## MEMORANDUM OPINION

On March 26, 2015, this case was referred to the undersigned for purposes of management of discovery and resolution of any discovery-related disputes. Currently ripe for resolution by the undersigned are (1) Claimant Pavel Lazarenko's ("Claimant" or "Lazarenko") First Motion to Compel [Dkt. 336];[1] and (2) the government's Motion to Compel Claimant's First Set of Interrogatories and to Stay Discovery Pending Such Responses [Dkt. 365].[2] After a thorough review of the parties' briefs concerning both motions, of the arguments of counsel at

---

[1] The briefs submitted in connection with Claimant's motion to compel are: Memorandum in Support of Claimant Pavel Lazarenko's Motion to Compel [Dkt. 336-1] ("Cl.'s Memo."); United States' Opposition to Claimant Pavel Lazarenko's Motion to Compel Production of Records [Dkt. 354] ("Gov't Opp."); and Claimant Pavel Lazarenko's Reply Memorandum in Support of his First Motion to Compel [Dkt. 355] ("Cl.'s Reply").

[2] The briefs submitted in connection with the government's motion to compel are: Plaintiff's Statement of Points and Authorities in Support of United States' Motion to Compel Pavel Lazarenko's Responses to Plaintiff's First Set of Interrogatories and to Stay Further Discovery Pending Such Requests [Dkt. 365 and 368-3] ("Gov't Memo."); Claimant Pavel Lazarenko's Response in Opposition to the Government's Motion to Compel Response to First Set of Interrogatories and to Stay Further Discovery Pending Such Requests [Dkt. 373-2] ("Cl.'s Opp."); and United States' Reply in Support of its Motion to Compel Pavel Lazarenko's Responses to Plaintiff's First Set of Interrogatories and to Stay Further Discovery Proceedings Pending Such Requests [Dkt. 376] ("Gov't Reply"). It should be noted that Claimant's Opposition to the government's motion to compel was filed under seal at Claimant's request. This Memorandum Opinion includes none of the sensitive information that formed the basis for the request to seal Claimant's opposition.

hearings on the motions on May 19, 2015, May 21, 2015, and May 27, 2015, and of the entire

record herein, the Court will grant in part and deny in part both motions.  The Court's rationale

for doing so follows.

**BACKGROUND**

The factual background concerning this eleven-year-old in rem asset forfeiture action has

been described in multiple opinions by Judge Friedman.  See, e.g., United States v. All Assets

Held at Bank Julius Baer & Co., Ltd., 772 F. Supp. 2d 191, 194 (D.D.C. 2011).[3]   This Court will

not repeat that lengthy history here.  The facts that are pertinent to adjudication of the parties'

motions to compel are summarized below.

In its First Amended Complaint ("Amended Complaint"), the United States seeks the

forfeiture of more than $250 million deposited in over 20 bank accounts located in Guernsey,

Antigua and Barbuda, Switzerland, Lithuania, and Lichtenstein (the "in rem assets" or "in rem

defendants").  First Amended Complaint [Dkt. 20] ("Am. Compl.") at ¶¶ 1, 5.  The government

alleges that the money in those accounts is traceable to a "variety of acts of fraud, extortion,

bribery, misappropriation, and/or embezzlement" committed by Claimant, the former Prime

Minister of the Ukraine, or by his associates between 1992 and 1998.  Id. at ¶¶ 6, 8, 10.  The

criminal schemes included:

> Skimming funds in United States dollars from multimillion dollar
> contracts for the distribution of natural gas imports in the Ukraine and
> providing kickbacks to Lazarenko, obtaining property by wrongful use of
> fear or under color of official right, making payments to Lazarenko to
> influence or induce him to act or refrain from an official act, manipulating
> state businesses to provide millions of dollars in goods to private
> businesses and individuals that would share their profits with Lazarenko,
> diverting millions of United States dollars to their personal use by using
> fraudulent contracts to purchase goods for state enterprises at inflated

---

[3] See also United States v. All Assets Held at Bank Julius Baer & Co, Ltd., 772 F. Supp. 2d 205 (D.D.C. 2011);
United States v. All Assets Held at Bank Julius Baer & Co. Ltd., 664 F. Supp. 2d 97 (D.D.C. 2009); United States v.
All Assets Held at Bank Julius Baer & Co., Ltd., 571 F. Supp. 2d 1 (D.D.C. 2008).

>prices or to falsify the purchase of goods that were not purchased, and concealing Lazarenko's association with corporations doing business with the local and national governments to deprive the Ukraine of the honest services of its employees.

Id. at ¶ 10.   Claimant and his associates allegedly opened bank accounts in the Switzerland, Antigua, Guernsey, Poland, Liechtenstein, and Cyprus, and transferred the proceeds of these schemes "into and out of these accounts in an effort to conceal or disguise the nature, origin, location, source, ownership or control of these proceeds and property."  Id. at ¶ 13.  The government claims that large sums of U.S. dollars were also transferred into and out of financial institutions in the United States.  Id. at ¶¶ 11-12.   The United States asserts its right to the funds pursuant to federal statutes that provide for the forfeiture to the government of funds traceable, or otherwise related to or involved in, criminal activity that occurred at least part in the United States.  Id. at ¶¶ 1; see also 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

Notably, during the six-year period between 1992 and 1998, the government alleges that Claimant derived "a personal fortune of more than $300 million in United States dollars through the abuse of his office" in the Ukraine.  Id. at ¶ 8.  During the same period, the government asserts that Claimant "held no . . . substantial position of paid employment" other than his Ukrainian regional government posts and his stint as Prime Minister between 1996 and 1997.  Id. at ¶¶ 6-7.  His income from those positions was meager; the government asserts that Claimant's "combined reported income for 1996 and 1997 was less than the equivalent of $15,000 in United States dollars."  Id. at ¶ 7.

Claimant denies many of the government's allegations in the Amended Complaint.  See generally Answer [Dkt. 268].  On the merits, the divide between the parties is wide.  It is Claimant's position, as represented by his counsel at the May 27, 2015, hearing, that he is the beneficial owner of, or has an interest in, all or nearly all of the in rem assets, and that the more

than $250 million at issue was not derived from any illegitimate activity or sources.  <u>See</u> May 27, 2015 Tr. at 73-74; <u>see</u> <u>also</u> Claimant's Verified Claim and Statement of Interest or Right in Property Subject to Forfeiture <u>in</u> <u>Rem</u> [Dkt. 29] ("Cl.'s Verified Claim").

Based on some of the same conduct identified in the Amended Complaint, Claimant was indicted in the Northern District of California in 2001 for money laundering and conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a) and (h), for wire fraud and honest services fraud in violation of 18 U.S.C. §§ 1343 and 1346, for transportation of stolen property in violation of 18 U.S.C. § 2314, and for aiding and abetting in violation of 18 U.S.C. § 2.  Am. Compl. at ¶ 17.  Claimant's jury trial in California began on March 15, 2005.  <u>Id.</u> at ¶ 18.  At the close of the government's case-in-chief, the district court dismissed 24 of the government's 53 counts pursuant to Rule 29 of the Federal Rules of Criminal Procedure.  <u>See</u> <u>United States. v.</u> <u>Pavel Lazarenko</u>, 564 F.3d1026, 1032-33 (9th Cir. 2009).  On June 3, 2005, the jury convicted Claimant on the remaining charges.  <u>Id.</u>  The district court dismissed an additional 15 of the counts following the jury's verdict.  <u>Id.</u>  On appeal, six of Claimant's remaining convictions were reversed, and eight were affirmed.  <u>Id.</u> at 1029-30.  These remaining eight counts of conviction were related to money laundering.  <u>Id.</u> at 1037-38.  Following his appeal, Claimant was resentenced to a term of imprisonment of 97 months.  Cl.'s Memo. at 14.  He was released from custody on May 9, 2013.  <u>Id.</u>

Discovery in the criminal case was voluminous, and included approximately 70,000 pages of documents and over 50 depositions in seven countries.  Cl.'s Memo. at 7-8, 16-17; Gov't Opp. at 7.  Unfortunately, Claimant's attorneys destroyed, lost, or damaged many of the records produced by the United States in the criminal matter, even though those records were

likely relevant to Claimant's defense of this asset forfeiture case.[4]  <u>Id.</u>  Much of the discovery

that Claimant now seeks in this matter is focused on reconstructing the discovery he previously

received in the criminal case – a long, and time-consuming process, as the Court's recent

scheduling order demonstrates,[5] that would have been unnecessary had Claimant's attorneys

retained the discovery they received in the criminal matter.  Equally problematic, the Department

of Justice ("DOJ") trial attorneys responsible for litigating this matter apparently did not collect

and retain the discovery produced by the United States in Claimant's criminal case as it was

being produced, and are presently in the process of attempting to reassemble what was

produced.[6]  <u>Id.</u>

## LEGAL STANDARDS

### 1.  Scope of Discovery

It has long been recognized that, "[u]nder the broad sweep of Rule 26(b)(1) of the Federal

Rules of Civil Procedure, a party 'may obtain discovery regarding any matter, not privileged,

which is relevant to the subject matter involved.'"  <u>Friedman v. Bache Halsey Stuart Shields,</u>

<u>Inc.</u>, 738 F.2d 1336, 1348-49 (D.C. Cir. 1984).  "The broad presumption of Rule 26 in favor of

discovery, however, is bounded by the limitations that 'come into existence when the inquiry

touches upon the irrelevant or encroaches upon the recognized domains of privilege.'"  <u>Pederson</u>

<u>v. Preston</u>, 250 F.R.D. 61, 64 (D.D.C. 2008) (<u>quoting</u> <u>Ass'n for Women in Science v. Califano</u>,

556 F.2d 339, 343 (D.C. Cir. 1977)).  "[D]iscovery of matters not reasonably calculated to lead

---

[4] The attorneys representing Claimant in this action did not represent him in his criminal case.

[5] <u>See</u> June 12, 2015, Discovery Scheduling Order [Dkt. 403] at 4 (scheduling the government's production of documents through December 20, 2015).

[6] This civil forfeiture action was filed on May 14, 2004, during the middle of Claimant's criminal trial.  The DOJ trial attorneys representing the United States in this matter were not the attorneys responsible for prosecuting Claimant in his criminal case.

to the discovery of admissible evidence are not within the scope of discovery."  <u>Id.</u>  Further, the Court "must limit the frequency or extent of discovery otherwise allowed" by Rule 26(b)(1) if it determines that the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," or the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C)(i) and (ii).

## 2.  Document Requests

Rule 34 of the Federal Rules of Civil Procedure sets forth the procedures for discovery through document requests.  <u>See</u> Fed. R. Civ. P. 34.   A request for documents must "describe with reasonable particularity each item or category of items" being requested.  Fed. R. Civ. P. 34(b)(1)(A).  For each item or category, the responding party must "either state that inspection . . . will be permitted as requested or state an objection to the request, including the reasons."  Fed. R. Civ. P. 34(b)(2)(B).  "An objection to part of a request must specify the part and permit inspection of the rest."  Fed. R. Civ. P. 34(b)(2)(C).

## 3.  Interrogatories

Rule 33 of the Federal Rules of Civil Procedure sets forth the procedures for discovery through interrogatories.  <u>See</u> Fed. R. Civ. P. 33.  An interrogatory may "relate to any matter that may be inquired into under Rule 26(b)."  Fed. R. Civ. P. 33(a)(2).  Rule 33(b)(3) requires that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing and under oath."  Fed. R. Civ. P. 33(b)(3).  "A party to whom an interrogatory is propounded 'must provide true, explicit, responsive, complete, and candid answers.'"  <u>Walls v.</u>

<u>Paulson</u>, 250 F.R.D. 48, 50 (D.D.C. 2008) (<u>quoting</u> <u>Equal Rights Ctr. v. Post Properties, Inc.</u>, 246 F.R.D. 29, 32 (D.D.C. 2007)).  If a party objects to an interrogatory, it must state its grounds for objection "with specificity."  Fed. R. Civ. P. 33(b)(4).

### 4.  Motions to Compel

Rule 37 of the Federal Rules of Civil Procedure provide that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure of discovery." Fed. R. Civ. P. 37(a)(1).   A party seeking discovery may move for an order "compelling an answer, designation, production or inspection" from a party who fails to comply with Rules 33 (interrogatories) or 34 (documents requests).  Fed. R. Civ. P. 37(a)(3)(A).  An "evasive or incomplete disclosure, answer, or response" will be "treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).  "The party moving to compel discovery has the burden of proving that the opposing party's answers were incomplete."  <u>Equal Rights Ctr.</u>, 246 F.R.D. at 32 (internal citations omitted).

## DISCUSSION

### 1.  Claimant's Motion to Compel Responses to Claimant's First Set of Requests for Production

Following a period of informal discovery beginning in July of 2014, Claimant served his First Set of Requests for Production on the government on September 19, 2014.  Cl.'s Memo. at 18.  Unsatisfied with the government's responses to many of its requests, and unable to reach accord with the government informally, Claimant filed his first motion to compel on January 14, 2015.  <u>Id.</u> at 16-20.  In his motion, Claimaint seeks to compel the government's response, or further response, to 34 requests for production.  <u>See</u> Claimant's Pavel Lazarenko's Motion to Compel [Dkt. 336] at 1-3.  The resolution of the parties' disputes over those requests for production – whether by agreement of the parties, or adjudication by this Court – follows.

7

### a.   Document Request Disputes Resolved By Agreement of the Parties

Perhaps not surprisingly, the parties were far more agreeable when appearing before the Court on Claimant's motion to compel than a review of their briefs would suggest was possible. Most of the parties' disagreements concerning Claimant's first requests for production were resolved by consent of the parties at the May 19, 2015, and May 21, 2015, hearings.  The Court commends the parties on their willingness to compromise but notes that it should not have taken the intervention of the Court for those accommodations to have been reached.  As another judge on this Court has observed, "[i]t is a waste of this Court's time and resources to adjudicate a dispute that could have been resolved by the parties themselves."  <u>U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.</u>, 235 F.R.D. 521, 529 (D.D.C. 2006).

Going forward, the Court instructs counsel to be more diligent in meeting their obligations to work with each other collegially, conscientiously, and in good faith to resolve discovery disputes before they are raised with the Court.[7]  Further, prior to the filing of any new discovery motions in this matter, the parties are instructed to first reach out to the chambers of the undersigned to discuss the dispute with the Court and to determine if it can be resolved without formal briefing.  Failure to meet either of these obligations, or to comply with the Court's rulings throughout the discovery process, will subject the offending party to the denial of subsequent discovery motions and/or to sanctions.  <u>See</u> <u>id.</u> (denying motion to compel for failure to meet and confer in good faith).

---

[7] Both parties assert in their briefs in support of their motions to compel that the other party failed to satisfy its obligation to meet and confer in good faith concerning the discovery disputes at issue, as required by Local Civil Rule 7(m) and Federal Rule of Civil Procedure 37(a)(2)(A).  Gov't Opp. at 12-13.

For the record and the convenience of Judge Friedman, the Court describes below the parties' agreements concerning Claimant's First Set of Requests for Production, on which basis discovery is presently proceeding pursuant to the July 1, 2015, Amended Scheduling Order.

### i. Document Request 1: "Any documents known to the plaintiff which in any way related to the facts and allegations asserted in the Amended Complaint."

Claimant agreed at the May 19, 2015, hearing, that if the government responds to his other document requests, he will deem the government to have satisfied its obligation to respond to Document Request 1. May 19, 2015 Tr. at 58-59. With that understanding, the Court considers Claimant's motion to compel with respect to Document Request 1 resolved.

### ii. Document Request 2: "All documents and exhibits Plaintiff intends to use at trial of this matter."

### Document Request 8: "All documents that Plaintiff intends to use at Mr. Lazarenko's deposition."

Claimant agreed at the May 19, 2015, hearing, that he was not seeking by Document Requests 2 and 8 to compel the government to identify, mark, and produce in discovery its trial and deposition exhibits at this early juncture in the proceedings. May 19, 2015 Tr. at 59, 121-22. Rather, his stated intent in lodging the requests was to avoid surprise at trial, or at Claimant's deposition, if the government were to withhold documents in discovery it would later seek to use as exhibits because Claimant "just didn't ask the right question." Id. at 59-62, 121. To address this concern, the government agreed at the hearing that it would produce to Claimant, in the regular course of discovery, whatever documents it intends to use as affirmative evidence[8] at trial, or as exhibits at Claimant's deposition, but would not mark those documents as such when

---

[8] The government's agreement does not extend to the production of exhibits to be used solely for purposes of impeachment. See Fed. R. Civ. P. 26(a)(3)(A).

they were produced.  Claimant did not object to this approach.  Accordingly, the Court considers

Claimant's motion to compel with respect to Document Requests 2 and 8 resolved.[9]

### iii.   Document Request 3:  "Any depositions that you plan to introduce at trial."

At the May 19, 2015, hearing, Claimant withdrew his objection to the government's

response to this request.  May 19, 2015 Tr. at 64.  Accordingly, the Court considers Claimant's

motion to compel with respect to Document Request 3 resolved.

### iv.   Document Request 4:  "Copies of all grand jury transcripts for any witness who testified about the subject matter of the Amended Complaint."

### Document Request 5:  "All records that Plaintiff obtained by grand jury subpoena as part of the government's criminal investigation of Mr. Lazarenko."

Document Request 4 seeks all grand jury transcripts of any witness who testified before a

grand jury about the subject matter of the Amended Complaint, whether or not that witness

testified at Claimant's criminal trial.  May 19, 2015 Tr. at 75, 79.  At the May 19, 2015, hearing,

Claimant agreed to address the government's overbreadth objection by narrowing Document

Request 5 to all records that Plaintiff obtained by grand jury subpoena as part of the

government's criminal investigation of Mr. Lazarenko "which relate to the allegations in the

Amended Complaint."  Id. at 83-84.  The government does not object to producing all such

materials provided that they relate to the subject matter of the Amended Complaint, and that it is

authorized to produce them consistent with its obligations under Federal Rule of Criminal

Procedure 6(e).  Id. at 74-79.[10]

---

[9] In reaching this agreement regarding trial exhibits, both parties understood that as part of this Court's pretrial order they will be required to identify their trial exhibits.  See Fed. R. Civ. P. 26(a)(3)(A); May 19, 2015 Tr. at 59-60.

[10] To the extent responsive grand jury transcripts have not yet been transcribed, Claimant will bear the cost of transcribing the same.

As for the latter issue, the government believes it may be authorized to produce the responsive grand jury materials based on an order that was issued in Claimant's criminal case. Id. at 74, 83.  The government is coordinating with the U.S. Attorney's Office for the Northern District of California to determine the scope of its authority under that order to release grand jury materials to Claimant in this matter.  Id. at 83.  Pursuant to this Court's July 1, 2015, Amended Discovery Scheduling Order, the government is to disclose the scope of that authority to Claimant on or before July 13, 2015.  Amended Discovery Scheduling Order [Dkt. 411] at 2.  In the event the United States determines that it lacks authority to produce the requested materials in this matter, the United States has agreed that it will not oppose a motion by Claimant, made in the Northern District of California, seeking the disclosure of the requested grand jury information.  May 19, 2015 Tr. at 83; see also United States ex rel. Landis v. Tailwind Sports Corp., No. 10-CIV-976, 2014 WL 4851741, at *6 (D.D.C. 2014) ("[A] party seeking disclosure of Rule 6(e) materials for use 'in connection with a judicial proceeding' must petition the court where the grand jury was convened."); see also Fed. R. Cr. P. 6(e)(3)(F) ("A petition to disclose a grand-jury matter under Rule 6(e)(3)(E)(i) must be filed in the district where the grand jury convened.").  With that understanding, the Court considers Claimant's motion to compel with respect to Document Requests 4 and 5 resolved.

> **v.** **Document Request 6:** "All records that Plaintiff obtained by other process as part of the government's criminal investigation of Mr. Lazarenko."
>
> **Document Request 7:** "All records that Plaintiff obtained voluntarily during the Government's criminal investigation of Mr. Lazarenko."
>
> **Document Request 11:** "All documents that refer or relate to any searches and seizures connected with this case."

At the May 19, 2015, hearing, the parties agreed, or did not object, to (1) clarifying that the phrase "other process" in Document Request 6 refers only to non-grand jury, "legal" process, e.g., search warrants, orders pursuant to 18 U.S.C. § 2703(d), international requests including letters rogatory and Mutual Legal Assistance Treaties, etc., and (2) narrowing the request to any such records obtained as part of the government's criminal investigation of Mr. Lazarenko "which relate to the allegations in the Amended Complaint." May 19, 2015 Tr. at 87-93, 118. Similarly, the parties also agreed to limit Document Requests 7 and 11 to documents obtained as part of the government's criminal investigation of Mr. Lazarenko "which relate to the allegations in the Amended Complaint." Id. at 119-24. With that understanding, the Court considers Claimant's motion to compel with respect to Document Requests 6, 7 and 11 resolved.

> **vi.** **Document Request 14:** "Any documents that Plaintiff received as a result of the MLAT requests referenced in [document request] 12."
>
> **Document Request 15:** "Translations of any documents that Plaintiff received from the MLAT requests referenced in [document request] 12."

With respect to Document Request 14, the government agreed at the May 19, 2015, hearing that it would produce all documents that it received in response to MLAT requests. Id. at 125. At the request of Claimant, the government further agreed to identify which documents were received in response to MLAT requests as part of the criminal investigation of Claimant

and which were received in response to MLAT requests as part of this civil forfeiture action.  Id.

at 127-31.  With respect to Document Request 15, the government agreed to produce to Claimant

any extant translations that it possesses of the documents that it received in response to

international requests for assistance.[11]  Id. at 131.  Accordingly, the Court considers Claimant's

motion to compel with respect to Document Requests 14 and 15 resolved.

> ### vii.   Document Request 12:  "Copies of all Mutual Legal Assistance Treat ('MLAT') requests made to obtain any evidence in this case or the criminal prosecution of Mr. Lazarenko."
>
> ### Document Request 13:  "Copies of all MLAT requests received by Plaintiff pertaining to Mr. Lazarenko or Mr. Peter Kiritchenko."

These two requests seek the actual MLAT requests made by the government to obtain

evidence in this case or in the criminal case, and any foreign MLAT requests received by the

government pertaining to Claimant or Mr. Kiritchenko.  The Court believes the requests, as

written, are overly broad and that they seek sensitive information at least with respect to the

requests that the government received from foreign governments concerning Claimant and others

pursuant to overseas investigations.  Indeed, Claimant admitted at the hearing that the requests

were overbroad.  Id. at 139-42.

To assist Claimant in narrowing these requests, the government agreed at the May 19,

2015, hearing to provide him with (1) a list of the MLATs at issue, including the date of the

MLAT, the foreign country that sent or received the MLAT, and a brief statement of the

MLAT's subject matter; and (2) a list of the overseas witnesses whom the government sought to

interview pursuant to a MLAT request as part of its criminal investigation of Claimant as it

relates to the allegations in the Amended Complaint, and whether or not the deposition actually

---

[11] The government also agreed to produce to Claimant any extant translations responsive to Document Request 36. Accordingly, the Court considers Claimant's motion to compel with respect to that request resolved as well.

went forward.  Id. at 142, 151, 155-57, 158.  Once Claimant has received this material, his

counsel will meet and confer with the government to narrow Document Requests 12 and 13,

and/or, if possible, to resolve his need for the information he seeks through stipulation.  With that

understanding, the Court considers Claimant's motion to compel with respect to Document

Requests 12 and 13 resolved.

> **viii.  Document Request 18:  "Any law enforcement memorandum prepared about the subjects of the Amended Complaint."**
>
> **Document Request 19:  "Any law enforcement memorandum prepared about Mr. Lazarenko."**
>
> **Document Request 20:  "Any law enforcement memorandum prepared about Peter Kiritchenko."**
>
> **Document Request 21:  "Any law enforcement memorandum prepared about Julia Tymoshenko."**
>
> **Document Request 22:  "Any law enforcement memorandum prepared about Oleksander Tymoshenko."**
>
> **Document Request 23:  "Any law enforcement memorandum prepared about Alex Lazarenko."**
>
> **Document Request 24:  "Any law enforcement memorandum prepared about Alexei Ditiakovsky."**

The United States agreed at the May 19, 2015, hearing to produce all law enforcement

memoranda responsive to Document Requests 18 to 24 once a protective order was entered,[12]

provided such production was limited to those law enforcement memoranda "which relate to the

allegations in the Amended Complaint."  Id. at 191-92.  Claimant did not object to the latter

limitation, provided that the government agreed to produce all responsive witness memoranda,

whether created by U.S. or foreign law enforcement.  Id. at 192-93.  The government so agreed.

---

[12] The protective order was entered by the Court on May 29, 2015.  See Protective Order [Dkt. 393].

Id.  With that understanding, the Court considers Claimant's motion to compel with respect to Document Requests 18 to 24 resolved.

> ### ix. Document Request 25:  "The FBI evidence log pertaining to the investigation of Mr. Lazarenko."

The parties agreed at the May 19, 2015, hearing, that, in response to this request, the government would produce an inventory of FBI 1A envelopes in the FBI case file.  Id. at 193-95. With that understanding, the Court considers Claimant's motion to compel with respect to Document Request 25 resolved.

> ### x. Document Request 27:  "Any documents reviewed by Revenue Agent Charles Tonna to prepare his summary charts."

The government agreed in its Opposition and at the May 19, 2015, hearing that it would produce all documents responsive to this request.  Id. at 195-99; Opp. at 46-47.  With that understanding, the Court considers Claimant's motion to compel with respect to Document Request 27 resolved.

> ### xi. Document Request 30:  "Any tapes provided to the U.S. Department of State by Mykola Melnychenko."
>
> ### Document Request 31:  "All documents analyzing the tapes provided by Melnychenko (including any translations)."
>
> ### Document Request 32:  "Any interview memorandum of meeting with Melnychenko."

The government agreed at the May 19 and May 21, 2015,[13] hearings to produce, pursuant to the protective order, the Melnychenko audio recordings that were previously produced to Claimant in the criminal matter, to the extent the recordings can be found and identified.  Id. at

---

[13] As of the filing of this Memorandum Opinion, a transcript of the May 21, 2015, hearing had not yet been prepared.  Accordingly, citation in this opinion to specific pages from the transcript of that hearing was not possible.

195-99.[14]   Further, the government agreed to produce any extant analyses of the Melnychenko

recordings, translations of the recordings, and memoranda reflecting interviews of Mr.

Melnychenko concerning the recordings.  With that understanding, the Court considers

Claimant's motion to compel with respect to Document Requests 30, 31, and 32 resolved.

>    **xii.   Document Request 33:  "All documents used to produce the State**
>    **Department Reports as they related to Mr. Lazarenko or the**
>    **specified political dissidents."[15]**

The United States represented in its Opposition and at the May 21, 2015, hearing, that it

has searched for documents responsive Document Request 33 and determined that they no longer

exist.  Affidavit of Anna Cavnar ("Cavnar Aff.") [Dkt. 354-22] at ¶ 12.  Accordingly, the Court

considers Claimant's motion to compel with respect to Document Request 33 resolved.[16]

>    **xiii.   Document Request 34:  "All documents relating to the arrest and**
>    **prosecution of the specified political dissidents."**
>
>    **Document Request 43:  "Any reports about the movement of**
>    **money internationally by the Gromada Party."**

To further narrow these two related requests, and to facilitate the search for responsive

documents, the government agreed at the May 21, 201, hearing to provide Claimant with the

search terms used by the State Department to locate documents related to Lazarenko and the

---

[14] The government represented at the May 21, 2015, hearing that it had located three audio CDs containing
Melnychenko recordings that were produced in the criminal case, and had identified, but not yet located, 32
additional CDs of recordings that may have been produced in the criminal discovery.  To the extent that any such
recordings cannot be located by the United States, Claimant reserves the right to seek relief from the Court in the
future for spoliation of evidence.  Further, Claimant reserves the right, after reviewing the Melnychenko recordings
that the government will produce, to seek additional Melnychenko recordings from the government that may not
have been produced in the criminal case.

[15] In his document requests, Claimant defined the term "specified political dissidents" to refer to N. Agafanov,
Borys Feldman, Petro Shkudun, Mykola Syvulsky, Oleksandr Tymoshenkom, Julia Tymoshenko and Volodymyr
Yufremov.  See Claimant Pavel Lazarenko's First Set of Requests for Production [Dkt. 336-4] at 3.

[16] Claimant reserves the right to seek relief from the Court in the future for spoliation of evidence responsive to
Document Request 33.

allegations in the Amended Complaint.  Further, the parties agreed to meet and confer to identify

terms and topics to use to search State Department electronic and hard copy records between

1994 and 1998 for records pertaining to Yulia Tymoshenko regarding: (1) why payments were

made to Claimant by Ms. Tymoshenko during the relevant time period; (2) why funds were

moved in the manner they were between Ms. Tymoshenko and Claimant during the relevant time

period; (3) why natural gas contracts were titled to United Energy Systems of Ukraine and

United Energy International, Ltd. during the relevant time period; and (4) how and why funds

were moved by or for the "Gromada" or Hromada Party during the relevant time period.

Accordingly, the Court considers Claimant's motion to compel with respect to Document

Requests 34 and 43 resolved.

> **xiv. Document Request 37:  "Any documents that related to impeachment material of any witness Plaintiff intend [sic] to call at trial."**
>
> **Document Request 38:  "English translations of the documents referenced in [Document Request] 37."**
>
> **Document Request 39:  "Any communications between the Plaintiff and any witness who testified at the criminal trial."**

At the May 21, 2015, hearing, Claimant withdrew Document Requests 37, 38, and 39.

Accordingly, the Court considers Claimant's motion to compel with respect these requests

resolved.

### b.  Document Request Disputes Resolved By the Court

> **Document Request 16:  "Any communication between Plaintiff and the representatives of any foreign government about the subject matter of this Amended Complaint."**

> **Document Request 17:  "Any communication between Plaintiff and the representatives of any foreign government about Mr. Lazarenko."**

The government asserts that, given the breadth of the international criminal investigation that led to Claimant's prosecution and this forfeiture action, requiring the United States to search for and produce all of its communications with foreign government representatives about the subject matter of the Amended Complaint (Document Request 16) or about Claimant (Document Request 17) would be very time-consuming, extremely burdensome, and unlikely to lead to the discovery of admissible, probative evidence.  Id. at 166-69; Opp. at 32-36; Declaration of Kenneth J. Harris ("Harris Dec.") [Dkt. 354-25] at ¶¶ 19-20.  The Court agrees.  As Claimant is aware, the U.S. investigation of his criminal conduct spanned over 12 years and involved many law enforcement agents, attorneys, and agencies, as well as, according to the government, over 30 countries.  Opp. at 34; Harris Dec. at ¶ 19.  The effort to identify all past MLAT requests related to the investigation of Claimant – a narrow subset of the communications that Claimant seeks in these two requests – took three months to complete.  Harris Dec. at ¶ 20.  The government claims that identifying, reviewing, and potentially redacting,[17] all U.S. government documents and communications that mention the allegations in the Amended Complaint or Claimant – the former Prime Minister of the Ukraine – would be a "near impossible task."  Id. at ¶ 19.  Given the breadth of the requests, the United States alleges that the length of time it would

---

[17] Following retrieval, any responsive documents and communications would need to be reviewed for personally identifiable information and potential privilege.  Harris Dec. at ¶ 19.

take to complete such a task is "beyond reasonable estimation."  Id.  Claimant does not contest

any of these assertions.  Indeed, at the May 19, 2015, hearing, counsel for Claimant agreed that

Document Request 16 is "incredibly overbroad."  May 19, 2015 Tr. at 159.  If anything,

Document Request 17 is even broader as it seeks any communication with a foreign government

representative concerning Mr. Lazarenko, untethered from any allegation in this case.  Certainly,

most such communications would be of no value to Claimant.  See Harris Dec. at ¶ 19 (stating

that communications between U.S. and foreign government officials regarding requests for

assistance contain "continuous logistical" and "other insubstantial communications").

Further, the Court is convinced that, given the narrow purposes for which Claimant seeks

the government communications at issue concerning himself or the allegations in the Amended

Complaint, the burden on the government in identifying, reviewing, and possibly redacting, all

such communications would significantly outweigh the likelihood that a complete search for

responsive documents would produce admissible, probative evidence helpful to Claimant.  At the

May 19, 2015, hearing, Claimant's counsel asserted that documents responsive to these requests

(1) may help Claimant "identify witnesses and identify documents," and (2) may show that the

United States was acting in concert with violations of Claimant's rights by Ukrainian authorities

sufficient to establish a due process defense to this forfeiture action.  May 19, 2015 Tr. at 170.

As for (1), the government's responses to Claimant's other document requests – especially those

seeking documents and information received pursuant to MLAT requests for evidence located

overseas concerning the allegations in the Amended Complaint – will serve as a better, more

efficient, and less burdensome means of identifying "witnesses and documents" relevant to this

matter.  As for (2), Claimant has presented no evidence that the United States was acting in

concert with Ukrainian authorities during the criminal investigation who purportedly violated his

rights.[18]  Id. at 180-82.  Indeed, according to counsel for Claimant, it is precisely because

Claimant lacks such evidence that the two document requests at issue were lodged.  Id. at 182

(Court: "[W]hat's the evidence you have that the United States was involved in any [of the

allegations that Ukrainian authorities violated Claimant's rights]?"  Counsel for Claimant:

"That's exactly what we're looking for. We don't.").  The Court will not impose on the

government the extreme burden of responding to Claimant's two document requests in order to

permit such discovery – which the Court views as a fishing expedition – to proceed.[19]

Accordingly, the Court denies Claimant's motion to compel with respect to Document Requests

16 and 17.

### 2. Government's Motion to Compel Claimant's Response to its First Set of Interrogatories

The government's efforts to move its discovery forward vis-à-vis Claimant have met with

little success.  On December 5, 2014, the government served its First Set of Interrogatories on

Claimant.  Gov.'t Memo. at 6-8.  The government posed nine interrogatories in that first set of

requests.  Id.  Unsatisfied with Claimant's responses to those interrogatories, and failing to reach

an accord with Claimant informally, the government filed its first motion to compel challenging

the sufficiency of Claimant's responses to all nine interrogatories on April 29, 2015.  Id. at 9-15.

Claimant objects to responding to the government's interrogatories at this time for three primary

reasons: (1) because he claims he does not recall the information the government seeks in its

interrogatories and needs to review documents that are in the government's possession for

---

[18] For its part, the government takes "great exception to the suggestion that [it] violated Mr. Lazarenko's rights or was duped into violating his rights by Ukrainian authorities" during the course of the criminal investigation.  Id. at 184.

[19] Notably, Judge Jenkins, the trial judge in Claimant's criminal case in the Northern District of California, prohibited Claimant from asserting a due process defense in the criminal case based on the alleged violation of his rights by Ukrainian authorities.  Id. at 177-78, 184.

purposes of refreshing his recollection before responding under oath, (2) because he argues that five of the nine interrogatories are overbroad, and (3) because the government purportedly did not articulate probable cause in the Amended Complaint as to some of the transactions about which it seeks discovery.  Each of the Claimant's objections will be addressed in turn below.

### a.  Claimant's Objection Concerning the Timing of His Supplemental Response to the Government's Interrogatories

At the May 27, 2015, hearing, counsel for Claimant did not dispute what is plain from a review of Claimant's initial responses to the government's interrogatories, namely, that they are deficient.  May 27, 2015, Tr. at 19, 25.  Despite the government seeking information obviously relevant to this matter – Claimant's interest in the in rem assets, the source of funds from which those assets were derived, Claimant's assets and sources of income during the relevant time period, etc. – Claimant's initial responses to the government's interrogatories provide little or no substantive information.  See Claimant Lazarenko's Responses to Plaintiff's First Set of Interrogatories [Dkt. 342-10] at 3-18; Claimant Lazarenko's First Supplemental Responses to Plaintiff's First Set of Interrogatories [Dkt. 365-10] at 1-6.  Claimant blames this deficiency on the passage of time since the financial transactions at issue occurred and the unavailability of certain law enforcement and bank records that he claims he needs to respond to the government's interrogatories.  According to Claimant, when he entered the United States in 1999, the "sole item in [his] custody was a suitcase with clothes and personal items."  Declaration of Pavel Lazarenko ("Lazarenko Dec.") [Dkt 373-3] at ¶ 4.  Thereafter, he was in U.S. custody until 2013. Id.  At this point, the only financial records he has are those that were provided to him by the government during the course of Claimant's criminal prosecution.  Id.  But, as stated previously, his former criminal defense attorney either lost or destroyed many of those records while Claimant was incarcerated.  Because the financial transactions at issue in the Amended

Complaint occurred "over twenty-years ago," Claimant asserts that, at this point, he has a "limited recollection" of the information the interrogatories seek.  Id. at ¶ 1.  Prior to the Court ordering Claimant's further response to the government interrogatories, he seeks an opportunity to refresh his recollection with certain financial records and interview memoranda from the criminal investigation that the government is in the process of producing in response to his discovery requests.  Id. at ¶¶ 2, 4-6; Opp. at 9-10, 16-23, 25-27.

The United States responds that Claimant should not need to review any records from the government to provide what it views as relatively basic information about the nature and extent of Claimant's interest in the in rem defendants, the sources of funds that created those assets, and the identity of his income and bank accounts during the relevant time frame.  Gov't Reply at 9.  Given the vast sums of money at issue in those accounts – all, or nearly all, of which Claimant asserts are his – the government believes that Claimant should know something about where that mass of money came from, or, at the very least, should have access to financial records related to those accounts that will provide answers to the government's questions.  Id.  Unfortunately, the government provides little to nothing in its reply that challenges Claimant's credibility or supports its belief that Claimant must know substantially more than what he has provided to the government thus far.  Id.  The Court takes at face value Claimant's sworn declaration that he presently lacks the recollection necessary to provide a more fulsome response to the government's interrogatories.  It cannot compel him to remember something which he does not recollect.  See Alexander v. FBI, 186 F.R.D. 78, 94 (D.D.C. 1998) ("This court cannot compel [defendant] to remember the names of individuals in the media to whom he had spoken and neither plaintiffs nor the transcript suggest any reason to question [defendant's] credibility with respect to this response.").

Moreover, although the government's interrogatories appear straightforward on their face, the financial transactions they ask Claimant to describe were highly complex.  Indeed, in the government's responses to Claimant's interrogatories, the government stated:

> Pavel Lazarenko and his associates that received monies on his behalf conducted hundreds of complex transactions to conceal the transfer of millions of U.S. dollars to Lazarenko as a result of his abuse of public office, as well as to further launder those funds even after they were deposited into accounts under his direct control. In describing financial transactions involving funds received by Lazarenko during the criminal trial, an IRS Revenue Agent serving as a summary witness presented testimony over a period of three days, with over 125 pages of detailed charts and financial schedules tracking some of the transactions related to the conduct of Lazarenko and his associates.

Plaintiff's Responses to Claimant's First Set of Interrogatories [Dkt. 372-5] at 69-70.  Given the complexity of the financial transactions at issue, and the passage of time since the events in question, the Court cannot say that Claimant's request that he first be permitted to refresh his recollection with the records he seeks from the government is unreasonable.  Further, the government has identified no significant harm that may arise if Claimant's supplemental response to its interrogatories was delayed until after the records he seeks have been produced to him by the government.  May 27, 2015 Tr. at 38-41.  Accordingly, based on the entire record, the Court will not require Claimant's immediate further response to the government's interrogatories, and will permit him the opportunity to receive and review the financial records and interview memoranda he says he needs before supplementing his responses.[20]

The government is in the process of providing those records to Claimant.  Pursuant to the Amended Scheduling Order, the documents that Claimant seeks will be produced on or before July 28, 2015.  Thereafter, per the Amended Scheduling Order, Claimant will provide a complete

---

[20] For the same reasons, the Court will deny the government's request that discovery be stayed in this matter until Claimant provides a supplemental response to its interrogatories.  Gov't Memo. at 27-28 [Dkt. 365].

and detailed amended response to the government's interrogatories on or before August 28, 2015.

There is one significant caveat to the Court's ruling on this issue.  The Court agrees with the government that Claimant may not just sit on his hands and await the delivery of the records he seeks from the government.  See Gov't Reply at 9-10.  Under Rule 33 of the Federal Rules of Civil Procedure, a party responding to an interrogatory must "'compile information within his control'" and provide "'all information available to him.'"  Huthnance v. District of Columbia, 255 F.R.D. 285, 292-93 (D.D.C. 2008) (quoting Alexander v. FBI, 192 F.R.D. 50, 53 (D.D.C. 2000) and Trane Co. v. Klutznick, 87 F.R.D. 473, 476 (W.D.Wis. 1980)); see also Jay E. Greig and Jeffrey S. Kinsler, Handbook of Federal Civil Discovery and Disclosure § 8:17, at 479 (2010) ("A party cannot avoid answering [an interrogatory] by alleging ignorance, if the party can obtain the necessary information through reasonable inquiry . . . [a] party cannot limit its answer to matter within its own knowledge and ignore information readily available to it or under its control . . . . This may require a party to seek information from non-parties in order to answer the interrogatory."); see also Engel v. Town of Roseland, No. 06-CIV-430, 2007 WL 2903196, at *4 (N.D. Ind. Oct. 1, 2007) ("[W]hen a party has a right to obtain a copy of a document, it controls that document and must produce it when requested to do so under Rule 34.").  Accordingly, Claimant is obligated to obtain from the financial institutions holding what he claims are his assets, the information he needs to respond to the government's interrogatories. For that reason, at the May 19, 2015, hearing, the Court directed Claimant to make all such efforts necessary to obtain from the financial institutions at issue the records he needs to respond to the government's interrogatories or document requests, and to provide an affidavit to the government describing those efforts.  May 19, 2015 Tr. at 111-18.  Pursuant to the Amended

Schedule Order, Claimant's affidavit shall be delivered to the government on or before July 13, 2015.  Any records Claimant receives from his financial institutions shall be produced to the government no later than August 28, 2015.  Any such records received by Claimant thereafter will be produced to the government on a rolling basis within a week of their receipt by Claimant.

### b.   Claimant's Overbreadth Objection to Interrogatories 2, 3, 5, 6, and 7

Claimant also asserts an overbreadth objection to five of the government's interrogatory requests, Interrogatories 2, 3, 5, 6, and 7.  Cl. Opp. at 12-13, 25-30.  Because the objections are related, they will be addressed together.

 Interrogatories 2, 3, and 7 – seek similar information:

- the source(s) of funds from which the in rem assets were derived and the reasons that each source provided those funds to Claimant (Interrogatory 2);[21]

- the source of all assets deposited from 1994 through 1998 into two accounts that Claimant admitted in his Answer that he controlled, and the reasons that each source provided those funds to Claimant (Interrogatory 7);[22] and

- Claimant's total annual income and assets in the years 1992 through 1999, the source(s) of the income and assets, and the reasons that each source provided the income or assets to Claimant (Interrogatory 3).[23]

---

[21] Interrogatory 2 states in full: "For each Defendant Asset to which you assert a claim, (i) separately identify all sources of funds or property from which the asset was derived or that were used to acquire each such asset; and (ii) state all reasons that you contend are why each source provided the assets, funds, income, or payments to you or persons acting on your behalf, and all facts that support your contention."

[22] Interrogatory 7 states in full: "In paragraph 51 of your Answer (ECF No. 268) you admit that 'in 1996 and 1997 deposits into two accounts under Claimant's control exceeded $196,000,000 and that these accounts included account 5353 in the name of Carpo-53 at Banque SCS Alliance and account 21678 in the name of Nihpro at Banque Populaire Suisse in Switzerland.' Please (i) identify all sources of assets deposited into the Carpo-53 account at Banque SCS Alliance and the 21678 Nihpro account at Banque Populaire Suisse between January 1, 1994 and December 31, 1998, and (ii) state all reasons that you contend are why each source provided such assets to you, and all facts that support your contention."

[23] Interrogatory 3 states in full: "Separately for 1992 and each subsequent year through 1999, (i) identify your total annual income, all assets held by you or of which you were the beneficial owner, and all sources from which you obtained such assets or income; and (ii) state all reasons that you contend are why each source provided the assets or income to you, and all facts that support your contention."

Claimant objects to these requests as overbroad because, in his view, the only issue in this case is "whether Mr. Lazarenko committed certain U.S. or Ukrainian crimes, as alleged in ¶¶ 20 to 49 of the Amended Complaint, and whether these bank accounts hold proceeds that are derived from these illegal activities." Cl. Opp. at 25.  Claimant avers that these interrogatories call for the disclosure of "a number of payments" that he claims "have nothing to do with the allegations." Id. at 27.  According to Claimant, the "government has no right to intrude into [his] life" with respect to these payments.  Id.

Claimant's objection is not well-taken.  Interrogatory 2 seeks the sources of funds from which the in rem assets were derived and the reasons that each source provided those funds to Claimant.  That information is at the very heart of the government's case which seeks the forfeiture of those same assets.  The government is clearly entitled to discover what Claimant contends were the sources of the funds in the accounts at issue, and the reasons that each source provided those funds to him.

Claimant's overbreadth challenge to Interrogatory 7 fares no better.  Indeed, that interrogatory cites to a specific admission made by Claimant in his answer, and, based upon that admission, seeks information about the sources of deposits into two "pooling" accounts through which, even Claimant admits, many of the alleged criminal deposits flowed.  See Cl. Opp. at 29; Answer at ¶ 51; see also Am. Compl. at ¶¶ 61-66, 81-86, 87-90, 102-104, 108 (alleging millions of dollars of criminal proceeds were passed through the pooling accounts (i.e., the Nihpro or Carpo-53 accounts)).  Thus, like Interrogatory 2, Interrogatory 7 is based directly on allegations in the Amended Complaint.  Given those allegations, the government is entitled to seek discovery to test Claimant's allegations that "a number of the payments" into the in rem or pooling accounts "have nothing to do with the allegations."

26

Indeed, Claimant's suggestion that the government should only be permitted inquiry as to proceeds that were, in fact, derived from the illegal activities alleged in the Amended Complaint, would be unworkable.  Cl. Opp. at 25.  It is Claimant's position that none of the funds in the in rem assets were derived from illegal activity or sources.  See May 27, 2015 Tr. at 73-74. Limiting discovery in the way Claimant suggests would provide him with a basis to argue that he need not provide any information about the funds in the in rem assets or pooling accounts because, in his view, all of the funds in those accounts were derived from legitimate sources.  It would also spark endless litigation as the parties sparred over whether there is sufficient threshold evidence that a given dollar in the accounts (of the 100's of millions of dollars at issue) was in fact derived from the criminal allegations in the Amended Complaint, thereby justifying discovery.  The Court declines Claimant's offer to walk down that primrose path.

Claimant's overbreath challenge to Interrogatory 3 also fails.  That interrogatory seeks the sources of Claimant's income and assets during the relevant time period, and the reasons that each source provided the income or assets to him.  Given the government's allegations in the Amended Complaint, such information is discoverable.  The government avers that, during the six-year period between 1992 and 1998, Claimant derived "a personal fortune of more than $300 million in United States dollars through the abuse of his office" in the Ukraine in the 1990s.  Am. Compl. at ¶ 8.  During the same period, the government asserts that Claimant "represented to the people and the Government of Ukraine that his total income for the year 1996 was . . . approximately $5,040" and "for the year 1997 was . . . approximately $5,570."  Id. at ¶ 52. Claimant "further represented to the people and Government of Ukraine that he had no income from any business activities, and that he had no money in any banks or other financial institutions."  Id.  The great disparity between the hundreds of millions of dollars at issue in the

in rem defendants and Claimant's legitimate sources of income would be, if proven true, itself

evidence of the illegality the government is seeking to prove in this action.  See United States v.

United States Currency in the Sum of One Hundred Eighty-five Thousand Dollars, 455 F. Supp.

2d 145, 155 (E.D.N.Y. 2006) ("A great disparity between the amount of cash seized and its

carrier's legitimate income creates an inference of illegal activity.").  Claimant's assertion that

no such disparity existed and that the vast sum of money at issue was not derived from any

illegitimate activity or sources, does not end the matter and provides no basis for precluding

discovery.  Rather, Claimant's assertion may be tested by the government through discovery,

and, if necessary, in future forfeiture proceedings.  The discovery the government seeks in

Interrogatory 7 concerning Claimant's sources of income and assets during the relevant time

period – whether legitimate or illegitimate – would plainly be relevant to that effort.  Nor has

Claimant provided any basis to conclude that the burden of producing his income and asset

information during the relevant time period outweighs the likely benefit of that discovery in

resolving the matters at issue, especially given the amount of money in controversy.

With one exception, Claimant's overbreath objections to Interrogatories 5 and 6 must

also be rejected.  Each seeks discovery of Claimant's legal entities and bank accounts from 1992

to present.[24]  The Amended Complaint is replete with allegations of how Claimant and his

---

[24] Interrogatory 5 states in full: "Identify each and every legal entity of which you were a shareholder, member, owner, partner, director, officer, employee, or beneficiary at any time between January 1, 1992 and the present, excluding publicly-held corporations. For each year for each legal entity, state the name, address and telephone number of the legal entity and its legal representatives, the business or commercial activities (if any) in which the legal entity engages or has engaged, the approximate annual value of such business or commercial activities, the percentage of the legal entity owned by you, the identities of the legal entity's other owners or shareholders, and your specific title, role, duties, and responsibilities with respect to its operations, including your specific authority and ability to control or manage any of its cash, funds, bank accounts, banking instruments, investments, securities or other assets."

Interrogatory 6 states in full: "Identify all accounts at any financial institutions (including, but not limited to banks and brokerage institutions, whether foreign or domestic) in which you have, or previously had, an ownership or beneficial interest, signatory authority or control at any time between January 1, 1992 and the present. For each such account, identify the institution in which the account is or was held, the account number, the name in which the

associates transferred the proceeds of their alleged criminal schemes into and out of bank accounts all over the world "in an effort to conceal or disguise the nature, origin, location, source, ownership or control of these proceeds and property." Am. Compl. at ¶ 13; see also id. at ¶¶ 25, 27, 29, 31, 34, 39-40, 42, 51, 57-75, 77-119. Similarly, the Amended Complaint alleges that Claimant and his associates also concealed or disguised such criminal proceeds and property through various shell corporations and trusts he and his associates controlled. See id. at ¶¶ 53, 55. The government alleges that it was further part of the criminal scheme, that, while Claimant was a Ukrainian government official, "certain business persons understood that in order to conduct their business and to receive the necessary licenses or other official rights and/or privileges, they had to pay Lazarenko a portion of their business or a percentage of the profits of their business or both." Id. at ¶ 24. As a result, the government alleges these individuals transferred "substantial ownership rights in their corporation and shares of their profits to Lazarenko." Id.; see also id. at ¶¶ 26, 28, 41-42. The United States is clearly entitled to discover the corporate entities and bank accounts Claimant was using at the time. The government does overstep the bounds of permissible discovery, however, by seeking information about Claimant's current use of legal entities and bank accounts. Accordingly, the Court will limit the scope of Interrogatories 5 and 6 to the time period of the events in the Amended Complaint, i.e., from 1992 through and including 1999.

### c.   Claimant's "Probable Cause" Objection to Interrogatory 8

The government's Interrogatory 8 seeks information about the entities listed in paragraph 50 of the Amended Complaint which made various payments to Claimant that the government

---

account is or was held, all signatories on such account and the dates of such signatory authority, all other persons authorized to manage assets or conduct any business or transactions with respect to such accounts, and the dates during which you held such an interest or control."

claims were the proceeds of fraud, extortion, bribery, misappropriation, embezzlement, or other criminal conduct.[25]  See Am. Compl. at ¶ 50.  Claimant's objection to this interrogatory is more in the nature of a motion to dismiss or to strike than of an objection to an interrogatory.  Cl. Opp. at 30-31.  According to Claimant, the government cannot initiate a civil forfeiture action unless it can articulate a finding of probable cause.  Id. at 30.  Therefore, because the United States has not, in his view, "articulated probable cause" as to some of the transactions listed in paragraph 50 of the Amended Complaint, the Court should permit Claimant to limit his interrogatory response to only those transactions for which there has been a showing of probable cause.  Id. at 30-31.

Claimant's attempt to import a probable cause standard into discovery in a civil forfeiture case fails.  Whatever the legal standard may be for the initiation of a civil forfeiture action,[26] the government has met it here.  The Amended Complaint has withstood a motion to dismiss, and Judge Friedman has found probable cause, based on the allegations in the Amended Complaint, sufficient to issue a restraining order to preserve the in rem defendants.  July 9, 2008, Opinion [Dkt.72]; July 8, 2015, Restraining Order [Dkt. 23].  Claimant's attempt to re-litigate the pleading standard here by arguing that he need not respond to discovery concerning allegations in the Amended Complaint unless the government first demonstrates that there is probable cause supporting those allegations must be rejected.  Claimant cites no authority for this proposition,

---

[25] Interrogatory 8 states in full: "For each person and entity identified in paragraph 50 of the First Amended Complaint, state with specificity your relationship with that person or entity for each year between January 1, 1991, and December 31, 1999, including but not limited to: (i) the nature and extent of any employment, commercial, business or other relationship with, or ownership interest you had in, such person or entity; (ii) the identity of all assets you, or persons acting on your behalf, received from such person or entity; (iii) all reasons that you contend are why each such person or entity provided such assets to you, and all facts supporting your contention; and (iv) the identity of all persons participating in communications between you and such person or entity."

[26] As the government notes in its reply, some courts have held that the Civil Asset Forfeiture Reform Act of 2000 superseded the "probable cause" standard under 19 U.S.C. § 1615, and requires only that the government set forth sufficient facts in a civil forfeiture complaint to support a reasonable belief that it will be able to meet its burden at trial, and after the completion of discovery, to prove by a preponderance of the evidence that Claimant's property is subject to forfeiture.  See Gov't Reply at 19, n 6.  The Court does not need to adjudicate that issue to resolve Claimant's objection to Interrogatory 8.

and the undersigned knows of none.  If adopted, it would lead to endless litigation in many cases (and no doubt in this one) as forfeiture claimants exercise the option to put the government to the "probable cause" test for whatever fact or issue upon which the government seeks discovery.

The Court will not go there.  The standard for discovery in this matter is the same as it is in all other civil matters: discovery may be obtained of any matter, not privileged, which is relevant to a claim or defense or is reasonably calculated to lead to the discovery of admissible evidence.  See Fed. R. Civ. P. 26(b)(1).  Interrogatory 8 unquestionably meets that standard as it is tied directly to specific allegations in paragraph 50 of the Amended Complaint.  That paragraph alleges that Claimant, as a result of the abuse of his position as a public official in the Ukraine, received over $326 million U.S. dollars from companies and individuals doing business in the Ukraine and with Ukrainian state enterprises.  Am. Compl. at ¶ 50.  The government alleges that all of these payments were the proceeds of Claimant's criminal conduct during the period that he directed money to the in rem defendants.  Id.; Gov't Reply at 20.  Questions regarding those payments, and the persons and entities who made them, plainly fall within the scope of permissible discovery in this matter.

## CONCLUSION

Wherefore, for the foregoing reasons, (1) Claimant's First Motion to Compel [Dkt. 336], and (2) the government's Motion to Compel Claimant's First Set of Interrogatories and to Stay Discovery Pending Such Responses [Dkt. 365], are both granted in part and denied in part.

An Order consistent with this Memorandum Opinion will be filed with this Memorandum Opinion.

Date:   July 20, 2015

                                           _____
                                           G. MICHAEL HARVEY
                                           UNITED STATES MAGISTRATE JUDGE