**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**

    **Plaintiff,**

        v.                                 Civil Action No. 04-798 (PLF/GMH)

**ALL ASSETS HELD AT BANK JULIUS
BAER & COMPANY, LTD., GUERNSEY
BRANCH, ACCOUNT NUMBER 121128,
IN THE NAME OF PAVLO LAZARENKO
ET AL.**

    **Defendants *In Rem*.**

### MEMORANDUM OPINION

On March 26, 2015, this case was referred to the undersigned for purposes of management of discovery and resolution of any discovery-related disputes. Currently ripe for resolution by the undersigned is Claimant Pavel Lazarenko's Motion to Modify the Protective Order. After a thorough review of the parties' briefs concerning Claimant's motion, the arguments of counsel at the hearings on the motion on September 8, 2015, and September 11, 2015, and the entire record herein,[1] the Court will grant in part and deny in part the motion.

### BACKGROUND

The factual background concerning this eleven-year-old in rem asset forfeiture action has been described in multiple opinions by Judge Friedman. See, e.g., United States v. All Assets

---

[1] The relevant docket entries for purposes of this Memorandum Opinion are: (1) Claimant Pavel Lazarenko's Motion to Modify Protective Order [Dkt. 444] ("Mot."); (2) United States' Opposition to Claimant Pavel Lazarenko's Motion to Modify Protective Order [Dkt. 452] ("Opp."); (3) Claimant Pavel Lazarenko's Reply in Support of his Motion to Modify Protective Order [Dkt. 456] ("Reply"); (4) May 29, 2015 Protective Order ("Prot. Order") [Dkt. 393].

Held at Bank Julius Baer & Co., Ltd., 772 F. Supp. 2d 191, 194 (D.D.C. 2011).[2]  This Court will not repeat that lengthy history here.  The facts that are pertinent to adjudication of Claimant's motion are summarized below.

In its First Amended Complaint, the United States seeks the forfeiture of more than $250 million deposited in over twenty bank accounts located in Guernsey, Antigua and Barbuda, Switzerland, Lithuania, and Lichtenstein.  First Amended Complaint [Dkt. 20] at ¶¶ 1, 5.  The government alleges that the money in those accounts is traceable to a "variety of acts of fraud, extortion, bribery, misappropriation, and/or embezzlement" committed by Claimant, the former Prime Minister of Ukraine, or by his associates, between 1992 and 1998.  Id. at ¶¶ 6, 8, 10.  The United States asserts its right to the funds pursuant to federal statutes that provide for the forfeiture to the government of funds traceable, or otherwise related to or involved in, criminal activity that occurred at least in part in the United States.  Id. at ¶ 1.

On May 29, 2015, the Court entered a protective order in this case which permits the parties to designate certain materials produced in discovery as confidential.  See Prot. Order at 2.  Claimant now seeks a modification of that protective order.  See Mot. at 1.  Claimant requests that certain additional materials, which are arguably not included within the scope of the order, be added to the order to protect them from disclosure to third parties.  See id.  The materials Claimant seeks to add to the protective order are defined in the offset paragraph on page 23 of Claimant's sealed motion.  See id. at 23.  To protect the confidentiality of those materials, the Court will refer to them as "Claimant's Requested Materials."

---

[2] See also United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 772 F. Supp. 2d 205 (D.D.C. 2011); United States v. All Assets Held at Bank Julius Baer & Co. Ltd., 664 F. Supp. 2d 97 (D.D.C. 2009); United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 571 F. Supp. 2d 1 (D.D.C. 2008).

## LEGAL STANDARD

Federal Rule of Civil Procedure Rule 26(c) permits the court to issue protective orders to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). Determining whether to modify a protective order is a matter of discretion for the trial court. See Alexander v. FBI, 186 F.R.D. 99, 100 (D.D.C. 1998); E.E.O.C. v. Nat'l Children's Ctr., Inc., 146 F.3d 1042, 1047 (D.C. Cir. 1998). A protective order may be modified upon a showing of good cause. See Alexander, 186 F.R.D. at 100; Independent Petrochemical Corp. v. Aetna Casualty & Surety Co., Civ. A. 83–3347, 1988 WL 23257, at *4 (D.D.C. Mar. 2, 1988) ("The granting and maintenance of a protective order under rule 26(c) of the federal rules of civil procedure . . . must be supported by 'good cause.'") (citing Tavoulareas v. Washington Post Co., 737 F.2d 1170, 1173 (D.C. Cir. 1984)). "Protective orders are not permanent or immutable and may be modified to serve important efficiency or fairness goals." U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., No. Civ.99-3298, 01-MS-50(MDL)(RCL), 2004 WL 2009414, at *2 (D.D.C. May 17, 2004). Indeed, "Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise." United States v. Microsoft Corp., 165 F.3d 952, 959 (D.C. Cir. 1999); Hines v. Wilkinson, 163 F.R.D. 262, 266 (S.D. Ohio 1995) ("[T]he Rule's incorporation of the concept of 'good cause' implies that a flexible approach to protective orders may be taken, depending upon the nature of the interests sought to be protected and the interests that a protective order would infringe."). The party seeking modification of an existing protective order bears the burden of showing that good cause exists for the modification. Pogue, 2004 WL 2009414, at *2.[3]

---

[3] To determine whether good cause for modification exists, courts sometimes apply the four-factor Bayer test, which analyzes: (1) the nature of the protective order; (2) the foreseeability of the modification; (3) the parties' reliance on the protective order; and (4) the presence of good cause for the modification. Flatow v. Islamic Republic of Iran, 196 F.R.D. 203, 206 n.1 (D.D.C. 2000) (citing Bayer AG & Miles, Inc. v. Barr Labs., Inc., 162 F.R.D. 456, 462–63

3

**DISCUSSION**

Claimant has demonstrated to this Court that a modification of the protective order in this case is appropriate. However, the Court does not agree with Claimant in all respects. Specifically, the Court does not find that Claimant may assert the Fifth Amendment right against self-incrimination as a basis for modification. Instead, the Court rules that a modification is warranted on narrower grounds – namely, protecting certain confidential information further defined below.

### A.  The Right Against Self-Incrimination

In his motion, Claimant argues that his Fifth Amendment right against self-incrimination is triggered by his fear of foreign prosecution in Ukraine. See Mot. at 19. Claimant contends that the Court should protect his right by modifying the protective order to cover Claimant's Requested Materials. Id. at 20. The Supreme Court in Balsys expressly held that fear of foreign prosecution does not trigger the protections of the Fifth Amendment. United States v. Balsys, 524 U.S. 666, 699–700 (1998); In re Impounded, 178 F.3d 150, 154 (3d Cir. 1999) ("[Balsys] held that the Fifth Amendment did not apply to foreign prosecutions."). Yet Claimant relies on dictum at the end of Balsys which suggests a limited exception to this rule:

> This is not to say that cooperative conduct between the United States and foreign nations could not develop to a point at which a claim could be made for recognizing fear of foreign prosecution under the Self–Incrimination Clause as traditionally understood. If it could be said that the United States and its allies had enacted substantially similar criminal codes aimed at prosecuting offenses of international character, and if it could be shown that the United States was granting immunity from domestic prosecution for the purpose of obtaining evidence to be delivered to other nations as prosecutors of a crime common to both countries, then an argument could be made that the Fifth Amendment should apply based on fear of foreign prosecution simply because that prosecution was not fairly characterized as distinctly "foreign." The point would be that the prosecution was as much on behalf of the United States as of the prosecuting

---

(S.D.N.Y. 1995). However, here Claimant makes a relatively unique request for the protective order to be made more, rather than less, stringent. See Mot. at 2. As a result, the Bayer factors are not particularly helpful.

4

> nation, so that the division of labor between evidence gatherer and prosecutor made one nation the agent of the other, rendering fear of foreign prosecution tantamount to fear of a criminal case brought by the Government itself.

Balsys, 524 U.S. at 698–99.  Claimant argues that cooperation between Ukraine and the United States has been so intimate and far-reaching in this matter that his Fifth Amendment right against self-incrimination is implicated in this case.  Mot. at 16–19.

The Court disagrees and finds that the Fifth Amendment has no application here.  The actual holding in Balsys is that the Fifth Amendment does not apply to fear of foreign prosecution.  Balsys, 524 U.S. at 699–700.  As the Third Circuit in Impounded observed, "we remain unconvinced that Balsys necessarily establishes a 'test'" for an exception to that holding.  Impounded, 178 F.3d at 155.  Indeed, as the Court of Appeals noted, the Supreme Court's language was "conditional rather than prescriptive" and left "for another day" the precise contours of any exception to its ruling.  Id.  It is therefore a stretch to even entertain an exception to Balsys in the first place.

Even were this Court to seize upon the general statements in Balsys as a rule establishing an exception to the Supreme Court's holding, Claimant fails to present evidence sufficient to meet it.  The Court has certainly placed a heavy burden on any party seeking to invoke the Fifth Amendment based on fear of foreign prosecution.  Ordinary intergovernmental cooperation in investigating criminal conduct, as permitted by mutual legal assistance treaties, would "not rise to the level of cooperative prosecution" sufficient to avoid Balsys' holding.  Balsys, 524 U.S. at 699.  As the Supreme Court observed, "mere support of one nation for the prosecutorial efforts of another does not transform the prosecution of the one into the prosecution of the other."  Id. at 700.

5

In Impounded, the Third Circuit rejected a similar appeal to the Balsys "exception." Impounded, 178 F.3d at 155.  In that case, witnesses refused to testify before a U.S. grand jury in an antitrust matter regarding business activities which occurred outside the United States.  Id. at 152.  The witnesses asserted that their Fifth Amendment right against self-incrimination was implicated because they feared foreign prosecution if they should be compelled to testify.  Id. at 152.  The witnesses argued that the Balsys "exception" permitted them to assert their Fifth Amendment right to avoid testifying because there existed "a broad-based policy of international prosecution and spirit of cooperation that reflect[ed] an ongoing and established policy of 'joint internationalization' of antitrust enforcement by the Justice Department."  Id. at 155.  The Court of Appeals disagreed, finding that "instances of contacts with overseas nationals, or requests for documents in foreign countries, in this case, even when combined with the selections of the speeches cited by appellants,[4] are not sufficient to demonstrate a 'joint prosecution' in the meaning contemplated by Balsys."  Id.[5]

Here, Claimant has not persuaded this Court that the United States and Ukraine are engaging in anything more than ordinary intergovernmental assistance in criminal investigation.  Such conduct would fall below the threshold required by the Balsys "exception," assuming that it even exists.  Instead, like Impounded, here Claimant makes broad generalizations about cooperation between the United States and Ukraine at a policy level.  Mot. at 17–20.  Indeed,

---

[4] The "speeches" referred to in the above quotation were speeches "by Antitrust Division officials that discussed increasing 'internationalization' of antitrust enforcement."  Id. at 152.  No evidence of this kind was even proffered by Claimant here.

[5] The Third Circuit also addressed whether the witnesses' fear of foreign prosecution was "reasonable."  Id. at 156–58.  However, the government does not challenge the reasonableness of Claimant's fear of prosecution in this case.  Moreover, whether or not Claimant's fear of Ukrainian prosecution is reasonable does not, standing alone, satisfy his burden under the Balsys "exception."  The Court therefore need not decide this question to dispose of the present dispute.

even when Claimant directs the Court to specific instances of cooperation between the two countries, that conduct constitutes the mere sharing of documents and contacts between representatives of the two nations' criminal enforcement officials. By way of example, Claimants makes the following assertions regarding cooperation between the United States and Ukraine: (1) a lead Ukrainian prosecutor met with U.S. officials to discuss the basis for the instant forfeiture action, leading to "a tremendous amount of cross-pollination" between the two nations' prosecutorial efforts, Mot. at 17; (2) U.S. officials observed or participated in at least eleven witness interviews conducted by Ukrainian prosecutors, id.; (3) Ukraine made at least eleven requests for records to the United States, id. at 18; (4) Ukraine provided thousands of records to the U.S. government for use in the instant litigation, id.; and (5) a lead Ukrainian prosecutor questioned witnesses at depositions and that testimony was used at Claimant's criminal trial, id. at 19. The evidence Claimant offers shows nothing more than the traditional cooperation that takes place between nations every day pursuant to MLATs. The Court, like the Third Circuit in Impounded, does not find such conduct sufficient to constitute a "joint prosecution" under Balsys. Indeed, to find Claimant's showing sufficient to satisfy the Balsys exception would swallow the rule of Balsys.[6]

Finally, Claimant has waived any Fifth Amendment rights he possessed by responding to the government's discovery requests. Although Claimant argues in his motion that the Fifth

---

[6] Likewise, Claimant has not convinced the Court that the government's prosecution of Claimant was a "sham" prosecution undertaken as an agent of Ukraine. United States v. Rashed, 234 F.3d 1280, 1282 (D.C. Cir. 2000). First, this doctrine is irrelevant since it applies to the Double Jeopardy Clause, a provision not raised by Claimant in his motion. Id. at 1281–82. Second, even if the "sham prosecution" doctrine was relevant here, Claimant's argument would nevertheless fail because his U.S. prosecution was no "sham." Rather, Claimant's U.S. prosecution resulted in a jury trial, conviction, and a ten-year prison sentence. Moreover, in a case like this one, where the United States and Ukraine have simply shared "investigatory resources," there can be no suggestion of a "sham" prosecution. Id. at 1283. Indeed, even "extensive law enforcement and prosecutorial cooperation between two sovereigns does not make a trial by either a sham." Id. at 1284 (citing Bartkus v. Illinois, 359 U.S. 121, 122–23 (1959)).

Amendment applies to his discovery responses, Claimant did not invoke his right against self-incrimination in his responses.  Instead, he answered both the Amended Complaint and the government's discovery requests.  Claimant's Verified Answer to First Amended Verified Complaint [Dkt. 268]; Claimant's Responses to Plaintiffs' First Set of Interrogatories [Dkt. 365-5]; Claimant's Objections and Responses to Plaintiff's First Set of Requests for Production of Documents [Dkt. 429-6].  Now, after responding, he attempts to use the Fifth Amendment to cast the veil of the protective order over his responses.  It is well-settled that a party may waive his right against self-incrimination by voluntary disclosure of the statements purportedly protected.  See Redfield v. United States, 315 F.2d 76, 80 (9th Cir. 1963); United States v. Slough, 36 F. Supp. 3d 37, 46 (D.D.C. 2014).  In the civil forfeiture context specifically, the Seventh Circuit has observed that

> [w]hile district courts must "seek to accommodate both the constitutional [privilege] against self-incrimination and the legislative intent behind the forfeiture provision," United States v. United States Currency, 626 F.2d 11, 15–17 (6th Cir. 1980), cert. denied sub nom. Gregory v. United States, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980) (cited with approval in United States v. $250,000 in United States Currency, 808 F.2d 895 (1st Cir. 1987)), they have a certain amount of discretion in determining which course to follow. For example, a court may stay the civil forfeiture action pending the resolution of the criminal proceedings. Id. At the same time, district courts are under no obligation to take affirmative steps to protect a claimant/defendant's privilege (i.e., to grant a stay) when the claimant/defendant, by his words or actions, has chosen to waive the privilege.

United States v. 6250 Ledge Road, 943 F.2d 721, 719 n.9 (7th Cir. 1991).  By choosing to answer discovery requests despite his belief that his right to self-incrimination applied to his answers, Claimant has waived any such claim he may have had.  Accordingly, Claimant's right against self-incrimination, if any exists here, is inadequate to support modification of the protective order.

8

B.     **Confidentiality Interest**

While the Court holds that the Fifth Amendment's right against self-incrimination provides no basis for modification of the protective order, the Court nevertheless finds that modification is appropriate to protect an equitable, non-contractual interest in confidentiality. The only materials which the Court finds are to be protected pursuant to that confidentiality interest are those referenced in the numbered paragraphs 2–5 on pages 2–3 of Claimant's motion. See Mot. at 2–3. To protect their confidentiality, those materials are hereinafter referred to as the "Confidential Materials."

The confidentiality interest at issue may be accommodated under Rule 26(c). See Microsoft, 165 F.3d at 959. As the Supreme Court explained in Seattle Times Company v. Rinehart, when it upheld the Rule 26(c) good cause standard against a challenge to its constitutionality as a prior restraint where a trial court entered a protective order prohibiting dissemination of information received in discovery, although "the Rule contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule." Seattle Times Co. v. Rinehart, 467 U.S. 20, 35 n.21 (1984). For the reasons stated in Claimant's motion and those discussed on the record at the hearing, the Court finds that there is valid interest in not disclosing the Confidential Materials publicly, at least until trial of this matter.[7]

Plaintiff, by contrast, argues that Claimant has failed to make a showing of good cause for modification of the protective order. Plaintiff contends that Claimant should have foreseen

---

[7] It is important that Claimant recognizes the limited scope of the protective order. As the Court made clear at the hearing, there are no sealed trials in our system of jurisprudence. As such, any of the Confidential Materials properly offered for use by the government at trial may be disclosed publicly notwithstanding any protection they enjoyed during discovery. At the appropriate time prior to trial, the government should file a motion in limine to address which, if any, of the Confidential Materials it will seek to use at trial so that the Court may determine what, if any, accommodation can be reached to protect the confidentiality of those materials when used at trial.

9

the need to protect the asserted confidentiality interest when the protective order was originally drafted. Opp. at 12–13. Further, the government argues that it would be severely prejudiced by Claimant's requested modification. Id. at 17. The government claims that the modification will prevent it from investigating the veracity of the information contained in the Confidential Materials. Id. at 20–21.[8]

      The government's arguments are unavailing. The government has not demonstrated that unfair prejudice will result from anything less than uninhibited use of the Confidential Materials. See Reply at 6.[9] In fact, there will be no undue prejudice to the government imposed by the Claimant's proposed modification to the protective order. As Claimant makes clear in his reply, he does not seek to prohibit the government's derivative use of the Confidential Materials in discovery provided that the government does not disclose the source of that information. Reply at 6. Accordingly, the government will have a fair opportunity to test the veracity of that information in discovery. Therefore, Claimant has demonstrated good cause warranting a modification of the protective order in this case based on his equitable, non-contractual confidentiality interests.

---

[8] The government also urges this Court to find that Claimant has waived any ability to request a modification of the protective order. Opp. at 8–10. Yet Rule 26(c) empowers this Court to modify a protective order at any time for good cause. See Alexander, 186 F.R.D. at 100. Although Claimant's alleged lack of foresight might be relevant to his showing of good cause, see Flatow, 196 F.R.D. at 206 n.1, it does not mean that he has entirely waived any right to seek modification from this Court.

[9] Claimant requests that the Court supervise any attempt by the government to make derivative use of the Confidential Materials. The Court declines to do so and trusts that the government will comply with this Court order concerning those materials and their derivative use.

## CONCLUSION

Wherefore, for the foregoing reasons, Claimant's Motion to Modify the Protective Order [Dkt. 444] is **GRANTED IN PART** and **DENIED IN PART**.  An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.[10]


Date:   November 3, 2015                    _____
                                            G. MICHAEL HARVEY
                                            UNITED STATES MAGISTRATE JUDGE

---

[10] Claimant made an oral motion for a stay of this ruling at oral argument.  The Court grants a stay of its ruling to allow Claimant to appeal the ruling to Judge Friedman.  A stay of a magistrate judge's order to permit appeal is neither commonplace nor a matter of right.  Nevertheless, because of the confidential information at stake in this ruling, the Court finds that Claimant may suffer irreversible harm if the Order is enforced immediately.  Conversely, the government will suffer no undue prejudice because the Court has already empowered it to make derivative use of the materials at issue here.