UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

    Plaintiff,

    v.                                                Civil Action No. 04-798 (PLF/GMH)

ALL ASSETS HELD AT BANK JULIUS
BAER & COMPANY, LTD., GUERNSEY
BRANCH, ACCOUNT NUMBER 121128,
IN THE NAME OF PAVLO LAZARENKO
*ET AL.*

    Defendants *In Rem*.

## MEMORANDUM OPINION

On March 26, 2015, this case was referred to the undersigned for purposes of management of discovery and resolution of any discovery-related disputes. Currently ripe for resolution by the undersigned is plaintiff's motion to compel Claimant Pavel Lazarenko to produce certain tax records and other financial documents. After a thorough review of the parties' briefs and the entire record herein, the Court will grant in part and deny in part plaintiff's motion.[1]

## BACKGROUND

The factual background concerning this eleven-year-old in rem asset forfeiture action has been described in multiple opinions by Judge Friedman. See, e.g., United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 772 F. Supp. 2d 191, 194 (D.D.C. 2011).[2] This Court will

---

[1] The relevant docket entries for purposes of this Memorandum Opinion are: (1) Plaintiff's Motion to Compel Production of Records ("Mot.") [Dkt. 429]; (2) Claimant Pavel Lazarenko's Opposition to Plaintiff's Motion to Compel ("Opp.") [Dkt. 447]; (3) Plaintiff's Reply in Support of Its Motion to Compel ("Reply") [Dkt. 454]; (4) July 20, 2015 Memorandum Opinion [Dkt. 417].

[2] See also United States v. All Assets Held at Bank Julius Baer & Co, Ltd., 772 F. Supp. 2d 205 (D.D.C. 2011); United States v. All Assets Held at Bank Julius Baer & Co. Ltd., 664 F. Supp. 2d 97 (D.D.C. 2009); United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 571 F. Supp. 2d 1 (D.D.C. 2008).

not repeat that lengthy history here. The facts that are pertinent to the adjudication of Claimant's motion are summarized below.

In its First Amended Complaint, the United States seeks the forfeiture of more than $250 million deposited in over twenty bank accounts located in Guernsey, Antigua and Barbuda, Switzerland, Lithuania, and Lichtenstein. First Amended Complaint [Dkt. 20] at ¶¶ 1, 5. The government alleges that the money in those accounts is traceable to a "variety of acts of fraud, extortion, bribery, misappropriation, and/or embezzlement" committed by Claimant, the former Prime Minister of the Ukraine, or by his associates, between 1992 and 1999. Id. at ¶¶ 6, 8, 10. The United States asserts its right to the funds pursuant to federal statutes that provide for the forfeiture to the government of funds traceable, or otherwise related to or involved in, criminal activity that occurred at least in part in the United States. Id. at ¶ 1.

On October 16, 2014, plaintiff propounded several requests for production on Claimant. Mot. at 7. Request No. 28 requested that Claimant:

> Produce all documents and communications relating to personal income tax returns, business tax returns, and Reports of Foreign Bank and Financial Accounts (FBARs) filed with or submitted to the United States Government or any State of the United States of America by or on your behalf or any legal entity in which you claim an interest for the years 1992 to date.

Id. Similarly, Request No. 29 requested that Claimant:

> Produce all documents and communications submitted to the Government of the United States of America, any State of the United States of America or any other foreign or domestic government office concerning your income or assets, including but not limited to any financial disclosure documents, tax returns, or other statements of income you have submitted to any government between January 1, 1992 and the present.

Id.

Claimant responded to the government's requests with several general objections, which stated that Claimant objected "to any and all Document Requests to the extent that they are

overly broad, seek information that is irrelevant, . . . are unduly burdensome, . . . are not reasonably calculated to lead to the discovery of admissible evidence, are oppressive, and are propounded merely to harass or annoy Claimant." Opp. at 2.  Further, Claimant objected "to any and all Document Requests to the extent they purport to require the disclosure of material or information that exceeds the scope of discovery permitted under the Federal Rules of Civil Procedure" and "to the extent they seek information and documents from before January 1, 1993 or after October 19, 1999." Id.

Claimant also made several specific objections.  With respect to Request No. 28, Claimant responded, "Claimant objects to this request to the extent that it requires the production of records subject to 26 U.S.C. § 6103. Claimant is not in possession of any FBAR records." Id. at 8.  As to Request No. 29, Claimant responded,

> Claimant objects to this request to the extent it is duplicative of Request No. 28. Claimant also objects to this request to the extent it seeks confidential information provided to the U.S. Probation Office, Pretrial Services and the IRS. Claimant further objects to the extent that this request requires him to contact the U.S. Courts to obtain records that he does not possess.
>
> The following privileged documents are in Claimant's possession and otherwise not governed by 26 U.S.C. § 6103:

| Date | Description |
|---|---|
| August 2013 | Financial Statement to U.S. Probation Office |
| October 2013 | Financial Statement to U.S. Probation Office |

Id.  After unsuccessfully attempting to resolve its dispute with Claimant, plaintiff brought the instant motion.  See id. at 8–11.

In its motion, the government makes three arguments.  First, it argues that Claimant has waived any objection based on the relevance of the requested records because he did not assert a relevance objection specifically in response to either request.  Mot. at 12–13.  Second, plaintiff

3

claims that even if relevance was at issue, Claimant's tax records are relevant as to numerous issues, including: (1) whether Claimant can establish an interest in the defendant assets; (2) whether Claimant can offer a legitimate source for the portions of the assets he claims; (3) whether Claimant obtained any claimed assets illegally; and (4) whether forfeiture of the defendant assets is appropriate. Id. at 17–18. Finally, plaintiff contends that section 6103 does not bar discovery here because it governs only government employees who are involved in tax administration, not Claimant. Id. at 14. Plaintiff further argues that no other common-law privilege protects Claimant's tax records from disclosure. Id. at 15.

Claimant opposes the motion, arguing that his tax records are not discoverable. First, Claimant represents that he has no financial records for fiscal years 1992 to 1999 and so he cannot respond to that portion of plaintiff's requests. Opp. at 3. Second, Claimant argues that any records from 2000 to present are not relevant in this action. Id. at 3. As part of this argument, Claimant appears to suggest that his general relevance objections are sufficient to preserve his relevance objections as to the specific requests at issue here. See id. at 2.

On the substance of the requests, Claimant argues that he has no tax records for years 2000 to present except his tax returns, his statements in his criminal case to United States Pretrial Services, and his Presentence Investigation Report. Id. at 3. As to the Pretrial Services records and Presentence Investigation Report, Claimant refuses to produce them because he believes they are confidential under 18 U.S.C. § 3153(c)(2) and Local Rule 32-7 of the United States District Court for the Northern District of California. Id. at 4. Further, Claimant argues that any of his tax returns from 2000 to present are irrelevant here because: (1) he does not need them to establish his standing to intervene in this case, id. at 5–8; (2) the fact that he did not file tax returns for certain years is not necessarily evidence of illegality, id. at 10–16; (3) disclosure of

4

such records by the IRS to the government would violate section 6103, id. at 16–18; and (4) Claimant has a qualified, common-law privilege to withhold his tax returns, id. at 8–10. Finally, Claimant contends that section 6103 prohibits disclosure of his tax records to plaintiff in this civil forfeiture action because the statute requires that the records be relevant before they can be released. Id. at 16–17.

In its reply, the government reiterates its argument that Claimant has waived any relevance objections by failing to make them specifically in reference to the requests at issue. Reply at 3–4. Additionally, plaintiff claims that Claimant should be compelled to obtain his Ukrainian tax records from 1992 to 1999 from the relevant Ukrainian authorities for production to plaintiff. Id. at 4–6. Plaintiff further demands that if Claimant has not filed tax returns for the relevant years, he must affirmatively state as much. Id. at 5. Moreover, the government argues that even if Claimant enjoyed a qualified privilege to withhold his tax returns, the government has met its burden to overcome that privilege – namely, by establishing that the records are relevant and are not available from another source. Id. at 6–12. Finally, the government observes that many of Claimant's arguments go to merits of the government's forfeiture claim or Claimant's intervention and not to whether the records at issue meet the low bar required for discovery. Id. at 14–19.

**LEGAL STANDARD**

It has long been recognized that, "[u]nder the broad sweep of Rule 26(b)(1) of the Federal Rules of Civil Procedure, a party 'may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved.'" Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1348–49 (D.C. Cir. 1984) (quoting Fed. R. Civ. P. 26(b)(1)). If a party objects to a request for production of documents under Federal Rule of Civil Procedure 34(a)(1),

the requesting party may move for an order compelling disclosure of the withheld material. Fed. R. Civ. P. 37(a). The party that brings the motion to compel "bears the initial burden of explaining how the requested information is relevant." Jewish War Veterans of the United States of America, Inc. v. Gates, 506 F. Supp. 2d 30, 42 (D.D.C. 2007). The burden then shifts to the non-moving party "to explain why discovery should not be permitted." Id. If a party has withheld documents on the grounds that they are privileged, the withholding party "bears the burden of proving the communications are protected." In re Lindsey, 158 F.3d 1263, 1270 (D.C. Cir. 1998).

## DISCUSSION

Plaintiff has met its burden in establishing that the tax and other financial records requested in Requests for Production Nos. 28 and 29 are discoverable for fiscal years 1992 to 1999. Consistent with the Court's prior orders, the Court finds that plaintiff has also met that burden with respect to records relating to fiscal years 2000 to the present, but only for the limited purpose of discovering information relating to Claimant's standing to intervene in this case. Additionally, the Court finds that 26 U.S.C. § 6103 and common-law protections for tax records do not shield Claimant from the government's discovery requests. Nevertheless, the undersigned will not order Claimant to produce his Pretrial Services records and Presentence Investigation Report from the Northern District of California, as those documents are subject to special statutory and court-imposed protections.

### A. Relevance Objections and Waiver

As a threshold matter, the government argues that Claimant has waived any relevance objections to Requests for Production No. 28 and 29. Federal Rule of Civil Procedure 34(b)(2)(B) requires a party responding to a request for production to state objections within 30

6

days of service. Fed. R. Civ. P. 34(b)(2)(A)-(B). Plaintiff claims that Claimant's general, blanket relevance objection, stated at the beginning of his responses, is insufficient under Rule 34 to apply to any specific request made by plaintiff. There may well be merit in plaintiff's suggestion. See DL v. Dist. of Columbia, 251 F.R.D. 38, 43 (D.D.C. 2008); Hanwha Azdel, Inc. v. C & D Zodiac, Inc., No. 12-cv-00023, 2013 WL 3660562, at *5 (W.D. Va. July 11, 2013) (relevance objections waived because the party generally objected "to the extent [the request] seeks information that is not relevant"); Sonnino v. Univ. of Kan. Hosp. Auth., Inc., 221 F.R.D. 661, 666–67 (D. Kan. 2004) ("This Court has on several occasions 'disapproved [of] the practice of asserting a general objection 'to the extent' it may apply to particular requests for discovery.' . . . Thus, this Court has deemed such 'ostensible' objections waived, or declined to consider them as objections.").

Nevertheless, the Court need not determine whether Claimant has waived his relevance objections because the Court finds that the objections fail on the merits. In its prior order of July 20, 2015, the undersigned rejected similar objections by Claimant. See July 20, 2015 Order at 25–29. There, Claimant objected to several interrogatories by plaintiff which requested, inter alia, that Claimant explain the source of funds from which the in rem assets were derived, Claimant's income during fiscal years 1992 to 1999, and the reasons that the sources of funds provided income or assets to Claimant. Id. at 25. Claimant objected that the interrogatories were overbroad. Id. at 26. The undersigned found otherwise, reasoning that the sources of funds from which the in rem assets were derived and the reasons that each source provided those funds to Claimant are issues "at the very heart of the government's case." Id. The undersigned therefore found that "[t]he government is clearly entitled to discover" the information it sought. Id.

7

Similarly, the undersigned later observed that "Claimant's income and assets during the relevant time period, and the reasons that each source provided the income or assets to him" were discoverable. Id. at 27. The undersigned reasoned that because the government alleged that Claimant amassed huge wealth between 1992 and 1999 while reporting only a miniscule income, the government was entitled to discover the nature and cause of the disparity. Id. Indeed, that disparity, "if proven true, itself [would be] evidence of the illegality the government is seeking to prove in this action." Id. at 28 (citing United States v. $185,000, 455 F. Supp. 2d 145, 155 (E.D.N.Y. 2006)). Claimant's bare assertion that his income was legitimate was insufficient to resist discovery; instead, the undersigned found that "Claimant's assertion may be tested by the government through discovery." Id. Finally, the undersigned found that the government, based on the allegations in its Amended Complaint, was entitled to discover "the corporate entities and bank accounts Claimant was using" during the time period at issue – 1992 to 1999. Id. at 29. However, the undersigned rejected the government's attempt to discover such information for fiscal years 2000 to present. Id.

The undersigned's prior ruling frames the discussion of the instant motion because the issues raised in the prior ruling – i.e., the source and legitimacy of Claimant's income and assets – are also implicated by the requests at issue here. First, as to fiscal years 1992 to 1999, the undersigned, consistent with the Court's prior order, finds that the tax records plaintiff seeks are relevant. As the undersigned has previously held, records relating to the source of Claimant's assets and income during that period lie "at the very heart of the government's case." Id. at 25. Such records are relevant to establishing: (1) whether Claimant's income during the period matches the quantum of assets he claims here, see United States v. $30,670, 403 F.3d 448, 466 (7th Cir. 2005); United States v. $174,206, 320 F.3d 658, 662 (6th Cir. 2003); (2) whether

8

Claimant can prove that his income sources were legitimate, see United States v. $21,055, 778 F. Supp. 2d 1099, 1105 (D. Kan. 2011); United States v. Cunningham, 520 Fed. Appx. 413, 415 (6th Cir. 2013); and (3) whether Claimant failed to file tax returns at all, a fact which may support forfeiture of the defendant assets, see $174,206, 320 F.3d at 662; Cunningham, 520 Fed. Appx. at 415.  At minimum, plaintiff's requests for these records are reasonably calculated to lead to the discovery of admissible evidence on these issues.  No more is required under the liberal discovery standard embodied in Rule 26.  July 21, 2015 Order at 31 ("[D]iscovery may be obtained of any matter, not privileged, which is relevant to a claim or defense or is reasonably calculated to lead to the discovery of admissible evidence.") (citing Fed. R. Civ. P. 26(b)(1)); Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1348–49 (D.C. Cir. 1984); Food Lion v. United Food & Commercial Workers Int'l Union, 103 F.3d 1007, 1012 (D.C. Cir. 1997).

As noted above, Claimant represents that he has no tax records for fiscal years 1992 to 1999.  Opp. at 3.  Because the Court compels him to respond to the government's discovery requests at issue here, Claimant must produce any such records in conformity with the requirements of Rule 34.  That Rule allows the requesting part to obtain documents which are in the responding party's "possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).  "With regards to the term 'control,' it has been well established that the test for control is not defined as mere possession, but as the legal right to obtain such documents on demand."  Tequila Centinela, S.A. de C.V. v. Bacardi & Co., Ltd., 242 F.R.D. 1, 8 (D.D.C. 2007) (citing Alexander v. FBI, 194 F.R.D. 299, 304 (D.D.C. 2000)); Tavoulareas v. Piro, 93 F.R.D. 11, 20 (D.D.C. 1981); Kifle v. Parks & History Ass'n, No. Civ.A. 98–00048(CKK), 1998 WL 1109117, at *1 (D.D.C. Oct. 15, 1998) (rejecting a party's "attempt to evade their discovery obligations by simply claiming that they do not possess the records sought"); see also 8A Charles A. Wright, Arthur R. Miller, &

9

Richard L. Marcus, Federal Practice and Procedure § 2210 (2d ed. 1994) ("Inspection can be had if the party to whom the request is made has the legal right to obtain the document, even though in fact it has no copy"). Accordingly, the Court will direct that Claimant supplement his responses to the requests at issue here (and, indeed, his responses to all other requests for production in this case) not only with those documents he has in his immediate possession but also with those documents within his "control" as contemplated in Rule 34, including any tax records Claimant can obtain from the United States and Ukraine filed by or on Claimant's behalf or on behalf of any legal entity in which Claimant has an interest.

Second, the Court finds persuasive plaintiff's argument in the instant motion that Claimant's 2000 to present tax records are relevant to the issue of standing. United States v. $290,000, 249 Fed. Appx. 730, 732 (10th Cir. 2007); United States v. $38,000, 816 F.2d 1538, 1543–44 n.12 (11th Cir. 1987) (holding that because a forfeiture action is brought against the rem and not the claimant, the claimant bears the burden of proving that "he has a legally cognizable interest in the property that will be injured if the property is forfeited to the government. It is this claim of injury that confers upon the claimant the requisite 'case or controversy' standing to contest the forfeiture"); U.S. v. All Assets Held at Bank Julius Baer & Co., Ltd., 959 F. Supp. 2d 81, 95 (D.D.C. 2013) ("Establishing standing requires . . . that the claimant demonstrate 'a colorable interest in the property, for example, by showing actual possession, control, title, or financial stake.'"). Claimant argues that there is already ample evidence in the record that he has standing. Opp. at 6. Yet, under the broad scope of discovery embodied in Rule 26, the government is permitted to take further discovery on this issue to contest Claimant's evidence. Likewise, although Claimant argues that he was not required to file tax returns during this period in relation to the in rem assets or that he has a good-faith defense to

10

his failure to file, id. at 15–16, such arguments are better addressed on the merits of Claimant's standing, not the scope of discovery.

Nevertheless, the 2000 to present records are relevant only for the limited purpose of adjudicating Claimant's standing, i.e., only to the extent they bear on the question of Claimant's interest in defendant assets. As such, the undersigned will not authorize the government carte blanche to obtain all tax records from 2000 to present responsive to government's Request for Production No. 28. Rather, the undersigned finds relevant only those tax records, filed by or on Claimant's behalf or on behalf of any legal entity in which Claimant has an interest, which evidence an interest in, reflect income from, reflect income traceable to, or mention the defendant in rem assets.[3]

### B. Privilege

Claimant's second argument to avoid disclosure of his tax records involves claims of privilege, both statutory and common-law. Neither provides Claimant a sound basis to refuse to respond to plaintiff's requests. Because the scope of each type of privilege is different, they will be treated separately below.

#### 1. Section 6103

Claimant argues that section 6103 prohibits disclosure of his tax records to the government in this case. In his objections to Requests No. 28 and 29, Claimant did not identify any particular subsection of section 6103 which operates to prohibit the disclosure of his tax records. In the government's motion, it argues that subsection (a) does not apply because it controls only disclosure of tax returns by government employees, which of course Claimant is not. Mot. at 15. In his opposition, Claimant relies on a different subsection – subsection (i) –

---

[3] As with the 1992 to 1999 records, Claimant should be mindful of his obligations under Rule 34 when producing these records.

11

which limits the ability of government attorneys to access tax returns and tax return information.

Opp. at 16. Subsection (i) provides, in relevant part:

> (i)(1)(A) Disclosure to Federal officers or employees for administration of Federal laws not relating to tax administration.--Disclosure of returns and return information for use in criminal investigations.--In general.--Except as provided in paragraph (6), any return or return information with respect to any specified taxable period or periods shall, pursuant to and upon the grant of an ex parte order by a Federal district court judge or magistrate under subparagraph (B), be open (but only to the extent necessary as provided in such order) to inspection by, or disclosure to, officers and employees of any Federal agency who are personally and directly engaged in—
>
> (i) preparation for any judicial or administrative proceeding pertaining to the enforcement of a specifically designated Federal criminal statute (not involving tax administration) to which the United States or such agency is or may be a party,
>
> (ii) any investigation which may result in such a proceeding, or
>
> (iii) any Federal grand jury proceeding pertaining to enforcement of such a criminal statute to which the United States or such agency is or may be a party,
>
> solely for the use of such officers and employees in such preparation, investigation, or grand jury proceeding.
> . . .
> (4)(A) Returns and taxpayer return information.--Except as provided in subparagraph (C), any return or taxpayer return information obtained under paragraph (1) or (7)(C) may be disclosed in any judicial or administrative proceeding pertaining to enforcement of a specifically designated Federal criminal statute or related civil forfeiture (not involving tax administration) to which the United States or a Federal agency is a party—
>
> (i) if the court finds that such return or taxpayer return information is probative of a matter in issue relevant in establishing the commission of a crime or the guilt or liability of a party, or
>
> (ii) to the extent required by order of the court pursuant to section 3500 of title 18, United States Code, or rule 16 of the Federal Rules of Criminal Procedure.

Id. 26 U.S.C. §§ 6103(i)(1)(A), (4)(A).

This Court finds that section 6103 provides no basis for Claimant to avoid discovery requests in this civil case because that section only regulates disclosure of tax returns by the IRS,

12

not private litigants. First, as a matter of text, the statute only purports to prohibit disclosure of tax returns by government employees. See id. § 6103(a). Subsection (i) opens a narrow exception to that rule by permitting disclosure to other government agencies when necessary for investigation and litigation. See id. § 6103(i)(1)(A). Contrary to Claimant's argument, subsection (i) does not govern attempts by the government to obtain tax returns from private litigants in civil discovery. Instead, it only controls attempts by the government to obtain tax returns directly from the IRS.

Second, the Court finds that the weight of case authority similarly holds that section 6103 did not enact a limitation on civil discovery. See Commodity Futures Trading Comm'n v. Collins, 997 F.2d 1230, 1233 (7th Cir. 1993) ("[Section 6103] does not block access, through pretrial discovery or otherwise, to copies of tax returns in the possession of litigants; all it prevents is the IRS's sharing tax returns with other government agencies."); United States v. $644,860, No. 05-cv-4055, 2007 WL 1164361, at *1 (C.D. Ill. April 19, 2007) ("[Section 6103] does not apply to the discovery at issue [because] Plaintiff sought the tax returns from the claimants, not from a federal agency, employee, or other person designated by the statute."); United States ex rel. Carthan v. Sheriff, City of New York, 330 F.2d 100, 101 (2d Cir. 1964) ("Disclosure by the taxpayer himself of his copies of returns is not an unauthorized disclosure, even though it be made by reason of legal compulsion."); United States v. Art Metal-U.S.A., Inc., 484 F. Supp. 884, 887 (D.N.J. 1980) ("Nothing in [section 6103] or in its legislative history can be reasonably regarded as barring any agency of the United States from gaining [tax returns] where relevant to an administrative investigation or to civil discovery."); Stokwitz v. United States, 831 F.2d 893, 896 (9th Cir. 1987) ("[T]here is no indication in either the language of section 6103 or its legislative history that Congress intended to enact a general prohibition

13

against public disclosure of tax information."); Heathman v. District Court, 503 F.2d 1032, 1035 (9th Cir. 1974) ("[Section 6103] only restricts the dissemination of tax returns by the government and . . . does not otherwise make copies of tax returns privileged."); Gutescu v. Carey Intern, Inc., No. 01–4026–CIV, 2003 WL 25589038, at *1 (S.D. Fla. Aug. 29, 2003) ("The argument that sections 6103 and 7213 preclude the Court's power to order tax returns produced pursuant to Fed. R. Civ. P. 26 borders on the frivolous."). Indeed, even the Gattegno decision, which includes a lengthy discussion of the common-law privilege for tax returns, discussed further below, found that section 6103 is "not a valid basis for protection" of tax returns. Gattegno v. Pricewaterhousecoopers, LLP, 205 F.R.D. 70, 71 (D. Conn. 2001) (emphasis omitted); see also Zuniga v. Western Apartments, No. CV 13–4637 JFW(JCx), 2014 WL 2599919, at *11 (C.D. Cal. Mar. 25, 2014). Likewise, the court in Art Metal observed that if courts applied section 6103 as broadly as Claimant asks this Court to do here, it "would effectively change the rules of civil discovery." Art Metal, 484 F. Supp. at 887. Claimant cites to no cases holding otherwise, and the undersigned has found no case applying subsection (i) to bar discovery in an ongoing civil case.

One additional issue arose during the briefing of this motion. In its motion, the government requested that this Court order Claimant to sign a release allowing it to obtain his tax records directly from the IRS. Mot. at 24. Claimant opposes signing a release, relying on section 6103. Opp. 16–18. Regardless of the application of that statute, the Court will deny the government's request. The government cites only two cases in which a court ordered a party to sign a release permitting the opposing party to seek tax information directly from the IRS. Kelley v. Billings Clinic, Cv. No. 12-14, 2013 WL 1414442, at *7 (D. Mont. Apr. 8, 2013); Powell v. Merrimack Mut. Fire Ins. Co., 80 F.R.D. 431, 433 (N.D. Ga. 1978). In both cases, the

14

party seeking the release had actually requested it in discovery. Here, the government has requested Claimant's tax records, not a release. See supra at 2. As such, the propriety of compelling Claimant to sign such a release is not properly before the Court at this time.[4] Therefore, Claimant must respond to the government's requests but the Court will not, at this time, order him to sign any release enabling the government to obtain his tax records on its own.

        2.        <u>Common-Law Privilege</u>

In response to plaintiff's motion, Claimant argues that there exists a common-law qualified privilege against the disclosure of his tax returns. Opp. at 8–10. Claimant did not raise this privilege in his actual responses to plaintiff's requests. Claimant identified only section 6103, not any other privilege, common-law or otherwise, in his responses to Requests No. 28 and 29. Neither do his general objections contain any reference to this privilege. As a result, the undersigned finds Claimant's common-law privilege objection waived. Peskoff v. Farber, 244 F.R.D. 54, 64 (D.D.C. 2007) (objection to discovery request not raised in response can be considered waived); see also In re Veiga, 746 F. Supp. 2d 27, 33–34 (D.D.C. 2010) (proponent of a privilege "must adduce competent evidence in support of its claims" and "must offer more than just conclusory statements, generalized assertions, and unsworn averments of its counsel").

In any event, even if the objection was not waived, it is meritless. This Court has recently addressed the same "qualified privilege":

---

[4] Moreover, crafting an appropriate release in this case would likely be very difficult. Kelley and Powell are far simpler than the instant case. They each involve the tax records of one person with finances exponentially less complex than Claimant's. Kelley, 2013 WL 1414442, at *7; Powell, 80 F.R.D. at 433. Further, each involves requests tailored to a specific, easily identifiable timeframe. Kelley, 2013 WL 1414442, at *7; Powell, 80 F.R.D. at 433. Here, by contrast, a release requiring the IRS to produce records "consistent with this Order" would place a great interpretive burden on the IRS to determine which records should or should not be released. It is a burden which the IRS might well decline to undertake. The better approach is what the Court orders here: that Claimant must obtain his own tax records and produce those relevant portions required by the instant Order. Nevertheless, if the government can craft a release with manageable temporal and topical criteria, the Court can then consider whether to order Claimant to sign it.

> With respect to income tax returns, courts, including this Court, acknowledge that they are "['] confidential communications between a taxpayer and the government.'" Am. Air Filter Co., Inc., v. Kannapell, No. 85–CV–3566, 1990 WL 137385, at *3 (D.D.C. Sept. 10, 1990) (quoting Fed. Sav. & Loan Ins. Co. v. Krueger, 55 F.R.D. 512, 514 (N.D. Ill. 1972)). Accord Nat'l Gas Pipeline Co. of Am. v. Energy Gathering, Inc., 2 F.3d 1397, 1411 (5th Cir. 1993), cert. denied, 510 U.S. 1073, 114 S. Ct. 882, 127 L. Ed. 2d 77 (1994). In the context of a discovery dispute, however, the key issue remains one of relevance. In other words, "[w]hile the courts vary in their interpretations of the breadth of the statutory protection [afforded by the tax laws] . . . most courts do not recognize the existence of a 'privilege' against disclosure . . . rather [the courts] recognize a general federal policy limiting disclosure to appropriate circumstances." Eglin Fed. Credit Union v. Cantor, 91 F.R.D. 414, 416 (N.D. Ga. 1981). In order to determine whether disclosure is appropriate, the court must conclude "(1) that the returns are relevant to the subject matter of the action; and (2) that there is a compelling need for the returns because the information contained therein is not readily otherwise obtainable." S.E.C. v. Cymaticolor Corp., 106 F.R.D. 545, 547 (S.D.N.Y. 1985).

Robinson v. Duncan, 255 F.R.D. 300, 302 (D.D.C. 2009).[5] As discussed in Robinson, although tax returns are not "privileged" in a formal sense, many courts recognize the important privacy and confidentiality concerns raised by their disclosure. Here, however, plaintiff has met its burden to demonstrate the relevance of certain of Claimant's tax records. See supra at 8–9.

Further, those tax records are not readily obtainable from other sources, creating a compelling need for plaintiff to seek them through discovery in this case. Indeed, it is section 6103 which creates this difficulty for the government because it prevents the IRS from disclosing any records to the government directly. 26 U.S.C. § 6103. Claimant's argument that "other evidence of [his] standing exists" misses the mark. Opp. at 10. The relevant question is not whether there is other evidence of Claimant's standing but whether there is other evidence of the information contained within his tax records.

---

[5] Some courts reject this heightened showing required for discovery of tax returns. See, e.g., Jackson v. N'Genuity Enter. Co., No. 09 C 6010, 2010 WL 4928912, at *2 (N.D. Ill. Nov. 29, 2010). Because the undersigned finds that plaintiff has met the higher standard endorsed in Robinson, the undersigned need not decide whether the lower standard is more in line with the text and purpose of Rule 26.

16

The evidence Claimant points to falls well short of the sort of thorough, detailed information likely presented in his tax records regarding the nature, source, and amount of any income Claimant received from the defendant in rem assets. Although Claimant cites to testimony from various persons that certain assets belonged to Claimant, this evidence does not give a complete picture of all the assets or all of Claimant's income. Moreover, Claimant does not provide this evidence in the form of exhibits to his brief, so the Court is left unable to verify his statements. In short, Claimant has not demonstrated that the information contained in his tax records is readily obtainable from other sources. Accordingly, no common-law privilege grants Claimant the ability to refuse to answer plaintiff's requests.

The undersigned also notes that any confidentiality concerns Claimant has relating to his tax records and tax information are largely assuaged by the existence of a protective order in this case. See Am. Air Filter Co., Inc. v. Kannapell, CIV. A. No. 85–3566, 1990 WL 137385, at *4 (D.D.C. Sept. 10, 1990) ("[T]he traditional privacy concerns are not present in this action [because] the plaintiff has offered to sign a confidentiality stipulation prohibiting disclosure of the returns. . . ."). That protective order gives Claimant discretion to designate as confidential certain documents he produces in discovery. Without determining whether designating his tax returns as confidential is in fact appropriate, the undersigned observes that the protective order is arguably broad enough to permit such a designation.

## C. Claimant's Pretrial Services Records and Presentence Investigation Report

Although Claimant's tax records are properly discoverable in this case, Claimant's Pretrial Services records and Presentence Investigation Report, prepared in connection with his criminal prosecution in the Northern District of California, present additional concerns that

17

militate against their disclosure.[6] In his opposition to the instant motion, Claimant argues that 18 U.S.C. § 3153 and California Criminal Local Rule 32-7 protect his Pretrial Services records and Presentence Investigation Report. Opp. at 3. The statute Claimant cites provides that "information obtained in the course of performing pretrial services functions in relation to a particular accused shall be used only for the purposes of a bail determination and shall otherwise be confidential." 18 U.S.C. § 3153(c)(1). Criminal Local Rule 32-7 in the Northern District of California states that "[a] presentence report, probation, supervised release report, violation report and related documents to be offered in a sentencing or violation hearing are confidential records of the Court. Except as otherwise required by Fed. R. Crim. P. 26.2, authorized by statute, federal rule or regulation or unless expressly authorized by order of the Court, such records shall be disclosed only to the Court, court personnel, the defendant, defense counsel and the attorney for the government in connection with sentencing, violation hearings, appeal or collateral review." N.D. Cal. Crim. L.R. 32-7(a).

The undersigned finds that section 3153 protects Claimant's confidential Pretrial Services records from the Northern District of California. Confidential treatment of pretrial services information is intended to "protect [ ] the relationship between the pretrial services officer and the particular defendant. Defendants may be reluctant to cooperate with pretrial services officers unless assured of the confidentiality of the information they reveal to the officers. The courts, in turn, would receive only incomplete information." H.R. Conf. Rep. 97–792, at 8 (1982), reprinted in 1982 U.S.C.C.A.N. 2393, 2394. In the criminal context, the Second Circuit has

---

[6] Both plaintiff and Claimant make passing reference to records of the United States Probation Office for the Northern District of California. Mot. at 5; Opp. at 4. Neither party clearly defines what these records are. Claimant argues that he already produced these records, whatever their nature, in discovery during his prosecution. Opp. at 4. In its reply, the government does not challenge this assertion or press any other arguments related to the Probation Office records. Instead, the government only addresses the Pretrial Services records and Presentence Investigation Report. Reply at 19. Because neither party develops the facts or arguments related to Claimant's Probation Office records, the Court declines to rule on their discoverability at this time.

observed that "a request by a third party for the pretrial services report of a government witness creates a tension between this confidentiality and the government's discovery obligations." United States v. Pena, 227 F.3d 23, 26 (2d Cir. 2000). The Second Circuit held that courts should conduct in camera review of such records to determine if any information contained therein should be disclosed pursuant to the government's obligations under Brady, Giglio, and other cases. Id. In perhaps the only civil case applying section 3153, the Ninth Circuit – where the documents at issue here were created – found that even the First Amendment right of access to criminal trials is circumscribed by section 3153. Seattle Times Co. v. U.S. Dist. Court for W. Dist. of Washington, 845 F.2d 1513, 1522 (9th Cir. 1988). Although the Ninth Circuit's rulings are not binding on this Court, its application of section 3153 to the records of one of its own district courts is persuasive. Because courts closely guard the confidentiality of such records, even in the civil context, the undersigned will not compel Claimant to disclose his Pretrial Services records to plaintiff.

Similarly, although the undersigned doubts that this Court is bound by the local rules of another district court, this Court will not order the production of the presentence investigation report which the Northern District of California's rules seek to keep confidential. It is well-settled that presentence reports are usually highly confidential documents. See Beller v. United States, 221 F.R.D. 674, 679 (D.N.M. 2003); United States v. Krause, 78 F.R.D. 203, 204 (E.D. Wis. 1978). Presentence reports are therefore normally discoverable only on a showing of special need. U.S. Dep't of Justice v. Julian, 486 U.S. 1, 12 (1988). Plaintiff has not attempted to make such a showing here. Moreover, to the extent plaintiff desires to discover the Presentence Investigation Report, the local rule cited by Claimant permits a request for disclosure to be made to the sentencing judge. See N.D. Cal. Crim. L.R. 32-7(b). If plaintiff

truly desires a copy of the report, it should make that request in the Northern District of California.

## CONCLUSION

Wherefore, for the foregoing reasons, plaintiff's Motion to Compel Production of Records [Dkt. 429] is **GRANTED IN PART** and **DENIED IN PART**. An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.

Date: November 3, 2015

                                                      G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE