## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

      **Plaintiff,**

          **v.**                      **Civil Action No. 04-798 (PLF/GMH)**

**ALL ASSETS HELD AT BANK JULIUS
BAER & COMPANY, LTD., GUERNSEY
BRANCH, ACCOUNT NUMBER 121128,
IN THE NAME OF PAVLO LAZARENKO
*ET AL.***

      **Defendants *In Rem*.**

## <u>MEMORANDUM OPINION</u>

      This case was referred to the undersigned for the management of discovery.  Currently ripe is Claimant Pavel Lazarenko's motion for protective order relating to his request for a private letter ruling from the Internal Revenue Service.  After reviewing the entire record,[1] the Court will deny the motion.

## BACKGROUND

      The factual background concerning this <u>in rem</u> asset forfeiture action has been described in multiple opinions by Judge Friedman.  <u>See</u>, <u>e.g.</u>, <u>United States v. All Assets Held at Bank Julius Baer & Co., Ltd.</u>, 772 F. Supp. 2d 191, 194 (D.D.C. 2011).  This Court will not repeat that lengthy history here.  The facts that are pertinent to adjudication of Claimant's motion are summarized below.

---

[1] The relevant docket entries for purposes of this Memorandum Opinion are:  (1) Claimant Pavel Lazarenko's Motion for Protective Order ("Mot.") [Dkt. 561]; (2) Plaintiff's Opposition to Claimant's Motion for Protective Order ("Opp.") [Dkt. 586]; (3) Claimant's Reply in Support of His Motion for Protective Order ("Reply") [Dkt. 624]; and (4) Claimant's Request for Private Letter Ruling ("PLR Request") [Dkt. 632].

In its First Amended Complaint, the United States seeks the forfeiture of more than $250 million deposited in over twenty bank accounts located in Guernsey, Antigua and Barbuda, Switzerland, Lithuania, and Liechtenstein.  First Amended Complaint [Dkt. 20] ¶¶ 1, 5.  The government alleges that the money in those accounts is traceable to a "variety of acts of fraud, extortion, bribery, misappropriation, and/or embezzlement" committed by Claimant, the former Prime Minister of Ukraine, or by his associates, between 1992 and 1998.  Id. ¶¶ 6, 8, 10.  The United States asserts its right to the funds pursuant to federal statutes that provide for the forfeiture to the government of funds traceable, or otherwise related to or involved in, criminal activity that occurred at least in part in the United States.  Id. ¶ 1.

On January 6, 2016, Claimant provided the government with a declaration stating that he had filed a request for private letter ruling ("PLR Request") with the Internal Revenue Service.  Mot. at 1.  More specifically, he made the Request to the IRS Associate Chief Counsel (International).  PLR Request at 1.  A private letter ruling ("PLR") is a written determination issued to a taxpayer by the IRS in response to a taxpayer inquiry regarding his status for tax purposes or the tax effects of certain transactions.  Rev. Proc. 2016-1 § 2.01, 2016 WL 20933 (Jan. 4, 2016).  In a PLR, the IRS interprets the tax code in reference to the taxpayer's specific circumstances.  Id.  Certain information must be set forth in a PLR request, including a complete statement of all facts relating to the transactions at issue, legal analysis of those facts under the relevant law, and a statement of supporting and contrary authorities in relation to the taxpayer's legal position.  Id. § 7.01(1), (2)(c), (8), (9).  The IRS will issue a PLR in response to a PLR request "when appropriate in the sound interest of tax administration."  Id. § 2.01.

Claimant, asserting the work-product doctrine over his PLR Request, has not produced it to the government.  At a hearing on January 7, 2016, the Court set a briefing schedule for

Claimant to seek a protective order prohibiting disclosure of the PLR Request, and any subsequent PLR, to Plaintiff.  Jan. 11, 2016 Order [Dkt. 544].  At the Court's request, see Mar. 23, 2016 Minute Order, Claimant filed the PLR Request ex parte and under seal for the Court's in camera review.  See PLR Request.

Claimant asks the Court to shield both his PLR Request and any resulting PLR from disclosure to the government in this matter.  Mot. at 4–7.  Claimant contends that his PLR Request qualifies as opinion work product because it was prepared by his attorneys and analyzes the complex issues surrounding his potential tax liability.  Id. at 5–6.  In Claimant's view, even the facts stated in the PLR Request "were included solely to facilitate the processing of this request for legal advice" and therefore should be protected as opinion work product as well.  Id. at 5.  Further, Claimant argues that his disclosure of the PLR Request to the IRS does not waive any work-product protection the Request enjoys because the IRS is not his adversary.  Id. at 6. Finally, Claimant posits that the government has not demonstrated a "substantial need" for the PLR Request because it "is free to conduct its own legal analysis to determine if [Claimant] was required to file tax returns."  Id.  In passing, Claimant also argues that any PLR issued in response to the Request will not be relevant to this litigation because it would merely represent the views of a third party as to Claimant's tax liabilities.  Id.[2]

The government opposes Claimant's motion.  Opp. at 1.  First, Plaintiff argues that any work-product claim as to the PLR Request or the PLR has been waived.  Id. at 9–10.  This is because Claimant disclosed his PLR Request to the IRS, which in turn must make his Request and any subsequent PLR "'open to public inspection.'"  Id. at 10 (quoting 26 U.S.C. § 6110(a)).

---

[2] Claimant initially asserted other privileges as to the PLR Request, including the attorney-client privilege, 26 U.S.C. § 6103, and unnamed privileges under "the common law," see Opp., Ex. 5 ¶ 6, but he has abandoned those arguments in his motion.

According to Plaintiff, although the IRS does redact some identifying information in the PLR Request and PLR, the factual information proffered in the Request would be disclosed.  Id. Additionally, disclosure of the PLR Request to the IRS waived any work-product protection the document might have enjoyed because the IRS is Claimant's potential adversary in future proceedings relating to his alleged failure to file tax returns.  Id. at 11–12.  Moreover, Plaintiff contends that Claimant has waived work-product protection by previously offering to permit discovery of his PLR Request, although Claimant eventually reneged on that promise.  Id. at 14– 15.

Second, Plaintiff claims that even if Claimant's work-product protection has not been waived, the PLR Request should be disclosed because the work-product doctrine does not apply here.  Id. at 15.  In this vein, Plaintiff argues that Claimant did not prepare the PLR Request in anticipation of litigation but instead in an effort to determine the tax effects of certain transactions.  Id. at 16.  Because Claimant's PLR Request concerns his tax liabilities since 1999, which are not at issue in this case, Plaintiff claims that there should be no work-product protection for this document.  Id. at 16–17.  Additionally, even if the work-product doctrine did encompass the PLR Request, Plaintiff posits that it has a compelling need for the document in order to probe Claimant's relationship to the defendant in rem assets.  Id. at 18–19.  Information regarding Claimant's relationship to the assets is scant, and, in Plaintiff's view, it cannot readily obtain the information in Claimant's PLR Request from other sources.  Id.

In reply, Claimant contends that litigation over his tax liability is foreseeable and, as a result, his PLR Request was prepared in anticipation of litigation.  Reply at 2.  Claimant also challenges Plaintiff's assertion that disclosure of the PLR Request to the IRS constitutes a waiver of work-production protection.  Id. at 3.  Claimant argues that any potential future adversaries of

his at the IRS are auditors, not the IRS Office of Chief Counsel, to which the PLR Request was

submitted. <u>Id.</u>  His limited disclosure to that branch of the IRS does not mean that all IRS

employees have access to it. <u>Id.</u>  Thus, Claimant posits that he has not disclosed the PLR

Request to a potential adversary. <u>Id.</u> at 3–4.  Further, Claimant reiterates that the PLR Request

will be made public only with redactions of personally identifying information, which would

render it inadmissible against him in this case. <u>Id.</u> at 4–5.  As a result, the mere fact that the PLR

or PLR Request will be publicly disclosed would not rob them of work-product protection.  <u>Id.</u>

From Claimant's perspective, Plaintiff's request for his PLR Request is really an attempt to

freeload on Claimant's attorneys' experience with and analysis of the intricate tax issues

underlying this matter.  <u>Id.</u> at 6.  Finally, Claimant argues that his mere offer to produce the PLR

Request to Plaintiff does not amount to waiver of his privilege claims.  <u>Id.</u> at 8.

## LEGAL STANDARDS

### A.      Motion for Protective Order

Federal Rule of Civil Procedure Rule 26(c) permits the court to issue protective orders to

protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense.  Fed. R. Civ. P. 26(c).  Determining whether to grant a protective order is a matter of

discretion for the trial court.  <u>See</u> <u>E.E.O.C. v. Nat'l Children's Ctr., Inc.</u>, 146 F.3d 1042, 1047

(D.C. Cir. 1998).  A protective order may be granted upon a showing of good cause.  <u>See</u>

<u>Alexander v. FBI</u>, 186 F.R.D. 99, 100 (D.D.C. 1998).  "Protective orders are not permanent or

immutable and may be modified to serve important efficiency or fairness goals."  <u>U.S. ex rel.</u>

<u>Pogue v. Diabetes Treatment Ctrs. of Am.</u>, No. Civ.99-3298, 01-MS-50(MDL)(RCL), 2004 WL

2009414, at *2 (D.D.C. May 17, 2004).  Indeed, "Rule 26(c) is highly flexible, having been

designed to accommodate all relevant interests as they arise."  <u>United States v. Microsoft Corp.</u>,

165 F.3d 952, 959 (D.C. Cir. 1999).  The party seeking modification of an existing protective

order bears the burden of showing that good cause exists for the modification.  Pogue, 2004 WL

2009414, at *2.

**B.     Public Disclosure of PLR Requests and PLRs**

The text of a PLR request and any resulting PLR are usually made open to public

inspection.  Rev. Proc. 2016-1 § 7.01(11), 2016 WL 20933; 26 U.S.C. § 6110(a).  If a taxpayer

desires it, he or she may ask the IRS to keep certain contents of a PLR request or any resulting

PLR confidential.  See Rev. Proc. 2016-1 § 7.01(11), 2016 WL 20933 ("The text of letter rulings

and determination letters is open to public inspection under § 6110. . . .  To help the Service

make the deletions required by § 6110(c), a request for a letter ruling or determination letter must

be accompanied by a statement indicating the deletions desired[.]").  26 U.S.C. § 6110 governs

what parts of a PLR request or a resulting PLR may be redacted.  See 26 U.S.C. § 6110.

Under section 6110, both the IRS's advice to the taxpayer and the "background file

documents," i.e., the taxpayer's PLR request, are generally treated as public documents except

for specific categories of information that must be redacted.  Id. § 6110(a), (c).  The categories of

information the IRS must redact include, among other things, "(1) names, addresses, and other

identifying details of the person to whom the written determination pertains; . . . and (5)

information the disclosure of which would constitute a clearly unwarranted invasion of personal

privacy."  Id. § 6110(c)(1), (5).  Further, IRS regulations implementing section 6110 provide that

the IRS may not disclose:

> Any other information that would permit a person generally knowledgeable with
> respect to the appropriate community to identify any person.  The determination
> of whether information would permit identification of a particular person will be
> made in view of information available to the public at the time the written
> determination or background file document is made open or subject to inspection
> and in view of information that will subsequently become available, provided the

> Internal Revenue Service is made aware of such information and the potential that
> such information may identify any person.  The "appropriate community" is that
> group of persons who would be able to associate a particular person with a
> category of transactions one of which is described in the written determination or
> background file document.  The appropriate community may vary according to
> the nature of the transaction which is the subject of the written determination.

26 C.F.R. § 301.6110-3(a)(1)(ii).

## C.      Work-Product Protection

The work-product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3), which

provides, in relevant part:

> (A) Documents and Tangible Things.  Ordinarily, a party may not discover
> documents and tangible things that are prepared in anticipation of litigation or for
> trial by or for another party or its representative (including the other party's
> attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule
> 26(b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1); and
> >
> > (ii) the party shows that it has substantial need for the materials to prepare
> > its case and cannot, without undue hardship, obtain their substantial
> > equivalent by other means.
>
> (B) Protection Against Disclosure.  If the court orders discovery of those
> materials, it must protect against disclosure of the mental impressions,
> conclusions, opinions, or legal theories of a party's attorney or other
> representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3)(A)-(B).  The Supreme Court has observed that the work-product

doctrine is "an intensely practical one, grounded in the realities of litigation in our adversary

system."  United States v. Nobles, 422 U.S. 225, 238 (1975).

Under Rule 26, the party asserting work-product protection must first show that the

document in question was prepared "in anticipation of litigation."  Fed. R. Civ. P. 26(b)(3).  In

this Circuit, we apply the "because of" test, which inquires "'whether, in light of the nature of the

document and the factual situation in the particular case, the document can fairly be said to have

been prepared or obtained because of the prospect of litigation.'" FTC v. Boehringer Ingelheim Pharmaceuticals, Inc., 778 F.3d 142, 149 (D.C. Cir. 2015) (quoting United States v. Deloitte LLP, 610 F.3d 129, 137 (D.C. Cir. 2010)). "For a document to meet this standard, the lawyer must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998). "While litigation need not be imminent or certain," it must be "'fairly foreseeable at the time' the materials were prepared." Hertzberg v. Veneman, 273 F. Supp. 2d 67, 75 (D.D.C. 2003) (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 861 (D.C. Cir. 1980)). "Where a document would have been created 'in substantially similar form' regardless of the litigation, work product protection is not available." Boehringer, 778 F.3d at 149 (quoting Deloitte, 610 F.3d at 138).

If the document was created in anticipation of litigation, the burden then shifts to the opposing party to demonstrate that the document is within the general scope of discoverable information. Fed. R. Civ. P. 26(b)(3)(A)(i). That standard, which was amended in December 2015, now provides that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Id. 26(b)(1). As before, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id.

Assuming the document is relevant, the Court must next examine whether it contains fact or opinion work product. See id. 26(b)(3); Boehringer, 778 F.3d at 151. Opinion work product is that which reveals "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Everything else is fact work product. Boehringer, 778 F.3d at 151. Where a document contains

both opinion and fact work product, the court must examine whether the factual matter may be disclosed without revealing the attorney's mental impressions.  Id. at 152.  Factual matter in a document only deserves protection as opinion work product when "the selection [of the facts] reflects the attorney's focus in a meaningful way."  Id. at 151.

The distinction between fact and opinion work product is critical because "a party's ability to discover work product often turns on whether the withheld materials are fact work product or opinion work product."  Id. at 152.  Opinion work product is "virtually undiscoverable," Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP, 124 F.3d 1304, 1307 (D.C. Cir. 1997), although courts have indicated that an "extraordinary showing of necessity" will compel disclosure.  In re Sealed Case, 676 F.2d 793, 811 (D.C. Cir. 1982).  Fact work product, on the other hand, can be obtained merely by showing "'adequate reasons'" supporting why it should be disclosed.  Boehringer, 778 F.3d at 153 (quoting In re Sealed Case, 676 F.2d at 809).  Under Rule 26, these "adequate reasons" are that the party seeking disclosure "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).

Like other privileges, work-product protection can be waived by voluntary disclosure to a third party.  Deloitte, 610 F.3d at 139.  But it is well settled in this Circuit that waiving work-product protection in this way requires a more robust showing than waiving attorney-client privilege.  Id.  The Court of Appeals has instructed that "[v]oluntary disclosure does not necessarily waive work-product protection . . . because it does not necessarily undercut the adversary process.  Nevertheless, disclosing work product to a third party can waive protection if 'such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from

the disclosing party's adversary.'" Id. at 140 (quoting Rockwell Int'l Corp. v. Dep't of Justice, 235 F.3d 598, 605 (D.C. Cir. 2001)). This is a fact-intensive inquiry. Id. at 141.

A party normally waives the privilege if he discloses the document to an adversary or a potential adversary. Id. at 140. To determine whether the receiving party is an adversary or potential adversary, a court must ask whether the recipient could be an adversary in the sort of litigation contemplated in the document for which work-product protection is sought. Id. The question is not simply whether the party could theoretically be an adversary "in any conceivable future litigation." Id. Instead, the court should query whether the alleged work product would be relevant in a future dispute between the disclosing and receiving parties. Id.

But even if the recipient is not an adversary or potential adversary, waiver may still occur. Waiver also occurs when one discloses one's work product to a "conduit to an adversary." Id. at 141. In other courts, this form of waiver is generally tested by asking whether disclosure to the alleged "conduit" substantially increases the likelihood that an adversary will come into possession of the material. See Westinghouse Elec. Corp. v. Philippines, 951 F.2d 1414, 1428 (3d Cir. 1991); Costabile v. Westchester, N.Y., 254 F.R.D. 160, 164 (S.D.N.Y. 2008); Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 219 F.R.D. 396, 400–01 (E.D. Tex. 2003). To avoid waiver on this ground, the disclosing party must have had "a reasonable basis for believing that the recipient would keep the disclosed material confidential." Deloitte, 610 F.3d at 141.

"A reasonable expectation of confidentiality may derive from common litigation interests between the disclosing party and the recipient." Id.; see also United States v. AT&T Co., 642 F.2d 1285, 1299–1300 (D.C. Cir. 1980) ("So long as transferor and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common

interests in sharing the fruit of the trial preparation efforts."). It might also arise from "a confidentiality agreement or similar arrangement between the disclosing party and the recipient," although such an agreement "must be relatively strong and sufficiently unqualified to avoid waiver." Deloitte, 610 F.3d at 141. Important here is the notion that "[a] mere promise to give the disclosing party notice before releasing documents does not support a reasonable expectation of confidentiality." Id. Additionally, if the party "has engaged in self-interested selective disclosure by revealing work product to some adversaries but not others," this militates in favor of finding waiver. Id. at 141 (citing United States v. Williams Cos., 562 F.3d 387, 396 (D.C. Cir. 2009)).

## DISCUSSION

As explained in more detail below, the Court will deny Claimant's motion for a protective order concerning his PLR Request and any resulting PLR. First, the Court finds that Claimant's PLR Request is properly viewed as attorney work product because it was prepared with an eye toward future tax litigation. Any resulting PLR, by contrast, would be drafted by the IRS and express the IRS's views, not those of Claimant's counsel, as to his tax liability. Thus, any PLR drafted as a result of Claimant's PLR Request cannot enjoy work-product protection. Second, the Court finds that Claimant's PLR Request is relevant to this case consistent with its prior orders regarding the importance of Claimant's tax records to the instant litigation. Finally, the Court finds that although Claimant's PLR Request constitutes work product because it was drafted with an eye toward litigation with the IRS, he also waived work-product protection for that same reason. The parties did not cite, and the Court cannot find, any case directly on point, but application of the general principles of waiver in this context demonstrates that Claimant's

disclosure of his PLR Request to the IRS waived whatever protection it would otherwise have enjoyed.

### A.       Anticipation of Litigation

The threshold question in assessing a work-product claim is whether the documents at issue were prepared in anticipation of litigation.  <u>Boehringer</u>, 778 F.3d at 149.  The Court finds that Claimant's PLR Request meets this standard.  Any resulting PLR, however, does not.

Claimant's PLR Request was drafted by his counsel for the purpose of seeking a legal opinion from the IRS Office of Chief Counsel concerning the potential tax implications of certain transactions.  While Claimant is not currently laboring under an IRS audit or other tax-related suit, his PLR Request can reasonably be viewed as an attempt to discern the likelihood and magnitude of his future tax liability.  As a result, the PLR Request was created with an eye toward foreseeable future litigation with the IRS.  <u>See</u> <u>In re Sealed Case</u>, 146 F.3d at 884.  This satisfies the broad "because of" test employed in this Circuit.  <u>See</u> <u>Boehringer</u>, 778 F.3d at 149.[3]

As the court reasoned in <u>Union Pacific Resource Group, Inc. v. Pennzoil Co.</u>, Misc. No. 97-64 JJF, 1997 U.S. Dist. LEXIS 24216, at *26 (D. Del. Sept. 2, 1997), a PLR request is different from an attorney's routine preparation of tax returns.  Courts are generally reluctant to find that the tax returns must always be considered work product merely because of the "ever-present specter of an IRS challenge or audit."  <u>Id.</u>  Conversely, "[w]hen one is seeking to obtain a private letter ruling, one is aware that the IRS may not grant that ruling.  Therefore, litigation is more likely a possibility than in the context of filing a tax return."  <u>Id.</u>  In other words, the party

---

[3] Plaintiff believes, erroneously, that work-product protection can only cover the PLR Request if it was prepared "in anticipation of litigation with Plaintiff in this case."  Opp. at 18.  The Court of Appeals has very recently reiterated the longstanding principle that "[a] document prepared as work product for one lawsuit will retain its protected status even in subsequent, unrelated litigation."  <u>Boehringer</u>, 778 F.3d at 149.  Thus, the question has never been whether the document was prepared in anticipation of the <u>instant</u> litigation, only whether it was prepared in anticipation of <u>any</u> litigation.  <u>See id.</u>

seeking the PLR "would be vulnerable to a lawsuit if the IRS ruled against it" and would therefore attempt to "prepar[e] documents in a more defensive mode." Id. at *27.  As a result, a party drafting a PLR request normally has both a subjectively and objectively reasonable apprehension of potential future litigation with the IRS.  Id.; see also United States v. Veolia Env't N.A. Operations, Inc., Civ. No. 13–mc–03–LPS, 2013 WL 5779653, at *5 (D. Del. Oct. 25, 2013) (finding that a party's request for a private letter ruling was one indication that it anticipated litigation).  The undersigned finds the analysis in Union Pacific sound.  Claimant's PLR Request therefore falls within the protection of the work-product doctrine.

Plaintiff's cited cases are inapposite.  Plaintiff argues that Claimant cannot meet the standard articulated by the D.C. Circuit in Coastal States, 617 F.2d at 865, which held that for work product protection to attach, "at the very least some articulable claim, likely to lead to litigation, must have arisen," such that litigation was "fairly foreseeable at the time" the PLR Request was drafted.  In that case, the Department of Energy initiated an internal auditing program to ensure compliance with relevant regulations.  Id. at 858.  The audits were performed as part of a routine procedure in which suspected violations of law were not a prerequisite.  Id. Agency regional counsel assisted in an audit by drafting memoranda in response to requests for advice from the auditors regarding the interpretation of applicable regulations.  Id. at 859.  In response to a FOIA request, the agency refused to produce these memoranda, claiming, among other things, that it was attorney work product.  Id. at 865.  The D.C. Circuit disagreed, finding that

> there is no indication in the [Vaughn] index or affidavits that there was even the dimmest expectation of litigation when these documents were drafted.  The mere fact that many of the memoranda deal with specific factual situations is not sufficient; if an agency were entitled to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated.  To argue that

> every audit is potentially the subject of litigation is to go too far.  While abstractly true, the mere possibility is hardly tangible enough to support so broad a claim of privilege.  We need not decide here whether litigation need be consciously contemplated by the attorney; the documents must at least have been prepared with a specific claim supported by concrete facts which would likely lead to litigation in mind, and that has not been demonstrated here.

Id.

This case is far removed from the situation presented in Coastal States.  Here, Claimant's PLR Request was not prepared as part of a routine procedure in which suspected regulatory violations not required.  Instead, Claimant submitted the PLR Request based on a specific concern he had about potential tax liability.  That concern grew, at least in part, from the significant litigation in this matter over the disclosure of Claimant's tax records and the subsequent discovery of gaps in those records.  As such, Claimant's fear of litigation over tax liability was certainly foreseeable at the time he made the PLR Request.  See Hertzberg, 273 F. Supp. 2d at 79–80 (finding litigation foreseeable when Forest Service noticed indications in news media that they were being blamed for recent property damage).  In other words, by the time Claimant made the PLR Request, litigation over these issues was not a "mere possibility" that "might someday" come to pass.  Coastal States, 617 F.2d at 865.  As the PLR Request makes clear, Claimant raises "specific claim[s] supported by concrete facts which [would] likely lead to litigation," and this is enough to satisfy the Coastal States standard.  Id.[4]

---

[4] In any event, the Court of Appeals has since loosened the strict "specific claim" requirement articulated in Coastal States.  See In re Sealed Case, 146 F.3d at 885.  In In re Sealed Case, the D.C. Circuit found that the absence of a "specific claim" that counsel can point to as underpinning his work is not dispositive.  Id.  The presence or absence of a specific claim at the time a document is created is "just one factor that courts should consider" in assessing whether the document was created in anticipation of litigation.  Id.  Accordingly, even if the Court found that there was no specific and articulable claim Claimant's counsel had in mind when drafting the PLR Request, that finding would not undermine the Court's ultimate conclusion that, considering all the circumstances surrounding the document's creation, it was created because of the prospect of litigation.

Although the PLR Request was created in anticipation of litigation, the result is different for any PLR the IRS drafts in response to the Request.  At its core, the work-product doctrine protects from disclosure an <u>attorney's</u> efforts to prepare his client's case:

> [I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.  Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.

<u>Hickman v. Taylor</u>, 329 U.S. 495, 510–11 (1947).  This purpose would not be served if the Court sealed off from Plaintiff the opinion and reasoning of the IRS in its PLR.  That document, if it is ever created, would not be drafted by Claimant's counsel or his representative.  It therefore falls outside the scope of work-product protection as codified in Rule 26(b)(3).  <u>See</u> Fed. R. Civ. P. 26(b)(3) (protecting documents prepared for litigation "by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)"); <u>see</u> <u>also</u> <u>In re Sealed Case</u>, 676 F.2d at 818 ("Courts need not allow a claim of privilege when the party claiming the privilege seeks to use it in a way that is not consistent with the purpose of the privilege.").  Similarly, the United States Tax Court itself has held that PLRs are not work product because they "do not appear to have been prepared in anticipation of litigation, but rather as responses to taxpayers' requests for the views of the Service with respect to contemplated transactions."  <u>Teichgraeber v. Comm'r</u>, 64 T.C. 453, 455 (1975).

Disclosure would also not intrude upon Claimant's counsel's mental impressions of the case.  To the extent the IRS might set forth Claimant's proffered facts and arguments in its ruling, the Court does not find that this would impermissibly reveal his attorneys' mental impressions.  <u>See</u> <u>Millennium Marketing Grp., LLC v. United States</u>, 253 F.R.D. 407, 410 (S.D. Tex. 2008) (rejecting taxpayer's attempt to prohibit disclosure of the portions of a PLR which

"explai[n] the factual and legal bases" for the IRS's decision).  Indeed, the same logic might be

applied to prohibit disclosure of a court's opinion simply because it discusses a party's factual or

legal arguments.  That position is untenable.  Accordingly, the Court finds that any PLR issued

in response to Claimant's PLR Request would not be prepared in anticipation of litigation.

### B.    Relevance

Having determined that the PLR Request was created in anticipation of litigation, the

Court must next decide whether Plaintiff has met its burden to show that the Request is relevant

to the issues before the Court.  There is no need to dwell on this issue for long.  On November 3,

2015, the undersigned overruled in part Claimant's objections to two of Plaintiff's requests for

production which sought his tax records, including financial disclosures, tax returns, and other

statements of income made to the government.  United States v. All Assets Held at Bank Julius

Baer & Co., Ltd., Civil Action No. 04–798 (PLF/GMH), 2015 WL 6736888, at *1–2 (D.D.C.

2015).  Claimant objected to these requests on several grounds, including that the requests sought

irrelevant information and that the information sought was privileged under the tax code.  Id. at

*2.

The Court largely rejected these arguments.  Id.  at *3.  The Court concluded that

Claimant's tax records from 1992–1999 are relevant.  Id. at *4.  Citing an earlier ruling, the

Court reasoned that "records relating to the source of Claimant's assets and income during [the

1992–1999] period lie 'at the very heart of the government's case.'"  Id. (quoting United States

v. All Assets Held at Bank Julius Baer & Co., Ltd., 309 F.R.D. 1, 15 (D.D.C. 2015), aff'd, 2016

WL 1064435 (D.D.C. 2016)).  Such records are relevant to showing:  "(1) whether Claimant's

income during the period matches the quantum of assets he claims here; (2) whether Claimant

can prove that his income sources were legitimate; and (3) whether Claimant failed to file tax

returns at all, a fact which may support forfeiture of the defendant assets." <u>Id.</u> (internal citations omitted).

Further, Claimant's tax records from 2000–present are also relevant, but only for the limited purpose of discovering information relating to Claimant's standing in this case. <u>Id.</u> at *4–5. For the 2000–present records, the Court limited production to "only those tax records[] filed by or on Claimant's behalf or on behalf of any legal entity in which Claimant has an interest, which evidence an interest in, reflect income from, reflect income traceable to, or mention the defendant <u>in rem</u> assets." <u>Id.</u> at *5. Finally, the Court found that neither the tax code nor any common-law doctrine related to tax records shielded Claimant's records from disclosure. <u>Id.</u> at *6–8.

The same logic applies to the instant dispute. Claimant's PLR Request contains information that is probative of Claimant's interest in and relationship to the defendant <u>in rem</u> assets. This document will inform Plaintiff's position on Claimant's standing in this matter. The information in the Request will also shape how Plaintiff argues the merits of Claimant's claims because it will shed light on the sources of Claimant's income and whether he filed tax returns as required. Accordingly, the Court finds that the information contained in the PLR Request is relevant to this case.

### C.    Waiver

Normally, the next questions in the work-product analysis are whether and to what extent the work product at issue is factual or opinion work product and whether Plaintiff has established sufficient need for discovering the work product. <u>Boehringer</u>, 778 F.3d at 151–52. The Court need not reach these questions, however, because a straightforward application of waiver

principles demonstrates that Claimant has waived any work-product protection his PLR Request might have enjoyed.

First, the IRS is Claimant's potential future adversary. Claimant's own arguments reveal that the IRS is not merely a theoretical future adversary – rather, the IRS could sue Claimant on the very issues raised in the PLR Request if it believes he has unpaid tax liability. Deloitte, 610 F.3d at 140. In other words, the IRS could be an adversary in precisely the sort of litigation contemplated in Claimant's work product. Id. As such, his disclosure to the IRS, "'under the circumstances, is inconsistent with the maintenance of secrecy from [his] adversary'" – i.e., the IRS. Id. (quoting Rockwell, 235 F.3d at 605). Claimant's cited cases of Tronitech, Inc. v. NCR Corp., 108 F.R.D. 655, 655 (S.D. Ind. 1985), and United States v. Willis, 565 F. Supp. 1186, 1190–91 (D. Iowa 1983), are inapt here because they dealt with documents and tax advice exchanged between a party and its counsel, not between a party and the IRS itself.

For the same reason, Claimant's PLR Request is distinguishable from cases like Deloitte. There, the D.C. Circuit concluded that the disclosure of documents by a corporation to an independent auditor does not waive work-product protection for those documents. Deloitte, 610 F.3d at 139–41. The Court of Appeals reasoned that in preparing the documents for its auditor, the company "anticipated a dispute with the IRS, not a dispute with [the auditor]." Id. at 140. The D.C. Circuit saw the company's "disclosure to its independent auditor, which is not a potential adversary in tax litigation" concerning the subject of the documents, as "wholly different" from disclosure to the IRS. Id.; see also Wells Fargo & Co. v. United States, No. 10–57 (JRT/JJG), 2013 WL 2444639, at *40 (D. Minn. June 4, 2013) (finding that an independent auditor was not a conduit to a potential adversary – the government – because there was only "a remote possibility of disclosure" of the work product to the government). Here, Claimant's

disclosure was made to the IRS, the very entity with whom he anticipated litigation.  A clearer

case for waiver can scarcely be made.[5]

Second, contrary to Claimant's view, the fact that his disclosure was made to the IRS

Office of Chief Counsel supports rather than undermines his waiver.  Nothing in the Revenue

Procedure regarding letter rulings or section 6110 prohibits the sharing of PLR requests between

IRS subdivisions.  Thus, the Court is not persuaded by Claimant's suggestion, unsupported by

any citation to direct authority, that a PLR request may not be shared with other IRS employees

as needed.  Indeed, the relevant Revenue Procedure expressly contemplates IRS field offices

using a taxpayer's factual and legal representations made in a PLR request to determine the

taxpayer's liability:

> When determining a taxpayer's liability, the Field office must ascertain
> whether—
>
> (1) the conclusions stated in the letter ruling are properly reflected in the return;
>
> (2) the representations upon which the letter ruling was based reflect an accurate
> statement of the controlling facts;
>
> (3) the transaction was carried out substantially as proposed; and
>
> (4) there has been any change in the law that applies to the period during which
> the transaction or continuing series of transactions were consummated.

Rev. Proc. 2016-1 § 11.03, 2016 WL 20933.  Furthermore, section 11.05 of the Revenue

Procedure allows the IRS to revoke or modify a letter ruling retroactively if it finds that the

ruling was based on misstatements or omissions of "controlling facts" by the taxpayer.  Id. §

11.05.  These provisions therefore contemplate the sharing of a PLR request between branches of

---

[5] Although Union Pacific and Veolia hold that seeking a PLR evidences anticipation of litigation, see supra Section
A, neither held that a PLR request itself was subject to work-product protection.  Instead, the parties in those cases
argued over documents exchanged between the corporation and a third party which merely related to a PLR request
made by the same corporation.  See Veolia, 2013 WL 5779653, at *5–6; Union Pacific, 1997 U.S. Dist. LEXIS
24216, at *4–5.  Thus, those courts had no occasion to consider the novel issue currently before this Court.

the IRS as needed to help administer and enforce revenue laws. At a minimum, Claimant's disclosure substantially increased the likelihood that his work product would be disseminated in the IRS generally, thus robbing it of protection. See Costabile, 254 F.R.D. at 164–66.

Likewise, Claimant's argument that some other division of the IRS, but not the Office of Chief Counsel, might sue him is incorrect. The IRS Office of Chief Counsel performs many functions, including the "administration and enforcement of the Internal Revenue laws" and "represent[ing] the IRS in litigation." Internal Revenue Manual 1.1.6.1.1 (June 18, 2015), accessed at https://www.irs.gov/irm/part1/irm_01-001-006.html. Indeed, the Code of Federal Regulations provides that in proceedings against a taxpayer before the Tax Court, "the Commissioner shall be represented by the Chief Counsel for the Internal Revenue Service." 26 C.F.R. § 301.7452–1. Thus, disclosure to the Office of Chief Counsel is at least a disclosure to a "conduit to an adversary." Deloitte, 610 F.3d at 141.

Third, Claimant has no reasonable expectation that the Office of Chief Counsel will keep his PLR Request confidential beyond the extent required by section 6110. It is important to appreciate the unique circumstances present in the case of a PLR request: a taxpayer voluntarily disclosing information to the federal agency that enforces tax laws in order to receive tax guidance from the most knowledgeable source for such advice. When doing so, the taxpayer knows that he or she is courting danger by revealing information to the IRS, which may disagree with the views regarding tax liability expressed in the PLR request. That is the price to be paid for such advice. Deloitte, 610 F.3d at 141 (observing that waiver occurs when the disclosing party "has engaged in self-interested selective disclosure by revealing work product to some adversaries but not others").

In a related instance, the D.C. Circuit has held that disclosure of documents to the Securities and Exchange Commission as part of a voluntary disclosure program militates in favor of finding a waiver of work-product protection.  In re Subpoena Duces Tecum, 738 F.2d 1367, 1372 (D.C. Cir. 1984).  The SEC's program "'promises wrongdoers more lenient treatment and the chance to avoid formal investigation and litigation in return for thorough self-investigation and complete disclosure of the results to the SEC.'"  Id. at 1369 (quoting In re Sealed Case, 676 F.2d at 801).  The Court of Appeals found that "'[w]hen a corporation elects to participate in a voluntary disclosure program like the SEC's, it necessarily decides that the benefits of participation outweigh the benefits of confidentiality for all files necessary to a full evaluation of its disclosures.  It foregoes some of the traditional protections of the adversary system in order to avoid some of the traditional burdens that accompany adversary resolution of disputes, especially disputes with such formidable adversaries as the SEC.'"  Id. (quoting In re Sealed Case, 676 F.2d at 822–23).  So too, here, Claimant voluntarily disclosed information to the IRS, his potential adversary, to receive guidance in an attempt to head off the risk of tax litigation.  In forgoing the traditional adversarial process of litigation, he necessarily surrendered some of the protections that attach thereto.

The other factors identified in Deloitte support this result, too.  Claimant and the IRS have no common ligation interest in the PLR Request – in fact, their interests are likely adverse.  Deloitte, 610 F.3d at 141.  Additionally, Claimant points to no "relatively strong and sufficiently unqualified" confidentiality agreement or similar arrangement between himself and the IRS.  Id.  In Deloitte, the Court of Appeals found it sufficient that the independent auditor was under a professional ethical obligation not to disclose its client's information without consent.  Id. at 142.  Here, by contrast, Claimant proffers only the highly qualified protections of section 6110.  That

statute is a slender reed on which to rest his argument because it actually mandates disclosure of

PLR requests except as to certain categories of information identified in the statute.  See 26

U.S.C. § 6110(a).  Moreover, although the IRS must redact certain information at a taxpayer's

request, it can refuse to make redactions not consistent with the statute.  See id. § 6110(f).  And

the IRS's mere promise in section 6110(f) to give Claimant notice before releasing his PLR

Request "does not support a reasonable expectation of confidentiality."  Deloitte, 610 F.3d at

141.

Because Claimant has not shown that his voluntary disclosure of the PLR Request to the

IRS did not waive his work-product claim, the Court finds that he has waived any work-product

protection the PLR Request might have enjoyed.[6]

## CONCLUSION

Wherefore, for the foregoing reasons, Claimant's Motion for Protective Order [Dkt. 561]

is **DENIED**.[7]  An Order consistent with this Memorandum Opinion will be filed

contemporaneously herewith.


Date:  June 3, 2016                          _____

                                            G. MICHAEL HARVEY
                                            UNITED STATES MAGISTRATE JUDGE

---

[6] Because the matter can be disposed of on other grounds, the Court need not address Plaintiff's separate argument that Claimant waived work-product protection by previously offering to disclose the PLR Request to Plaintiff.  Opp. at 14–15.

[7] Although the Court finds that Claimant's PLR Request is not protected by the work-product doctrine, because it contains financial information he may produce it subject to the protective order in this case.  Further, he may redact his address and telephone number.