## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

      **Plaintiff,**

          **v.**

**ALL ASSETS HELD AT BANK JULIUS
BAER & COMPANY, LTD., GUERNSEY
BRANCH, ACCOUNT NUMBER 121128,
IN THE NAME OF PAVLO LAZARENKO
*ET AL.***

      **Defendants *In Rem.***

~~FILED UNDER SEAL~~

Civil Action No. 04-798 (PLF/GMH)

### MEMORANDUM OPINION

This case was referred to the undersigned for the management of discovery. Currently ripe is the United States' motion for protective order relating to Claimant Pavel Lazarenko's discovery requests concerning a failed 2002 plea agreement in Claimant's criminal case and the government's mutual legal assistance treaty ("MLAT") requests to Guernsey and Antigua.[1] After reviewing the entire record,[2] the Court will grant the motion.

### BACKGROUND

The factual background concerning this *in rem* asset forfeiture action has been described in multiple opinions by Judge Friedman. *See, e.g., United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 772 F. Supp. 2d 191, 194 (D.D.C. 2011). This Court will not repeat that lengthy

---

[1] This Memorandum Opinion concerns, in part, matters that have previously been sealed by this Court. As a result, this decision will be issued under seal and a redacted version will be filed on the public docket.

[2] The relevant docket entries for purposes of this Memorandum Opinion are: (1) Plaintiff's Motion for Protective Order ("Mot.") [Dkt. 629]; (2) Plaintiff's Exhibits to Its Motion for Protective Order ("Mot. Exh.") [Dkt. 630]; (3) Claimant's Opposition to Plaintiff's Motion for Protective Order ("Opp.") [Dkt. 656]; (4) Plaintiff's Reply in Support of Its Motion for Protective Order ("Reply") [Dkt. 692].

history here.  The facts that are pertinent to adjudication of Plaintiff's motion are summarized below.

In its First Amended Complaint, the United States seeks the forfeiture of more than $250 million deposited in over twenty bank accounts located in Guernsey, Antigua and Barbuda, Switzerland, Lithuania, and Liechtenstein.  First Amended Complaint [Dkt. 20] ¶¶ 1, 5.  The government alleges that the money in those accounts is traceable to a "variety of acts of fraud, extortion, bribery, misappropriation, and/or embezzlement" committed by Claimant, the former Prime Minister of Ukraine, or by his associates, between 1992 and 1998.  *Id.* ¶¶ 6, 8, 10.  The United States asserts its right to the funds pursuant to federal statutes that provide for the forfeiture to the government of funds traceable, or otherwise related to or involved in, criminal activity that occurred at least in part in the United States.  *Id.* ¶ 1.

### A.    The Criminal Prosecution and Failed Plea Agreement

Underlying this action is a criminal prosecution in the Northern District of California.  Mot. at 5.  In that prosecution, Claimant was charged with the same unlawful conduct that forms the basis of the instant action for civil forfeiture.  *Id.*



The parties thereafter attempted to negotiate a plea agreement.  Mot. at 5.

One condition of the plea was that Claimant would emigrate to a third country. *See id.* at 6–8.  During the course of the criminal proceedings, a Department of Justice attorney submitted a declaration stating that plea

negotiations derailed after Claimant learned he would be unable to emigrate to his preferred country. Mot. at 6; Declaration of Bruce Ohr [Dkt. 577-5] ¶¶ 2–7. According to the declaration, although the government proposed an alternative country, Claimant refused to accept it. Declaration of Bruce Ohr [Dkt. 577-5] ¶ 6. Claimant takes a different view, alleging that the State Department actively interfered with Claimant's resettlement and pressured his preferred country to refuse him. *See* Opp. at 4.

Whoever bore fault for it, the record is clear that plea negotiations eventually fell apart. Mot. at 6; Claimant's Supp. Sentencing Mem. [Dkt. 577-3] at 2. The record contains a draft plea agreement signed by Claimant on November 22, 2002, but the document was not signed by his attorneys or the government. 2002 Plea Agreement [Dkt. 654-4] at 23–24. No plea agreement was ever accepted by the court and Claimant never entered a plea of guilty. *See* Transcript of Sentencing Hearing [Dkt. 654-4] at 134–35 (noting that the criminal court never received any indication that Claimant wanted to plead guilty and that no plea agreement was ever reached). Claimant went to trial in 2009 and was convicted on several of the charges brought against him.

## B.    The MLAT Requests

Also relevant to the instant motion are the government's MLAT requests to the countries of Guernsey and Antigua. Mot. at 8–10. After this Court issued an order restraining the defendant assets, including assets held in those two countries, the government requested via their MLATs with Guernsey and Antigua that the authorities in those countries restrain the relevant assets. *Id.*; *see also* May 20, 2004 Restraining Order [Dkt. 4] (original restraining order); July 8, 2005 Restraining Order [Dkt. 23] (amended restraining order issued after the government was given leave to file its First Amended Complaint). Both the Guernsey and Antigua authorities issued orders

restraining the relevant funds. Mot. at 8–10.[3]  In order to secure restraint of his assets in Guernsey,

the government was required to make its applications – one under the original restraining order

and a second under the amended restraining order – under Guernsey's Proceeds of Crime Act.

Opp. at 18.  According to Claimant, that law only permits restraint based on foreign criminal con-

victions. *Id.*  It would not permit restraint merely because a foreign government has charged some-

one with a crime or suspects a person of having committed a crime.  *Id.*  Claimant has generally

asserted in this lawsuit that the government misrepresented the nature and scope of his criminal

convictions in order to obtain the Guernsey restraint under the Proceeds of Crime Act.  *Id.* at 23–

25.

### C.    Claimant's Discovery Requests

On September 19, 2014, Claimant served requests for production of documents on the gov-

ernment.  Mot. at 10.  Claimant requested, among other things, copies of all records obtained via

MLAT requests and copies of all incoming and outgoing MLAT requests related to this case.  *Id.*

at 11.  Claimant's requests also sought communications between the United States and any foreign

governments about Claimant and/or the subject matter of the First Amended Complaint.  *Id.*

After Plaintiff responded to these requests, Claimant moved to compel further responses.

*See* Claimant's Motion to Compel [Dkt. 336].  The Court held several hearings in May 2015 to

discuss the disputes surrounding Claimant's requests.  *See United States v. All Assets Held at Bank*

*Julius Baer & Co., Ltd.*, 309 F.R.D. 1, 6 (D.D.C. 2015).  By the conclusion of the hearings, the

government had agreed to produce all documents received in response to MLAT requests but

maintained that it would not produce copies of the requests themselves.  *Id.* at 8.  In its Memoran-

dum Opinion on Claimant's motion, the Court ordered the parties to continue to meet and confer

---

[3] The funds in Guernsey are held in a trust known as the "Balford Trust," of which Claimant is the settlor.  Opp. at 17. The Balford Trust is the largest single asset at issue in this case.  *Id.*

in an effort to resolve the MLAT dispute and suggested that if Plaintiff was unwilling to produce the requests, it might be able to satisfy Claimant by stipulating to certain facts or statements contained therein. *Id.* at 8–9. To facilitate this discussion, the Court directed Plaintiff to produce to Claimant a list of all the relevant MLAT requests. *Id.*

The Court also held that requiring the United States to search for and produce all of its communications with foreign government representatives about the subject matter of the Amended Complaint and/or Claimant would be "very time-consuming, extremely burdensome, and unlikely to lead to the discovery of admissible, probative evidence." *Id.* at 11. The Court also found that such communications would be of little value to Claimant as they would largely consist of logistical and other insubstantial communications. *Id.* The expansive scope of Claimant's requests were a "fishing expedition" that the Court would not condone. *Id.* at 12. Over Claimant's objections, Judge Friedman affirmed this Court's ruling denying Claimant's motion to compel with respect to these requests. *See United States v. All Assets Held at Bank Julius Baer & Co., Ltd.,* Civil Action No. 04-0798 (PLF/GMH), 2016 WL 1064435, at *1 (D.D.C. Mar. 17, 2016).

### D. Continued (Unsuccessful) Efforts to Resolve Discovery Disputes

The government produced the MLAT list but the parties did not meet and confer further on the MLAT dispute. Mot. at 11. At some point, Claimant learned that the government planned to file a motion to strike his claims related to assets held in Guernsey and Antigua, arguing that Claimant did not have sufficient interest in or control over the assets and therefore lacked standing to challenge their forfeiture.[4] Claimant sent Plaintiff a letter in September 2015 requesting copies of certain MLAT requests, including the requests sent to Guernsey and Antigua, so that Claimant

---

[4] On January 22, 2016, the government did indeed file a motion to strike Claimant's claims related to assets in Guernsey. *See* Plaintiff's Motion to Strike Claimant Pavel Lazarenko's Claim to All Assets Held in the Balford Trust [Dkt. 554].

could attempt to find factual admissions from the government in those documents establishing that

Claimant has sufficient interest in the assets to pursue his claims as to those assets. *Id.* at 12–13;

*see* Mot. Exhs. at 40–42 (Exhibit C, Claimant's September 2015 letter).   In essence, Claimant

believes that the documents contain concessions that he owns or controls the defendant assets,

which in turn confers standing on him here. Mot. at 12–13.  Furthermore, Claimant believes that

the MLAT requests contain misinformation regarding his criminal conviction which, if corrected,

would undermine the validity of the restraints in Guernsey and Antigua. *Id.*  Later that month, the

government responded, stating that it would not produce the requests but that it would meet and

confer further on the MLAT dispute. *Id.* at 13; Mot. Exhs. at 44–45 (Exhibit D, Plaintiff's Sep-

tember 2015 letter).  The parties did not confer beyond the exchange of these two letters. Mot. at

13.

On January 6, 2016, Claimant served the government with a further request for production,

seeking records related to Claimant's failed plea negotiations and communications between the

United States and foreign governments regarding his potential resettlement to other countries. *Id.*

at 16.  Additionally, Claimant sent a letter to the Court on January 7, 2016, requesting that the

Court order Plaintiff to produce the Guernsey and Antigua MLAT requests. *See* Claimant's Jan.

7, 2016 Letter [Dkt. 545-3].  At a hearing on January 7, 2016, Claimant notified the Court of his

request for documents related to his failed plea negotiations and asked the Court to order Plaintiff

to produce those records.  The Court thereafter ordered Plaintiff to file a motion for protective

order related to the MLAT requests and the records relating to Claimant's failed plea agreement.

Jan. 11, 2016 Order [Dkt. 544] at 2–3.[5]

---

[5] The Court ordered the parties to brief an additional dispute relating to several sealed, *ex parte* documents that were
part of Claimant's criminal case. Jan. 11, 2016 Order [Dkt. 544] at 2.  Plaintiff did not move for a protective order
relating to those documents, however, and represents that the parties have resolved their disagreements as to those
documents. Mot. at 1 n.1.

In his opposition to the instant motion, Claimant stated that he "does not presently seek" documents related to MLAT requests to Antigua. Opp. at 26. Accordingly, the Court does not address the government's MLAT requests to Antigua further.

## LEGAL STANDARD

Federal Rule of Civil Procedure Rule 26(c) permits the court to issue protective orders to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). Determining whether to grant a protective order is a matter of discretion for the trial court. *See E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1047 (D.C. Cir. 1998). A protective order may be granted upon a showing of good cause. *See Alexander v. FBI*, 186 F.R.D. 99, 100 (D.D.C. 1998). Issuing a protective order is required when the party seeking discovery attempts to obtain information outside the scope of discovery. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii). Rule 26(b)(1), amended in December 2015, defines the scope of permissible discovery as

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.* 26(b)(1). The Rule further instructs that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*; *see also McPeek v. Ashcroft*, 212 F.R.D. 33, 34 (D.D.C. 2003) (whether information is relevant is "a function of the relationship of the [information] to the . . . central accusations of [the] lawsuit").

The party seeking discovery must first demonstrate that the information sought is within the scope of discoverable information under Rule 26. *Meijer, Inc. v. Warner Chilcott Holdings Co., III, Ltd.*, 245 F.R.D. 26, 30 (D.D.C. 2007); *see also* Fed. R. Civ. P. 26 advisory committee

notes ("[T]he change does not place on the party seeking discovery the burden of addressing all proportionality considerations" and "the parties' responsibilities would remain" as they were under previous iteration of Rule 26). If that party carries its burden, the party resisting discovery then must show "why discovery should not be permitted." *Alexander v. FBI*, 194 F.R.D. 316, 326 (D.D.C. 2000).

For non-dispositive matters such as the instant discovery dispute, our Local Rules require the parties to meet and confer in a good-faith effort to resolve their disputes before seeking Court intervention. Local Civil Rule 7(m) imposes this duty on a movant prior to filing his motion and it requires that he certify to the Court that he has complied with that duty. L. Civ. R. 7(m) (requiring counsel to "discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought, and if there is, to narrow the areas of disagreement" before filing a motion). Failure to fulfill the requirements of Local Rule 7(m) is grounds for denial of a discovery motion. *See, e.g.*, *U.S. ex rel. Pogue v. Diabetes Treatment Ctr. of Am., Inc.*, 235 F.R.D. 521, 528 (D.D.C. 2008); *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006). Indeed, even if the movant is sure that his opponent will not concede one inch of ground, he must still make a good-faith effort to confer. *United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40, 47 (D.D.C. 2008).

This rule serves the crucial function of preventing the unnecessary expenditure of the Court's time and resources on adjudicating a dispute that the parties could have resolved themselves. *See Pogue*, 235 F.R.D. at 529. "Because the Rule seeks to promote actual resolution of nondispositive disputes, its focus is on substance, not form, and thus '[t]he obligation to confer

may not be satisfied by perfunctory action, but requires a good faith effort to resolve the nondispositive disputes that occur in the course of litigation.'" *U.S. ex rel. K & R Ltd. P'ship v. Mass. Housing Fin. Agency*, 456 F. Supp. 2d 46, 52 (D.D.C. 2006) (quoting *Pogue*, 235 F.R.D. at 529).

## DISCUSSION

Plaintiff's arguments are fundamentally directed at the notion that records of intergovernmental communications regarding Claimant's resettlement and the Guernsey MLAT requests are irrelevant in this civil forfeiture action. Mot. at 3–4. Because the arguments for each category of documents is distinct, the Court will address them separately. The Court finds that the intergovernmental communications are not relevant in this case because no claim or defense has been asserted that touches on those records. As to the Guernsey MLAT, the Court will not weigh in on the merits of that dispute. That request, as it relates to Claimant's attempt to challenge the Guernsey restraining order, is premature because Judge Friedman has not determined whether Claimant's action in Guernsey to lift the restraint may proceed. Further, to the extent the request seeks information regarding the government's representations about Claimant's interest in the Balford Trust assets, the Court will direct the parties – for the second time – to engage in a good-faith effort to confer as to whether the information Claimant seeks in the MLAT requests can be obtained through stipulation.

### A.       Records Relating to Plea Agreement and Preferred Country

As to the records of intergovernmental communications regarding Claimant's resettlement, Plaintiff contends that such records are too far afield from the central issues in this case, *i.e.*, "whether particular defendant assets are subject to forfeiture or whether [Claimant] has standing." *Id.* at 18. Instead, Plaintiff accuses Claimant of seeking this information "to make a frivolous argument about his criminal conviction" – namely, "that he is entitled to specific performance of

a plea agreement that was never executed." *Id.* at 18–19. ████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ Plaintiff also views Claimant's

request as an attempt to assert an "unclean hands" defense in the instant case based on the govern-ment's alleged bad deeds during plea negotiations. *Id.* at 20–21.

Plaintiff raises several challenges to the potential relevance of the documents and the ar-guments Claimant will try to make using them. Only one of those arguments is necessary for the Court to dispose of this dispute: the government believes that any specific performance or unclean hands defense has been waived in this proceeding because Claimant has not asserted or attempted to assert it. *Id.* at 21. On that issue, Claimant posits that he has not waived a possible unclean hands or specific performance affirmative defense because he is "free to amend" his Answer "after he reviews discovery" to determine whether the defense is warranted. Opp. at 13.

Claimant's arguments fall short of demonstrating that discovery of the intergovernmental communications he seeks is appropriate at this time. Claimant cannot lead a fishing expedition to find material that might possibly become relevant to an as-yet unpleaded specific performance or unclean hands defense. Both are affirmative defenses that must be pleaded to be pursued. *See*

Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense."); *Taylor v. United States*, 485 U.S. 992, 992 (1988) ("Under the accepted interpretation of Rule 8(c) of the Federal Rules of Civil Procedure, any matter 'constituting an avoidance or affirmative defense' to the matters raised in the plaintiff's complaint must be pleaded in a timely manner or it is deemed to be waived."); *Winstead v. EMC Mortg. Corp.*, 697 F. Supp. 2d 1, 4 n.5 (D.D.C. 2010) (identifying unclean hands as an affirmative defense); *United States v. Philip Morris, Inc.*, 300 F. Supp. 61, 65 (D.D.C. 2004) (same); *Mitchell v. Wheatland Memorial Healthcare*, No. CV–11–50–BLG–CSO, 2012 WL 1898639, at *7 (D. Mont. May 23, 2012) (addressing specific performance asserted as an affirmative defense).[6] Claimant raised neither defense in his original Answer in 2004, his Answer to the Amended Complaint in 2011, nor even in his 2015 Amended Answer, leave for which has not yet been granted. *See* Claimant's Verified Answer [Dkt. 9]; Claimant's Verified Answer to First Amended Complaint [Dkt. 268]; Claimant's Motion for Leave to File Amended Answer to First Amended Complaint [Dkt. 367].

Thus, this Court is in a situation much like *Key Components, Inc. v. Edge Electronics, Inc.*, No. 3:07-CV-224, 2008 WL 4937560, at *5–6 (E.D. Tenn. Nov. 17, 2008). There, the defendant sought discovery on an unclean hands defense it had not yet raised in its answer. *Id.* at *5. The court found that because the case was still in its early stages, the defendant's failure to plead the defense initially did not warrant a finding of waiver. *Id.* at *6. Nevertheless, "given [Rule 8(c)'s] emphasis on properly pled defenses," the court concluded that "the best course of action would be to allow the defendant, if it so chooses, to amend its Answer to properly assert an unclean hands defense before requiring the plaintiff to respond [to discovery]." *Id.* So too, here, the Court does

---

[6] Specific performance is more rightly characterized as a remedy for breach of contract, not an affirmative defense in its own right. *See* 81A C.J.S. Specific Performance § 7. Nevertheless, in this instance, Claimant's theory of specific performance operates like an affirmative defense, and there is no indication that it should not be treated as such for pleading purposes.

not prejudge the timeliness or merits of Claimant's desired defenses. Yet under our pleading rules, Claimant must assert his defenses in his Answer before he can ask Plaintiff to respond to discovery requests concerning them.

Moreover, the discovery he seeks is too far removed from the government's allegations in the Amended Complaint to fall within the scope of discovery based on the Amended Complaint alone. In other words, Claimant seeks discovery "which does not presently appear germane on the theory that it might conceivably become so." *Food Lion*, 103 F.3d at 1012 (quotation marks omitted); *see also United States v. $70,990,605*, 305 F.R.D. 20, 26 (D.D.C. 2015) (denying as premature discovery relating to unpleaded constitutional defenses). Claimant urges the Court to grant him this discovery because he needs it in order to determine whether he should plead these defenses. Opp. at 13. But Claimant has the matter backwards – by seeking discovery on these issues prior to pleading them, he would force Plaintiff to produce documents and discovery responses while robbing it of the ability to seek an early disposition of the viability of the defenses through an opposition to his motion to amend or a motion to dismiss or to strike.

Requiring Claimant to plead a defense before he can seek discovery on it does not promote form over substance where, as here, the merits of those defenses – as a matter of fact and of law – would be hotly contested. *See Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim.") (emphasis in original); *People for Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agriculture*, 60 F. Supp. 3d 14, 20 (D.D.C. 2014) (rejecting as a "fishing expedition" the plaintiff's argument on a motion to dismiss that it should receive discovery on its allegations before determining whether they state a claim). As the parties' briefing reveals, there may be a whole host of substantive and procedural

infirmities in Claimant's attempt to assert his unclean hands and specific performance defenses. For instance, Claimant's attempt to amend his answer to include these defenses may be denied as coming too late. *See Boyd v. Dist. of Columbia*, 465 F. Supp. 2d 1, 3 (D.D.C. 2006) (observing that leave to amend is usually granted unless the court finds a good reason to refuse it, such as "futility of amendment, undue delay, bad faith, dilatory motive, undue prejudice, or repeated failure to cure deficiencies by previous amendments") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Hollinger-Haye v. Harrison Western/Franki-Denys*, 130 F.R.D. 1, 1 (D.D.C. 1990) ("[W]hen a motion to amend is filed late in the litigation, justice requires the Court to determine whether there is prejudice to the defendants."). Or it might be denied as futile for several reasons, *Boyd*, 465 F. Supp. 2d at 3, including (in no particular order):



(1) ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ ;

(2) ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ ;

(3)     The proper forum for a dispute over the enforceability of the plea agreement may be in the Northern District of California, not here. *See United States v. Monreal*, 301 F.3d 1127

(9th Cir. 2002) (upholding district court's determination that it lacked jurisdiction to enforce a plea agreement entered into in another district);

(4)    Claimant's arguments regarding unclean hands or specific performance might be barred by principles of *res judicata* since they were not raised during his criminal proceedings, *Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."); *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983) ("The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues."); and

(5)    An unclean hands defense may be unavailable against the government in certain cases where the government acts in the public interest. *See Philip Morris*, 300 F. Supp. 2d at 75 ("When, as here, the Government acts in the public interest the unclean hands doctrine is unavailable as a matter of law.").

The Court emphasizes that this list does not indicate its opinion on the merits of Claimant's defenses or his ability to pursue them at this time.  It merely shows that, given the colorable arguments against them, the Court will not grant discovery on these defenses unless and until Claimant follows the proper procedures to bring them into this case.  Accordingly, the Court will grant Plaintiff's motion for protective order regarding Claimant's requests for intergovernmental communications relating to his emigration to a third country as part of his failed plea negotiations, pending successful amendment of his Answer.

**B.    MLAT Requests to Guernsey**

As to Claimant's attempt to obtain the government's MLAT requests to Guernsey, Plaintiff argues that the documents "contain sensitive, confidential, and privileged information and Claimant has no need for them" because he can obtain the information contained therein through other means. Mot. at 28. Plaintiff raises numerous arguments on this point, but the Court need only address one to resolve the government's motion. Specifically, the government argues that Claimant failed to meet and confer with it in good faith to determine whether the government could simply stipulate to the facts contained in the MLAT requests in lieu of producing it. *Id.* at 28–29. Given the sensitive nature of the information contained in the documents, the government claims that it will harm international cooperation via MLATs if it is forced to disclose these MLAT requests. *Id.* at 35. Thus, the government concludes that the Court should deny Claimant access to the Guernsey MLATs or, at a minimum, direct him to again try meeting and conferring with the government to see if the issue can be resolved through stipulation. *Id.* at 36.

Claimant, in his opposition, sets out several grounds he believes make the contents of the Guernsey MLATs relevant. Opp. at 21–25. None of those arguments address the progress of the meet-and-confer process. Indeed, Claimant does not challenge the government's representations that a meaningful meet-and-confer has not occurred.

The Court will grant Plaintiff's motion for protective order at this time. First, to the extent Claimant seeks the Guernsey MLATs in order to challenge the Guernsey restraining order, that is not a proper basis for discovering these records. Judge Friedman has not ruled on whether Claimant's action in Guernsey to lift the restraint is a violation of his restraining order in this case. Until such time as Judge Friedman rules on that matter, Claimant is not entitled to this discovery for that

purpose. And even if Judge Friedman found that Claimant's Guernsey action could proceed, if Claimant wants these records for use in that proceeding, he should seek them in that forum.

Second, to the extent Claimant requests these records to learn what the government has said about his interest in the Guernsey assets, the parties must first engage in a good-faith meet-and-confer process as previously ordered. As Plaintiff noted in its motion, the Court has already addressed the issues surrounding this request. In extensive hearings in May 2015, the parties argued their respective positions on this issue and the Court directed the parties to meet and confer on the possibility of resolving this issue through stipulation instead of production of the MLAT requests themselves. *See All Assets*, 309 F.R.D. at 8–9. Plaintiff produced the MLAT list to Claimant as directed by the Court and offered to meet and confer. Claimant, however, offers no justification for – or even passing mention of – his failure to engage in a good-faith attempt to meet and confer as directed by the Court.

Claimant complains that there are matters related to the Balford Trust, including Plaintiff's motion to strike his claim to the Trust assets, which require immediate production of the Guernsey MLATs. Opp. at 20. But the delay Claimant has faced in obtaining the information he seeks rests with him. The government expressed in the May 2015 hearings that it was willing to work in good faith to try and provide the facts Claimant needs from the MLATs by stipulation. *See* Transcript of May 19, 2015 Hearing [Dkt. 396] at 132–51. It reiterated that willingness in response to Claimant's renewed request for the MLATs in September 2015, *see* Mot. Exhs. at 44–45 (Exhibit D, Plaintiff's September 2015 letter), and in the instant Motion, *see* Mot. at 28–29. Absent compliance with its prior order and a demonstration that good-faith meet-and-confer efforts have been unsuccessful in resolving these issues, the Court sees no excuse for further judicial intervention at

this time. *See Alexander v. FBI*, 186 F.R.D. 185 (D.D.C. 1999) (denying motion to compel discovery for failure to meet-and-confer and violation of prior court order regarding discovery); *Kellogg Brown & Root Servs., Inc.*, 284 F.R.D.22, 27 (D.D.C. 2012) (in ruling on discovery disputes, a court must consider not only relevance but "the prior efforts of the parties to resolve the discovery dispute without court intervention"); *Pogue*, 235 F.R.D. at 529 ("It is a waste of this Court's time and resources to adjudicate a dispute that could have been resolved by the parties themselves."). Should meaningful meet-and-confer attempts fail to resolve the parties' dispute over the MLATs, Claimant may raise his request for the MLAT requests again by motion to compel.

## CONCLUSION

Wherefore, for the foregoing reasons, Plaintiff's Motion for Protective Order [Dkt. 629] will be **GRANTED**. Claimant may later revisit his ability to discover the doc-uments at issue in this Opinion if he feels he can satisfy the requirements for doing so.

An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.

Date: July 29, 2016

G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE