UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
UNITED STATES OF AMERICA,                           )
                                                    )
            Plaintiff,                              )
                                                    )
    v.                                              )        Civil Action No. 04-0798
                                                    )
ALL ASSETS HELD AT BANK JULIUS,                     )
Baer & Company, Ltd., Guernsey                      )
Branch, account number 121128, in the              )
Name of Pavlo Lazarenko et al.,                     )
                                                    )
            Defendants In Rem.                       )
_____            )

OPINION

      This matter is before the Court on the United States' Motion to Strike the Claim

of Alexander Lazarenko for Himself and as Agent for Lecia Lazarenko and Ekaterina Lazarenko.

Alexander, Lecia, and Ekarterina Lazarenko oppose the motion.  Upon consideration of the

parties' written submissions, the relevant case law, and the entire record in this case, the Court

will deny the motion.[1]

_____

[1]      The documents reviewed by the Court in resolving the pending motion include the
following:  Complaint [Dkt. 1]; Verified Claim and Statement of Interest by Alexander
Lazarenko for Himself and as Agent for Lecia Lazarenko and Ekaterina Lazareko ("First
Claim") [Dkt. 4] Answer by Alexander Lazarenko for Himself and as Agent for Lecia Lazarenko
and Ekaterina Lazareko ("Answer") [Dkt. 8]; Amended Complaint ("Am. Compl.") [Dkt. 20];
Claimants' Motion to Dismiss First Amended Complaint [Dkt. 27]; Verified Claim and
Statement of Interest by Alexander Lazarenko for Himself and as Agent for Lecia Lazarenko and
Ekaterina Lazareko ("Second Claim") [Dkt. 28]; United States' Motion to Strike the Claim of
Alexander Lazarenko for Himself and as Agent for Lecia Lazarenko and Ekaterina Lazareko
("Mot.") [Dkt. 363]; Opposition to United States Motion to Strike ("Opp.") [Dkt. 380]; and
United States' Reply in Support of its Motion to Strike ("Reply") [Dkt. 397].

## I.  BACKGROUND

This is a civil in rem action in which the United Sates seeks forfeiture of over
$250 million dollars scattered throughout bank accounts located in Antigua, Barbuda, Guernsey,
Liechtenstein, Lithuania, and Switzerland.  See Am. Compl. ¶ 1.  This Court's prior opinions
summarize the procedural history of this case, starting with the criminal prosecution of Pavel
Lazarenko, a.k.a. Pavlo Lazarenko, and continuing through this civil forfeiture proceeding.  See,
e.g., United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 571 F. Supp. 2d 1, 3-6
(D.D.C. 2008) ("All Assets I"); United States v. All Assets Held at Bank Julius Baer & Co., Ltd.,
959 F. Supp. 2d 81, 84-94 (D.D.C. 2013) ("All Assets V"); United States v. All Assets Held at
Bank Julius Baer & Co., Ltd., 307 F.R.D. 249, 250-51 (D.D.C. 2014) ("All Assets VI").  In brief,
Pavel Lazarenko is "a prominent Ukrainian politician who, with the aid of various associates,
was 'able to acquire hundreds of millions of United States dollars through a variety of acts of
fraud, extortion, bribery, misappropriation and/or embezzlement' committed during the 1990s."
All Assets V, 959 F. Supp. 2d at 85 (quoting Am. Compl. ¶¶ 1, 10).

As relevant to the present motion to strike, the United States filed its initial
complaint on May 14, 2004 seeking forfeiture of, inter alia, "[a]ll funds on deposit at Credit
Suisse (Guernsey) Limited, in account number 41610 in the name of Samante Limited as
Trustees of the Balford Trust."  Compl. ¶ 5(b).  Alexander, Lecia, and Ekaterina Lazarenko
(collectively, "claimants") are "the three adult children of Pavel Lazarenko."  See Mot. at 4 n.2.
On June 29, 2004, Alexander Lazarenko, "for himself and as agent and attorney-in-fact for Lecia
Lazarenko and Ekaterina Lazareko," filed a pro se verified claim stating their interest in
"defendant funds in Credit Suisse (Guernsey) Limited account number 41610" because they "are
the beneficiaries of the Balford Trust . . . and thereby have a present beneficial interest in and

right to all said currency." First Claim at 1. Alexander Lazarenko attached signed and notarized power of attorney forms to the claim, indicating that Lecia and Ekaterina Lazarenko each empower him "[t]o represent all [of their] right, title and interest in the Balford Trust in United States v. All Funds on Deposit at Credit Suisse (Guernsey) Limited, account number 41610, in the name of Samante Limited as Trustees of the Balford Trust . . . ." Id. at 5, 9. In addition to their claim, claimants — with the assistance of counsel — also filed a verified answer to the complaint, which stated:

> [c]laimant admits the allegation that he is the Settlor and Protector of the Balford Trust maintained in account 41610 at Credit Suisse (Guernsey) and that the beneficiaries of the trust are members of his family, specifically the Balford claimants. Claimant denies the further allegation that he and the other claiming members of his family are "nominal" beneficiaries.

Answer ¶ 73.

On June 30, 2005, the United States filed an amended complaint seeing forfeiture of "[a]ll assets held at Credit Suisse (Guernsey) Limited, in account numbers 41610 *and 41950* in the name of Samante Limited as Trustees of the Balford Trust" (hereafter, the "Samante assets"). Am. Compl. ¶ 5(b) (emphasis added). The amended complaint also added new forfeiture theories for funds in three additional jurisdictions. Am. Compl. ¶¶ 44, 71-75, 82, 85-86. On July 26, 2005, claimants filed a second pro se verified claim as well as a motion to dismiss, which their father, Pavel Lazarenko, joined and for which they had the assistance of counsel. The claim stated their interest in "defendant funds in Credit Suisse (Guernsey) Limited account number [sic] 41610 and 41950" because it alleged that they "are the beneficiaries of the Balford Trust . . . and thereby have a present beneficial interest in and right to all said currency." Second Claim at 3. Alexander Lazarenko attached to the second claim the same signed and notarized power of attorney forms from the initial claim, which empower him "[t]o represent"

3

Lecia and Ekaterina Lazarenko's "right, title and interest" in the funds in "account number 41610"; the forms made no mention of account number 41950, the account that the United States added in its amended complaint. <u>Id</u>. at 5, 9.  Claimants' filed their motion to dismiss the amended complaint together with their father and claimant, Pavel Lazarenko.  <u>See</u> Dkt. 27.  The Court denied the motion to dismiss in an Order dated March 29, 2007, <u>see</u> Dkt. 63, and an Opinion dated July 9, 2008.  <u>See</u> <u>All Assets I</u>, 571 F. Supp. 2d at 17.  Claimants have never filed an answer to the amended complaint.

On October 31, 2011, the United States wrote to claimants' attorney and stated that "if your clients do not file an appropriate Answer to the First Amended Complaint by November 14, 2011, the United States will move to strike their Claims."  Mot. at Ex. B. Claimants' attorney replied to this letter, thanking the United States for its "courtesy in permitting" the late filing, <u>id</u>. at Ex. C, but, as noted, he never filed an answer to the amended complaint.

The United States now moves to strike claimants' second claim for a lack of statutory standing because (1) claimants failed to file an answer to the amended complaint, and (2) Lecia and Ekaterina Lazarenko failed to "verify" their claim under penalty of perjury because the notarized power of attorney forms that they signed did not cause them to swear to the underlying truthfulness of the claim and did not place them "at risk of a false statement."  Mot. at 3; Reply at 6.

## II.  DISCUSSION

"Civil forfeiture actions are governed by the procedures set forth in 18 U.S.C. § 983 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ('Supplemental Rules'), a subset of the Federal Rules of Civil Procedure."  <u>All Funds V</u>,

959 F. Supp. 2d at 91.  Such actions "'are brought against property, not people[,]'" and thus "'[t]he owner of the property may intervene to protect his interest.'"  Id. at 94-95 (quoting United States v. All Funds in Account Nos. 747.034/278, 747.009/278, & 747.714/278 in Banco Espanol de Credito, Spain, 295 F.3d 23, 25 (D.C. Cir. 2002)).  Such intervening owners, known as "claimants" must "assert[] an interest" in "specific property" that is named as a defendant.  SUPP. R. G(5)(a)(i)(A); see 18 U.S.C. § 983(a)(4)(A) ("[A]ny person claiming an interest in the seized property may file a claim asserting such person's interest in the property[.]").  The Court has previously explained that in order to assert such an "interest," a claimant "must demonstrate Article III standing in addition to the separate, though partly overlapping, requirements of statutory standing."  All Funds V, 959 F. Supp. 2d at 96 n.10.  The statutory standing requirement is grounded in 18 U.S.C. § 983, which limits intervention in civil forfeiture actions to "any person claiming an interest in the seized property" who "file[s] a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules."  Id. at § 983(a)(4)(A).  Here, the Court addresses only statutory standing because the United States does not argue that claimants lack Article III standing.

"Because the procedures prescribed by the Supplemental Rules play an important role in structuring forfeiture suits and ensuring that they proceed efficiently, a court is authorized to strike the claim and/or answer of any claimant who fails to follow the Rules' procedural dictates."  United States v. All Assets Held at Bank Julius Baer & Co., 664 F. Supp. 2d 97, 101 (D.D.C. 2009) ("All Assets II") (citing SUPP. R. G(8)(c)(i)(A)).  The Supplemental Rules empower the United States to move to strike a claim for either "failing to comply with [Supplemental] Rule G(5) or (6), or because the claimant lacks standing."  SUPP. R.

G(8)(c)(i)(A)-(B).  When the United States moves to strike, the claimant is required to "carry the burden of establishing standing by a preponderance of the evidence."  Supp. R. G(8)(c)(ii)(B).

Before addressing claimants' statutory standing, the Court must address the procedural matter of whether the Supplemental Rules permit the United States to move to strike at this time, or whether its time to do so has already expired.

### A.  Estoppel

Claimants argue that Supplemental Rule G(8)(c)(ii)(A) estops the United States from now moving to strike because the Court previously decided a motion to dismiss the amended complaint filed by claimants and their father, Pavel Lazarenko.  Opp. at 5.  They contend that the United States "conceded [claimants'] standing by accepting and litigating their Motion to Dismiss," and that "the Government is foreclosed from now raising an issue of standing."  Id.

Supplemental Rule G(8) states both that:  (1) "[a]t any time before trial, the government may move to strike a claim or answer . . . because the claimant lacks standing," Supp. R. G(8)(c)(i)(B); and (2) "[t]he motion" to strike "must be decided before any motion by the claimant to dismiss the action."  Supp. R. G(8)(c)(ii)(A).  Here, the Court decided claimants' motion to dismiss the amended complaint on the merits years before the United States made the instant motion to strike claimants' claim for lack of standing.  See All Assets I, 571 F. Supp. 2d at 17 (opinion on motion to dismiss).  This posture forces the Court to confront an ambiguity in the Supplemental Rules that appears to be an issue of first impression.

Courts apply the traditional tools of statutory interpretation when resolving ambiguity in the Federal Rules of Civil Procedure, of which the Supplemental Rules are a part.  See Yousuf v. Samantar, 451 F.3d 248, 255 (D.C. Cir. 2006) (applying "the customary tools of

statutory interpretation" to examine "the text of the Rule" of civil procedure and "the context in which the Rule resides"); see also Delta Air Lines, Inc. v. August, 450 U.S. 346, 350-62 (1981) (same for Rule 68 of the Federal Rules of Civil Procedure); United States v. Fort, 472 F.3d 1106, 1110-1117 (9th Cir. 2007) (same for Rule 16 of the Federal Rules of Criminal Procedure).

"Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997); accord United States v. Cordova, 806 F.3d 1085, 1098 (D.C. Cir. 2015).  A plain reading of these provisions does not answer the question in this case — that is, whether Supplemental Rule G(8) estops the United States from pressing the instant motion to strike for lack of standing after this Court already has decided the motion to dismiss that the claimants previously filed.  Supplemental Rule G(8) therefore is ambiguous.

"Given that the text is ambiguous, [the Court] must turn to the broader structure of [Supplemental Rule G(8)] to determine the meaning of Section [G(8)(c)(ii)(A)]."  King v. Burwell, 135 S. Ct. 2480, 2492 (2015).  Nested alongside the seemingly contradictory provisions of Supplemental Rule G(8)(c) is Supplemental Rule G(8)(b)(i), which specifies that it is only "[a] claimant who establishes standing to contest forfeiture" that "may move to dismiss the action under Rule 12(b)."  This provision suggests that under Supplemental Rule G(8), district courts should generally resolve motions to strike for lack of standing before deciding motions to dismiss in the interest of efficiency and to avoid advisory rulings involving parties without standing.  Accord All Assets II, 664 F. Supp. 2d at 101 (citing one purpose of the Supplemental Rules as "ensuring that [forfeiture suits] proceed efficiently"); United States v. $2,051,660.00 in U.S. Currency, No. 07-1338, 2008 WL 8723566, at *2 (D. Kan. Sept. 29, 2008) ("[Supplemental Rule G(8)(c)(ii)(A)] is a simple rule of efficiency.  When the Government successfully strikes a

claimant's claim, that claimant no longer has standing to bring a motion to dismiss.").

Conversely, it seems logical that where a district court is presented first with a motion to dismiss

and rules on that motion without specifically addressing claimant's standing, there is nothing to

prevent the government from raising claimant's standing in a later motion to dismiss, even

though this may be the less efficient way to proceed.  The Court finds nothing in the structure of

the Supplemental Rules suggesting that the Court should give Supplemental Rule G(8)(c)(ii)(A)

the estoppel effect that claimants propose.

In addition, "[w]here the language is subject to more than one interpretation . . . ,

the court may be forced to look to the general purpose of Congress in enacting the statute and to

its legislative history for helpful clues."  United States v. Braxtonbrown-Smith, 278 F.3d 1348,

1352 (D.C. Cir. 2002).  The "legislative history" of the Supplemental Rules is contained in the

Advisory Committee Notes for the Supplemental Rules.  The notes for Supplemental Rule

G(8)(c)(ii) state in part that "[a] claimant who lacks standing is not entitled to challenge the

forfeiture on the merits," for example, on a motion to dismiss.  SUPP. R. G(8)(c)(ii) Advisory

Committee Note.  This history suggests that the Advisory Committee intended to avoid the exact

situation that occurred in this case:  claimants, whose standing is not yet established, litigating

the merits of whether defendant assets are forfeitable.

Against this backdrop, it would be absurd to adopt claimants' interpretation, i.e.,

that this Court's 2008 decision on the motion to dismiss forever estops the United States from

moving to strike for lack of standing.  See United States v. Cordova, 806 F.3d at 1099.  It is

hornbook law that "the defect of standing is a defect in subject matter jurisdiction," Haase v.

Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987), and "[i]f the court determines at any time that it

lacks subject-matter jurisdiction, the court must dismiss the action."  FED. R. CIV. P. 12(h)(3); see

Supp. R. A(2) ("The Federal Rules of Civil Procedure also apply to the foregoing proceedings except to the extent that they are inconsistent with these Supplemental Rules.").  Claimants' interpretation here would lead to the absurd result of a court being unable to strike a claim over which it lacks subject matter jurisdiction.  The Court therefore concludes that the structure and purpose of the Supplemental Rules compel the conclusion that the United States may move to strike claimants' claim even though the Court has already decided claimants' earlier motion to dismiss the amended complaint.

### B.  Claimants' Statutory Standing

Turning to the merits, the United States argues that the Court should strike claimants' second claim for lack of statutory standing because:  (1) claimants failed to file an answer as required by Supplemental Rule G(5)(b), Mot. at 10-17; and (2) Lecia and Ekaterina Lazarenko did not sign the claim under penalty of perjury as required by Supplemental Rule G(5)(a)(i)(C).  Mot. at 17-20.

The United States argues that claimants' failure to file an answer to the amended complaint has prejudiced it in discovery by (1) increasing "the length and cost of litigation," Reply at 14 (internal quotation marks omitted), and (2) causing it to "guess as to the allegations" that claimants contest because the amended complaint "expanded the scope of the criminal conduct alleged" to include an additional bank account number related to the Samante assets as well as new forfeiture theories for funds in "three additional jurisdictions." Id. at 9 n.2, 10-11 (citing Am. Compl. ¶¶ 44, 71-75, 82, 85-86).  In response, claimants admit that they failed to file an answer "as a result of an oversight by their counsel," Opp. at 4, and attach a declaration from their attorney.  See Declaration of Doron Weinberg [Dkt. 380-1].  In that declaration, claimants' attorney avers that he remembers the October 31, 2011 letter from the United States inviting him

to late-file claimants' answer, but that he "failed to follow-up or to insure that the Answer was filed."  See id. at 4.

Claimants also argue that Lecia and Ekaterina Lazarenko's notarized power of attorney forms were sufficient to meet the verification requirements of the Supplemental Rules and, in any event, there is no "danger of false claims" because the "Government kn[ew] full well" that they asserted beneficial ownership "of the funds held in accounts 14610 [sic] and 14950 [sic]."  Opp. at 5.  Finally, claimants contend that striking their claim would be equivalent to the "drastic sanction of default judgment," which is inappropriate because claimants' failure to file an answer to the amended complaint did not prejudice the United States.  Id. at 10.

### 1.  Failure to File an Answer to the Amended Complaint

The Supplemental Rules specify that a claimant "must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim."  SUPP. R. G(5)(b). The Supplemental Rules do not address how much time a claimant has to file an answer after a court denies a motion to dismiss, which the claimant filed in lieu of an answer under Supplemental Rule G(5)(b).  In instances of such silence, the Federal Rules of Civil Procedure fill in gaps in the Supplemental Rules.  See SUPP. R. A(2).  Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure answers this timing question:  if a claimant chooses to file a motion under Rule 12 in lieu of filing an answer to the complaint and "the court denies the motion or postpones its disposition until trial, the [answer] must be served within 14 days after notice of the court's action," unless the court sets a different time.

Here, claimants failed to file or seek leave to late-file an answer to the amended complaint in the almost eleven years since the United States filed its amended complaint on June 30, 2005.  As this Court previously explained in All Assets II, a claimant's answer pursuant to

Supplemental Rule G(5)(b) is essential because it serves to "apprise the [United States] of those allegations in the complaint that stand admitted and will not be in issue at trial and those that are contested and will require proof to be established to enable the plaintiff to prevail." 664 F. Supp. 2d at 102 (quoting CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, 5 FED. PRAC. & PROC. CIVIL § 1261 (3d ed. 2004)). The amended complaint filed by the United States in this case consists of 155 detailed paragraphs "concerning the origins, transfer, ownership and distribution of tens of millions of dollars. Unless the claimants file an answer to that complaint, the United States — and the Court — must guess at which allegations in that complaint are undisputed or irrelevant to a particular claimant and which will have to be proven by a preponderance of the evidence." All Assets II, 664 F. Supp. 2d at 102. District courts can excuse a claimant's failure to file a timely answer if, as a matter of equity, the following factors weigh in favor of permitting the late filing: "'the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" Yesudian ex rel. U.S. v. Howard Univ., 270 F.3d 969, 971 (D.C. Cir. 2001) (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)).

   Claimants' proffered reason for failing to file a new answer to the amended complaint — attorney error — is most likely an insufficient excuse. See Declaration of Doron Weinberg at 2-4. Nor is the fact that counsel incorrectly considered the filing of a new Answer to be "essentially ministerial, because of [claimants'] position in the litigation." Id. at 3. Claimants' counsel states, "[i]n candor," that he "do[es] not recall if [he] in fact" asked an associate to prepare an Answer or took any affirmative steps to file the answer at any time.

Declaration of Doron Weinberg at 4.  On very similar facts, Magistrate Judge John Facciola of this court has found that an attorney's failure to file an answer on behalf of his client due to "an oversight" was "insufficient" to show "excusable neglect."  See Casanova v. Marathon Corp., 499 F. Supp. 2d 32, 34 (D.D.C. 2007).  The Court agrees with Magistrate Judge Facciola that attorney error, in and of itself, is insufficient to excuse claimants' failure to file an answer to the amended complaint.

Nevertheless, the Court is persuaded that it should excuse claimants' failure to file an answer to the amended complaint in this case because that failure has not at all prejudiced the United States.  Unlike the claimants whose claim the Court struck in All Assets II for failure to file any answer at all, 664 F. Supp. 2d at 102-03, claimants here filed an answer to the original complaint that apprised the United States of their response to the vast majority of the allegations that remain in the amended complaint.  See Answer.  The only differences between the original and amended complaints are that the amended complaint added account number 41950 related to the Samante assets, Am. Compl. ¶ 5(b), and funds in the three additional jurisdictions.  Id. ¶¶ 44, 71-75, 82, 85-86.  Of those additions, the second claim asserted no interest in the funds in the three additional jurisdictions but did assert an interest in account number 41950 related to the Samante assets.  Second Claim at 3.  Claimants' failure to file an answer to the amended complaint, therefore, did not cause the United States to guess whether claimants asserted an interest in any of the assets that appear only in the amended complaint.  Finding no prejudice to the United States, the Court declines to strike claimants' claim for failure to comply with Supplemental Rule G(5)(b)'s requirement that claimants file an answer to the amended

complaint.  The Court will permit claimants to file a motion for leave to file an answer to the

amended complaint that attaches the proposed answer.[2]

### 2.   Failure to Verify the Second Claim Under Penalty of Perjury

The Supplemental Rules also require that a claim must, inter alia, (1) "identify the

specific property claimed"; (2) "identify the claimant and state the claimant's interest in the

property"; and, (3) "be signed by the claimant under penalty of perjury."  SUPP. R. G(5)(a)(i)(A)-

(C).  The D.C. Circuit has explained that a claim meeting these criteria "is known as a verified

claim and is essential to confer[ring] statutory standing upon a claimant in a forfeiture action."

United States v. 8 Gilcrease Lane, Quincy, Fla. 32351, 638 F.3d 297, 298 n.1 (D.C. Cir. 2011)

(internal quotation marks omitted); see also United States v. Prop. Identified as $88,260.00, 925

F. Supp. 838, 840-41 (D.D.C. 1996) (explaining that compliance with the procedural and timing

requirements of the Supplemental Rules for filing a verified claim is necessary in order for the

claimant to acquire "statutory standing").

The problem is that Supplemental Rule G only became effective on December 1,

2006, *after* the United States had filed this forfeiture action on May 14, 2004, and *after* claimants

filed their second claim on July 26, 2005.  See 2006 U.S. ORDER 20 (C.O. 20) (April 12, 2006),

available at http://www.supremecourt.gov/orders/courtorders/frcv06p.pdf (stating that

Supplemental Rule G governs cases filed after December 1, 2006, and "insofar as just and

practicable, all proceedings then pending").  Supplemental Rule G(5)(a)(i)(C)'s plain language

that a verified claim must "be signed by the claimant under penalty of perjury" is more restrictive

---

[2]      The United States is free to again raise the issue of prejudice in its opposition to
claimants' motion for leave to file if, for example, claimants' answer (1) varies the responses
claimants made in their answer to the original complaint for paragraphs that are identical in the
amended complaint, or (2) asserts an interest in the funds in the three additional jurisdictions that
the United States added in the amended complaint.

than Supplemental Rule C(6)(a)(iii)'s language, which previously governed these proceedings. See All Assets I, 571 F. Supp. 2d at 16 ("The Amended Complaint in this case was filed, and the motion to dismiss was briefed, prior to the enactment of Rule G.").  That Rule permits "an agent, bailee, or attorney" to make claims if that person "state[s] the authority to file a statement of right or interest on behalf of another."  See CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, 12 FED. PRAC. & PROC. CIVIL § 3223 (2d ed. Apr. 2016) ("The adoption of Rule G in 2006 . . . resulted in the removal from Rule C of provisions" such as subsection C(6)(a)(iii) that permitted "claim[s ] made by an agent, bailee, or attorney on behalf of the person entitled to possession, [which] state that the person making the claim is authorized to do so."). Supplemental Rule G itself also contains a provision that Supplemental Rule C now applies only when Supplemental Rule G "does not address an issue."  SUPP. R. G(1); see also SUPP. R. G(1) Advisory Committee Note (Supplemental Rule C is "not to be invoked to create conflicts with Rule G"); CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, 12 FED. PRAC. & PROC. CIVIL § 3261 (2d ed. 2012) (same).

        Here, there is no question that the second claim Alexander Lazarenko filed "for himself" is verified within the meaning of Supplemental Rule G(5)(a)(i)(C) because he signed it. On the other hand, Lecia and Ekaterina Lazarenko only signed power of attorney forms empowering their brother, Alexander Lazarenko, "[t]o represent" their "right, title and interest." Second Claim at 5.  The Court need not resolve, however, whether the Lecia and Ekaterina Lazarenko's power of attorney forms qualify as "sign[ing]" their second claim "under penalty of perjury" because Supplemental Rule C(6)(a)(iii), not Supplemental Rule G(5)(a)(i)(C), governs the determination of whether claimants' second claim is a verified claim.  To force claimants to comply with Supplemental Rule G(5)(a)(i)(C)'s signature requirement — a provision added to

the Supplemental Rules eighteen months after claimants filed a second claim in this case that fully complied with the then-existing language of Supplemental Rule C(6)(a)(iii) — would not be "just and practicable." See 2006 U.S. ORDER 20 (C.O. 20).  Alexander Lazarenko served as Lecia and Ekaterina Lazarenko's "agent" in the filing of their second claim, and the power of attorney forms he attached thereto "state[d] the authority" he had "to file a statement of right or interest on [their] behalf," SUPP. R. C(6)(a)(iii) — but only insofar as account number 41610 is concerned.

The Court therefore declines to strike claimants' claim for failure to comply with Supplemental Rule G(5)(a)(i)(C)'s requirement that claimants "sign[]" the claim "under penalty of perjury."  The Court is mindful, however, of the Advisory Committee's admonition that Supplemental Rule C is "not to be invoked to create conflicts with Rule G."  SUPP. R. G(1) Advisory Committee Note.  In order to bring claimants' second claim into full compliance with Supplemental Rule G(5)(a)(i)(C), they shall file on or before February 3, 2017, an amended claim.  It must assert an interest in both accounts — if claimants wish to make claims as to both — and each of Alexander, Lecia, and Ekaterina Lazarenko must sign it.  This would both satisfy Supplemental Rule G(5)(a)(i)(C)'s signature requirement and permit claimants to assert an interest in account number 41950, which is an interest beyond the scope of the power of attorney forms attached to the second claim.

III.  CONCLUSION

For the reasons set forth in this Opinion, the Court will deny the motion to strike the claim of Alexander Lazarenko for himself and as agent for Lecia Lazarenko and Ekaterina Lazarenko.  An Order consistent with this Opinion shall issue this same day.

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  January 6, 2017