UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 04-0798 (PLF) |
| ALL ASSETS HELD AT BANK JULIUS, Baer & Company, Ltd., Guernsey Branch, account number 121128, in the Name of Pavlo Lazarenko et al., | ) ) ) ) ) | |
| Defendants In Rem. | ) ) | |

OPINION AND ORDER

This matter is before the Court on the emergency motion [Dkt. 538] of Claimant Pavel Lazarenko, a.k.a. Pavlo Lazarenko ("Lazarenko"), for clarification of the restraining order [Dkt. 23] in this case. Specifically, Lazarenko seeks an order that: (1) "legal action in the Royal Court of Guernsey, filed on November 3, 2015, does not violate the restraining order"; (2) that "[Lazarenko] and his agents may engage in foreign litigation to challenge the restraints on his foreign assets without violating the Court's restraining order"; and (3) that "[Lazarenko] and his agents may not move or dispose of, or dissipate the funds without approval of this Court." See Proposed Order at 1 (Dec. 29, 2015) [Dkt. 538-1]. The United States opposes the motion. Upon consideration of the parties' written submissions, the relevant case law, the entire record in this case, and the oral argument on January 25, 2017, the Court will grant Lazarenko's motion for reconsideration in part and deny it in part.[1]

---

[1] The documents reviewed by the Court in resolving the pending motion include the following: Claimant Lazarenko's Emergency Motion for Clarification of Restraining Order

I. FACTUAL AND PROCEDURAL BACKGROUND

This is a civil in rem action in which the United States seeks forfeiture of over $250 million dollars scattered throughout bank accounts located in Antigua, Barbuda, Guernsey, Liechtenstein, Lithuania, and Switzerland. See Am. Compl. ¶ 1 (June 30, 2005) [Dkt. 20]. This Court's prior opinions summarize the procedural history of this case, starting with the criminal prosecution of Lazarenko and continuing through this civil forfeiture proceeding. See, e.g., United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 307 F.R.D. 249, 250-51 (D.D.C. 2014); United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 959 F. Supp. 2d 81, 84-94 (D.D.C. 2013); United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 571 F. Supp. 2d 1, 3-6 (D.D.C. 2008). In brief, Pavel Lazarenko is "a prominent Ukrainian politician who, with the aid of various associates, was 'able to acquire hundreds of millions of United States dollars through a variety of acts of fraud, extortion, bribery, misappropriation and/or embezzlement' committed during the 1990s." United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 959 F. Supp. 2d at 85 (quoting Am. Compl. ¶¶ 1, 10).

The United States filed this in rem action in 2004, Complaint (May 14, 2004) [Dkt. 1], and six days later moved for an ex parte Restraining Order "to secure, maintain and preserve the availability for forfeiture of all properties named as defendants in this action." United States' Ex Parte Motion for a Post-Complaint Restraining Order at 2 (May 20, 2004) [Dkt. 2]. The Court fully reviewed the United States' motion for probable cause to believe that

---

("Mot.") [Dkt. 538]; Claimants Alexander, Lecia and Ekaterina Lazarenko's Notice of Joinder in Claimant Pavel Lazarenko's Motions [Dkt. 543]; United States' Opposition ("Opp.") [Dkt. 555]; Lazarenko's Reply [Dkt. 564]; Lazarenko's Update [Dkt. 674]; Lazarenko's Second Update [Dkt. 683]; United States' Response to Lazarenko's Second Update [Dkt. 684]; Lazarenko's Reply in Support of His Second Update [Dkt. 698]; and Lazarenko's Reply in Support of His Motion to Dismiss the Antiguan Res [Dkt. 717].

all in rem defendants were subject to forfeiture and, finding such probable cause, signed the proposed Restraining Order on the same day as it was filed. See generally Restraining Order (May 20, 2004) [Dkt. 3]. Shortly thereafter, the United States issued a summons and warrant of seizure for each of the in rem defendant assets in the case, see Docket for June 7, 2004, resulting in the United States making Mutual Legal Assistance Treaty ("MLAT") requests to various countries to freeze those assets. See, e.g., Lazarenko's Appendix ("Appx.") at 73-84 [Dkt. 583-3]; see also United States v. All Assets Held at Bank Julius Baer & Co., 772 F. Supp. 2d 205, 209 (D.D.C. 2011) (explaining the use of MLAT requests in this case).

No longer an ex parte proceeding, Pavel Lazarenko and his children — Alexander, Lecia, and Ekaterina Lazarenko — then entered the case by filing claims and answers asserting interests in some or all of the in rem defendant assets. See Children's First Claim (June 29, 2004) [Dkt. 4]; Lazarenko's First Claim (June 29, 2004) [Dkt. 5]; Children's First Answer (Aug. 13, 2004) [Dkt. 8]; Lazarenko's First Answer (Aug. 13, 2004) [Dkt. 9]. Eight months later, the United States moved to amend its complaint and thereby its Restraining Order, see Motion for Leave to File First Amended Complaint (Apr. 26, 2005) [Dkt. 15], which Lazarenko and his children did not oppose. The Court granted the United States leave to file its amended complaint by minute order, see Docket (minute order of June 30, 2005), and, after reviewing the proposed Restraining Order for probable cause and finding it adequate, signed the new Restraining Order. See Restraining Order (July 8, 2005) [Dkt. 23].

That 2005 Restraining Order governs the conduct of the parties with respect to the in rem defendant assets in this case. As relevant here, the Restraining Order prohibits Lazarenko, his children, and others listed therein:

> without prior approval of this Court and upon notice to the United States and an opportunity for the United States to be heard, from attempting or completing any

3

>action that would affect the availability or value of the Defendants In Rem including, but not limited to, withdrawing, transferring, assigning, pledging, distributing, encumbering, wasting, secreting or otherwise disposing of or diminishing the value of, by any means, all or any part of the Defendants In Rem.

Dkt. 23 at 7.

Several of the assets that are the subject of this in rem action are held at Bank Julius Baer & Company, Ltd., Guernsey Branch — also known as Bank Julius Baer (Guernsey) Limited — or Credit Suisse (Guernsey) Limited. Am. Compl. ¶ 5(a)-(c). In December 2015, Lazarenko filed an Application with the Royal Court of Guernsey to "[v]ary the Order" freezing those in rem assets, essentially asking that the freeze be lifted as to a portion of those funds so that he could pay his criminal forfeiture judgment in the United States. See Appx. at 8 [Dkt. 538-3]. The basis for Lazarenko's Application is that the Guernsey order freezing assets was based on an incorrect understanding of the scope of his United States criminal conviction in the U.S. District Court for the Northern District of California. Id. at 6-7. In particular, Lazarenko's Application claims that the order fails to take account of the fact that the Ninth Circuit later vacated six of Lazarenko's 14 counts of conviction. Id. at 7; see United States v. Lazarenko, 564 F.3d 1026 (9th Cir. 2009). Lazarenko did not disclose this Application to the United States until roughly six weeks after he filed it. Appx. at 135 [Dkt. 538-3]. Once notified, the United States responded by "request[ing] that [Lazarenko] immediately withdraw the Guernsey Application" or the United States would "file a motion to show cause as to why Mr. Lazarenko should not be sanctioned and found in civil contempt of [this] court's restraining order." Appx. at 135. Lazarenko then instructed his attorney in Guernsey "not to undertake any action pending" resolution of the present emergency motion, which Lazarenko filed shortly thereafter. Mot. at 2.

4

## II.  DISCUSSION

### A.  *Guernsey*

A federal court is authorized, under 18 U.S.C. § 983(j)(1)(A), to enter a restraining order "upon the filing of a civil forfeiture complaint alleging that the property with respect to which the order is sought is subject to civil forfeiture," in order to preserve the availability of property subject to forfeiture during the pendency of the forfeiture proceedings. The Court finds that Lazarenko's Guernsey Application violates the plain language of the 2005 Restraining Order in this case.  Lazarenko does not dispute that the Restraining Order enjoys the full force of law under 18 U.S.C. § 983(j).  Nor does he argue that he sought the "prior approval of this Court," as the Restraining Order requires, before instituting his Guernsey Application. See Restraining Order at 7.  The only dispute, therefore, is whether Lazarenko's Guernsey Application "would affect the availability or value of the Defendants In Rem."  Id.  The answer is plainly yes, and Lazarenko's arguments to the contrary are frivolous.

Lazarenko argues that "the restraining order makes no reference to the initiation of foreign litigation."  Mot. at 9.  While the Restraining Order enumerates a laundry list of activities that might "affect the availability or value" of the property at issue and does not expressly include foreign litigation, the phrase "including, but not limited to" precedes the list of actions that are prohibited or restrained.  Restraining Order at 7.  Cf. SEC v. Bilzerian, 613 F. Supp. 2d 66, 69 (D.D.C.) (instituting restraining order that barred "the commencement of any proceedings in any court"), aff'd SEC v. Bilzerian, 75 F. App'x 3, 4 (D.C. Cir. 2003).  Moreover, the list of prohibited activities includes "otherwise disposing of or diminishing the value of, by any means," all or part of the defendants in rem.  Restraining Order at 7 (emphasis added). Lazarenko's Guernsey Application asks to take a portion of the res "to pay" his criminal

forfeiture judgment in the United States.  Appx. at 8 [Dkt. 538-3].  It strains credulity for Lazarenko to now contend that his Guernsey Application — by which he asks to receive some of the in rem assets — would not "affect the availability or value" or otherwise "diminish[] the value" of the res.  The Court finds that Lazarenko's Guernsey Application plainly would have that effect.

Lazarenko next contends that the Royal Court of Guernsey permitted him to seek a variance of the order Guernsey issued to seize the res.  See Mot. at 9.  Lazarenko bases this argument on the notice he received in 2004 when the United States froze the res in Guernsey through an MLAT request, which states that Lazarenko "ha[s] a right to ask the Royal Court to discharge or vary the order that has been made."  See Appx. at 130 [Dkt. 538-3].  Lazarenko argues that this notice gives him an escape hatch from this Court's 2005 Restraining Order.  He grounds his argument in this Court's prior explanation that:

> [T]he country that has physical control over property sought by the United States will determine, by application of that country's own law, whether it will release any property to the United States upon request; the United States cannot use its own domestic law to force another country to relinquish property.  But whether the assets are subject to forfeiture in the first place and whether forfeiture orders should issue is a question of United States law.

United States v. All Assets Held at Bank Julius Baer & Co., 772 F. Supp. 2d at 210.  Lazarenko misreads this passage, which speaks only to the "release of property to the United States" and not to claimants like Lazarenko.  Id.  Furthermore, while this Court's Restraining Order does not bind the Royal Court of Guernsey, it expressly makes Lazarenko subject to its terms, see Restraining Order at 6; he therefore must abide by its terms regardless of his rights under Guernsey law to litigate in Guernsey's courts.

This conclusion squares with how the D.C. Circuit has distinguished between a federal court's "jurisdiction" to issue forfeiture orders (and the lesser power to issue restraining orders) concerning a foreign res, and the "effectiveness" of those orders under international law:

> It may well be that a forfeiture order of a United States court will not have its full effect until the res — the money — is brought within the territory of the United States. [The foreign nation in possession of the res] may be expected to live up to its treaty obligations, even if it would not otherwise be required to effectuate the judgments of United States courts. But [that foreign nation's] compliance and cooperation determines only the effectiveness of the forfeiture orders of the district courts, not their jurisdiction to issue those orders.

United States v. All Funds in Account Nos. 747.034/278, 747.009/278, & 747.714/278 in Banco Espanol de Credito, Spain, 295 F.3d 23, 27 (D.C. Cir. 2002) (internal citations omitted). Lazarenko's right under Guernsey law to challenge the freeze on assets might undermine the ultimate "effectiveness" of a future forfeiture order in this case — the Court expresses no view on that subject one way or the other — but it certainly does not undermine this Court's "jurisdiction" to presently restrain Lazarenko's conduct concerning the Guernsey res. The Court therefore clarifies that Lazarenko's Guernsey Application violates this Court's Restraining Order.

### B. Antigua

In Lazarenko's reply brief and in two subsequent "updates" to his briefing on this motion, he alerted the Court of his attempts to negotiate with the government of Antigua and Barbuda ("Antigua") concerning the property in that country. See Reply at 2-3 (Feb. 1, 2016) [Dkt. 564]; Lazarenko's First Update at 1 (May 4, 2016) [Dkt. 674]; Lazarenko's Second Update at 1 (May 10, 2016) [Dkt. 683]. The Court has previously recounted the lengthy history of Lazarenko's relationship with the Antiguan authorities, see United States v. All Assets Held at Bank Julius Baer & Co., 959 F. Supp. 2d at 86-90, and the parties have submitted status reports

7

detailing the most recent developments concerning the Antiguan res. See, e.g., United States' Status Report (July 8, 2016) [Dkt. 744]; Lazarenko's Status Report (Jan. 6, 2017) [Dkt. 848].

In 1999, Antigua froze $67 million worth of Lazarenko's assets in that country and initiated a forfeiture proceeding against him under Antiguan law. See Reply at 2 [Dkt. 564]. As this Court explained:

> The High Court granted this request [of the Antiguan Office of Drug and Money Laundering Control Policy] in an order dated October 29, 1999, prohibiting Lazarenko and several of his associates and affiliated companies from removing any of their funds from Antigua or in any way disposing of or diminishing those funds. The apparent basis for this restraining order was Lazarenko's criminal prosecution in Switzerland on money laundering charges[.]

United States v. All Assets Held at Bank Julius Baer & Co., 959 F. Supp. 2d at 87 (internal citations omitted). Those funds remained frozen for 16 years pursuant to freeze orders issued under Antiguan law and a freeze order stemming from the initiation of this in rem proceeding. See id. at 86-90. That changed on December 24, 2015, when the High Court of Justice in Antigua granted the Antiguan government's motion for an order that "all right, interests and ownership" in "the total sum with interest currently on deposit" in certain accounts — that is, the Antiguan res in this case — "shall be paid forthwith into the Government Forfeiture Fund." See Appendix to Lazarenko's Reply in Support of His Motion to Dismiss the Antiguan Res at 195-96 (containing December 24, 2015 Order of the High Court of Antigua and Barbuda) [Dkt. 717-3]. The "Government Forfeiture Fund" is akin to Antigua's general treasury because, by the terms of the statute providing the authority for the High Court of Justice's December 24, 2015 Order, the Antiguan government may use the fund "for any [] purpose the Minister may consider proper." See Mitchell Declaration Appendix at 200 [Dkt. 628-3]. Lazarenko unsuccessfully challenged

that order in the courts of Antigua, see Dkt. 683-2 at 186-88, and the United States states that "[o]ne Antiguan official has indicated to [it] that some of the funds may have been utilized for [Antiguan] government purposes." See United States' Response to Lazarenko's Second Update at 12 n.5 (May 11, 2016) [Dkt. 684].

Lazarenko seeks a declaration from this Court that he may negotiate with the Antiguan government concerning the funds that may now be in the Antiguan Government Forfeiture Fund. See Lazarenko's First Update at 11 [Dkt. 674]. While this Court's 2005 Restraining Order prohibits certain individuals, including Lazarenko, from attempting or "completing any action that would affect the availability or value of the Defendants" in rem, Restraining Order at 7 (emphasis added) — and Lazarenko, his attorneys, and his agents remain subject to it — the Court will not stand in the way of good faith negotiations designed to preserve or maintain the value of the res subject to forfeiture in this action. At oral argument on January 25, 2017, counsel for Lazarenko represented that "the High Court of Antigua took the money from the registry of the Court and put it into a forfeiture fund," and that the res is "just not coming back." Mot. Hr'g Tr. Jan. 25, 2017 at 88 [Dkt. 886]. Lazarenko's counsel also stated that Lazarenko will not pursue an appeal in the Antiguan courts given the $100,000 cost. Id. at 108. Also at oral argument, counsel for the United States represented that he "spoke with the Attorney General of Antigua," who "indicated that if it is proven or agreed that the funds are to be disbursed, funds will be made available for that purpose." Id. at 97. On the basis of this uncertain evidence, the Court is unable to definitely assess the present status of the Antiguan res, but recognizes the strong possibility that recent events have put it beyond the reach of the Court's Restraining Order.

In light of this uncertainty in Antigua, the Court simply reiterates the Minute Order that it issued on May 19, 2016, addressing the issue of the Antiguan rem:

> Upon consideration of Claimant Lazarenko's Update to his Emergency Motion to Clarify the Restraining Order, the United States' Response, and Claimant Lazarenko's Reply, the Court finds that: (1) any settlement or other proceeds of Claimant Lazarenko's domestic proceedings in the Courts of Antigua and Barbuda shall remain subject to the Restraining Order; (2) Claimant Lazarenko shall, within 7 days of receiving such settlement or other proceeds, deposit the entirety thereof into an account under the control of the Registrar of the High Court of Antigua and Barbuda; and (3) Claimant Lazarenko shall, within 7 days of making such a deposit, furnish documentary proof thereof on the public record.

See Docket. The Court sees no reason to deviate from that guidance. It will permit Lazarenko to negotiate with the Antiguan government concerning the res so long as those negotiations serve to preserve or maintain the value of the res subject to forfeiture in this Court. To the extent such negotiations result in any assets remaining in Antigua, Lazarenko shall follow the directives contained in the Court's May 19, 2016 Minute Order.[2]

### III.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Claimant Lazarenko's Emergency Motion for Clarification of Restraining Order ("Mot.") [Dkt. 538] is GRANTED IN PART and DENIED IN PART; it is

FURTHER DECLARED that Lazarenko's Guernsey Application violates the Court's Restraining Order of July 8, 2005 [Dkt. 23]; it is

FURTHER DECLARED that foreign litigation by Lazarenko or his agents to challenge the restraints on his foreign assets violates the Court's 2005 Restraining Order;

---

[2] Everything said in this Opinion applies with full force to Lazarenko's children, who joined the present motion. See Dkt. 543.

FURTHER ORDERED that any settlement or proceeds of Lazarenko's domestic proceedings in Antigua shall remain subject to this Court's 2005 Restraining Order; it is

FURTHER ORDERED that Lazarenko shall, within seven (7) days of receiving such settlement or other proceeds, deposit the entirety thereof into an account under the control of the Registrar of the High Court of Antigua and Barbuda; and it is

FURTHER ORDERED that Lazarenko shall, within seven (7) days of making such a deposit, furnish documentary proof thereof on the public record of this Court.

SO ORDERED.

/s/
PAUL L. FRIEDMAN
United States District Judge

DATE: March 23, 2017