UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

UNITED STATES OF AMERICA,

      Plaintiff,

   v.

ALL ASSETS HELD AT BANK JULIUS,
Baer & Company, Ltd., Guernsey
Branch, account number 121128, in the
Name of Pavlo Lazarenko et al.,

      Defendants In Rem.

Civil Action No. 04-0798 (PLF)

---

OPINION AND ORDER

This matter is before the Court on the motion [Dkt. 492] of Claimant Pavel Lazarenko, a.k.a. Pavlo Lazarenko ("Lazarenko"), to dismiss the res located in Antigua and Barbuda ("Antigua") and described in paragraph 5(d) of the First Amended Verified Complaint [Dkt. 20]. The United States opposes the motion. Upon consideration of the parties' written submissions, the relevant case law, the entire record in this case, and the oral argument on January 25, 2017, the Court will deny the motion without prejudice.[1]

---

[1] The documents reviewed by the Court in resolving the pending motion include the following: Lazarenko's First Amended Verified Complaint ("Am. Compl.") [Dkt. 20]; Lazarenko's initial motion to dismiss [Dkt. 27]; Lazarenko's motion to dismiss the Antiguan res ("Mot.") [Dkt. 492]; United States' opposition [Dkt. 638]; Lazarenko's first update to emergency motion to clarify the restraining order [Dkt. 674]; Lazarenko's second update to emergency motion to clarify the restraining order [Dkt. 683]; Lazarenko's reply [Dkt. 717]; United States' status report [Dkt. 744]; Lazarenko's status report regarding Antiguan res [Dkt. 848]; and Lazarenko's notice of supplemental authority [Dkt. 865].

I. FACTUAL AND PROCEDURAL BACKGROUND

This is a civil in rem action in which the United States seeks forfeiture of over $250 million dollars scattered throughout bank accounts located in Guernsey, Liechtenstein, Lithuania, Switzerland, and Antigua and Barbuda. See Am. Compl. ¶ 1. This Court's prior opinions summarize the procedural history of this case, starting with the criminal prosecution of Lazarenko and continuing through this civil forfeiture proceeding. See, e.g., United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 307 F.R.D. 249, 250-51 (D.D.C. 2014); United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 959 F. Supp. 2d 81, 84-94 (D.D.C. 2013); United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 571 F. Supp. 2d 1, 3-6 (D.D.C. 2008). In brief, Pavel Lazarenko is "a prominent Ukrainian politician who, with the aid of various associates, was 'able to acquire hundreds of millions of United States dollars through a variety of acts of fraud, extortion, bribery, misappropriation and/or embezzlement' committed during the 1990s." United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 959 F. Supp. 2d at 85 (quoting Am. Compl. ¶¶ 1, 10).

In 1997, Lazarenko obtained "an ownership interest in the European Federal Credit Bank Limited ("Eurofed"), an Antiguan bank. United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 959 F. Supp. 2d at 86. "In 1999, Antiguan government authorities with responsibility over financial crimes began to investigate Eurofed." Id. at 86-87. On October 29, 1999, Antigua's Office of Drug and Money Laundering Control Policy obtained a freeze order "prohibiting Lazarenko and several of his associates and affiliated companies from removing any of their funds from Antigua or in any way disposing of or diminishing those funds." Id. at 87.[2]

---

[2] "The apparent basis for this restraining order was Lazarenko's criminal prosecution in Switzerland on money laundering charges, for which he was later convicted, and

Lazarenko successfully challenged that order in Antigua's courts, but thereafter the Antiguan High Court of Justice "issued another ex parte order on May 2, 2001, directing that [a]ll the rights and interests of Lazarenko, whether in his name or otherwise, be frozen until further order." Id. at 88-89 (alteration in original) (internal quotation marks omitted).

The United States filed this in rem action on May 14, 2004, see Complaint [Dkt. 1], and on May 20, 2004, moved for an ex parte Restraining Order "to secure, maintain and preserve the availability for forfeiture of all properties named as defendants in this action." United States' Ex Parte Motion for a Post-Complaint Restraining Order at 2 [Dkt. 2]. The Court fully reviewed the United States' motion for probable cause to believe that all in rem defendants were subject to forfeiture and, finding such probable cause, signed the proposed Restraining Order on May 20, 2004. See generally Restraining Order [Dkt. 3]. On May 27, 2004, the Antiguan High Court of Justice issued another freeze order for the same Antiguan res. See Appendix to United States' Opposition at 49-51 [Dkt. 642-4].

On June 7, 2004, the United States issued a summons and warrant of seizure for each of the in rem defendant assets in the case, see Docket for June 7, 2004, resulting in the United States making Mutual Legal Assistance Treaty ("MLAT") requests to various countries to freeze those assets. See, e.g., Appendix to Claimant Pavel Lazarenko's Emergency Motion for Status Conference at 73-84 [Dkt. 538-3]; see also United States v. All Assets Held at Bank Julius Baer & Co., 772 F. Supp. 2d 205, 209 (D.D.C. 2011) (explaining the use of MLAT requests in this case). One of the seized assets, described in paragraph 5(c) of the Complaint, was "[a]pproximately $85.5 million in United States dollars held at Bank of Nova Scotia (Antigua) in

---

the alleged connection between those charges and the funds held at Eurofed." United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 959 F. Supp. 2d at 87.

3

the name of the Registrar of the High Court of Antigua & Barbuda." Complaint ¶ 5(c) [Dkt. 1].[3]

On April 26, 2005, the United States moved to amend its complaint and thereby its Restraining Order, see Motion for Leave to File First Amended Complaint [Dkt. 15]. The Court granted the United States leave to file its First Amended Verified Complaint on June 30, 2005, see Docket (minute order of June 30, 2005), and, after reviewing the proposed Restraining Order for probable cause and finding it adequate, signed the new Restraining Order on July 8, 2005. See Restraining Order [Dkt. 23]. The 2005 Restraining Order remains the legal basis for the freeze on the Antiguan res, which is now described in paragraph 5(d) of the First Amended Verified Complaint.

Lazarenko now moves to dismiss the Antiguan res contained in paragraph 5(d) because he argues that — under the Supreme Court's decision in Princess Lida of Thurns and Taxis v. Thompson, 305 U.S. 456 (1939) ("Pincess Lida") — the May 2, 2001 Antiguan freeze order was part of a prior in rem proceeding that bars the United States from litigating this later-in-time in rem proceeding. See Mot. at 14-16.[4] Lazarenko attaches an affidavit from his

---

[3] The present value of the Antiguan res is $65 million, not the $85 million listed in paragraph 5(d) of the First Amended Verified Complaint because, on November 6, 2003, the Antiguan High Court of Justice ordered the "release [of] nearly $20 million from its account at the Bank of Nova Scotia to the Liquidators for the purpose of pro rata payment to third party depositors and creditors and for expenses of the liquidation" of Eurofed. United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 959 F. Supp. 2d at 90 (internal quotation marks omitted).

[4] The Princess Lida doctrine is a "first-in-time" common law concept; it holds that when a United States or foreign court exercises in rem or quasi in rem jurisdiction over a res, another court — state or federal — may not thereafter assert jurisdiction over the same res. Princess Lida of Thurns and Taxis v. Thompson, 305 U.S. at 466 ("[T]he court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other[.]"); see also SEC v. Banner Fund Int'l., 211 F.3d 602, 611 (D.C. Cir. 2000) ("[T]he first court seized of jurisdiction over property . . . may exercise that jurisdiction to the exclusion of any other court."); Dailey v. NHL, 987 F.2d 172, 176 (3d Cir. 1993) (district court must yield to foreign court which was first to assert quasi in rem jurisdiction). The court that exercises jurisdiction first has exclusive jurisdiction, but only insofar as the exercise of such exclusive

4

Carribean attorney who opines that the 2001 freeze order occurred in the course of an Antiguan in rem proceeding because the Antiguan court issued it pursuant to the Antiguan money laundering statute, thereby qualifying for the Princess Lida rule. See Declaration of Deale Lee ¶¶ 10-28 [Dkt. 493-1]. The United States responds that Lazarenko waived the Princess Lida argument by failing to raise it in the motion to dismiss that he filed in 2005. Opposition at 8-9 [Dkt. 638]. The United States also contends that both the treaty between the United States and Antigua on mutual legal assistance and 28 U.S.C. § 1355(b)(2) "bar[] application of the common law rule embodied in the Princess Lida doctrine in the case of international forfeiture." Id. at 11-12. Finally, the United States argues that the May 20, 2004 Restraining Order in this case [Dkt. 3] predated the May 27, 2004 Antiguan freeze order and therefore is not subject to the Princess Lida rule. Id. at 20.

After fully briefing the present motion, Lazarenko submitted two "updates" to a separate motion, which described his recent attempts to negotiate with Antigua concerning the res described in paragraph 5(d) of the First Amended Verified Complaint. See Lazarenko's First Update (May 4, 2016) [Dkt. 674]; Lazarenko's Second Update [Dkt. 683]. In addition to those updates, the parties have submitted a number of status reports detailing the most recent facts concerning the Antiguan res. See, e.g., United States' Status Report (July 8, 2016) [Dkt. 744]; Lazarenko's Status Report (Jan. 6, 2017) [Dkt. 848].

---

jurisdiction is necessary for the appropriate control and disposition of the property. Princess Lida of Thurns and Taxis v. Thompson, 305 U.S. at 463-64; see also Al-Abood ex rel. Al-Abood v. El-Shamari, 217 F.3d 225, 231-32 (4th Cir. 2000). The second court therefore does not lose its power to make orders concerning the res that do not conflict with the authority of the first court. See United States v. $3,000,000 Obligation of Qatar Nat'l Bank, 810 F. Supp. 116, 118 (S.D.N.Y. 1993). "In order for the Princess Lida doctrine to apply, the two courts must be exercising jurisdiction over the same res." Al-Abood ex rel. Al-Abood v. El-Shamari, 217 F.3d at 231.

As described in these updates and status reports, Lazarenko's recent negotiations with Antigua stem from a December 24, 2015 order issued by the Antiguan High Court of Justice stating that "all" of Lazarenko's "right, interests and ownership" in "the total sum with interest currently on deposit" in certain accounts — that is, the Antiguan res in this case — "shall be paid forthwith into the Government Forfeiture Fund." See Order at 2 (Dec. 24, 2015) [Dkt. 717-3, PDF pages 195-96]. The "Government Forfeiture Fund" is akin to Antigua's general treasury because, by the terms of the statute providing the authority for the High Court of Justice's December 24, 2015 Order, the Antiguan government may use the fund "for any [] purpose the Minister may consider proper." See Mitchell Declaration Appendix at 200 [Dkt. 628-3]. Lazarenko unsuccessfully challenged this order in Antiguan courts, see Dkt. 683-2 at 186-88, and the United States acknowledges that "[o]ne Antiguan official has indicated to [it] that some of the funds may have been utilized for [Antiguan] government purposes." See United States' Response to Lazarenko's Second Update at 12 n.5 (May 11, 2016) [Dkt. 684].[5]

At oral argument on January 25, 2017, counsel for Lazarenko represented that "the High Court of Antigua took the money from the registry of the Court and put it into a forfeiture fund," and that the res is "just not coming back." Mot. Hr'g Tr. Jan. 25, 2017 at 88 [Dkt. 886]. Lazarenko's counsel also stated that Lazarenko will not pursue an appeal in the Antiguan courts given the high cost. Id. at 108. Also at oral argument, counsel for the United States represented that he "spoke with the Attorney General of Antigua," who "indicated that if it

---

[5] Based on the recent updates filed by the parties and Lazarenko's motion seeking a clarification of this Court's Restraining Order, the Court issued an Opinion and Order on March 23, 2017, by which it: (1) reiterated that "any settlement or other proceeds of Claimant Lazarenko's domestic proceedings in the Courts of Antigua and Barbuda shall remain subject to the Restraining Order"; and (2) "permit[ted] Lazarenko to negotiate with the Antiguan government concerning the res so long as those negotiations serve to preserve or maintain the value of the res subject to forfeiture in this Court.. See United States v. All Assets Held at Bank Julius Baer & Co., Ltd., --- F. Supp. 3d ----, 2017 WL 1093184, at *5 (D.D.C. Mar. 23, 2017).

is proven or agreed that the funds are to be disbursed, funds will be made available for that purpose." Id. at 97.

## II. DISCUSSION

The Court concludes that Lazarenko likely waived his Princess Lida argument by failing to raise it in his 2005 motion to dismiss, but it declines to decide the issue at this point in the litigation because of recent events in Antigua. The Court therefore will deny the motion to dismiss without prejudice.

"Civil forfeiture actions are governed by the procedures set forth in 18 U.S.C. § 983 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ('Supplemental Rules'), a subset of the Federal Rules of Civil Procedure." United States v. All Assets Held at Bank Julius, --- F. Supp. 3d ----, 2017 WL 189165, at *3 (D.D.C. Jan. 17, 2017) (internal quotation marks omitted). "Courts generally expect claimants to adhere strictly to those requirements." United States v. All Assets Held at Bank Julius Baer & Co., 664 F. Supp. 2d 97, 101 (D.D.C. 2009). Supplemental Rule G(5)(b) states that "[a] claimant waives an objection to in rem jurisdiction or to venue if the objection is not made by motion or stated in the answer." An objection to in rem jurisdiction is not an objection to subject matter jurisdiction; it is akin to an objection to personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. "Although Rule 12(b)(2) only refers to 'jurisdiction over the person,' the provision presumably is sufficiently elastic to embrace a defense or objection that the district court lacks in rem or quasi-in-rem jurisdiction . . . ." 5B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1351 (3d ed. 2017) (quoting FED. R. CIV. P. 12(b)(2)); see also Newhard, Cook & Co. v. Inspired Life Ctrs., Inc., 895 F.2d 1226, 1228 n.2 (8th Cir. 1990) (same).

"It is . . . elementary that a defense of . . . lack of personal (as opposed to subject matter) jurisdiction is waived unless the defense is asserted by a pre-answer motion (i.e., Rule 12(b)) or in a responsive pleading, i.e., the answer or a timely amendment thereto." Gilmore v. Palestinian Interim Self-Gov't Auth., 843 F.3d 958, 964 (D.C. Cir. 2016) (citation and internal quotation marks omitted); see also FED. R. CIV. P. 12(h)(1)(B) ("A party waives any defense listed in Rule 12(b)(2)-(5) by . . . failing to either (i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course."). This hornbook principle reflects the concern of judicial economy that "defendants should raise such preliminary matters" as personal jurisdiction "before the court's and parties' time is consumed in struggle over the substance of the suit — where a defendant has engaged in extensive [] litigation without suggesting an infirmity in personal jurisdiction." Democratic Republic of Congo v. FG Hemisphere Assocs., LLC, 508 F.3d 1062, 1064 (D.C. Cir. 2007). But "[t]o preserve the defense of lack of personal jurisdiction, a defendant . . . need not articulate the defense with any rigorous degree of specificity." Mattel, Inc. v. Barbie-Club.com, 310 F.3d 293, 307 (2d Cir. 2002) (Sotomayor, J.).

Lazarenko did not raise his Princess Lida argument in his first responsive pleading, a motion to dismiss filed on July 26, 2005, when he had all of the relevant facts about the 2001 and 2004 Antiguan freeze orders at his disposal. See Motion to Dismiss [Dkt. 27]. Lazarenko's motion to dismiss addressed only the issue of subject matter jurisdiction. Id. at 6-16. With respect to his Answer, Lazarenko argues that he asserted a lack of in rem jurisdiction in paragraph 160A of his Verified Answer to the First Amended Verified Complaint, filed on November 21, 2011. See Reply at 9 [Dkt. 717]. Paragraph 160A of Lazarenko's Answer is part of his prayer for relief and asks "[t]hat plaintiff's action be dismissed and plaintiff take nothing

by way of its Complaint for Forfeiture In Rem." Claimant Lazarenko's Verified Answer ¶ 160A [Dkt. 268]. The Court does not read the plain language of this paragraph as asserting a lack of in rem jurisdiction.

Lazarenko fails to direct the Court's attention to two other paragraphs of his November 2011 Answer that may be more relevant: (1) paragraph 2, where Lazarenko "denies that this Court has jurisdiction in the matter"; and (2) paragraph 156, where Lazarenko asserts the affirmative defense that "this Court lacks jurisdiction over this in rem forfeiture action." Claimant Lazarenko's Verified Answer ¶¶ 2, 156. The Court doubts that these non-specific statements are enough for Lazarenko to preserve the Princess Lida argument. In any event, in the context of this case, Lazarenko's litigation conduct smacks of sandbagging, i.e., "remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." Puckett v. United States, 556 U.S. 129, 134 (2009). Lazarenko filed the instant motion to dismiss more than ten years after filing his first motion to dismiss, despite having in his possession in 2005 all of the documents from Antigua relevant to the instant motion. Such a belated motion seriously contravenes the judicial economy functions of Rule 12(b)(2) of the Federal Rules of Civil Procedure.

The Court need not resolve the issue of waiver at this point in the litigation because it is plain that recent events in Antigua have overtaken the instant motion and obviate the need for the Court to reach its merits. And where "arguments have been overtaken by events . . . this Court will consider them moot and will not address them." Sierra Club v. United States Army Corps of Eng'rs, 64 F. Supp. 3d 128, 137 (D.D.C. 2014), aff'd sub nom. 803 F.3d 31 (D.C. Cir. 2015); cf. United States v. Glover, 377 Fed. App'x 20, 21 (D.C. Cir. 2010) ("Because the

circumstance underlying the merits of their appeal . . . have been overtaken by events, the court dismisses the appeal as moot.").

As the Court recently observed in an Opinion concerning the Restraining Order in this case, it "is unable to definitely assess the present status of the Antiguan res, but recognizes the strong possibility that recent events have put it beyond the reach of the Court's Restraining Order." United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 2017 WL 1093184, at *4. In that Opinion, the Court also explained the process by which Lazarenko may "negotiate with the Antiguan government concerning the res so long as those negotiations serve to preserve or maintain the value of the res subject to forfeiture in this Court." Id. at *5. The Court directed Lazarenko to take particular steps with funds in Antigua should those negotiations bear fruit. Id. (citing May 19, 2016 Minute Order). The Court finds it inappropriate to address the merits of the instant motion when it is possible that its disposition may be nothing more than an advisory opinion concerning a res that no longer exists.

The Court will deny Lazarenko's motion without prejudice because the situation in Antigua is fluid and ongoing. The Court welcomes documentary evidence from either party demonstrating that the Antiguan res still exists such that a renewed motion to dismiss would be justiciable.

## III. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Claimant Lazarenko's Motion for Dismissal of the Antiguan <u>In Rem</u> Defendant [Dkt. 492] is DENIED WITHOUT PREJUDICE.

SO ORDERED.

/s/
PAUL L. FRIEDMAN
United States District Judge

DATE: April 27, 2017