# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

    Plaintiff,

        v.                             Civil Action No. 04-798 (PLF/GMH)

ALL ASSETS HELD AT BANK JULIUS
BAER & COMPANY, LTD., GUERNSEY
BRANCH, ACCOUNT NUMBER 121128,
IN THE NAME OF PAVLO LAZARENKO,
*ET AL.*

    **Defendants *In Rem*.**

## MEMORANDUM OPINION

This case has been referred to the undersigned for the management of discovery. Currently ripe for resolution are (1) Claimant Pavel Lazarenko's ("Claimant") motion for expenses and attorney's fees totaling $39,718 for Plaintiff's Austrian Deposition [Dkt. 861]; and (2) Plaintiff's cross motion for costs in the amount of $7,324.99 for the deposition in Austria [Dkt. 893].[1] Upon consideration of the parties' filings and the entire record herein, the Court will deny both motions. The Court's rationale follows.

## BACKGROUND

The factual background concerning this *in rem* asset forfeiture action has been set forth in multiple opinions by District Judge Paul L. Friedman. *See, e.g.*, *United States v. All Assets Held*

---

[1] For purposes of adjudicating the instant motions, the relevant docket entries include: (1) Claimant's Memorandum in Support of his Motion for Expenses and Attorney's Fees for Plaintiff's Austrian Deposition ("Mot.") [Dkt. 861-1]; (2) Plaintiff's Memorandum in Support of its Opposition and Cross Motion for Costs in Response to Claimant's Motion for Expenses and Attorney's Fees for Deposition in Austria ("Cross Mot.") [Dkt. 1017-1]; (3) Claimant's Opposition to Plaintiff's Cross Motion for Costs, and Reply in Support of Claimant's Motion for Expenses and Attorney's Fees for Plaintiff's Austrian Deposition ("Resp.") [Dkt. 1014-2]; (4) Plaintiff's Reply in Support of its Cross Motion for Costs Incurred Due to Claimant's Unreasonable Conduct in Thwarting the Deposition and In Responding to his Unfounded Motion for Fees and Costs ("Reply") [Dkt.1017-8]; and (5) Claimant's Supplement to his Vienna Fees' Motion ("Supp.") [Dkt. 963–1].

*at Bank Julius Baer & Co., Ltd.*, 772 F. Supp. 2d 191 (D.D.C. 2011). This Court will not repeat that lengthy history here. Instead, the facts pertinent to the adjudication of the parties' cross motions are summarized below. While each party provides its own rendition of the events leading up to the instant motions, the underlying facts are, for the most part, undisputed.

### A.     Plaintiff's Notice of Deposition

On August 18, 2016, Plaintiff sought leave to shorten the period of time prescribed by Local Rule 30.1 for providing "reasonable notice" of a deposition to occur at least fifty miles outside Washington, D.C. from two weeks to eight days in order to depose Rafic Daou ("Daou"), a Lebanese national, at the U.S. Consulate in Vienna, Austria on August 26, 2016. *See* Pl. Letter [Dkt. 762-1]; *see also* LCvR 30.1 (permitting a court to "enlarge or shorten" the reasonable notice requirement "on application of a party for good cause shown"). To show good cause for its request, Plaintiff explained that: (1) Daou is a critical third-party witness; (2) Daou first confirmed his availability for the deposition on August 18, 2016, the day that Plaintiff made its request; (3) Daou said that he was unavailable on any other date in August and September; (4) travelling to Vienna was more practical and safer than travelling to Beirut, Lebanon, where Daou lived; and (5) Claimant's counsel could participate in the deposition by telephone if they could not travel on such short notice. Pl. Letter [Dkt. 762-1] at 1–2. Claimant objected to Plaintiff's request, arguing that travelling to Vienna on eight days' notice was unduly burdensome and provided insufficient time to prepare. *See* Cl. Aug. 19, 2016 Letter [Dkt. 766-2]. Additionally, Claimant asserted that Plaintiff overstated the importance of Daou's testimony and the urgency of taking Daou's deposition in August, referencing a document that Claimant's counsel received indicating that Daou "preferred to travel in September[,] though August 26, 2016 could work" for his schedule. *Id.* at 1–2. According to Plaintiff, however, Daou later changed his mind regarding his availability, informing

2

the government's counsel that he would only appear for a deposition on August 26, 2016. *See* Order [Dkt.765] at 2.[2]

During an August 19, 2016 telephone conference, the Court ruled in Plaintiff's favor, and Claimant filed a letter brief requesting reconsideration of that decision. *See* Cl. Aug. 22, 2016 Letter [Dkt. 766-1] at 1. After reviewing Claimant's letter brief and Plaintiff's response, the Court issued an Order on August 22, 2016 affirming its decision to grant Plaintiff's request and allow the deposition to move forward in Vienna. *See* Order [Dkt. 765] at 5. In its Order, the Court highlighted a number of factors that weighed in favor of granting Plaintiff's request, including: (1) Daou's apparent unwillingness to sit for a deposition after August 26, 2016 based on the representations of Plaintiff; (2) the Court's inability to compel Daou, a foreign national, to attend a deposition abroad; (3) the mutual hardship that both parties would endure by having to prepare and travel for a deposition on such short notice; (4) the importance of Daou's testimony, according to Plaintiff; and (5) the option for Claimant's counsel to attend the deposition remotely. *Id.* at 4. The undersigned, however, recognized Claimant's concerns and noted that,

> if [Claimant's] counsel attends the deposition and it does not go forward because the government fails to obtain the necessary approval from the Austrian government to take the deposition, the Court will be favorably disposed to granting a request from [Claimant] for reimbursement of his counsel's travel costs, his attorney's fees, and any other costs associated with expedited translation of deposition exhibits.

*Id.* at 5.

---

[2] The document that Claimant is referencing contains notes from an August 12, 2016 interview with Daou conducted by the government. According to the report, which the undersigned has reviewed, Daou told the government that he was amenable to being deposed in Austria because he travelled there frequently for work, and that he would prefer be deposed in September 2016 or on August 26, 2016. After Claimant brought the interview notes to the Court's attention, Plaintiff represented that Daou later told the government's counsel on August 18, 2016 that he would only make himself available for a deposition on August 26, 2016 in Vienna, and that his offer to be deposed on that date and in that location was a "take it or leave it" proposition. *See* Order [Dkt. 765] at 2. Upon receiving this information, Plaintiff's counsel immediately contacted Claimant's counsel and then applied to this Court by letter for an order shortening the deposition notice requirement in the local rules. *Id.*

## B. Daou's First Deposition

Pursuant to the Mutual Legal Assistance Treat ("MLAT") between the United States and Austria and consistent with the long-standing practice between the Department of Justice and its Austrian counterpart, the Austrian government verbally informed Plaintiff that the government did not need to make a formal MLAT request to depose Daou in Vienna. *See* Cross. Mot. at 5. The government received written confirmation of such two days prior to the deposition, on August 24, 2016. *Id.*[3] Accordingly, on August 26, 2016, both parties and Daou appear for the deposition at the United States Consulate in Vienna. Smith Decl. [Dkt. 861-4] at 7. At the start of the deposition, counsel for Claimant placed on the record his objection that Plaintiff's counsel had not obtained proper authorization to take the deposition and that it was thus illegal under Austrian law. *Id*. at 8–9. Upon hearing this objection, Daou became concerned about potentially violating Austrian law, and an off-the-record discussion ensued. *Id*. at 2; *see also* Cross Mot. at 5–6.

Claimant's counsel's objection was based on prior communications with an Austrian attorney who advised him that the deposition of Daou violated Austrian law. *See* Cross Mot. at 5; *see also* Cross Mot. Ex. 5 [Dkt. 895-3]; Smith Decl. [Dkt. 861-4] at 2, 12–13. The night before the deposition, the Austrian lawyer forwarded Claimant an email written in German from Alexandra Fialla, who Claimant describes as a "legal official" at the U.S. Consulate in Vienna, stating when translated that the "interrogation" could not take place on August 26, 2016 without the proper "Austrian approval." *See* Smith Decl. [Dkt. 861-4] at 2, 12–13.[4] Claimant's counsel objected to

---

[3] At the time of Daou's deposition, the government did not have permission from Austria to share this written confirmation. *See* Reply at 3 n.2. After contacting the Austrian government regarding the instant motions, Austria provided Plaintiff with permission to share the correspondence. Cross Mot. Ex. 1 [Dkt. 1017-2] at 8 n.4.

[4] In full, when translated, the email exchange begins with Claimant's Austrian attorney asking Fialla if she knows anything about an "[i]nterrogation before the US Consulate on August 26, 2016[.]" Smith Decl. [Dkt. 861-4] at 13. In response, Fialla states: "We have informed our colleagues that an interrogation in our premises is subject to Austrian approval and therefore cannot take place on August 26. I was told that the U.S. Department of Justice might contact you or the Criminal Justice Department directly." *Id.*

4

the deposition based on this email. *Id.* at 2. When the parties went off the record, Claimant showed Daou a copy of the forwarded email and translated the relevant portions from German to English using Google's translation tool. *Id.* at 2. Claimant's counsel also claims that he showed a copy of the email to Plaintiff's counsel at the deposition. *Id.*

Daou then asked whether the consulate employee who authored the email could explain what she meant, and Claimant's counsel claims that Plaintiff's counsel "refused" to make her available. *Id.* Instead, and in an effort to clarify any miscommunications, Plaintiff's counsel showed Daou a letter from the Austrian government purporting to establish that the United States had received permission to proceed with the deposition. *See id.* at 2–3; *see also* Transcript [Dkt. 907] at 8:20–9:23. The letter, however, was written in German and pre-dates the email that Claimant's counsel received from the consulate employee. Smith Decl. [Dkt. 861-4] at 2–3. Claimant's counsel also contends that Plaintiff did not permit them to view this letter at the deposition. *Id.* at 3; *see also* Transcript [Dkt. 907] at 9:12–23.

According to FBI 302's documenting the off-the-record discussion, Claimant's counsel repeated to Daou that Austria had not authorized the deposition and that his participation in it was illegal. *See* Cross Mot. Ex. 2 [Dkt. 895–1] at 1–2. The FBI reports also state that Claimant's counsel cautioned Daou that he did not represent the Austrian government and had no authority to prosecute Daou—statements that the reports indicate Claimant's counsel refused to make on the record—but that Daou nevertheless became concerned that he was breaking the law. *Id.* at 2. To be sure, Claimant's counsel contends that some of the allegations in these reports are not accurate—including the charges that Claimant's counsel would not state on the record that he did not represent the Austrian government and that he told Daou that continuing with the deposition was

illegal, and an allegation that Claimant's counsel refused to show Plaintiff's counsel the forwarded email from the consulate employee. Silversmith Second Decl. [Dkt. 901–1] at ¶ 3.

Following this off-the-record discussion, Daou indicated that he wanted to leave, at which point Plaintiff's counsel moved him to another room to speak with him privately in an attempt to clarify any confusion he had regarding the legality of the deposition. *See, e.g.*, Smith Decl. [Dkt. 861-4] at 3. The Consular Chief of the U.S. Embassy in Vienna, Michael Cole, met with Daou and explained to him that participating in the deposition would not violate Austrian law and that any disagreement over the deposition's legality would be resolved by the United States and Austrian governments. Cross Mot. Ex. 2 [Dkt. 895–1] at 4. Despite these reassurances, Daou reportedly indicated that he felt intimidated by Claimant's counsel and was concerned about breaking Austrian law. *Id.* at 1–2. He also stated that he would be willing to travel to the United States to complete the deposition, but that he would prefer to set that date at a later time and provide formal notice to Claimant's counsel. *Id.* Daou then left the deposition without providing any meaningful testimony. Smith Decl. [Dkt. 861-4] at 3.

### C. Daou's Second Deposition

On September 16, 2016, Plaintiff's counsel noticed Daou's second deposition for September 30, 2016 in the District of Columbia. Silversmith Decl. [Dkt. 861-3] at ¶ 6. Citing a court-ordered mediation in an unrelated matter on that date, Claimant's counsel who had prepared for and attended the Vienna deposition asked to reschedule the second deposition. *Id.* at ¶ 8. Claimant contends that Plaintiff "refused" to reschedule, *id.*, and Daou's second deposition took place on September 30, 2016 in the District of Columbia with another one of Claimant's attorneys present, *see* Cross Mot. Ex. 8 [Dkt. 1017-5]. In light of Plaintiff's counsel's prior representation that Daou would only be available for a deposition on August 26, 2016 in Vienna, Claimant's counsel asked

6

Daou how he was able to travel to the District of Columbia. *Id.* at 243:11–14. Daou explained that he willingly came to the United States at his own expense because he frequently does business here. *Id.* at 243:15–244:15; *see also* Transcript [Dkt. 907] at 11:9–22.

## LEGAL STANDARD

It is well-established that "each party to a lawsuit usually bears its own attorney's fees 'unless there is express statutory authorization to the contrary.'" *United States v. Wade*, 255 F.3d 833, 835 (D.C. Cir. 2001) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)). This principle—also known as the "American Rule"—does not, however, absolutely bar "the shifting of attorneys' fees even in the absence of statute or contract." *F.D. Rich Co., Inc. v. U.S. for Use of Indus. Lumber Co., Inc.*, 417 U.S. 116, 129 (1974). Indeed, the Court's "power to assess costs is an important and well-recognized tool used to restrain the behavior of parties during litigation." *Hutto v. Finney*, 437 U.S. 678, 695 (1978). Accordingly, Rule 30 of the Federal Rules of Civil Procedure provides the following two exceptions to the American Rule that allow courts to shift attorney's fees for deposition-related misconduct: (1) courts "may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent," Fed. R. Civ. P. 30(d)(2); and (2) "[a] party who, expecting a deposition to be taken, attends [the deposition] in person or by an attorney may recover reasonable expenses for attending, including attorney's fees, if the noticing party failed to . . . attend and proceed with the deposition or . . . serve a subpoena on a nonparty deponent, who consequently did not attend," Fed. R. Civ. Pro. 30(g). Determining whether to impose sanctions under these permissive provisions is a decision left to the sound discretion of the courts, and there is no obligation that a court exercise its discretion to do so. *See* Fed. R. Civ. P. 30(d)(2) ("The court *may* impose an appropriate sanction . . . ." (emphasis added)); *see also* Fed.

R. Civ. P. 30(g) ("A party . . . *may* recover reasonable expenses . . . ." (emphasis added)); *Miller v. Transamerican Press, Inc.,* 709 F.2d 524, 532 (9th Cir. 1983).

## DISCUSSION

As a threshold matter, there is no dispute—nor can there be—that this Court has the authority to impose sanctions for any discovery violations stemming from Daou's deposition in Vienna. *See* Fed. R. Civ. Pro. 30(d)(2); *see also* Fed. R. Civ. Pro. 30(g). Accordingly, this Court's analysis focuses solely on whether it *should* exercise that discretion. Claimant asserts that he is entitled to reasonable costs incidental to the Vienna deposition under Rule 30(g) because Plaintiff did not have the proper authorization to proceed with the deposition and because Plaintiff's representation that Daou would "not make himself available at any other time after August 26" was "demonstrably false." Mot. at 7–9. Plaintiff, in turn, contends that Claimant's motion should be denied because it had authorization to proceed with the deposition, Daou attended the deposition and was prepared to testify, and Claimant's counsel's conduct was designed "to thwart discovery of relevant evidence" in this case. Cross Mot. at 9–16. Accordingly Plaintiff believes that Claimant should bear his own costs and should reimburse Plaintiff for "attempting to intimidate the witness from cooperating." *Id.* at 16–18. Alternatively, Plaintiff argues that even if Claimant is entitled to a reasonable reimbursement, the costs he demands are excessive. *Id.* at 18–19.

For the reasons that follow, the undersigned finds that imposing sanctions on either party is unwarranted and will deny both motions.

### A.     Claimant's Motion for Expenses and Fees

Claimant requests that this Court order Plaintiff to pay expenses and attorney's fees arising from the Vienna deposition under Rule 30(g) because, according to Claimant, Plaintiff's failure to obtain proper authorization ultimately caused the deposition to end prematurely. Mot. at 1–2.

8

As noted above, Rule 30 gives courts the discretion to allow a party who attends a deposition expecting it to go forward to "recover reasonable expenses for attending [the deposition], including attorney's fees, if the noticing party failed to . . . attend and proceed with the deposition[.]" Fed. R. Civ. P. 30(g)(1). Even if both parties and a third party deponent are present for the deposition, however, the "practical spirit" of the Rule suggests that "[a]ttendance without proceeding forward with a deposition is sufficient to invoke the provisions of Rule 30(g)." *Cronin v. Midwestern Okla. Dev. Auth.*, 619 F.2d 856, 864 (10th Cir. 1980), *rev'd on other grounds Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996); *see also Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1178 (D.C. Cir. 1985) ("Federal Rule of Civil Procedure 30(g) provides for an award of attorneys' fees and expenses to the party attending a deposition where the party giving notice fails to attend *and* proceed." (emphasis added)). Although a non-party witness may be physically present, "his unwillingness to testify is sufficient to justify invocation of this rule." *Greenwood v. Dittmer*, 776 F.2d 785, 790 (8th Cir. 1985) (affirming district court's grant of attorney's fees under Rule 30(g)(2) where all parties and deponent were present for deposition, but deponent refused to testify because plaintiff failed to properly subpoena the deponent); *see also Fino v. McCollum Mining Co.*, 93 F.R.D. 455, 459 (N.D. Tex. 1982) (awarding defendant the cost of the deposition under Rule 30(g)(2) where only a handful of deponents that the plaintiff indicated would voluntarily appear and testify actually did, and the "majority of the testimony actually taken and recorded [was] the testimony and argument of the lawyers").

When viewed through the lens of this Court's Order permitting Daou's deposition to go forward, the instant facts militate against imposing sanctions on Plaintiff under this line of authority. That Order states that the undersigned would be favorably disposed to granting a request from Claimant for reimbursement if the deposition did not go forward "*because the government fail[ed]*

9

*to obtain the necessary approval* from the Austrian government to take the deposition . . . ." Order [Dkt. 765] (emphasis added). That is plainly not the case here. The facts and evidence proffered by Plaintiff establishes that the government had received the proper authorization from Austria to depose Daou in the Embassy in Vienna. *See supra* at p. 4. The pertinent evidence further establishes that the government communicated with the appropriate officials in Austria to arrange for the deposition, that the government was not bound by the requirements of the MLAT between Austria and the United States, and that the Austrian government provided Plaintiff with verbal and written approval to proceed with the deposition. *Id.*

Indeed, if anything, it was the actions of Claimant's counsel that prevented the deposition from going forward. Moreover, after Claimant objected to the legality of the deposition on the record, Plaintiff's counsel did not sit idly by as Daou walked out. Instead, Plaintiff's counsel attempted to mollify Daou's concerns so that the deposition could proceed as scheduled. *See, e.g.*, Cross Mot. Ex. 2 [Dkt. 895–1]. Specifically, Plaintiff's counsel met with Daou privately and apart from Claimant, enlisting the help of the Chief of the United States Embassy in Vienna to explain that they had properly arranged the deposition in compliance with Austrian law. *Id.* While Claimant now suggests that these attempts by Plaintiff's counsel to proceed with the deposition outside Claimant's counsel's presence were made in bad faith, the Courts sees no basis to read any nefarious intent into Plaintiff's description of the events.

Furthermore, the Court finds that the two points Claimant cites in support of his assertion that Plaintiff's counsel behaved in bad faith with regard to the Vienna deposition—that Daou evidently *was* available for a deposition on later dates and that Plaintiff's counsel did not show Claimant's counsel the written authorization they had received from Austria permitting the deposition to go forward—are unavailing. Mot. at 9. In regards to whether Plaintiff misstated the urgency of

its need to take the deposition, the undersigned recognizes that Plaintiff's counsel was acting on the information they received from Daou in the days immediately prior to the deposition and went forward on the understanding at the time that this was their only opportunity to take the deposition. Transcript [Dkt. 907] at 6:3–14. Beyond the report in early August 2016 detailing a conversation in which Daou suggested that he would be available in September 2016—an offer that Plaintiff maintains Daou later rescinded—there is no other evidence to support Claimant's conclusion that Plaintiff misrepresented Daou's availability to disadvantage Claimant's counsel at the time Plaintiff noticed the deposition. As for Plaintiff's counsel's alleged failure to show Claimant's counsel the communications with Austria, which Claimant believes is evidence that Plaintiff "knows it lacked approval" to proceed with the deposition, Mot. at 9, Austria had not explicitly given Plaintiff's counsel its consent to share the communications at the time of the deposition and Plaintiff's counsel's conduct was thus not inappropriate. *See supra* n.3. Accordingly, the undersigned will deny Claimant's motion.

### B. Plaintiff's Cross Motion for Expenses and Fees

In response to Claimant's motion, Plaintiff filed a cross motion for fees, contending that (1) the government had the proper authorization to proceed with the deposition and Daou appeared ready to testify, and (2) Claimant should reimburse the government for "attempting to intimidate the witness from cooperating." Cross Mot. at 9–19. While Plaintiff does not cite any legal authority to support its contention that Claimant ought to reimburse Plaintiff's expenses, Rule 30(d)(2) provides that this Court "may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of [a] deponent." Fed. R. Civ. Pro. 30(d)(2). This rule is meant to authorize

11

courts to "impose the costs resulting from obstructive tactics that unreasonably prolong a deposition on the person engaged in such obstruction." Fed. R. Civ. Pro. 30(d)(2) advisory committee's notes. As such, the purpose of Rule 30(d)(2) sanctions is to penalize counsel who "impede[], delay[], or frustrate[] the fair examination" of deponents without a good faith basis in law or fact for doing so. *Security Nat'l Bank of Sioux City, IA v. Day*, 800 F.3d 936, 939 (8th Cir. 2015) (affirming sanctions imposed on defense counsel where counsel made 115 bad faith "form objections" during a deposition, frustrating the fair examination of the deponent).

In deciding whether to award sanctions under this Rule, "the court should consider all the circumstances, such as whether the failure [to proceed with the deposition] was inadvertent or in bad faith." *Barrett v. Brian Bemis Auto World, et al.,* 230 F.R.D. 535, 537 (N.D.Ill. 2005). Applying that standard here, the Court finds that the totality of the circumstances does not support granting Plaintiff's cross motion. It appears that Claimant's counsel's on-the-record objection to the deposition was based on incomplete knowledge of the circumstances. In any event, there is insufficient evidence to conclude that his objection was made in bad faith or in an effort to "intimidate the witness from cooperating." Cross Mot. at 16. Indeed, Claimant's counsel appears to have based his objection on his own internet research and on a forwarded, German-language email that he received from an Austrian attorney in which an employee at the U.S. Consulate wrote that the deposition was not authorized to go forward. Silversmith Decl. [Dkt. 861-4] at 13 ("We have informed our colleagues that an interrogation in our premises is subject to Austrian approval and therefore cannot take place on August 26. I was told that the U.S. Department of Justice might contact you or the Criminal Justice Department directly."). While, in retrospect, Claimant's counsel sought information about the propriety of the deposition from the wrong authority, Claimant cannot be faulted for attempting to gather information from an ostensibly credible source regarding

12

the laws surrounding a hastily scheduled deposition and placing his objections, however misguided, on the record. In other words, while based on incorrect information, Claimant's counsel's conduct does not support Plaintiff's allegation that he was seeking to "thwart discovery of relevant evidence" by intimidating a deponent with wholly fabricated allegations. *See* Cross Mot. at 12–16. Accordingly, the undersigned denies Plaintiff's cross motion for expenses and fees.

## CONCLUSION

The parties' competing motions are **DENIED**. An appropriate Order will accompany this Memorandum Opinion.

* * * * *

The parties are hereby advised that, under the provisions of Local Rule 72.2(b) of the United States District Court for the District of Columbia, any party who objects to the undersigned's ruling must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Memorandum Opinion and accompanying Order. The written objections must specifically identify the portion of the Memorandum Opinion and Order to which objection is made and the basis for such objections. *See* LCvR 72.2(b).

Date: September 20, 2017  
_____  
G. MICHAEL HARVEY  
UNITED STATES MAGISTRATE JUDGE