# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04-cv-798 (PLF/GMH) |
| | ) | |
| ALL ASSETS HELD AT BANK JULIUS BAER | ) | |
| & CO., LTD., GUERNSEY BRANCH, | ) | |
| ACCOUNT NUMBER 121128, IN THE NAME | ) | |
| OF PAVLO LAZARENKO, *et al.*, | ) | |
| | ) | |
| Defendants *In Rem*. | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Pavel Lazarenko has filed a motion to compel Plaintiff, the United States (the "government") to provide more specific responses to nine of his requests for admission ("RFAs"). For the reasons that follow, the motion is denied as untimely, but the government is nevertheless ordered to supplement and correct its responses to the RFAs at issue.[1]

## I. BACKGROUND

This is an *in rem* action seeking, pursuant to 18 U.S.C. §§ 981(a)(1)(A) & (C), forfeiture of funds held by a number of foreign financial institutions that the government alleges can be traced to a variety of criminal acts committed by Claimant Pavel Lazarenko, the former Prime Minister of Ukraine, or his associates between 1992 and 1998. The factual background of the litigation can be found elsewhere. *See, e.g.*, *United States v. All Assets Held at Bank Julius Baer & Co.*, 307 F.R.D. 249, 250–51 (D.D.C. 2014); *United States v. All Assets Held at Bank Julius*

---
[1] The most relevant submissions for the resolution of this motion are Claimant Pavel Lazarenko's motion to compel responses to requests for admission nos. 1196–204 (ECF No. 1063); the government's opposition (ECF No. 1065); Claimant Lazarenko's reply (ECF No. 1075), and a rough transcript of the hearing on the motion held on March 5, 2019, which has been provide to the Court. That transcript will be referred to with the abbreviation "Tr."

*Baer & Co.*, 959 F. Supp. 2d 81, 84–94 (D.D.C. 2013); *United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d 205, 207–08 (D.D.C. 2011); *United States v. All Assets Held at Bank Julius Baer & Co.*, 571 F. Supp. 2d 1, 3–6 (D.D.C. 2008). As relevant here, and as noted above, Claimant Lazarenko objects to the government's reponses to nine of his RFAs. Each of those nine requests concerns one *in rem* defendant—funds held at Vilniaus Bankas in Lithuania (known as the "Lithuanian account"). That account holds approximately $29 million in the name of Eurofed Bank, an Antiguan offshore bank in which Claimant Lazarenko purchased an interest. He was Eurofed's largest depositor, holding customer accounts in his own name and in the name of six corporate entities that he controlled. Eurofed established correspondent accounts at various banks to hold its customer funds.[2] The Lithuanian account is one of those correspondent accounts.

RFA 196 asks the government to "[a]dmit that the funds at the Lithuanian account are not traceable to the Transfer and Concealment 'scheme.'" ECF No. 1063-5 at 65. RFAs 197 through 200 ask the government to admit that certain "payments" or "proceeds" "are not traceable to the Lithuanian account."[3] *Id.* at 66. RFAs 201 through 204 ask the government to "[a]dmit that the funds in the Lithuanian account are not traceable to" specific "schemes."[4] *Id.* at 67. In its October

---

[2] Judge Friedman has explained the role of "correspondent accounts" and "customer accounts" in this way:

> [Eurofed] established "correspondent" bank accounts in its own name at various other financial institutions around the world, in which it stored the bulk of the money deposited by its customers. "These correspondent bank accounts were not held for the benefit of any particular depositor," according to the Liquidators. "As a result, a customer's deposits were not located in any particular location or correspondent account." In other words, if hypothetical Eurofed customers Sally, Sam, and Sue each deposited $40 with Eurofed in Antigua, the bank may well have divided that $120 among four of its own correspondent bank accounts in Switzerland, Lithuania, Liechtenstein, and the United States (placing, say, $30 into each account), making it impossible to trace Sally's $40 deposit to any of Eurofed's four correspondent accounts.

*United States v. All Assets Held at Bank Julius Baer & Co.*, 959 F. Supp. 2d at 86.

[3] The identified payments or proceeds are the "Kiritchanko Payments," the "Ditiatkovsky proceeds," the "'ABS' proceeds," and the "'ORPHIN 61310' proceeds." ECF No. 1063-5 at 66.

[4] The identified schemes are the "Naukovy Farm 'scheme,'" the "UESU 'scheme,'" the "Itera 'scheme,'" and the "PMH/GHP 'scheme.'" ECF No. 1063-5 at 67.

6, 2016 responses, the government responded to each of those RFAs identically. Specifically, it incorporated its general objections as well as an objection that the requests are vague because "'traceable' has different meanings, and different methodologies produce different results," and that "to compute whether something is 'traceable' under every available methodology would be unduly burdensome in terms of time and expense." *Id.* at 55. Subject to those objections, the government stated that "after a reasonable inquiry it lacks sufficient information to admit or deny." *Id.* at 66. The government continued:

> As Mr. Petron [the government's accounting tracing expert] stated in his expert report, he did not *complete* his tracing analysis for the Lithuanian account to avoid potential double counting. As Petron explained, given additional time and resources, he could perform a more detailed analysis of the Lithuanian account. Additionally, a money laundering analysis might well conclude that those transfers are part of the transfer and concealment scheme.

*Id.* at 66.[5]

Mr. Petron's April 21, 2016 expert report asserts that the Lithuanian account is a Eurofed correspondent account—that is, an account that holds the funds of multiple Eurofed customers. ECF No. 1063-2 at 24.

> Deposits into this account are numerous, and for those deposits that are directly traceable to other examined accounts, I have marked them on the . . . account statements. However, these marked deposits are also credited to a Eurofed depositor as the beneficiary of a particular transaction, which is already included in the examined accounts. Therefore, I have not performed a WA[6] on the marked deposits within this correspondent account because they may already have been included in the WA of the accounts of Eurofed depositors. . . . Given enough information and time, it would be possible to reconcile the transactions involving these accounts. As discovery continues, if I receive enough information to perform a further analysis of the proceeds deposited into the account, then I may update this report accordingly.

---

[5] That is the government's response to RFA 196. As to the remaining RFAs, the government "incorporate[d] its answer to request no. 196." ECF No. 1063-5 at 66–67.

[6] "WA" stands for "Weighted Average," a tracing methodology that "applies different percentages of proceeds versus Other Funds based on the relative balances in the account at the time of each transaction." ECF No. 1063-2 at 8–9.

*Id.* at 24–25.

Fact discovery as to Claimiant Lazarenko closed on January 16, 2017. ECF No. 840; ECF No. 1063 at 6; ECF No. 1065 at 2. With the appearance of Claimants Alexander, Ekaterina, and Lecia Lazarenko (Pavel Lazarenko's children), expert depositions were put off until after fact discovery as to the so-called "A/E/L Claimants" was completed. ECF No. 966 at 2; ECF No. 976 at 1. Expert discovery was stayed on October 6, 2017, before Claimant Lazarenko had deposed Mr. Petron. ECF No. 1034; ECF No. 1044 at 101, 108. In any case, for various reasons, including a stay of the action imposed to allow the parties to consummate a settlement based on a term sheet executed in August 2018 (ECF No. 1105 at 1; ECF No. 1106), further discovery proceeded in fits and starts (*see, e.g.*, ECF No. 1064 at 66; ECF No. 1085). On February 6, 2019, the Court lifted the stay of the action and the stay of expert discovery, requiring the parties to complete all expert discovery by May 31, 2019. ECF No. 1121. Meanwhile, on December 6, 2017, while the stay of expert discovery was in place (but before the stay of the case in contemplation of settlement), Claimant Lazarenko filed the motion currently before the Court. ECF No. 1063. With the most recent stay having been lifted last month and mediation not having resulted in a settlement, the undersigned turns to resolving Claimant Lazarenko's motion to compel.

## II. DISCUSSION

The parties first argue over the timeliness of the motion. As noted, fact discovery as to Claimant Lazarenko ended on January 17, 2017. Almost eleven months later—and fifteen months after the RFA responses at issue were served on Claimant Lazarenko—he filed this motion. His primary argument that the motion should not be found untimely is that the government would suffer no prejudice from the relief requested because discovery as to other claimants and as to the experts is still open. *Id.* at 9–10; ECF No. 1075 at 2. He argues that courts generally deny motions

4

to compel as untimely only where they are filed after a dispositive motion has been submitted, which has not yet happened here. ECF. No. 1063 at 9–10. He therefore contends that the motion should be considered timely and resolved on its merits.

Unfortunately for Claimant Lazarenko, the cases he cites do not support his position as to timeliness of this motion. To be sure, in a number of them, the motion to compel came after the filing of a dispositive motion. However, in denying the motions as untimely (or affirming those denials) the courts did not rely on that fact; instead, they explicitly noted that the motions to compel were denied because they were filed after the close of discovery (or too close to the close of discovery to be resolved prior to the deadline). *See, e.g.*, *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F.3d 983, 992 (D.C. Cir. 1998) ("The scheduling order governing pretrial procedures provided that discovery had to be completed by April 1, 1995, dispositive motions were due by May 1, and '[a]ll other motions' were due by September 11. *MSI filed its motion to compel on September 11 and the court held it untimely because that was after the close of discovery. We think the court was well within its discretion to interpret its order as requiring a motion to compel discovery to be made within the discovery period*. (emphasis added)); *Carey Canada, Inc. v. Columbia Cas. Co.*, 940 F.2d 1548, 1559 (D.C. Cir. 1991) ("On April 8, 1987, appellants again sought discovery of other policies. Appellants waited, however, until March 31, 1988—one month before the close of discovery and five years after the action commenced—to file a motion to compel. Thus, the District Court denied the motion on July 26, 1988, *in part because appellants did not seek modification of the court's earlier order in a timely fashion*. Against this background, we cannot conclude that the trial court's handling of discovery in this case was an abuse of discretion or clearly unreasonable. Accordingly, we hold the court's rulings reasonable and not arbitrary." (internal citation omitted) (emphasis added)); *Klugel v. Clough*, 252 F.R.D. 53, 55–56 n.4 (D.D.C.

2008) (denying motion to compel as untimely where the parties attempted to resolve the dispute without court intervention and consequently filed motion two months after the close of discovery without seeking an extension of the discovery deadline from the court); *Bethea v. Comcast*, 218 F.R.D. 328, 331 (D.D.C. 2003) (denying motion to compel as untimely where plaintiff filed motion "only eight days prior to the extended discovery deadline that [the district judge] had just established" because motion could not be fully briefed or decided prior to close of discovery). Even the (out-of-curcuit) case Claimant Lazarenko cites in support of his argument that the Court should consider primarily prejudice to the non-moving party when resolving a putatively untimely motion to compel does not help him. That opinion denies the motion to compel, relying on the notion that a party who waits until after discovery has closed to file such an application has waived its objections to the allegedly deficient discovery response. *See Suntrust Bank v. Blue Water Fiber, L.P.*, 210 F.R.D. 196, 201 (E.D. Mich. 2002) (relying on *Choate v. Nat'l RR Passenger Corp.*, 132 F. Supp. 2d 569, 574 (E.D. Mich. 2001), in which the court held that a party who had filed a motion to compel over three months after the close of discovery had waived his rights by failing to promptly enforce them). That is, the cases cited do not serve Claimant Lazarenko well.

Claimant Lazarenko also asserts that because RFAs are "more akin to pretrial stipulations" than they are to the other discovery devices in the Federal Rules of Civil Procedure, the discovery deadline should not apply to this motion. ECF No. 1075 at 2. There is authority in this District stating that "[r]equests for admissions are not a discovery device," but are intended only to "narrow the scope of issues to be litigated and to thereby expedite the litigation process." *Harris v. Koenig*, 271 F.R.D. 356, 372 (D.D.C. 2010) (citing *Nat'l Semiconductor Corp. v. Ramtron Int'l Corp.*, 265 F. Supp. 2d 71, 74 (D.D.C. 2003), and quoting *Kendrick v. Sullivan*, No. 83–CV–3175, 1992 WL 119125, at *3 (D.D.C. May 15, 1992)). But, again, those cases do not support the use to which

6

Claimant Lazarenko attempts to put them. They do not state that, because RFAs and their responses are intended to streamline resolution of cases by allowing parties to stipulate to the truth of certain matters, they are not subject to the same rules as the other discovery tools included in the Federal Rules of Civil Procedure. Rather, *Harris* states that RFAs are not discovery devices in order to make the point—applicable to this dispute, as discussed below—that "additional litigation" over them is usually not an efficient use of already scarce judicial resources. 271 F.R.D. at 372. Moreover, the notion that discovery deadlines can be flouted when no party would be prejudiced by a late motion to compel ignores the fact that a court, too, has an interest in enforcing its own scheduling order: "[d]isregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, No. 05-cv-2115-CKK, 2007 WL 1589495, at *5 (D.D.C. June 1, 2007) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992), *aff'd sub nom. Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217 (D.C. Cir. 2011). In any case, Claimant Lazarenko admits that it is not the rule in this district that RFAs are somehow exempt from the scheduling order. ECF No. 1063 at 10 n.6; Tr. at 7.

The fact that the motion is untimely, however, is not dispositive here. The Federal Rules of Civil Procedure impose a duty to supplement or correct a response to a request for admission (or a Rule 26(a) disclosure or response to an interrogatory or request for production) in two situations: (1) when "the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing" and (2) when the court orders it. Fed. R. Civ. P. 26(e). The duty to supplement or correct is self-executing—that is, it does not

7

require a motion to compel for its enforcement, *see, e.g.*, *Midwestern Pet Foods, Inc. v. Societe des Produits Nestle S.A.*, 685 F.3d 1046, 1057 (Fed. Cir. 2012) ("Rule 26(e) requires timely supplementation without a motion.")—and it extends beyond the discovery deadline, *see Iweala v. Operational Techs. Servs., Inc.*, No. CV 04-02067 (RWR), 2010 WL 11583114, at *1–2 (D.D.C. Apr. 13, 2010); *see also Wye Oak Tech., Inc. v. Republic of Iraq*, No. 1:10-CV-01182-RCL, 2018 WL 4623564, at *1 (D.D.C. Sept. 26, 2018). At oral argument on Claimant Lazarenko's motion to compel, it became clear that the RFAs at issue (narrowed as discussed at that hearing) require new responses from the government.

One of the objections the government raised to each of the RFAs focused on burdensomeness, stating that "to compute whether something is 'traceable' under every available methodology would be unduly burdensome in terms of time and expense."[7] ECF No. 1063-5 at 55. The government has a point. As written, the RFAs at issue ask not whether the funds at issue *have been* traced by the government, but rather whether they are *capable* of being traced, a question that, although interesting in a theoretical sense, has little to do with what the government has to prove at trial. After the undersigned suggested clarifyinging the RFAs so that they no longer ask that "metaphysical" question, but rather pose a factual question—that is, whether the government has traced the funds to the various schemes or accounts[8]—the government stated that it had "traced the money in the Lithuanian accounts to different theories of liability in this case." Tr. at 11–13,

---

[7] The government's vagueness objection, ECF No. 1063-5 at 55, is not well-taken. That objection focused on the word "treaceable," a word that is used in the very statute under which the government proceeds, see 18 U.S.C. §§ 981(a)(1)(A) & (C) (stating that property involved in a prohibited transaction or property "traceable to such property" and property "traceable to a violation" of certain criminal statutes is subject to forfeiture). If the word traceable is definite enough to be used in a criminal statute, it is definite enough to appear in a request for admission.

[8] To be clear, the clarification suggested by the Court and accepted by Claimant Lazarenko at the hearing merely replaces the phrase "are not traceable" in the RFAs with the phrase "have not been traced"; thus, RFA No. 196 should read, "Admit that the funds at the Lithuanian account *have not been traced* to the Transfer and Concealment 'scheme,'" for example.

24, 27. Pursuant to Rule 26(e), therefore, it appears that it must supplement or correct its answers to those RFAs. That is, it should deny, where appropriate, that it has not traced the funds in the Lithuanian account to the illegal activity specified in the RFAs.[9]

> It is unlikely, however, that this game has been worth the candle. Under Rule 36:
>
> [i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

*Cumis Ins. Soc'y, Inc. v. Clark*, 318 F. Supp. 3d 199, 215 (D.D.C. 2018). Thus, if the government responds with an "outright denial" of each of the RFAs at issue, *Haughton v. District of Columbia*, 315 F.R.D. 424, 431 (D.D.C.), *objections overruled*, 161 F. Supp. 3d 100 (D.D.C. 2014), it will have fulfilled its obligations.[10] Claimant Lazarenko's suggestion that the government must provide "citation to records that show" that the funds have been traced (Tr. at 10–11) has no basis in the text of Rule 36.[11] *See, e.g.*, *Foretich v. Chung*, 151 F.R.D. 3, 5 (D.D.C. 1993) (stating, "A party served with a request for admission has a number of options available to it. He or she can admit the matter at issue, deny the assertion, object to the request, move for a protective order, do nothing, or set out the reasons why he or she can not respond," and holding that the plaintiffs clear statement "that he was denying the defendants' request for an admission that he is a public figure" was "appropriate under Rule 36"); *see also Lakehead Pipe Line Co. v. Am. Home Assurance*, 177

---

[9] Unfortunately, the RFAs at issue are drafted in the negative, which leads to some syntactical clumsiness.

[10] The government should keep in mind, however, that Rule 26(e) requires timely correction or supplementation not only of requests for admission, but also of initial disclosures and responses to interrogatories and requests for production. Fed. R. Civ. P. 26(e).

[11] In any case, the government has asserted that the evidence it would point to as the basis for its denial of the RFAs at issue is the reports of Mr. Petron and of the government's money laundering expert. Tr. at 23.

F.R.D. 454, 458 n.3 (D. Minn. 1997) (noting that an interrogatory may be a means to "attempt to discover the bases for a denial or admission"); *Havenfield Corp. v. H&R Block, Inc.*, 67 F.R.D. 93, 96 (W.D. Mo. 1973) ("Regardless of the subject matter of the Rule 36 request, the statement of the fact itself should be in simple and concise terms in order that it can be denied or admitted with an absolute minimum of explanation or qualification. The request, 'except in a most unusual circumstance, should be such that it [can] be answered yes, no, the answerer does not know, or a very simple direct explanation given as to why he cannot answer, such as in the case of privilege.'" (alteration in original) (internal citation omitted) (quoting *Johnstone v. Cronlund*, 25 F.R.D. 42, 46 (E.D. Pa. 1960))).

That last point leads to a final observation. The Court is here to resolve disputes among the parties. But this dispute—such as it is—should not have required court intervention. Claimant Lazarenko represented that he brought this motion because "**[i]n light of the expert stay**, the only way to move the case forward on [the issue of the tracing of the funds in the Lithuanian account] was to revisit these nine requests for admissions." ECF No. 1075 (emphasis in original). That stay is no longer in place. Moreover, Claimant Lazarenko will shortly be deposing Mr. Petron, whom he can question fully about the tracing of the funds at issue, a much more efficient way to get the information he seeks, *see, e.g.*, *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 309 F.R.D. 1, 11 (D.D.C. 2015) (denying motion to compel production of documents because there was a more efficient way to get the information sought). Moreover, at the hearing, the Court was able, with only moderate effort, to narrow the RFAs at issue and get a statement from the government that it had traced the relevant funds. It is unclear, therefore, why the Court was burdened with this dispute. Counsel should take to heart "the perceptible trend in the case law that insists that counsel genuinely attempt to resolve discovery disputes" without resorting to court

intervention. *Newman v. Borders, Inc.*, 257 F.R.D. 1, 3 (D.D.C. 2009); *see also U.S. Bank Nat'l Assoc. v. PHL Variable Ins. Co.*, No. 12 Civ. 6811, 2013 WL 1728933, at *7 (S.D.N.Y. Apr. 22, 2013) (urging "the litigants to take seriously their obligation to cooperate in discovery so as to avoid burdening the Court with repeated disputes"); *Board of Regents of University of Nebraska v. BASF Corp.*, No. 4:04 CV 3356, 2007 WL 3342423, at *5 (D. Neb. Nov. 5, 2007) ("The overriding theme of recent amendments to the discovery rules has been open and forthright sharing of information by all parties to a case with the aim of expediting case progress, minimizing burden and expense, and removing contentiousness as much as practicable . . . . If counsel fail in this responsibility—willfully or not—these principles of an open discovery process are undermined, coextensively inhibiting the courts' ability to objectively resolve their clients' disputes and the credibility of its resolution.").

## IV.  ORDER

For the foregoing reasons, it is

**ORDERED** that Clamant Lazarenko's motion is **DENIED** as untimely.  It is further

**ORDERED** that the government shall, within fourteen days of the date of this order, supplement or correct its responses to the nine requests for admission at issue pursuant to Rule 26(e).

**SO ORDERED.**

Dated:  March 13, 2019                                   _____
                                                                                G. MICHAEL HARVEY
                                                                                UNITED STATES MAGISTRATE JUDGE