UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALL ASSETS HELD AT BANK JULIUS BAER & CO., LTD., GUERNSEY BRANCH, ACCOUNT NUMBER 121128, IN THE NAME OF PAVLO LAZARENKO, *et al.*,<br><br>Defendants *In Rem*. | No. 04-cv-798 (PLF/GMH) |

**REPORT AND RECOMMMENDATION**

Alexander Lazarenko (also known as Oleksandr Lazarenko) has filed a claim to recover certain *in rem* assets restrained by the United States of America ("the government") in this long-running civil forfeiture action. The government seeks a sanction that will terminate Alexander Lazarenko's claims because he has failed to participate in discovery. Alternatively, it asks the Court to order Alexander Lazarenko to appear for a deposition in Ukraine (where he lives) and pay the travel and logistical costs incurred by the government in connection with that deposition. Finally, the government seeks evidentiary sanctions against claimants Pavel Lazarenko (Alexander Lazarenko's father, also known as Pavlo Lazarenko), Ekaterina Lazarenko (Alexander Lazarenko's sister, also known as Kateryna Lazarenko and Katerina Duncan), and Lecia Lazarenko (Alexander Lazarenko's sister, also known as Lessia Lazarenko and Lessia Shatalin),[1] barring

---

[1] Alexander Lazarenko, Ekaterina Lazarenko, and Lecia Lazarenko are collectively known in this action as the "A/E/L Claimants."

them from introducing (in dispositive motions or at trial) discovery provided by Alexander Lazarenko or evidence regarding him. For the reasons that follow, the government's motion should be granted in part and denied in part.[2]

## I. BACKGROUND

Obviously, the history of this now-fifteen year old case is extensive. The background relevant to this dispute, although mercifully shorter, still begins in mid-2017. At a hearing before the undersigned on May 16, 2017, the government asserted that it wanted to depose Alexander Lazarenko, but that there were "a variety of issues" with respect to the location of the deposition. ECF No. 986 at 44. Specifically, the government was leery of "tak[ing] a position that would in effect support [Alexander Lazarenko's] entry into the United States," noting that he was suspected of assisting in the movement of the *in rem* defendant funds in this case and therefore might be involved in money laundering. *Id.* at 45. The government did not want to be put in the "somewhat awkward position" of "advocating entry to a person" possibly involved in money laundering who might "seek asylum or some other protection" once on U.S. soil. *Id.* It therefore represented that it would be appropriate to take his deposition in Ukraine, where he lives. *Id.* at 45–46.

---

[2] Because the undersigned finds it appropriate to dismiss Alexander Lazarenko's claims, this decision comes in the form of a Report and Recommendation rather than a Memorandum Opinion and Order. *See, e.g.*, *Summit Assets, LLC v. O'Malley*, No. 11-12327, 2012 WL 13008759, at *1 n.1 (E.D. Mich. July 31, 2012) ("Although motions for sanctions premised on discovery abuses are generally non-dispositive, parties may . . . ask the court to sanction the offending party by dismissing its claim. The majority of courts to consider the issue have concluded that when a party brings a motion for discovery sanctions, the sanction chosen by the magistrate judge, rather than the sanction sought by the moving party, governs the magistrate judge's authority over the motion." (emphasis omitted)); *QBE Ins. Corp. v. Jorda Enters., Inc.*, 280 F.R.D. 694, 694 n.2 (S.D. Fla. 2012) (same).

The most relevant docket entries for this Report and Recommendation are Mr. Lazarenko's stipulation regarding his deposition (ECF No. 1178), the government's motion for sanctions, or alternatively to compel (ECF No. 1182) and its atthcments (ECF Nos. 1182-1 through 1182-6), the A/E/L Claimants' opposition to the motion (ECF No. 1192), and the government's reply (ECF No. 1198) and its attachments (ECF Nos. 1198-1 through 1198-3).

The government noticed Alexander Lazarenko's deposition for October 3, 2017, in Kyiv,[3] and then issued an amended notice scheduling the deposition for October 5, 2017. ECF No. 1018 at 1–2. The government sought court intervention on September 20, 2017 to compel the deposition. *Id.* In response, counsel for the A/E/L Claimants stated that he did not want to conduct the deposition in Ukraine, citing concerns about "witness intimidation in 2002," although recognizing that the Court had "expressed doubts about the scope" of that alleged intimidation. ECF No. 1024-1 at 2. In a hearing on October 5, 2017, counsel for the A/E/L Claimants represented that Alexander Lazareko would attempt to get a visa to come to the United States for his deposition. ECF No. 1044 at 15. However, the deposition still had not been taken on March 23, 2018, when the Court entered the first of a series of extensions of the discovery schedule to allow the parties to concentrate on settlement discussions (ECF No. 1091; *see also* ECF Nos. 1099, 1102), or on August 14, 2018, when the Court entered the first of a series of orders temporarily staying the case (ECF No. 1106; *see also* ECF Nos. 1107, 1112, 1117, 1121).

Notwithstanding the months spent engaging in settlement discussions (which the parties assert are ongoing), the parties did not consummate a settlement, and on March 6, 2019, the government again sought to compel the deposition of Alexander Lazarenko, noting that its amended deposition notice had scheduled the examination for March 18, 2019, in Kyiv. ECF No. 1123-1 at 1. Counsel for the A/E/L Claimants balked, asserting that the deposition would have to take place in the United States because Ukraine was not "safe." *Id.* at 1–2. In a letter to the Court dated

---

[3] The submissions in this case refer to the capital city of Ukraine variously as "Kiev" and "Kyiv." According to the Ministry of Foreign Affairs of Ukraine, the United States Board on Geographical Names recently removed "Kiev" as a conventional spelling and adopt "Kyiv" as the official spelling. The U.S. Board on Geographical Names considered to recognize "Kyiv" as the correct name for the capital of Ukraine, https://mfa.gov.ua/en/news-feeds/foreign-offices-news/73205-rada-ssha-z-geografichnih-nazv-uhvalila-perejmenuvannya-stolici-ukrajini-na-kyiv (last visited September 5, 2019). "Kyiv" is designated as the approved name on the website of the United States National Geospatial-Intelligence Agency. GeoNames Search, Nat'l Geospatial-Intelligence Agency, geonames.nga.mil/namesgaz (enter "Kyiv" in ADM1 search field). This Report and Recommendation will therefore use the spelling "Kyiv" except where quoting a source that uses the alternate spelling.

March 8, 2019, counsel for the A/E/L Claimants represented that "Alexander Lazarenko wishe[d] to withdraw his claim in this proceeding and [did] not wish to participate further in this lawsuit." ECF No. 1127-1 at 1. However, in a letter dated three days later, counsel represented that, although she had not spoken to her client Alexander Lazarenko, she had "been advised" that he "may still desire to participate in this lawsuit, and that he would be willing to sit for a deposition in the United States." ECF No. 1127-2 at 1. She mentioned that Alexander Lazarenko did not live in Kyiv, but rather in Lviv and asserted that "political sensitivities" connected to national elections in Ukraine (an associate of Pavel Lazarenko was in a close race for President at the time) meant that Alexander Lazarenko "would not feel safe being deposed in a government building." *Id.* She further asserted that he had at some point "previously been physically assaulted because of his association with Pavel Lazarenko."[4] *Id.* She contended that if the government sought to depose him, "the proper method of doing so would be for him to travel to the United States to sit for a deposition." *Id.*

In a hearing on March 12, 2019, the undersigned cautioned counsel for the A/E/L Claimants that if Alexander Lazarenko did not participate in discovery by sitting for a properly-noticed deposition, his claim would be subject to dismissal. FTR Gold Recording, March 12, 2019, at 4:27:40–4:28:50. On March 25, 2019, counsel for the A/E/L Claimants acknowledged that a visa would be required if Alexander Lazarenko were to be deposed in the United States and sought a letter from the government "stating its need to depose him" or an order from the Court requiring him to sit for a deposition here to aid in his visa application. ECF No. 1132-1 at 1–2. On March 27, 2019, noting the "efficiencies of holding the deposition in the United States," the Court issued an order denying the government's application to compel Alexander Lazarenko to appear for his deposition in Ukraine without prejudice to allow him to apply for "a visa to travel here to sit for

---

[4] The government asserts that this "assault" was a car accident that "occurred 20 years ago" and which Alexander Lazarenko believes was "an unsuccessful assassination attempt by unknown individuals." ECF No. 1131-1 at 1.

his deposition." ECF No. 1135 at 1–2. The Court further required the government and Alexander Lazarenko to "cooperate in good faith to permit Alexander Lazarenko to timely file an application for a visa to travel to the United States." *Id.* Finally, the Order denied Alexander Lazarenko's request for an order mandating that he be deposed in the United States, making clear that the decision to grant or deny the contemplated visa application rested with the U.S. government. *Id.* at 2 & n.1.

On March 28, 2019, the government reportedly informed counsel for the A/E/L Claimants that to apply for a visa to travel to the United States, Alexander Lazarenko must "1) pay the visa application fee; 2) complete the online application; 3) schedule an appointment for an interview with a consular offic[ial] at the U.S. Embassy in Kyiv, Ukraine; and 4) attend an interview with a consular official at the U.S. Embassy in Kyiv, Ukraine." ECF No. 1141-1 at 1 n.1. In an Order dated April 6, 2019, the Court required a status update on Alexander Lazarenko's visa application to be provided at a status hearing on April 9, 2019. ECF No. 1150 at 1.

Counsel for the A/E/L Claimants was unable to provide that update on April 9, 2019, asserting that she had not spoken to Alexander Lazarenko to inform him of the April 6, 2019 Order because of "language barriers, time change barriers and general cell phone and communication barriers." ECF No. 1158 at 13. Indeed, she stated that "much of [her] communication with him has been through family members," that "some of them are aware of the order," but that she did "not know exactly what they conveyed to him." *Id.* at 16. She did, however, assure the Court that Alexander Lazarenko was aware that he was facing dismissal of his claims in this case. *Id.* at 15–16. The Court made clear that its patience was not inexhaustible. Rather, it characterized the "whole exercise" as "an attempt . . . to bend over backwards to allow [Alexander] Lazarenko to meet his obligations to this Court," including by allowing his deposition to be taken after the fact

5

discovery cut-off. *Id.* at 33–34. The undersigned warned that there was "a limitation to how long the Court is willing to wait" for the deposition to be concluded in a fifteen-year-old case into which Alexander Lazarenko inserted himself by filing claims to certain funds at issue and in which fact discovery had already closed. *Id.* at 33. Moreover, the Court observed that Alexander Lazarenko had not provided "any basis to believe . . . that [his] life would be at risk if he were to show up [for] a deposition in a country where he's lived for many, many years," and again cautioned that if he failed to attend his deposition "his claim may well be dismissed." *Id.* at 34.

The Court therefore issued another Order that same day, which is worth quoting at some length:

> At the April 9, 2019 hearing, counsel for Alexander Lazarenko was unable to provide the information ordered in the April 6, 2019 Order. Specifically, she was unable to confirm whether her client had applied for a visa, paid the required fee, or made efforts to scheduled a visa appointment at the consulate, claiming that language and logistical difficulties interfered with her ability to communicate with her client. Counsel for Alexander Lazarenko requested one final opportunity for her client to seek a visa to travel to the United States. She recommended allowing him one week to seek such a visa and, if he failed to do so in that time period, providing him 72 hours thereafter to elect to attend his deposition in the city of Lviv, Ukraine, where he apparently lives, or in Kiev, Ukraine. Counsel for Alexander Lazarenko recognized that failure either to timely seek a visa or to consent to attend a deposition in Lviv or Kiev would result in an order to show cause why his claims should not be dismissed. The government agreed with this approach. Based on those representations, and as discussed on the record at the April 9, 2019 hearing, it is hereby
>
> **ORDERED** that Claimant Alexander Lazarenko shall be permitted seven days from the date of this Order—that is, until April 16, 2019—to file the intial visa application, pay the required visa fee, and schedule a visa appointment. It is further
>
> **ORDERED** that, once Claimant Alexander Lazarenko has filed his initial visa application, paid the required visa fee, and scheduled his visa appointment, he shall promptly inform the Court that he has done so. Thereafter, he shall update the Court every seven days as to the progress of his visa application, including any action taken by consular authorities on the application. If is further
>
> **ORDERED** that, if Claimant Alexander Lazarenko has not filed his initial visa application, paid the required visa fee, and sought to schedule the visa appointment

6

> within seven days of the date of this Order, he shall be expected to appear for his deposition in Ukraine and shall have an additional three days—that is, until April 19, 2019—to inform the government whether he will appear for his deposition in Kiev, Ukraine, or Lviv, Ukraine. Failure to do so may result in dismissal of his claims in this case.

ECF No. 1152 at 2. On April 18, 2019, counsel for the A/E/L Claimants informed that court that she had "received confirmation" that Alexander Lazarenko had applied for a visa, paid the fee, and received an interview date of May 3, 2019. ECF No. 1153-1.

On May 8, 2019, counsel for the A/E/L Claimants reported that Alexander Lazarenko's application had been denied, attaching a "letter of explanation (in Ukrainian)" that she had "not yet had an opportunity to have . . . translated." ECF No. 1162-1 at 1. Apparently based on translation services from "her clients," which presumably means Ekaterina Lazarenko and Lecia Lazarenko, she reported that the letter stated that "the United States was not satisfied that [Alexander] Lazarenko did not intend to immigrate to the United States permanently, and therefore his non-immigrant visa application was denied." *Id.* She committed to "endeavor to speak to [her] client" and provide the Court, within seven days, an "update . . . on his position with respect to appearing for a deposition in Ukraine." *Id.* In response, the government requested an order requiring Alexander Lazarenko to decide "whether he would appear for a deposition in Kiev . . . or Lviv." ECF No. 1163 at 2. Counsel for the A/E/L Claimants, again citing the difficulty of communicating with Alexander Lazarenko, asked for seven days "to consult with [her] client and respond to the government." ECF No. 1164 at 2. The Court ordered a response by May 15, 2019. Minute Order dated May 10, 2019.

On May 16, 2019, counsel for the A/E/L Claimants filed an untimely response stating that Alexander Lazarenko "did not consider either of those locations"—that is, Kyiv or Lviv—"to be an acceptable option for the location of his deposition" and that "[s]hould the government notice

7

a deposition of Mr. Alexander Lazarenko in Ukraine, he will not answer the questions posed." ECF No. 1166-1.  She suggested that a stipulation to that effect would "obviate the need for a fruitless trip to Ukraine at substantial expense to all parties."  *Id.*  The government suggested in response that the Court dismiss Alexander Lazarenko's claims and also preclude Ekaterina Lazarenko and Lecia Lazarenko from asserting an "innocent owner" defense based on the fact that, at her deposition, Lecia Lazarenko

> professed to have no knowledge of the business activities of, or financial transaction involving, UIS, Inc., a corporation that received payments traceable to a defendant asset in which she held the position of president, secretary, and treasurer. Instead, [she] stated that UIS, Inc. was Alexander Lazarenko's company, and that presumably he would be able to answer those questions.

ECF No. 1167 at 2.  The government suggested that this was a litigation strategy "to claim Alexander Lazarenko is the only one with knowledge of unexplained transactions traceable to the defendant assets, and then refuse to produce [him] for a deposition."  *Id.*

The Court gave the parties an opportunity to explain their positions at a hearing held on June 12, 2019.  Counsel for the A/E/L Claimants reiterated that Alexander Lazarenko "has been consistent and adamant that he will not answer questions in this matter in Ukraine," but also recognized that his visa application had been denied.  ECF No. 1206 at 11.  Based on representations at that hearing, the Court issued an Order setting a briefing schedule for the government's anticipated motion for sanctions against Alexander Lazarenko.  ECF No. 1175.  The government thereafter noticed Alexander Lazarenko's deposition for June 27, 2019, at the Ukrainian Prosecutor General's Office in Kyiv.  ECF No. 1182-3.  On June 26, 2019, Alexander Lazarenko filed a stipulation recognizing that his deposition had been scheduled in Kyiv for that date but asserting, "I cannot appear for a deposition at the General Prosecutor's Office or any other location in Ukraine where a member of the General Prosecutor's Office of Ukraine will be present because I

8

am concerned for my safety and for the safety of my family members." ECF No. 1178-1. He further stated that he believed that if he were ordered to answer the government's questions in Ukraine, his life and the life of his family members would be in danger. *Id.* He sought the "assistance of the government and the United States District Court for the District of Columbia with securing a visa to come to the United States" to sit for his deposition. *Id.*

True to his word, Alexander Lazarenko failed to appear for his deposition. ECF No. 1182-4. The government filed its motion for sanctions or to compel on July 3, 2019. ECF No. 1182.

## II. LEGAL STANDARD

Rule 37(d) of the Federal Rules of Civil Procedure provides in relevant part that "[t]he court where the action is pending may, on motion, order sanctions if . . . a party . . . fails, after being served with proper notice, to appear for that person's deposition."[5] Fed. R. Civ. P. 37(d)(1)(A)(i). The sanctions available are those listed in Rule 37(b)(2)(A)(i)–(vi), that is,

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part; [or]
> (vi) rendering a default judgment against the disobedient party[.]

Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi). "Instead of or in addition to these sanctions," the court must order the recalcitrant party, his attorney, or both, to pay the other party's "reasonable expenses,

---

[5] Courts have also found that, unless a party seeks a protective order to excuse his attendance at a properly-noticed deposition, he may be subject to a motion to compel attendance at a deposition pursuant to Rule 37(a). *See, e.g., Givens v. Smith*, No. 5:12CV155, 2014 WL 139685, at *8 (N.D.W. Va. Apr. 9, 2014) ("[U]nless . . . a protective order is requested, a party who fails to attend a properly noticed deposition is subject to a motion to compel . . . ."). However, an order compelling attendance "is not a prerequisite to imposition of sanctions under Rule 37(d)." *Alexander v. FBI*, 186 F.R.D. 6, 10 (D.D.C. 1998).

9

including attorney's fees, caused by the failure, unless [it] was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).

"Under Rule 37, the district court has broad discretion to impose sanctions for discovery violations." *Bonds v. District of Columbia*, 93 F.3d 801, 807 (D.C. Cir. 1996) (citing *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642–43 (1976)). Nonetheless, the court "must be guided by a sense of proportionality between the offense and the sanction." *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 292 F.R.D. 53, 56 (D.D.C. 2013). "A court is 'not required . . . to exhaust lesser sanctions'" before resorting to dismissal of a claim where other, less onerous sanctions "would be ineffective or futile." *Perez v. Berhanu*, 583 F. Supp. 2d 87, 92 (D.D.C. 2008) (quoting *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998)). Such a sanction

> is warranted when (1) the other party has been "so prejudiced by the misconduct that it would be unfair to require [the party] to proceed further in the case," (2) the party's misconduct has put "an intolerable burden" on the court by requiring the court to modify its own docket and operations in order to accommodate the delay, *or* (3) the court finds it necessary "to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future."

*Campbell v. Nat'l R.R. Passenger Corp.*, 309 F.R.D. 21, 26 (D.D.C. 2015) (alteration in original) (quoting *Bradshaw v. Vilsack,* 286 F.R.D. 133, 140 (D.D.C. 2012)). These considerations are disjunctive, that is, any one of them may support a terminating sanction as long as it is "based on findings supported by the record." *Webb*, 146 F.3d at 971.

### III. DISCUSSION

#### A. Alexander Lazarenko's Claim

Alexander Lazarenko has not argued that the deposition was not properly noticed and it is undisputed that he did not filed a motion for a protective order or otherwise seek protection from the Court; he was therefore required to attend the deposition in Kyiv or be subject to sanctions. *See, e.g.*, *Covad Commc'ns Co. v. Revonet, Inc.*, 267 F.R.D. 14, 24 (D.D.C. 2010) ("In not showing

10

up, despite [the defendant's] clear statement that it intended to go forward, and by not seeking protection from the Court, [the plaintiff] had to know it risked sanctions. Sanctions are appropriate when a party, after being served with proper notice, fails to appear for a deposition."); *see also, e.g.*, *Cumis Ins. Soc'y v. Clark*, 318 F. Supp. 3d 199, 215 (D.D.C. 2018) (noting that failure to attend a properly-noticed deposition subjects the deponent to sanctions); *In re Toys R Us–Del., Inc. Fair and Accurate Credit Transactions Act (FACTA) Litig.*, No. ML 08-1980, 2010 WL 4942645, at *3 & n.2 (C.D. Cal. July 29, 2010) (stating that "[u]nless a party or witness files a motion for a protective order and seeks and obtains a stay prior to the deposition, a party or witness has no basis to refuse to attend a properly noticed deposition" and collecting authority (emphasis omitted)); *Ugwuonye*, 292 F.R.D. at 57 ("[T]he Court may impose sanctions under Rule 37(d) if a party fails to appear for a deposition after the party has been served with proper notice for that deposition. Therefore, in light of [the defendant's] failure to appear for his scheduled deposition, the Court finds that sanctions under Rule 37(d) are appropriate."). The only question now is the proper sanction.

      Here, dismissal of Alexander Lazarenko's claims is appropriate. As a general matter, because he has filed claims in this action, the government is entitled to depose him. *See* Fed. R. Civ. P. 30(a)(1); *see also, e.g.*, *O'Donnell v. Breuninger*, 9 F.R.D. 245, 247 (D.D.C. 1949) ("Under [the Federal Rules of Civil Procedure] either party has the right to take the testimony of any person, including a party, by deposition for the purposes of discovery or for use as evidence in the action, or for both purposes."). Indeed, the government will be prejudiced if it is not allowed to do so. For example, Alexander Lazarenko has asserted that he has rights to certain funds at issue in this case as an "innocent owner." *See, e.g.. United States v. All Assets Held at Bank Julius, Baer &*

*Co.*, 308 F. Supp. 3d 186, 190 (D.D.C. 2018) (noting that the A/E/L/ Claimants asserted an "Innocent Interest–Due Proess affirmative defense"). Such a defense requires inquiry into whether or not he "kn[ew] of the conduct giving rise to the forfeiture or upon learning of the conduct did all that reasonably could be expected to terminate such use of the property." *United States v. Funds From Prudential Sec.*, 362 F. Supp. 2d 75, 81 (D.D.C. 2005). If the government is prevented from deposing Alexander Lazarenko to gauge his knowledge of the relevant alleged money-laundering schemes, it will be unfairly hampered in countering that affirmative defense. This is a sufficient reason to dismiss Alexander Lazarenko's claims. *See, e.g.*, *Wilson v. On the Rise Enters., LLC*, No. CV 16-2241 (BAH), 2019 WL 399821, at *4 (D.D.C. Jan. 30, 2019) ("[D]ismissal is apt here because forcing the defendants to defend against the instant lawsuit without the benefit of the plaintiff's deposition would be prejudicial."); *Ugwuonye*, 292 F.R.D. at 57–58 (dismissing a defendant's counterclaims where his "failure to comply with discovery ha[d] prejudiced the ability of the [plaintiff] both to present its own case and to defend itself against [the] [c]ounterclaims"); *Perez*, 583 F. Supp. 2d at 91 (finding that a party's failure to participate in discovery and appear for a deposition merited dismissal).

The facts here also establish that dismissal of Alexander Lazarenko's claims would be appropriate on the basis both of the burden his conduct has imposed on the Court and of the need to sanction and deter conduct disrespectful to the Court. Over the course of the many months that the government has been seeking to depose Alexander Lazarenko, the Court has received seventeen submissions from the parties addressing that issue. ECF Nos. 1123, 1127, 1131–1132, 1141, 1143, 1145, 1153, 1162–1164, 1166–1167, 1178, 1182, 1192, 1198. The Court has held four hearings that addressed the deposition—on May 16, 2017, March 12, 2019, April 9, 2019, and June 12, 2019—and issued several orders concerning the dispute (ECF Nos. 1135, 1150, 1152,

12

1175; Minute Order dated May 10, 2019). Moreover, Alexander Lazarenko has been warned repeatedly that failure to appear at his deposition could result in dismissal of his claims. He has responded, variously, by stating he would dismiss his claims voluntarily, reversing course and suggesting that the location of the deposition was inconvenient because he lived in Lviv rather than Kyiv, and flatly refusing to appear based on unsupported allegations that sitting for the noticed deposition would endanger his safety and that of his family.

The fact that Alexander Lazarenko, who is represented by able and experienced counsel, chose not to seek protection from the Court in connection with his deposition suggests the weakness of his position—a weakness that is on full display in his singularly unpersuasive opposition to the government's motion for sanctions. It is Alexander Lazarenko's burden to justify his failure to appear for his deposition. *See, e.g.*, *SEC v. Hiestand*, No. 94-cv-2633 RCL, 1997 WL 459853, at *3 (D.D.C. July 31, 1997) ("[A]s the text of the rule [37(d)] makes clear, the party who has failed to appear for a deposition bears the burden of demonstrating a substantial justification for her absence." (second alteration in original) (quoting *Neufeld v. Neufeld*, 169 F.R.D. 289, 290 (S.D.N.Y. 1996)). "In order to meet this burden, courts have held that the non-movant should present evidence or affidavits that substantiate a proffered excuse." *Id.* (citing *Hyde & Drath v. Baker,* 24 F.3d 1162, 1168 (9th Cir. 1993)); *see also, e.g.. Rosen v. Ebay, Inc.*, No. 13-cv-6801, 2014 WL 12589664, at *4–6 (C.D. Cal. Oct. 1, 2014) (finding that the plaintiff had failed to establish justification for his failure to answer questions at his deposition where, although he claimed that once he arrived at the deposition his breathing became labored and his left side went numb, he failed to submit medical records or a declaration from a medical provider supporting his claimed condition); *Luck v. Gallagher*, 07-cv-81128, 2008 WL 11417410, at *3 (S.D. Fla. Aug. 27, 2008)

13

(striking the defendant's answer and issuing a default judgment where the defendant failed to provide evidence justifying his failure to appear at his deposition). Alexander Lazarenko utterly fails to meet that burden here. He argues that he should not be required to appear at a deposition in Ukraine "because of the complicated relationship [among] [him], the Lazarenko family, and the Ukrainian government" and his "fears for his safety and that of his family if he were to be deposed . . . in a government building in Ukraine within the presence of the General Prosecutor's Office." ECF No. 1192 at 1. He has—again—chosen to provide the Court nothing but unsupported allegations of inchoate fears—fears that appear all the more irrational in light of the fact that he has admittedly elected to live in Ukraine for "many years." *Id.* As the undersigned noted during the hearing on April 9, 2019, Alexander Lazarenko has provided the court no "basis to believe that the suggestions by [his counsel] that [his] life would be at risk if he were to show up [for] a deposition in a country where he's lived for many, many years are legitimate." ECF No. 1158 at 33–34.

Alexander Lazarenko's arguments that his claims should not be dismissed "simply because he is unwilling to be deposed in Ukraine" (ECF No. 1192 at 2), or that the Court or the government should provide him "assistance" in "securing a visa to come to the United States" (ECF No. 1178-1) ring hollow. As to the Court's role in visa determinations, he apparently fails to recognize that "[i]t is settled that the judiciary will not interfere with the visa-issuing process." *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978); *see also, e.g.*, *Saad v. Risch*, No. CV 18-12074, 2019 WL 3842898, at *2 (E.D. Mich. Aug. 15, 2019) ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government [and s]uch matters are so exclusively entrusted to the political branches of government as to be *largely immune from judicial inquiry or interference.*" (alterations in original) (quoting *Harisiades v. Shaughnessy*, 342 U.S.

580, 588–89 (1952))). To the extent that he implies that the U.S. Attorney's Office, as a member of the Executive Branch, has some responsibility to help him procure a visa, he is again mistaken: as the D.C. Circuit has recognized, "The [Immigration and Nationality Act of 1952] confers upon consular officers exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999); *see also Khanom v. Kerry*, 37 F. Supp. 3d 567, 577 (E.D.N.Y. 2014) ("Congress has vested the United States consulate officials with the exclusive power to issue or deny visas." (quoting *Morales v. Goldbeck*, No. 12-CV-2350, 2013 WL 937825, at *3 (E.D.N.Y. Mar. 11, 2013))); *Van Ravenswaay v. Napolitano*, 613 F. Supp. 2d 1, 4 (D.D.C. 2009) ("The Immigration and Nationality Act of 1952 governs visa processing and confers 'upon consular officers *exclusive authority* to review applications for visas.'" (internal citation omitted) (quoting *Saavedra Bruno*, 197 F.3d at 1156)). In any case, at the time of his interview at the embassy in Kyiv, the Court had already issued two Orders making clear that Alexander Lazarenko desired to be deposed in the United States and that the parties should work together to attempt to accomplish that. ECF Nos. 1135, 1152. His visa application was nevertheless denied because the consular official was reportedly "not satisfied that Mr. Lazarenko did not intend to immigrate to the United States permanently," and that decision is generally unreviewable. *See, e.g.*, *Baan Rao Thai Restaurant v. Pompeo*, No. 19-cv-0058 (ESH), 2019 WL 3413415, at *2 (D.D.C. July 29, 2019) ("Judicial review of visa denials by consular officials at United States Embassies . . . is generally precluded under the broad and established doctrine of consular nonreviewability."), *appeal docketed*, No. 19-5231 (D.C. Cir. Aug. 30, 2019). There is no further "assistance" to be provided. Ultimately, then, Alexander Lazarenko's refusal to be deposed in Ukraine is a refusal to be deposed in this case.

In light of these facts, it seems clear that no sanction other than dismissal of Alexander Lazarenko's claims would be effective.

### B. Additional Evidentiary Sanctions

In addition to the dismissal of Alexander Lazarenko's claims, the government asks as a further sanction that the Court "preclude any of the remaining claimants—Pavel Lazarenko, Ekaterina Lazarenko, or Lecia Lazarenko—from introducing discovery produced by Alexander Lazarenko or regarding Alexander Lazarenko as evidence either in dispositive motions or at trial in this matter." ECF No. 1182 at 8; ECF No. 1198 at 6. This is an expansive sanction to which the government has not yet shown it is entitled. *See, e.g.*, *Peterson v. Union Pacific R. Co.*, No. 06-cv-3084, 2008 WL 630607, at *2 (C.D. Ill. Mar. 5, 2008) ("Generally, the burden of proof is on the party seeking sanctions to show that the sanctions are appropriate." (citing *Maynard v. Nygren,* 332 F.3d 462, 468 (7th Cir. 2003), and *Shepherd v. Am. Broad. Cos.,* 62 F.3d 1469, 1477-78 (D.C. Cir. 1995))).

It is clear that under Rule 37, a court may impose more than one of the listed sanctions. *See, e.g.*, *Davis v. D.C. Child & Family Servs. Agency*, 304 F.R.D. 51, 60 (D.D.C. 2014); *DL v. District of Columbia*, 274 F.R.D. 320, 324–25 (D.D.C. 2011); *Moore v. Chertoff*, 255 F.R.D. 10, 31 (D.D.C. 2008). However, the government has not shown that it is appropriate in the context of a motion for discovery sanctions for a court to sanction parties who did not violate a court order or the Federal Rules of Civil Procedure simply because another party failed to appear for his deposition. The government states that "some of the[] remedies [available under Rule 37(d)] affect only the disobedient party, others, such as designating [that] facts be taken as established and striking pleadings in whole or in part, could potentially have consequences for another party." ECF No. 1198 at 5. Yet it cites no instance in which a court has imposed a sanction—particularly

16

a sanction so broad—on non-recalcitrant parties for the misconduct of a different party. *See, e.g.*, *Peterson*, 2008 WL 630607, at *2 ("[T]he burden of proof is on the party seeking sanctions to show that the sanctions are appropriate.").

The government states that it is concerned that the claimants have concocted a scheme to "claim Alexander Lazarenko is the only one with knowledge of unexplained transactions traceable to the defendant assets, and then refuse to produce [him] for a deposition," and—asserting that Alexander Lazarenko has a joint defense agreement with his sisters and his father (ECF No. 1182 at 8; ECF No. 1182-5 at 232–33)—worries that such "actions appear part of a proverbial empty chair joint defense strategy." ECF No. 1167 at 2. But at this point, the government merely speculates, as its own submissions indicate. For example, the government asserts that the claimants' actions "appear" to be part of an empty chair defense and that Alexander Lazarenko has refused to be deposed "likely for litigation advantage." ECF No. 1167 at 2; ECF No. 1182 at 8; ECF No. 1198 at 6. Moreover, the government makes no attempt to identify any specific prejudice that it will suffer if these evidentiary sanctions are denied, merely saying that "[a]llowing the remaining claimants to introduce evidence" from Alexander Lazarenko "would unfairly prejudice the United States." ECF No. 1182 at 8; ECF No. 1198 at 6. The government's vagueness is not surprising, as any prejudice that *might* arise from the conjectured "litigation strategy" that the remaining claimants *might* employ is purely hypothetical. Perhaps at a later date—and with a showing of prejudice more robust than the mere invocation of the term—the government might establish that such evidence should be excluded. It has not done so here.

The undersigned therefore recommends denying the government's request for these evidentiary sanctions in connection with this Rule 37(d) motion.

### C. Attorney's Fees

Under Rule 37(d)(3), a court "must require" the recalcitrant party, his attorney, or both, "to pay the reasonable expenses, including attorney's fees" caused by the failure to appear, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Here, Alexander Lazarenko's position was not substantially justified. However, the government has not asked for fees in connection with its request for sanctions; it sought fees only in the event that the its alternative request—an order requiring Alexander to appear for a deposition in Ukraine. ECF No. 1182 at 8–10; ECF No. 1198 at 3–5. Indeed, at the hearing on June 12, 2019, the Court and the parties discussed having Alexander Lazarenko stipulate that he would not be deposed in Ukraine with the express purpose of teeing up an application from the government without the parties incurring the expense of travelling for a deposition that would not go forward. ECF No. 1206 at 14–16. That is precisely what happened. In this situation, an award of expenses, unsought by the government, would be unjust.

### IV. CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that the government's motion for sanctions (ECF No. 1182) be **GRANTED** to the extent that it seeks dismissal of Alexander Lazarenko's claims in this action and **DENIED** to the extent that it seeks (1) evidentiary sanctions against Pavel Lazarenko, Ekaternia Lazarenko, and Lecia Lazarenko, (2) an order compelling Alexander Lazarenko to appear for a deposition, and (3) an award of expenses.

\*   \*   \*   \*   \*

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of

the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made and the basis for such objections. The parties are further advised that failure to file timely objec-tions to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. See *Thomas v. Arn*, 474 U.S. 140 (1985).

Date:  September 5, 2019

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE