UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
UNITED STATES OF AMERICA,        )
                                )
        Plaintiff,               )
                                )
        v.                       )        Civil Action No. 04-0798 (PLF)
                                )
ALL ASSETS HELD AT BANK JULIUS,  )
Baer & Company, Ltd., Guernsey   )
Branch, account number 121128, in the )
Name of Pavlo Lazarenko et al.,  )
                                )
        Defendants In Rem.       )
_____ )
```

OPINION

This matter is before the Court on the motion [Dkt. No. 554] of the United States

to strike the claim of Pavel Lazarenko, also known as Pavlo Lazarenko, to the Balford Trust

assets. Upon consideration of the parties' written submissions, the relevant legal authorities, the

arguments of counsel in open court on January 25, 2017, and the entire record in this case, the

Court will grant the United States' motion to strike Mr. Lazarenko's claim to the Balford Trust

assets.[1]

---

[1]     The documents reviewed in connection with the United States' motion to strike
include: the verified complaint for forfeiture in rem ("Complaint") [Dkt No. 1]; Pavel
Lazarenko's initial verified claim and statement of interest ("Claim") [Dkt. No. 5]; Pavel
Lazarenko's answer to the initial complaint ("2004 Answer") [Dkt. No. 9]; the first amended
verified complaint for forfeiture in rem ("Amended Complaint") [Dkt. No. 20]; Pavel
Lazarenko's claim to the amended complaint ("Amended Claim") [Dkt. No. 29]; Pavel
Lazarenko's answer to the amended complaint, 2011 ("2011 Answer") [Dkt. No. 268]; Pavel
Lazarenko's motion for leave to amend his answer ("Mot. for Leave to Amend Answer") [Dkt.
No. 367]; Pavel Lazarenko's amended answer to the amended complaint, Feb. 2017 ("2017
Answer") [Dkt. No. 882]; Pavel Lazarenko's second amended answer to the amended complaint,
Aug. 2017 ("Second 2017 Answer") [Dkt. No. 998]; the United States' motion to strike claimant

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  History of this Civil Forfeiture Proceeding

The Court's prior opinions summarize the factual and procedural history of this case, starting with the criminal prosecution of Mr. Lazarenko in 2004 and continuing through this long-running in rem civil forfeiture proceeding.  See, e.g., United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 307 F.R.D. 249, 250-51 (D.D.C. 2014); United States v. All Assets Held at Bank Julius Baer & Co., Ltd. ("All Assets IV"), 959 F. Supp. 2d 81, 84-93 (D.D.C. 2013); United States v. All Assets Held at Bank Julius Baer & Co., Ltd. ("All Assets III"), 772 F. Supp. 2d 205, 207-08 (D.D.C. 2011); United States v. All Assets Held at Bank Julius Baer & Co., Ltd. ("All Assets I"), 571 F. Supp. 2d 1, 3-6 (D.D.C. 2008).  In brief, Mr. Lazarenko was "a prominent Ukrainian politician who, with the aid of various associates, was 'able to acquire hundreds of millions of United States dollars through a variety of acts of fraud,

---

Pavel Lazarenko's claim to all assets held in the Balford Trust ("Mot. to Strike") [Dkt. No. 554]; the United States' motion in support of its motion to strike claimant Pavel Lazarenko's claim to all assets held in the Balford Trust ("U.S. Mem. in Support of Mot. to Strike"); the declarations of Alasdair Davidson ("Davidson Decl.") [Dkt. No. 554-2] and Gavin Ferguson ("Ferguson Decl.") [Dkt. No. 554-3]; the United States' supplemental appendix and amended statement of facts ("U.S. Supp.") [Dkt. No. 600]; the United States' supplemental authority and second supplemental appendix ("U.S. Second Supp.") [Dkt. No. 725]; Mr. Lazarenko's opposition ("Opp.") [Dkt. No. 731] and the declarations of Nicholas Le Poidevin ("Le Poidevin Decl.") [Dkt. No. 729] and Nicholas J. Barnes ("Barnes Decl.") [Dkt. No. 730]; Mr. Lazarenko's response to the United States' supplemental authorities ("Resp. to U.S. Supp.") [Dkt. No. 740]; the United States' reply in support of its motion to strike ("Reply") [Dkt. No. 755]; the January 25, 2017 Motion Hearing Transcript – morning session ("Jan. 25, 2017 Hearing Tr.") [Dkt. No. 886]; the United States' brief on U.S. tax law and the Balford Trust ("U.S. Tax Brief") [Dkt. No. 878]; Mr. Lazarenko's reply to the United States' brief on U.S. tax law and the Balford Trust ("Reply to U.S. Tax Brief") [Dkt. No. 897]; U.S. Opposition to Lazarenko Filing Tax Memorandum ("U.S. Opp. to Claimant's Tax Brief") [Dkt. No. 916]; Mr. Lazarenko's June 27, 2017 notice of supplemental authority (Claimant's June 27, 2017 Notice of Supp. Auth.") [Dkt. No. 980]; Mr. Lazarenko's Aug. 14, 2017 notice of supplemental authorities ("Claimant's Aug. 14, 2017 Notice of Supp. Auth.") [Dkt. No. 996]; and the United States' notice of supplemental authority ("U.S. April 26, 2018 Notice of Supp. Auth.") [Dkt. No. 1097].

extortion, bribery, misappropriation and/or embezzlement' committed during the 1990s." <u>All Assets IV</u>, 959 F. Supp. 2d at 85 (quoting the Amended Complaint at ¶¶ 1, 10).

### B. The United States' Motion to Strike Pavel Lazarenko's Claim to the Balford Trust

As relevant to the present motion to strike, in May 2004, the United States filed an <u>in rem</u> forfeiture complaint seeking forfeiture of <u>inter alia</u>, "[a]ll funds on deposit at Credit Suisse (Guernsey) Limited, in account number 41610 in the name of Samante Limited as Trustees of the Balford Trust." Complaint at ¶ 5(b). The next year, in June 2005, the United States filed an amended complaint identifying an additional bank account in Guernsey, 41950, and increasing the total Balford Trust assets sought to be forfeited to $147,919,401.13. Amended Complaint at ¶ 5(b). The amended complaint also identified an escrow account for the Balford Trust, 41843, with £ 14,308.52 pounds sterling of the United Kingdom. <u>Id.</u> at ¶ 5(c). As described more fully below, Mr. Lazarenko asserts a claim to the Balford Trust assets as the settlor and protector of the Trust. The United States' motion to strike challenges Mr. Lazarenko's standing to assert such a claim.

Mr. Lazarenko filed an initial claim in this action in June 2004 asserting an interest in some of the defendant assets, but not the Balford Trust. <u>See</u> Claim. One month later in August 2004, Mr. Lazarenko filed an answer to the original complaint in which he: (i) admitted that he transferred approximately $106,975,123 to the Balford Trust account in Guernsey; (ii) admitted he is the settlor and protector of the Balford Trust; (iii) admitted that his family members are the beneficiaries of the trust; and (iv) denied that his family members are "nominal beneficiaries" of the trust. 2004 Answer at ¶¶ 73-74. After the United States filed an amended complaint in June 2005, Mr. Lazarenko filed a claim in July 2005 claiming a "residual and reversionary interest" in the defendant funds in Credit Suisse (Guernsey) Limited, account

numbers 41610 and 41950, in the name of Samante Limited as Trustees of the Balford Trust. Amended Claim at 5.

In July 2005, Mr. Lazarenko filed a motion to dismiss the amended complaint, [Dkt. No. 27], which the Court denied in March 2007 [Dkt. No. 63]. Six years later, in November 2011, Mr. Lazarenko filed an answer to the amended complaint in which he once again: (i) admitted that approximately $106,975,123 dollars were transferred to the Balford Trust account in Guernsey; (ii) admitted he is the settlor and protector of the Balford Trust; (iii) admitted that his family members are the beneficiaries of the trust; and (iv) denied that his family members are "nominal beneficiaries" of the trust. 2011 Answer at ¶¶ 81-83.

Then in May 2015, after the government had moved to strike the claim filed by Mr. Lazarenko's children to the Balford Trust [Dkt. No. 363], Mr. Lazarenko moved for leave to file an amended answer [Dkt. No. 367], saying he wanted to "make it clear that he was the beneficial owner of the Balford Trust's assets." Mot. for Leave to File Amended Answer at 3. Once the Court granted the motion, however, the amended answers that Mr. Lazarenko subsequently filed said nothing about whether he was the beneficial owner of the Balford Trust assets. The only difference between the earlier answers and those filed in 2017 was that Mr. Lazarenko now admitted his family members are nominal beneficiaries. Compare 2004 Answer at ¶ 73 and 2011 Answer at ¶ 81 with 2017 Answer at ¶ 81 and Second 2017 Answer at ¶ 81.

In January 2016, the United States filed the instant motion – a motion to strike Mr. Lazarenko's claim to the Balford Trust assets. See Mot. to Strike. The United States brought this as a motion for summary judgment and argued that Mr. Lazarenko had no interest in the Balford Trust assets, having divested himself of any interest when he settled the funds in the trust. Mr. Lazarenko filed an opposition arguing that his roles as settlor and protector of the

Balford Trust gave him an interest in the Balford Trust assets.  See Opp.  The United States filed

a reply.  See Reply. [2]  On January 25, 2017 the Court held a hearing on the United States' motion

to strike Mr. Lazarenko as a claimant.  See Jan. 25, 2017 Hearing Tr. [Dkt. Nos. 886, 887].  At

the Court's request, the parties submitted supplemental briefing on the relevance of U.S. tax law

after the hearing.  See Dkt. Nos. 878, 897-1, 916.

### C. The Balford Trust

The Court must determine what interest Mr. Lazarenko has, if any, in the Balford

Trust assets.  The parties agree that the Mr. Lazarenko's legal rights and limitations with respect

to the Balford Trust are set forth in the Declaration of Trust.  See Reply at 4; Opp. at 9 n. 6

(noting that the Balford Trust Declaration "controls [Mr. Lazarenko's] interest in the funds").

The Balford Trust Declaration says that Guernsey law governs the trust.  Balford Trust

Declaration ("Trust Decl.") at ¶ 2(a) [Appx. 219].  The Court therefore must look to Guernsey

law and the Balford Trust Declaration to determine what interest Mr. Lazarenko may have in the

Balford Trust.

Under Guernsey law, "[a] trust exists" when a trustee "holds or has vested in him

. . . property which does not form . . . part of his own estate" either "for the benefit of another

person," a beneficiary, or "for any purpose" other than for the benefit of the trustee.  See The

Trusts (Guernsey) Law, 2007 ("Guernsey Trust Law") at ¶ 1(a) [Appx. 346].  Upon creation of a

trust in Guernsey, the settlor – the person creating the trust – "divest[s] himself of legal

ownership of the trust assets," and legal title to the assets is vested in the trustee.  See OGIER,

*Offshore Trusts* at 1-2 [Appx. 412-13].  The Balford Trust Declaration specifies that the trustees

---

[2]        Both parties also submitted supplemental authority and declarations.  See Dkt.
Nos. 600, 725, 740, 996.

"shall stand possessed of the Trust Fund and the income thereof" during the trust period. Trust Decl. at ¶ 3 [Appx. 220]. Under Guernsey law, then, Mr. Lazarenko divested himself of those assets upon settling his assets in the Balford Trust, and he no longer holds legal title to the assets in the Trust. The corporate trustee, Samante Limited, is the legal owner of the Balford Trust. See Trust Decl. at Establishment Checklist [Appx. 215].

The Balford Trust is a discretionary trust. See Davidson Decl. at 10, ¶ 37; Ferguson Decl. at 5; Le Poidevin Decl. at 3, ¶ 17. Samante Limited has broad discretion as trustees under the terms of the Balford Trust: the trust declaration refers to the trustees' "absolute discretion" throughout the founding document. See, e.g., Trust Decl. at ¶ 11(a) [Appx. 223] ("The Trustees shall exercise the powers and discretions vested in them as they shall think most expedient for the benefit of [the beneficiaries]); id. at ¶ 11(b) ("[E]very discretion vested in the Trustees shall be absolute and uncontrolled and every power vested in them shall be exercisable at their absolute and uncontrolled discretion and the Trustees shall have the same discretion in deciding whether or not to exercise any such power."); id. at Sixth Schedule, ¶ 1 [Appx. 229] ("the Trustees shall in relation to the Trust Fund have all the same powers as a natural person acting as the beneficial owner of such property").

The Balford Trust names four beneficiaries: Alexandre, Tamara, Lecia, and Ekaterina Lazarenko. Trust Decl. at Establishment Checklist [Appx. 215]. Under Guernsey trust law, the beneficiaries of a trust have a "beneficial interest" in the trust, which is "personal property." Guernsey Trust Law at ¶ 10 [Appx. 352]. Under Guernsey trust law, the settlor can be a beneficiary, id. at ¶ 8(4) [Appx. 352], but Mr. Lazarenko is not a named beneficiary of the Balford Trust, see Trust Decl. at Establishment Checklist [Appx. 215]. The beneficiaries are an "open class" because the trustees can add new beneficiaries. See Trust Decl. at ¶ 8(a) [Appx.

222]; Le Poidevin Decl. at 3, ¶ 18. If the trustees choose to add a new beneficiary, however, they must do so in writing. Trust Decl. at ¶ 8(b) [Appx. 222].

The Balford Trust is irrevocable. Trust Decl. at ¶ 27 [Appx. 227]. This means no one has the power to revoke the trust and have the funds revert to the settlor. Instead, the trust declaration specifies what is to happen with the trust assets upon the trust's expiration. The Balford Trust is set to last for the maximum time permitted by Guernsey law, which is a duration of 100 years. See Trust Decl. at ¶ 1(m)(i) [Appx. 219]; Guernsey Trust Law at ¶ 16(2) [Appx. 362]. Under the terms of the Balford Trust, the trustees at any time may fix an earlier date for the trust to expire, within their discretion. See Trust Decl. at ¶ 1(m)(ii) [Appx. 219]. The Trust Declaration sets forth comprehensive terms for the distribution of the trust funds upon its expiration. At the end of the trust period, the trust assets will go to the living beneficiaries in equal shares. See Trust Decl. at ¶ 3(c) [Appx. 220]. Any trust property not distributed to the beneficiaries shall be distributed to "such charities as the Trustees shall in their absolute discretion shall determine." Id. at ¶ 3(d). And any trust property not distributed to the beneficiaries or to the charities determined by the trustees shall go to "[t]he United Nations Educational Scientific and Cultural Organization" (UNESCO). Id. at ¶ 3(e).

The Balford Trust Declaration does not expressly name the settlor of the trust, but it is undisputed that Mr. Lazarenko is the settlor of the Balford Trust. See U.S. Mem. in Support of Mot. to Strike at 9; Opp. at 11.[3] As the settlor, he can write letters of wishes to the trustees, expressing how he would like the trustees to exercise any of their functions. Guernsey Trust

_____

[3]     Guernsey Trust Law does not require that the settlor be named in the trust declaration. See Guernsey Trust Law at ¶ 6(5) [Appx. 351] ("No technical expressions are needed for the creation of a trust."); id. at ¶ 80(1) [Appx. 406] (defining "settlor" as "a person who directly or indirectly provides trust property or makes a testamentary disposition on trust or to a trust.").

Law at ¶ 38(2) [Appx. 375].  While trustees "take into account" the settlor's wishes when exercising their powers, letters of wishes "are not binding," and the trustees "may properly act contrary to the expressed wishes of the settlor[.]"  Le Poidevin Decl. at 8, ¶¶ 44-45.

The Balford Trust Declaration lists Mr. Lazarenko as the protector of the Balford Trust.  Trust Decl. at Fifth Schedule [Appx. 228].  Guernsey law does not reference a trust "protector," but both parties' experts say this role likely falls under the Guernsey law's "trust official" definition, allowing for a person to have a function in the trust other than as settlor, trustee, enforcer, or beneficiary.  Guernsey Trust Law at ¶ 80(1) [Appx. 406]; see Davidson Decl. at 5, ¶ 18; Le Poidevin Decl. at 5-6, ¶ 31.  The Balford Trust specifies that certain "[p]owers and discretions of the Trustees . . . require the consent of the Protector."  Trust Decl. at Fourth Schedule [Appx. 228].  If the trustees requested consent in writing, but do not receive "written consent or refusal of the Protector within 30 days . . . then the Protector shall be deemed to have consented."  Trust Decl. at ¶ 19(a) [Appx. 225].  The specific powers for which the trustees must seek consent from the Protector before exercising their discretion are:

Clause 1(m)(ii):  bringing forward the end of the Trust period,

Clause 2(b):  changing the governing law of the Trust,

Clause 3(a):  appropriating the whole or part of the income of the Trust fund to one or more of the beneficiaries,

Clause 3(c):  determining which shares or proportions of the capital income of the Trust fund should be held for the beneficiaries upon the expiration of the Trust,

Clause 3(d):  determining which charity capital and income of the Trust should be held for,

Clause 4:  appointing and advancing the Trust fund or any part of it to the beneficiaries,

Clause 7:  excluding beneficiaries,

Clause 8:  adding beneficiaries,

Clause 15(a):  appointing new or additional Trustees, and

Clause 24:  varying all or any of the trust powers and provisions of the Declaration of Trust.

See Trust Decl. at Fourth Schedule [Appx. 228].  The Protector may also appoint his successor or appoint additional protectors.  Trust Decl. at ¶ 20(c) and (d) [Appx. 225].

Neither party contests the validity of the Balford Trust.  They agree that the Trust Declaration sets forth Mr. Lazarenko's rights in the Balford Trust.  While the Balford Trust Declaration confers broad powers to the trustees, and the protector's role may be unusual in the United States, these provisions are valid under Guernsey law.  See Guernsey Trust Law at ¶ 15 [Appx. 360-61] (noting even broader powers that could be retained by a settlor or any other person than the powers given to the protector in the Balford Trust, and that would not invalidate the trust).

Having described the key provisions of the Balford Trust and the impact of those provisions under Guernsey law, the Court will now determine what interest Mr. Lazarenko has under the terms of the Trust and Guernsey law, if any.

## II.  LEGAL STANDARDS

### A. Motion to Strike

In a forfeiture action brought in rem pursuant to a federal statute, at any time before trial the United States "may move to strike a claim or answer . . . because the claimant lacks standing."  SUPP. R. G(8)(c)(i)(B).  Such a challenge to a party's claim and answer "may be presented . . . as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence."  SUPP. R. G(8)(c)(ii)(B).

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); see Baumann v. District of Columbia, 795 F.3d 209, 215 (D.C. Cir. 2015); FED. R. CIV. P. 56(a), (c). In making that determination, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. Baumann v. District of Columbia, 795 F.3d at 215; see Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (per curiam); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011).

A disputed fact is "material" if it "might affect the outcome of the suit under the governing law." Talavera v. Shah, 638 F.3d at 308 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). A dispute over a material fact is "genuine" if it could lead a reasonable jury to return a verdict in favor of the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Grimes v. District of Columbia, 794 F.3d 83, 94-95 (D.C. Cir. 2015); Paige v. DEA, 665 F.3d 1355, 1358 (D.C. Cir. 2012). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment. Thus, [the Court] do[es] not determine the truth of the matter, but instead decide[s] only whether there is a genuine issue for trial." Barnett v. PA Consulting Grp., Inc., 715 F.3d 354, 358 (D.C. Cir. 2013) (quoting Pardo-Kronemann v. Donovan, 601 F.3d 599, 604 (D.C. Cir. 2010)); see also Tolan v. Cotton, 134 S. Ct. at 1866; Baumann v. District of Columbia, 795 F.3d at 215; Allen v. Johnson, 795 F.3d 34, 38 (D.C. Cir. 2015). When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477

U.S. at 255; see also Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-moving party is required to provide evidence that would permit a reasonable jury to find in his favor. Laningham v. United States Navy, 813 F.2d 1236, 1241 (D.C. Cir. 1987). If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 550 U.S. at 380 ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007). "The inquiry performed [at this phase] is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.

### B. Standing in Civil Forfeiture Actions

"Civil forfeiture actions are brought against property, not people. The owner of the property may intervene to protect his interest." United States v. All Funds in Account Nos. 747.034/278, 747.009/278, & 747.714/278 in Banco Espanol de Credito, Spain, 295 F.3d 23, 25

(D.C. Cir. 2002).  Civil forfeiture actions are governed by the procedures set forth in 18 U.S.C. § 983 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"), a subset of the Federal Rules of Civil Procedure. When the government files a complaint for forfeiture, "any person claiming an interest in the seized property may file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules[.]" 18 U.S.C. § 983(a)(4)(A); see SUPP. R. G(5)(a).

When the government moves to strike a claim for lack of standing pursuant to Supplemental Rule G(8)(c), the claimant has the burden of "establishing standing by a preponderance of the evidence." SUPP. R. G(8)(c)(ii)(B).  "To prevail, a claimant must meet both Article III and statutory standing requirements." United States v. $17,900 in U.S. Currency, 859 F.3d 1085, 1089 (D.C. Cir. 2017) (internal quotations omitted); see also United States v. All Assets Held at Bank Julius Baer & Co., Ltd. ("All Assets VI"), 234 F. Supp. 3d 115, 120 (D.D.C. 2017) ("[A] claimant must demonstrate Article III standing in addition to the separate, though partly overlapping, requirements of statutory standing."); United States v. One-Sixth Share of Mass Millions Lottery Ticket ("United States v. One-Sixth Share"), 326 F.3d 36, 40 (1st Cir. 2003) ("Standing in [civil forfeiture] cases has both constitutional and statutory aspects.").  "The term 'statutory standing' relates to a claimant's ability to show that he has satisfied whatever statutory requirements Congress has imposed for contesting a civil forfeiture action in federal court, while 'Article III standing' [or 'constitutional standing'] relates to the claimant's ability to show that he has a sufficient interest in the property to satisfy the case-or-controversy requirement of Article III of the Constitution." United States v. 8 Gilcrease Lane, Quincy Fla. 32351 ("United States v. 8 Gilcrease Lane"), 641 F. Supp. 2d 1, 5-6 (D.D.C. 2009) (citing Stefan

D. Cassella, ASSET FORFEITURE IN THE UNITED STATES: A TREATISE ON FORFEITURE LAW § 9-4 at 326 (2006)).

Because the United States, rather than the claimant, is the plaintiff and bears the burden of proving the property's forfeitability, "[t]he function of standing in a forfeiture action is therefore truly threshold only—to ensure that the government is put to its proof only where someone with a legitimate interest contests the forfeiture." United States v. $557,933.89, More or Less, in U.S. Funds, 287 F.3d 66, 79 (2d Cir. 2002); see also United States v. $17,900 in U.S. Currency, 859 F.3d at 1089-90.

## 1. Constitutional Standing

Standing is one of the three "inter-related judicial doctrines" that – along with the requirements of mootness and ripeness – "ensure that federal courts assert jurisdiction only over 'Cases' and 'Controversies.'" Worth v. Jackson, 451 F.3d 854, 855 (D.C. Cir. 2006) (quoting U.S. CONST. art. III, § 2). Standing is an Article III requirement under which the plaintiffs must show, at an "irreducible constitutional minimum": (1) that they have suffered an injury in fact – the invasion of a legally protected interest; (2) that the injury is fairly traceable to the defendant's conduct (a causal connection); and (3) that a favorable decision on the merits likely will redress the injury. See Lujan v. Def. of Wildlife, 504 U.S. 555, 560-61 (1992); see also Worth v. Jackson, 451 F.3d at 858; Gettman v. DEA, 290 F.3d 430, 433 (D.C. Cir. 2002). The alleged injury in fact must be concrete and particularized and actual or imminent, not conjectural, hypothetical or speculative. See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016); Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408-09 (2013); Lujan v. Def. of Wildlife, 504 U.S. at 560-61; Worth v. Jackson, 451 F.3d at 858; Sierra Club v. EPA, 292 F.3d 895, 898 (D.C. Cir. 2002).

"Standing is a threshold consideration in all cases, including civil forfeiture cases." United States v. One-Sixth Share, 326 F.3d at 40. In the civil forfeiture context, the D.C. Circuit has explained that "the requirements for a claimant to demonstrate constitutional standing to challenge a forfeiture are very forgiving." United States v. $17,900 in U.S. Currency, 859 F.3d at 1089 (citing United States v. Emor, 785 F.3d 671, 676 (D.C. Cir. 2015)) (alterations omitted). "While some courts have focused on whether a party had an ownership or possessory interest under state law at the time of forfeiture, other courts have noted [that] it is the injury to the party seeking standing that remains the ultimate focus." United States v. Emor, 785 F.3d at 676 (internal citations omitted); see also United States v. 8 Gilcrease Lane, 641 F. Supp. 2d at 6 ("[I]n a civil forfeiture case, a claimant's constitutional standing turns upon whether the claimant has a sufficient interest in the property to create a case or controversy.") (citations omitted). "In general, any colorable claim on the property suffices, if the claim of injury is "redressable, at least in part, by a return of the property." United States v. Emor, 785 F.3d at 676 (emphasis added) (internal citations omitted); see also United States v. $17,900 in U.S. Currency, 859 F.3d at 1090.

The nature of a claimant's asserted property interest is "defined by the law of the State" – or here, nation – "in which the interest arose." United States v. One Lincoln Navigator, 328 F.3d 1011, 1013 (8th Cir. 2003); see United States v. $100,348 in U.S. Currency, 354 F.3d 1110, 1119 (9th Cir. 2004); United States v. One-Sixth Share, 326 F.3d at 45. But while state law defines a claimant's interest in specific property, "federal law determines the effect of [that] interest on [the claimant's] right to bring a claim." United States v. U.S. Currency, $81,000.00, 189 F.3d 28, 33 (1st Cir. 1999) (citing United States v. National Bank of Commerce, 472 U.S. 713, 722 (1985)); see United States v. 5 S 351 Tuthill Rd., 233 F.3d 1017, 1021 (7th Cir. 2000)

("State law defines and classifies property interests for purposes of the forfeiture statutes, while federal law determines the effect of the property interest on the claimant's standing."); United States v. BCCI Holdings, Luxembourg, S.A., 69 F. Supp. 2d 36, 57 (D.D.C. 1999) (same).

At the summary judgment stage, the question is "whether a fairminded jury could find that the claimant had standing on the evidence presented." United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 638 (9th Cir. 2012); see United States v. All Assets Held at Bank Julius Baer & Co., Ltd. ("All Assets II"), 664 F. Supp. 2d 97, 104-05 (D.D.C. 2009) (stating that at the summary judgment stage, "each claimant must point to some evidence in the record that would allow a reasonable factfinder to conclude . . . by a preponderance of the evidence that they have a cognizable interest in the assets potentially subject to forfeiture"). When the government moves to strike a claim because the claimant lacks standing, courts must not conflate the standing inquiry "with the merits determination that comes later." United States v. One-Sixth Share, 326 F.3d at 41; see also United States v. One Lincoln Navigator, 328 F.3d at 1013 ("This threshold burden is not rigorous: To have standing, a claimant . . . need only show a colorable interest in the property, redressable, at least in part, by a return of the property.") (internal quotation and citation omitted); United States v. $17,900 in U.S. Currency, 859 F.3d at 1091. "Although a claimant must make [this] initial evidentiary showing of such an interest, a claimant need not definitively prove the existence of that interest." United States v. $148,840 in U.S. Currency, 521 F.3d 1268, 1273 (10th Cir. 2008); see United States v. $557,933.89, More or Less, in U.S. Funds, 287 F.3d at 79 ("[T]he only question that the courts need assess regarding a claimant's standing is whether he or she has shown the required 'facially colorable interest,' not whether he ultimately proves the existence of that interest.") (quotations omitted); United States v. 116 Emerson St., 942 F.2d 74, 78 (1st Cir. 1991).

"[S]tanding 'must be supported . . . with the manner and degree of evidence required at [each] successive stage[ ] of litigation.'"  United States v. $17,900 in U.S. Currency, 859 F.3d at 1090 (citing Lujan v. Def. of Wildlife, 504 U.S. at 561).  In response to a summary judgment motion, the claimant cannot rest on "mere allegations," but must "set forth . . . specific facts, which for purposes of the summary judgment motion will be taken to be true."  United States v. $17,900 in U.S. Currency, 859 F.3d at 1090 (citing Lujan v. Def. of Wildlife, 504 U.S. at 561).  Further, "[a] variety of property interests may serve as the basis for a claimant's entitlement to contest a civil forfeiture, including not only ownership but also possessory and other lesser forms of interest."  All Assets IV, 959 F. Supp. 2d at 99.  Accordingly, "[t]he type of interest claimed dictates the type of evidence required to establish standing."  Id. at 99-100 (citing United States v. $148,840 in U.S. Currency, 521 F.3d at 1274).

For instance, when a claimant responding to a summary judgment motion predicates his claim on an ownership interest, the "manner and degree of evidence required" is the "assertion of ownership" combined with "some evidence of ownership."  United States v. $17,900 in U.S. Currency, 859 F.3d at 1090 (citing United States v. $239,400, 795 F.3d 639, 642-43 (7th Cir. 2015)).  When assessing the "sufficiency and probity of the evidence that purports to demonstrate a colorable ownership interest," therefore, "courts generally look to 'indicia of dominion and control such as possession, title, and financial stake.'"  All Assets IV, 959 F. Supp. 2d at 100 (citing United States v. $38,570 U.S. Currency, 950 F.2d 1108, 1113 (5th Cir. 1992)).

2.    Statutory Standing

In order to demonstrate statutory standing in an in rem forfeiture proceeding, a claimant must have "assert[ed] [their] interest in the property in the manner set forth in the

Supplemental Rules." United States v. All Assets Held at Bank Julius Baer & Co., Ltd. ("All Assets V"), 228 F. Supp. 3d 118, 122 (D.D.C. 2017) (citing 18 U.S.C. § 983(a)(4)(A); All Assets IV, 959 F. Supp. 2d at 96 n.10). The statutory standing requirement is grounded in 18 U.S.C. § 983, which limits intervention in civil forfeiture actions to "any person claiming an interest in the seized property" who "file[s] a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules." Id. at § 983(a)(4)(A). Supplemental Rule C requires a claimant to file a "verified statement of right or interest" that "must describe the interest in the property that supports the person's demand for its restitution or right to defend the action." SUPP. R. C(6)(a)(i)-(ii). See also 18 U.S.C. § 983(a)(4)(A) ("[A]ny person claiming an interest in the seized property may file a claim asserting such person's interest in the property[.]"). "This statement is known as a 'verified claim' and is essential to conferring statutory standing upon a claimant in a forfeiture action." United States v. 8 Gilcrease Lane, Quincy, Fla. 32351, 638 F.3d 297, 299 n.1 (D.C. Cir. 2011) (alterations omitted) (citing United States v. $125,938.62, 370 F.3d 1325, 1328 (11th Cir.2004) (per curiam)). Supplemental Rule G says that a claimant contesting the United States' forfeiture must file a claim that "state[s] the claimant's interest in the property." SUPP. R. G (5)(a)(i)(B).[4]

Courts generally expect claimants to "adhere strictly" to these statutory requirements governing civil forfeiture proceedings. All Assets II, 664 F. Supp. 2d at 101; United States v. Funds from Prudential Securities, 300 F. Supp. 2d 99, 104 (D.D.C. 2004) ("[I]n order to have standing to challenge a forfeiture proceeding, a claimant must strictly comply with

---

[4]     On December 1, 2006, Supplemental Rule G went into effect. See 2006 U.S. ORDER 20 (C.O. 20) (April 12, 2006), available at http://www.supremecourt.gov/orders/courtorders/frcv06p.pdf (stating that Supplemental Rule G governs cases filed after December 1, 2006, and "insofar as just and practicable, all proceedings then pending").

the pleading requirements of Supplemental Rule C(6).") (internal citation omitted) (referring to Supplemental Rule C(6), the predecessor of Supplemental Rules G(5) and G(6)).

While courts may "excuse" procedural failings "so long as the 'underlying goals of' the Supplemental Rules 'are not frustrated,'" All Assets II, 664 F. Supp. 2d at 102 (citing United States v. Funds From Prudential Securities, 300 F.Supp.2d at 104 (collecting cases)), the Third Circuit has identified compliance with the Supplemental Rules' requirement that a claimant must file a verified claim as the "most significant requirement." United States v. $487,825 in U.S. Currency, 484 F.3d 662, 664 (3d Cir. 2007), as amended (May 14, 2007) (discussing Supplemental Rule C). See also United States v. $39,557.00, More or Less, in U.S. Currency, 683 F. Supp. 2d 335, 339 (D.N.J. 2010) (saying the same about Supplemental Rule G). This is because the requirement for a verified claim serves the dual purposes of (1) forcing claimants to "come forward as quickly as possible . . . so that the court may hear all interested parties and resolve the dispute without delay," and (2) minimizing "the danger of false claims by requiring claims to be verified or solemnly affirmed," United States v. $487,825 in U.S. Currency, 484 F.3d at 664-65; see also United States v. All Funds on Deposit with R.J. O'Brien & Assocs., 783 F.3d 607, 618 (7th Cir. 2015). "A claimant who fails to file a verified [claim] has no standing to contest a forfeiture." United States v. $487,825 in U.S. Currency, 484 F.3d at 665.

## III. DISCUSSION

The United States has moved to strike Pavel Lazarenko's claim to the Balford Trust, arguing that he does not have constitutional, Article III standing because he is not the owner of the assets, nor does he have a right to benefit from them. Mot. to Strike at 1. The United States also points out that the only interest Mr. Lazarenko has actually claimed he has in

the Balford Trust is a "residual and reversionary interest." Id. (citing Pavel Lazarenko's Claim [Dkt. No. 29] at 5). For any interest that Mr. Lazarenko now may be asserting in the Balford Trust other than a residual and reversionary interest, the United States maintains that he has neither Article III standing nor statutory standing. Id. at 1-2. The Court addresses each of these arguments in turn.

### A. Residual and Reversionary Interest

Pavel Lazarenko claims that he has a "residual and reversionary interest" in the defendant funds that make up the Balford Trust. See Amended Claim at 5. In order to defeat the government's motion to strike him as a claimant, Mr. Lazarenko must show by a preponderance of the evidence that (1) he has a residual and reversionary interest in the Balford Trust under Guernsey law, and (2) a claimant with a residual and reversionary interest in defendant assets has standing under U.S. federal law.

### 1. Guernsey Law

Despite Mr. Lazarenko's claim in which he asserts that he has a "residual and reversionary" interest in the Balford Trust, his opposition to the plaintiff's motion to strike his claim says little about this interest. Mr. Lazarenko's brief notes in one sentence that this was the interest he claimed, but goes on to say that he has since sought to "clarify this claim, as noted in his motion for leave to amend his Answer." Opp. at 31. But all that this motion to amend said was that he will be "amending his claim to more accurately reflect his relationship with the Balford Trust." Mot. for Leave to Amend Answer at 3, n. 1. This motion was filed in 2015. Five years later, Mr. Lazarenko still has not amended his claim.

Mr. Lazarenko's opposition to the United States' motion to strike his claim does not provide evidence to support his claim to a residual and reversionary interest in the Balford

Trust. And when assessing a motion to strike a claim as a summary judgment motion, the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See FED. R. CIV. P. 56(c); see also All Assets IV, 959 F. Supp. 2d at 94. Mr. Lazarenko has failed to provide any support for his claim to having a residual and reversionary interest in the Balford Trust.

Not only has Mr. Lazarenko failed to put forth evidence of a residual and reversionary interest in the Balford Trust, his claim is inconsistent with the terms set out in the Balford Trust Declaration. The trust is irrevocable, so no one has the power to end the relationship and have the assets revert to Mr. Lazarenko, the settlor. During the trust period, the trustees possess the assets for the benefit of the beneficiaries. The trust is discretionary, so the trustees have great power to act in their discretion for the benefit of the beneficiaries. Upon the trust's expiration, the Trust Declaration specifies where the trust funds should be distributed – to the beneficiaries in equal share, or to charities designated by the beneficiaries, or if none of those options is available, then to UNESCO. Under none of these scenarios could the assets Mr. Lazarenko settled in the trust revert back to him. Mr. Lazarenko has not pointed to any trust provision or Guernsey law that indicates otherwise. Even the expert declarations he submitted do not conclude that he has a residual or reversionary interest in the Balford Trust. See Le Poidevin Decl.; Barnes Decl. The Court therefore concludes that Mr. Lazarenko has not met his burden of showing he has a residual or reversionary interest in the Balford Trust.

2.   U.S. Federal Law

Because the first part of the inquiry has not been met – Mr. Lazarenko has not shown he has a residual or reversionary interest in the Balford Trust under Guernsey Law – there

is no need to determine what effect that interest has on Mr. Lazarenko's ability to bring a claim

under the federal laws of the United States. Indeed, it is not clear what effect a residual or

reversionary interest would have under U.S. law. The D.C. Circuit has not yet spoken on the

issue. See United States v. $17,900 in U.S. Currency, 859 F.3d at 1090 (noting that the

"colorable claim" on the property is "typically" an "ownership or possessory interest," but not

addressing whether more remote interests could confer standing). Judge Bates has found that a

present property interest is required for standing. See United States v. All Assets Held in

Account No. XXXXXXXX in name of Doraville Properties Corp. ("United States v. Doraville

Properties"), 299 F. Supp. 3d 121, 137 (D.D.C. 2018) (granting a motion to strike claimants who

were beneficiaries of discretionary trusts because their rights were contingent on the discretion of

the trustees and they lacked present rights to any specific trust property; their interests therefore

were too hypothetical to create an actual case or controversy). Under this test, claiming a

residual or reversionary interest would be insufficient to confer Article III standing.

The Seventh Circuit has been more lenient. See United States v. 5 S 351 Tuthill

Rd., 233 F.3d at 1021-24, (applying an "actual stake in the outcome" test, finding that the sole

beneficiary to a land trust had standing because he had the right to any proceeds realized from

the sale of the property if it were sold). Perhaps claiming a residual or reversionary interest

could satisfy this more lenient standard. This Court need not reach this question today, however,

because Mr. Lazarenko has not shown by a preponderance of the evidence that he has a residual

and reversionary interest in the defendant asset. There is therefore no need to evaluate the effect

of that interest under U.S. federal law.

*B. Other Unclaimed Interests*

While Mr. Lazarenko has claimed only a "residual and reversionary" interest in the Balford Trust assets, his opposition to the United States' motion to strike his claim focuses on other types of purported interests, primarily various levels of ownership interests or control. As to these asserted interests, the United States contends that (1) Mr. Lazarenko has failed to show by a preponderance of the evidence that these asserted interests confer Article III standing on him as a claimant, and (2) that Mr. Lazarenko does not have statutory standing to assert any of these interests because he did not assert them in his claim. See Mot. to Strike at 2; U.S. Mem. in Support of Mot. to Strike at 22-24; Reply at 1.

In response, Mr. Lazarenko says that he does have statutory standing, arguing that he "announced his plan to amend his claim once this Court ruled on his motion for leave to amend" his answer and that his "proposed amendment clearly states that he is the beneficial owner" of the Balford Trust. Opp. at 8-9. But all that his motion to amend his answer said was that he <u>will</u> be "amending his claim to more accurately reflect his relationship with the Balford Trust." Mot. for Leave to Amend Answer at 3, n. 1. This is hardly a clear statement that he is claiming to be the beneficial owner of the Balford Trust. Further, Mr. Lazarenko has failed to amend his claim as he said he would. This Court granted Mr. Lazarenko's motion for leave to amend his answer in January 2017. See <u>United States v. All Assets Held at Bank Julius Baer & Co., Ltd.</u>, 229 F. Supp. 3d 62 (D.D.C. 2017). While Mr. Lazarenko represented that he would "amend his claim once this Court ruled on his motion for leave to amend," three years have passed without him doing so. See Opp. at 8.

The Court finds that Mr. Lazarenko lacks statutory standing to claim any interest in the Balford Trust assets other than a "residual and reversionary interest" because that is the

only interest he has included in his claim. Nevertheless, the Court will address each of Mr.

Lazarenko's asserted interests that are not in his claim based on the evidence he has proffered.

### 1.    Ownership Interest

In his opposition, Mr. Lazarenko argues that he is the beneficial owner of the

Balford Trust and that he has standing as a claimant due to his control over the trust as both

settlor and protector. But never does he himself claim that he owns the Balford Trust. Rather,

he points to the government's assertion in the amended complaint that he is the Trust's beneficial

owner, discussed <u>infra</u>  section III(B)(2).  There is no question that Mr. Lazarenko has not

claimed an ownership interest in the Balford Trust.  <u>See</u> Amended Claim at 5 (claiming only a

"residual and reversionary interest" in the Balford Trust).  Similarly, while Mr. Lazarenko now

characterizes his most recent answer to the amended compliant as making clear that he was the

beneficial owner of the Balford Trusts' assets, the text of his four answers belie that

characterization.  <u>See</u>  2009 Answer at ¶ 73; 2011 Answer at ¶ 81; 2017 Answer at ¶ 81; Second

2017 Answer at ¶ 81.  His answers make no response to the government's claim that he is the

beneficial owner.  Indeed, none of his answers even contain the words "beneficial owner."

In his opposition to the plaintiff's motion to strike his claim, Mr. Lazarenko

focuses his argument on his claimed control over the Balford Trust.  Opp. at 11-18.  While

control over a defendant asset may be evidence that would support a claim of an ownership

interest, Mr. Lazarenko – as just noted – has not actually claimed an ownership interest in the

Balford Trust.  <u>See</u> <u>All Assets IV</u>, 959 F. Supp. 2d at 100 (when assessing the "sufficiency and

probity of the evidence that purports to demonstrate a colorable <u>ownership interest</u>, courts

generally look to 'indicia of dominion and control such as possession, title, and financial stake'")

(emphasis added) (citing <u>United States v. $38,570 U.S. Currency</u>, 950 F.2d at 1113).  The

arguments regarding the impact of Mr. Lazarenko's roles as settlor and protector of the Balford Trust might have served as evidence of an ownership interest – but for the fact that Mr. Lazarenko has never claimed one – as discussed <u>infra</u> section III(B)(3).

In direct contradiction to the assertions in his opposition, Mr. Lazarenko has also disclaimed an ownership interest in the Balford Trust – or any other type of property interest. Mr. Lazarenko's counsel conceded that Mr. Lazarenko "does not have a property interest in the money in Guernsey," arguing that Mr. Lazarenko only has "equitable interests" in the Balford Trust. <u>See</u> June 2, 2016 Hearing Tr. at 30:17-23 [Appx. 700]. Accordingly, Mr. Lazarenko has not shown by a preponderance of the evidence that he has an ownership interest in the Balford Trust and lacks both statutory and Article III standing to make this claim.

## 2. Beneficial Owner

The amended complaint alleges that Mr. Lazarenko is the "beneficial owner" of the Balford Trust assets. Amended Complaint at ¶ 81. The parties disagree about what this term means. Mr. Lazarenko cites to an IRS publication that defines a beneficial owner as the "true owner of an [ ] asset[.]" Opp. at 6 (citing Appx. 793). The United States says that it used the term beneficial owner to mean that Mr. Lazarenko is the source of the funds in the trust, which is relevant to show that the funds are forfeitable, but not that he currently owns or has any interest in the funds now that they have been settled in the trust. Reply at 23.

It ultimately does not much matter what the definition of "beneficial owner" is, or whether that would confer standing under U.S. law, because in this case Mr. Lazarenko has not met his burden to show that he is one – whatever definition it may have. The first problem is the same as with Mr. Lazarenko's ownership argument: Mr. Lazarenko has never claimed that he is the owner or beneficial owner of the Balford Trust. <u>See</u> <u>supra</u> section III(C)(1); Amended Claim

at 5.  Further, both Guernsey trust law and the Balford Trust Declaration make clear that while the assets are held in trust, it is the trustees who have all the powers of the beneficial owner.  <u>See</u> Guernsey Trust Law at ¶ 30 [Appx. 370] ("a trustee has, in relation to the trust property, all the powers of a beneficial owner"); Trust Decl. at Sixth Schedule, ¶ 1 [Appx. 229] ("[T]he Trustees shall in relation to the Trust Fund have all the same powers as a natural person acting as the beneficial owner of such property.").

In his attempt to support his assertion that he is the beneficial owner of the Balford Trust, Mr. Lazarenko mischaracterizes some of the record evidence.  The form that lists "Pavlo Lazarenko" as the "beneficial owner" of the "assets concerned" is for the account number 0251-914499-4.  Appx. 263.  The Balford Trust consists of accounts 41610, 41950, and 41843. <u>See</u> Amended Complaint at ¶ 81; <u>see also</u> <u>id</u>. at ¶¶ 82-86.  The account referenced by the form for beneficial ownership is an account that was used to <u>fund</u> the Balford Trust in Guernsey.  <u>Id</u>. at ¶ 82-83.  The amended complaint recognizes that "Mr. Lazarenko was the signatory and beneficial owner of . . . account . . . 914499-4."  <u>Id</u>. at ¶ 82.  This form says nothing about what happened to Mr. Lazarenko's interest once he settled his assets into the Balford Trust in account 41610.  <u>Id</u>. at ¶ 83.

Mr. Lazarenko also references deposition testimony of Debra LaPrevotte, the case agent who verified the government's amended complaint, and a declaration from Charles Tonna, an IRS revenue agent.  Opp. at 6-7; 23.  He focuses on Ms. LaPrevotte's responses to questions about the amended complaint that characterize Mr. Lazarenko as the Balford Trusts' beneficial owner.  <u>See</u> Opp. at 7 (citing Appx. 798-99).  Ms. LaPrevotte makes clear that her investigation treated "bank account[s]" like "buckets" and the question she was trying to answer was whether "the money in that particular bucket . . . [was] derived from criminal proceeds."  Appx. at 798.

While Ms. LaPrevotte makes statements regarding the beneficial ownership of the Balford Trust in response to the questions at the deposition, she testifies that she was not focused on answering who owned each account, and "[o]ther people can debate who has the ultimate ownership of each account." Id. Given this context, Mr. Lazarenko's reliance on Ms. LaPrevotte's positive response to the question of whether Mr. Lazarenko was the beneficial owner of the Balford Trust is not "significantly probative" evidence of Mr. Lazarenko being the beneficial owner of the Balford Trust. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50. [5]

Similarly, Mr. Tonna's statement that "it is my belief that the funds" in the Balford Trust "belong to Mr. Pavlo Lazarenko and are under his control and dominion" is not as powerful as it may seem upon first glance. See Appx. 853. Like Ms. LaPrevotte, Mr. Tonna is not an expert in Guernsey trust law. The Court has the benefit of declarations from purported experts in Guernsey trust law from both parties – none of whom conclude that Mr. Lazarenko is the beneficial owner of the Balford Trust. A single statement from an IRS revenue agent therefore is likewise not "significantly probative" evidence demonstrating that Mr. Lazarenko is the beneficial owner of the Balford Trust. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50. Mr. Lazarenko has not shown by a preponderance of the evidence that he is the beneficial owner of the Balford Trust and lacks both statutory and Article III standing to make this claim.

3. Control

Mr. Lazarenko further argues that his control over the Balford Trust is evidence sufficient to confer standing. Opp. at 11-18. His argument differs, however, from the way control has been discussed in prior civil forfeiture cases. Evidence of "control" is usually used to

---

[5] "Q: And at that time, you determined that Mr. Lazarenko is the beneficial owner of the assets maintained in these accounts; is that correct? A: As well as his family members . . . That was my understanding from reading the documents in 2005." Appx. at 799.

support an ownership or possessory interest asserted by a claimant with legal title to the defendant <u>res</u> to ensure that the claimant is more than just a nominal owner. <u>See, e.g.</u>, <u>United States v. One 1990 Beechcraft</u>, 619 F.3d 1275, 1278-79 (11th Cir. 2010) (stating that claimants who were legal title holders of the defendant <u>res</u> must also show some "dominion or control . . . to prove [they are] not a mere nominee"); <u>United States v. Sum of $70,990,605</u>, 234 F. Supp. 3d 212, 230 (D.D.C. 2017) ("Courts have recognized that possession of mere legal title, without more, by one who does not exercise dominion and control over the property is insufficient even to establish standing to challenge a forfeiture.") (internal citations omitted). Here, Samante Limited has legal title to the Balford Trust as trustees, not Mr. Lazarenko. The case law also indicates that the typical "indicia of dominion and control" that would be supportive of an ownership interest would be "possession, title, and financial stake." <u>All Assets IV</u>, 959 F. Supp. 2d at 100. This is not the type of evidence Mr. Lazarenko has proffered. Nor could he. It cannot be disputed that the trustees have possession of and title to the Balford Trust. <u>See</u> Trust Decl. at ¶ 3 [Appx 220] ("The Trustees shall stand possessed of the Trust Fund."). So Mr. Lazarenko is left to argue that his powers as settlor and protector of the Balford Trust are sufficient evidence of dominion and control to confer standing.

The D.C. Circuit has left open the possibility that an interest other than an ownership or property interest can confer standing for a civil forfeiture claimant. <u>United States v. $17,900 in U.S. Currency</u>, 859 F.3d at 1090 ("In general, any colorable claim on the property suffices, – typically an ownership or possessory interest.") (internal citations omitted). In the end, "it is <u>injury</u> that is at the heart of the standing question." <u>United States v. Doraville Properties</u>, 299 F. Supp. 3d at 128 (emphasis in original). The question therefore is "whether the elimination of [the] claimant['s] interest amounts to an injury that is actual and concrete, rather

than conjectural or hypothetical." Id. at 135. This Court therefore will evaluate whether Mr. Lazarenko's asserted control over the Balford Trust means that he has suffered an "injury that can be redressed at least in part by the return of the seized property." United States v. $17,900 in U.S. Currency, 859 F.3d at 1090.

a.   Settlor

Mr. Lazarenko argues that the powers he has as the settlor of the Balford Trust give him standing as a claimant. Opp. at 11-13. As settlor, Mr. Lazarenko can write a letter of wishes to the trustees, asking them to take an action. Mr. Lazarenko argues that his ability to write a letter of wishes gives him "more authority over the Trust than the Trustees." Opp. at 16. But all the evidence presented undermines this broad assertion. The letters of wishes that Mr. Lazarenko wrote to the trustees in 1997 and 1998 directly acknowledge that "I appreciate you are in no way legally bound to have regard to any views or wishes I may have concerning the Trust," asking the trustees to "bear [his views] in mind when exercising any of the powers and discretions conferred on you by the Trust." See April 8, 1997 Letter of Wishes [Appx. 243]; Feb. 6, 1998 Letter of Wishes [Appx. 242]. Guernsey trust law provides that a settlor may write letters of wishes "intimating how the settlor . . . wishes the trustees to exercise any of their functions," but it says nothing about these letters being binding on the trustees or overriding their discretion. Guernsey Trust Law at ¶ 38(2) [Appx. 375]. Mr. Lazarenko's expert says that settlor's letters of wishes "are not binding" on the trustees, and while the trustees "take into account" the settlor's wishes, they "may properly act contrary to the expressed wishes of the settlor." Le Poidevin Decl. at 8, ¶¶ 44-45. The ability to write a letter of wishes as settlor is therefore – in Mr. Lazarenko's own words – merely a "suggestion" that does not constitute control over the Balford Trust indicative of an ownership interest. See Opp. at 11.

The fact that the trustees at one point took an action that Mr. Lazarenko requested in a letter of wishes does not mean that he, as settlor, controls the trustees.  See Opp. at 16-17 (noting that Mr. Lazarenko asked the trustees to transfer the trust funds from Geneva to Guernsey, which they did).  It is proper for the trustees to take the settlor's wishes into account, and letters of wishes are a "relevant consideration" for the trustees when they exercise their functions.  Davidson Decl. at 11, ¶ 41; see also Le Poidevin Decl. at 8, ¶ 44.  But by choosing – in their discretion – to acquiesce to the settlor's wish, the trustees are not ceding control to the settlor.

Other record evidence indicates that the trustees have not always acquiesced to Mr. Lazarenko's requests in his letter of wishes, and therefore the ability to write these letters does not mean Mr. Lazarenko controls the trustees.  Taking as true Mr. Lazarenko's characterization of the April 8, 1997 letter of wishes – that in this letter he requested that the trustees make him a beneficiary – there is no evidence that the trustees in fact subsequently added Mr. Lazarenko as a beneficiary.  See Appx. 243.

The IRS glossary of terms that Mr. Lazarenko cites does not undermine this conclusion.  See Opp. at 11-12 (citing Appx. 794).  While the glossary notes that a letter of wishes is generally "honored as if it were a binding legal document," it also notes that trustees are "not bound" by the letter.  See Opp. at 12 (citing Appx. 794).  The turn of phrase the IRS glossary uses to emphasize the persuasiveness of a letter of wishes – which says nothing about the interest a letter of wishes may confer on a settlor under Guernsey law – does not mean these letters are actually binding legal documents.  Indeed, the IRS glossary goes on to note that letters of wishes do nothing to undermine the trustees' discretion.  See Opp. at 12 (citing Appx. 794) ("The trustee may consider the letter but is not bound or otherwise accountable by its terms.").

Pointing to another power he has as settlor, Mr. Lazarenko next argues that his ability to sue gives him standing. Opp. at 12-13 (citing Guernsey Trust Law at ¶ 69(1)(a) [Appx. 395-96]). But the government is correct in its response that this Guernsey law allowing anyone – not just trust settlors – to go to a Guernsey court to request relief says nothing about a settlor's interest in the trust. See Reply at 7-8. If the ability to go to court under Section 69 conferred standing, anyone could legitimately claim to have standing as a claimant for the Balford Trust. This cannot be so. The Court concludes that Mr. Lazarenko has failed to show that his powers as settlor of the Balford Trust demonstrate control over the Balford Trust sufficient to suggest an ownership interest. His powers as settlor therefore fail to give him standing.

b.   Protector

Mr. Lazarenko also argues that the powers he has as the protector of the Balford Trust give him standing as a claimant. Opp. at 13-18. Under the Balford Trust, certain powers of the trustees require the consent of the protector. See supra section I(C) at 8-9. But Mr. Lazarenko's argument fails for two reasons: he doesn't point to any authority saying that his power to veto certain actions of the trustees confers an interest in the Balford Trust under Guernsey law, and he misapplies the authorities on which he relies.

Mr. Lazarenko's reliance on a smattering of U.S. laws and cases that do not even address civil forfeiture standing are not helpful in determining whether his protector powers give him any interest in the Balford Trust under Guernsey law. See Opp. at 13-18 (citing to U.S. federal tax law, and U.S. federal and Tax Court decisions).

The only forfeiture action Mr. Lazarenko references leads to the opposite conclusion than the one Mr. Lazarenko draws. The ability to veto a distribution from the trust does not rise to the level of Mr. Lazarenko "jointly hold[ing] the checkbook" with the trustees, as

Mr. Lazarenko contends.  See Opp. at 17.  In making this argument, Mr. Lazarenko relies on

United States v. U.S. Currency, $81,000, 189 F.3d 28 (1st Cir. 1999).  In that case, the First

Circuit found that John Bulger exercised dominion and control over the account he held jointly

with his brother, Whitey Bulger, because John received statements from the account at his

residence, had physical possession of the checkbook, wrote checks drawn on the account, and

made withdrawals from the account.  Id. at 39-40.  Mr. Lazarenko can do none of those things.

The trustees receive the relevant statements.  See Opp. at 17 (citing Appx. 271).  The trustees

have possession of the trust.  See Trust Decl. at ¶ 3 [Appx 220] ("The Trustees shall stand

possessed of the Trust Fund.").  The trustees are the only ones with the power to issue

distributions from the trust.  Id. at ¶ 3(a) [Appx 220].

        While – as already discussed – evidence of control has been assessed by courts as

evidence that may support an ownership interest, there are no cases cited by the parties that

indicate how much control – absent a claim of an ownership interest – would be sufficient to

confer standing on a claimant.  When presented with a motion to strike as a summary judgment

motion, courts evaluate whether the claimant has suffered an "injury that can be redressed at

least in part by the return of the seized property."  United States v. $17,900 in U.S. Currency,

859 F.3d at 1090.  Assessing Mr. Lazarenko's powers as protector in this light, the United States

points out that he has no affirmative powers over the trust assets:  his veto power is only a

negative power, and only affirmative powers over the trust assets would constitute evidence of

control.  U.S. Mem. in Support of Mot. to Strike at 34-36.  There is no doubt that the power to

veto many actions taken by the trustees – including the distribution of the trust funds to the

beneficiaries – is significant.  But even if Mr. Lazarenko were to exercise his protector powers

and refuse to consent every time the trustees wanted to make a distribution to the beneficiaries,

the result would be that the funds would remain in the Balford Trust until the expiration of the trust period; they could not revert to Mr. Lazarenko. Then, upon the trust's expiration – even if Mr. Lazarenko continued to refuse to consent to the funds being distributed to the beneficiaries – the funds would ultimately be given to UNESCO. Trust Decl. at ¶ 3(e) [Appx. 220]. Thus, even when exercising his protector powers to their full extent, Mr. Lazarenko's ability to veto trust distributions or other actions by the trustees never gives Mr. Lazarenko an interest in the assets themselves. The Court therefore finds Mr. Lazarenko's protector powers insufficient to confer standing on him as a claimant because as protector he is not injured by the forfeiture of the trust assets.

### 4. Pavel Lazarenko's Status as a Beneficiary

Mr. Lazarenko's brief makes conflicting statements regarding his status as a beneficiary of the Balford Trust. At one point, he says he is currently a beneficiary because his February 6, 1998 letter of wishes "named Mr. Lazarenko . . . as one of the beneficiaries." <u>See</u> Opp. at 11 (citing Appx. 242). Later, he says that the same letter of wishes asking the trustees to "regard any assets that I may transfer to them as . . . being available to meet the contingent requirements of Mr. Pavlo Lazarenko" means that "Mr. Lazarenko is on equal footing with his children and his wife," so while he is not necessarily a named beneficiary, effectively he is one. <u>See</u> Opp. at 19 (citing Appx. 337). Slightly different still, Mr. Lazarenko asserts that <u>in the future</u> he <u>could</u> write a letter of wishes telling the trustees to make him a beneficiary at any time, and the trustees would be "obligated to accept this request." <u>See</u> Opp. at 20 (citing Le Poidevin Decl. at 13, ¶¶ 65-66).

a. Mr. Lazarenko is Not a Beneficiary

There is no evidence to support Mr. Lazarenko's claim that he is currently a beneficiary of the Balford Trust. Mr. Lazarenko's attorney conceded that Mr. Lazarenko is not a beneficiary of the Balford Trust during the June 6, 2016 hearing. See June 6, 2016 Hearing Transcript [Dkt. No. 700] at 30:17-20 (stating that Mr. Lazarenko is "not a beneficiary of the trust"). The Trustee of the Balford Trust similarly stated that "Mr. Lazarenko is not a beneficiary of the Trust." See Letter from Carey Olsen to Advocate N. Barnes (Aug. 11, 2005) [Appx 663-64]. And Mr. Lazarenko's own expert states that Mr. Lazarenko is not a beneficiary of the Balford Trust. Le Poidevin Decl. at 13, ¶ 66 ("Mr. Lazarenko is not presently a Beneficiary of the Balford Trust and has no beneficial interest under it."). The Trust Declaration specifies that new beneficiaries must be added by written deed, but there is no such deed adding Mr. Lazarenko as a beneficiary. Even the language of the February 6, 1998 Letter of Wishes that Mr. Lazarenko claims makes him a beneficiary fails to support Mr. Lazarenko's assertion that it asks the trustees to add him as a beneficiary. The letter says nothing about adding a beneficiary; it asks the trustees to regard the assets as "available to meet the contingent requirements of Mr. Pavlo Lazarenko." Appx. 337. But the letter goes on to say that the trustees should "hold the trust funds as the income and capital for" the beneficiaries named in the trust declaration – Tamara, Alexandre, Kateryna, and Lesya – 25% each. Id. The Court therefore finds that Mr. Lazarenko cannot meet his burden to establish that he is a beneficiary of the Balford Trust.

b. The Potential to be Named a Beneficiary Does Not Confer Standing

Alternatively, Mr. Lazarenko's assertion that his potential to be named as a beneficiary in the future does not give him standing. Mr. Lazarenko could write a letter of wishes asking the trustees to add him as a beneficiary. But as discussed supra section

III(B)(3)(a), his letter of wishes does not constrain the trustees' discretion. Even if the trustees are more inclined to consider a request to add Mr. Lazarenko as a beneficiary than any other random person, see Le Poidevin Decl. at 12-13, ¶¶ 64-66, this is still purely hypothetical and does nothing to demonstrate a colorable interest in the Balford Trust.

5. Pavel Lazarenko as a Co-Trustee

Mr. Lazarenko asserts that he is a "co-trustee" of the Balford Trust because he can veto the trustees' actions as protector. Opp. at 16 ("Mr. Lazarenko's veto power alone makes him a co-trustee."). But Mr. Lazarenko cannot cite to any sources that deal with Guernsey law to support this farfetched claim. [6] Neither of Mr. Lazarenko's experts asserts that Mr. Lazarenko is

---

[6] Rather than citing to sources about Guernsey law, Mr. Lazarenko invokes the ALI's Restatement, Third, of Trusts to argue that his veto power as protector makes him a co-trustee of the Balford Trust. See Opp. at 16. This argument carries no weight for a multitude of reasons. First, the Restatement is specific to U.S. law and says nothing about Guernsey law.

Second, Mr. Lazarenko cites only to the Reporter's Notes, which do not reflect the official position of the American Law Institute. They "are regarded as the work of the Reporter (or Reporters), which are submitted for review together with the other components of the Section to which they pertain. Reporter's Notes set forth and discuss the legal and other sources relied upon by the Reporter in formulating the black letter and Comment and enable the reader better to evaluate these formulations...." American Law Institute, ALI Style Manual 45 (2015), available at https://www.ali.org/media/filer_public/08/f2/08f2f7c7-29c7-4de1-8c02-d66f5b05a6bb/ali-style-manual.pdf.

Third, Mr. Lazarenko takes the chosen quote out of context. The Reporters Notes on comment b-f that Mr. Lazarenko quotes distinguishes the trustee's fiduciary obligations when a third party has power to affirmatively direct an action as opposed to the trustee's fiduciary obligations when a third party only has the power to veto certain actions by the trustee. See Restatement, Third, Trusts § 75, Reporters Notes on comment b-f at 60. ("A power to direct must be distinguished from a veto power."). The Reporters state that when a third party has power to affirmatively direct and initiate an action, "the trustee usually has no responsibility other than to carry out the direction when made." Id. But if a third party holds only a veto power, a "trustee who administers a trust subject to a veto power occupies a position akin to that of a cotrustee" because the trustee "is responsible for taking appropriate action if the third party's refusal to consent would result in a serious breach of trust." Id. In other words, a trustee retains all his fiduciary duties when administering a trust subject to a third party veto. By contrast, a trustee administering a trust subject to a third party with affirmative powers has some lessened

considered a co-trustee under Guernsey law. Both Guernsey law and the Balford Trust declaration indicate the opposite. Guernsey law specifically lays out a multitude of powers that – if reserved or granted by the settlor to the settlor or any other person – do not invalidate the trust. Guernsey Trust Law at ¶ 15 [Appx. 360-61]. These powers include a power to "restrict the exercise of any function of a trustee by requiring that it may only be exercised with the consent of the settlor or any other person identified in the terms of the trust." Id. at ¶ 15(1)(h) [Appx. 361]. The protector's veto power is just that. Guernsey law addresses this reservation of power and specifically says that it does not make the holder of that power a trustee. Id. at ¶ 15(2)(a) [Appx. 361]. Further, the Balford Trust Declaration specifies how new or additional trustees may be appointed: the existing trustees are the ones who can appoint new trustees. Trust Decl. at ¶ 15(a) [Appx. 223]. If the trustees choose to do so, that decision must be memorialized in writing and "permanently annexed" to the Balford Trust Declaration, "stating the names of the trustees." Id. at ¶ 15(e) [Appx. 224]. Furthermore, it "shall be signed by the persons so named" so that others can be "entitled to rely upon such memorandum . . . as sufficient evidence that the trustees named therein are the duly constituted trustees." Id. The only trustees named in the Balford Trust Declaration are Samante Limited, and no memorandum has been added declaring new trustees. See id. at Establishment Checklist [Appx. 215]. Mr. Lazarenko has provided no evidence that he is a co-trustee of the Balford Trust.

### 6.    Conjectural Interests

Mr. Lazarenko also points to various actions the trustees might take for him in the future as providing him a sufficient interest in the trust to confer standing. He is correct that the

---

fiduciary obligations when following the third party's directive. The focus of this passage is the fiduciary obligations of the trustee. Nothing in this passage elevates the third party with a veto power to a co-trustee under U.S. law, let alone under the law of Guernsey.

trust declaration allows the trustees to "[l]end . . . any part of the Trust Fund to any person whether or not such person is a Beneficiary." Trust Decl. at Sixth Schedule ¶ 10(a) [Appx. 234]. The trust declaration also allows the purchase or "improvement of any property as a residence for any person and the purchase of chattels for the use of any person" and the purchase of "bullion, works of art and jewellery [sic]" as "an authorised [sic] investment" of the trust fund. Id. at Sixth Schedule ¶ 2(a) and (c) [Appx. 229]. So it is possible that the trustees could purchase a home for Mr. Lazarenko as he suggests. See Opp. at 19. This future possibility does not, however, give Mr. Lazarenko an interest in the Balford Trust and he cites to nothing that suggests that it does. Under the language of the trust declaration, the trustees could purchase a home for "any person" or lend funds to "any person whether or not such person is a Beneficiary." Trust Decl. at Sixth Schedule ¶¶ 2(a) and 10 [Appx. 229, 234]. If the Court were to accept Mr. Lazarenko's argument, then anyone could have standing as a claimant to the Balford Trust funds. Mr. Lazarenko's hope that the trustees may exercise their discretion to "one day favor" him is insufficient for standing. See United States v. Doraville Properties, 299 F. Supp. 3d at 134. These provisions of the trust declaration are too hypothetical to give Mr. Lazarenko an interest in the trust assets sufficient for standing.

### C. Other Standing Arguments

Mr. Lazarenko makes a handful of other standing arguments in his opposition to the United States' motion to strike his claim to the Balford Trust. These arguments ignore the requirement that at this stage of the litigation – where the United States has filed a motion to strike his claim as a summary judgement motion – the burden is on Mr. Lazarenko to establish standing by a preponderance of the evidence. See, e.g., United States v. $17,900 in U.S.

*Currency*, 859 F.3d at 1089; Supp. R. G (8)(c)(ii)(B). Mr. Lazarenko argues that he has standing without even needing to meet this burden. His arguments must be rejected.

1. Standing Based on the Complaint

Mr. Lazarenko first argues that the complaint alone confers standing on him as a claimant because the complaint alleges that he is the beneficial owner of the Balford Trust. Opp. at 5-6. In support of this argument, Mr. Lazarenko relies on *United States v. Real Prop. Located at 17 Coon Creek Road*, 787 F.3d 968 (9th Cir. 2015), and *United States v. $38,570 U.S. Currency*, 950 F.2d 1108 (5th Cir. 1992). See Opp. at 5-6. But Mr. Lazarenko is wrong to characterize these cases as concluding that allegations in the complaint, alone, can confer standing. In both cases, a key factor to finding that the claimant had standing was that the claimant's verified claim asserted that the claimant had an ownership interest in the defendant assets. See *United States v. $38,570 U.S. Currency*, 950 F.2d at 1113 (holding that "[the claimant's] claim of ownership," in the verified claim, "coupled with the government's allegations of [the claimant's] involvement with the seized res" in the complaint, are sufficient to establish standing); *United States v. Real Prop. Located at 17 Coon Creek Road*, 787 F.3d at 977 (holding that standing "cannot reasonably be disputed" where "both parties alleged" – in the plaintiff's complaint and the claimant's verified claim – that [the claimant] was the 'recorded owner' of the property"). Mr. Lazarenko's claim does not assert an ownership interest in the Balford Trust, see Amended Claim at 5, rendering these cases inapposite.

A further distinction from the cases relied on by Mr. Lazarenko is that here the United States disputes that its complaint admits Mr. Lazarenko's relationship to the Balford Trust. The complaint asserts that Mr. Lazarenko is the "beneficial owner" of the assets that make up the Balford Trust. Amended Complaint at ¶ 81. The complaint goes on to describe the

origins of the defendant assets in the Balford Trust, noting that they came from various bank accounts in Mr. Lazarenko's name and Tamara Lazarenko's name (Mr. Lazarenko's wife at the time). Id. at ¶¶ 81-86. While Mr. Lazarenko characterizes the complaint's statement that he is the "beneficial owner" of the Balford Trust as an admission by the United States that he currently owns the assets, the United States insists that it used the term "beneficial owner" to identify Mr. Lazarenko as the source of the funds now held in the Balford Trust, but not as the current owner of the trust. Compare U.S. Mem. in Support of Mot. to Strike at 26-27 with Opp. at 6-7, 23. With the definition of "beneficial owner" in question, the Court concludes that the complaint alone does not confer standing on Mr. Lazarenko.

### 2. Standing Based on Judicial Estoppel

Mr. Lazarenko argues that his standing as a claimant in the Balford Trust can be derived solely from requests and representations made by the government in his criminal prosecution in California, and earlier in this civil forfeiture case. See Opp. at 6-7, 22-24. He first points to the fact that during his criminal prosecution, the United States requested that Mr. Lazarenko post the funds from the Balford Trust as bond. Opp. at 22-23. He also argues that the United States should be precluded from challenging his standing as a claimant in this case because it has previously asserted that he owns the defendant funds. Opp. at 22-24. And finally, he highlights deposition testimony from the case agent who verified the complaint and amended complaint in this case that supports the amended complaint's allegations that he is the beneficial owner of the Balford Trust. Opp. at 6-7 (citing Appx. 798-99). Mr. Lazarenko argues that the United States should therefore be estopped from now challenging his standing as a claimant to the Balford Trust. Opp. at 20-22.

As a threshold matter, the United States is correct when it notes that because standing is a jurisdictional issue, judicial estoppel cannot apply. Reply at 22. This Court has previously noted that "a court being unable to strike a claim over which it lacks subject matter jurisdiction" would be an "absurd result." All Assets V, 228 F. Supp. 3d at 124. "No action of the parties can confer subject-matter jurisdiction upon a federal court." Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982) (noting that "principles of estoppel do not apply" to the question of subject matter jurisdiction).

Even so, Mr. Lazarenko's estoppel argument also fails on the merits. "Judicial estoppel 'prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'" Marshall v. Honeywell Tech. Sys. Inc., 828 F.3d 923, 928 (D.C. Cir. 2016) (quoting New Hampshire v. Maine, 532 U.S. 742, 749 (2001)). "Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion." New Hampshire v. Maine, 532 U.S. at 750 (internal quotation marks omitted). The Supreme Court has enumerated three non-exhaustive factors that inform the Court's decision of whether to invoke the rule: (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 750-51 (internal quotation marks omitted).

The United States' response to Mr. Lazarenko's argument shows that the second factor cuts strongly against Mr. Lazarenko. While the United States did request that Mr.

Lazarenko post the Balford Trust assets as bond in the California federal prosecution, they were ultimately never posted as bond for a key reason: because the trustees refused. Reply at 15. While the request indicates that, at the time it made the request, the United States likely believed, or at least hoped, that Mr. Lazarenko had control over the Balford Trust, the request alone says nothing about whether Mr. Lazarenko actually has an interest in the Balford Trust.

### D. U.S. Tax Law

Mr. Lazarenko launches a series of arguments grounded in U.S. tax law to support his claim to the Balford Trust. He argues that his power as protector to veto trust distributions renders the trust a grantor trust under U.S. law, where the grantor is considered the owner. Opp. at 17-18. He argues that he would have to pay a U.S. estate tax on the assets in the Balford Trust upon his death. Opp. at 24. He argues that his power to veto trust distributions as protector also renders the trust assets part of his gross estate at his death under U.S. tax law. Opp. at 25. The United States responds that these arguments (1) are speculative – Mr. Lazarenko has never filed tax returns in the United States indicating that the Balford Trust is a grantor trust, (2) misstates the law – the United States disagrees that the Balford Trust assets would be subject to U.S. estate taxes or constitute a grantor trust, and (3) even taking them as true, these arguments about potential U.S. tax obligations say nothing about Mr. Lazarenko's interest in the assets under Guernsey law. Reply at 20-22.

The United States is right in that Mr. Lazarenko cannot bypass the requirement to determine his interest in the Balford Trust under Guernsey law – the nation in which the interest arose – by looking instead at U.S. tax treatment of the Balford Trust. See Reply at 20; see also All Assets IV, 959 F. Supp. 2d at 96 ("The nature of a claimant's asserted property interest is 'defined by the law of the State' – or here, nation – 'in which the interest arose.'") (citing United

States v. One Lincoln Navigator, 328 F.3d at 1013).  The Court need not determine whether U.S.

tax law would treat the Balford Trust as a grantor trust, or whether the Balford Trust would be

deemed part of Mr. Lazarenko's estate for tax purposes upon his death.  Those potential U.S. tax

implications have no bearing on what interest Mr. Lazarenko has in the Balford Trust under

Guernsey law, which is what he must show by a preponderance of the evidence.

### E.  Access to Records

The United States argues that Mr. Lazarenko's inability to access records about

the Balford Trust supports the conclusion that he has no control over or interest in the Balford

Trust.  U.S. Mem. in Support of Mot. to Strike at 37-38.  Mr. Lazarenko explains that he couldn't

access records about the Balford Trust because of the ongoing litigation and the Court shouldn't

construe this as evidence that he does not have control over the trust.  Opp. at 26-28.  The Court

need not consider the ability of Mr. Lazarenko to access records about the Balford Trust for

purposes of determining his standing as a claimant because the ability to seek information about

the trust "says nothing about whether claimants have any colorable interest in specific assets of

the trust."  United States v. Doraville Properties, 299 F. Supp. 3d at 134.

### F.  Equitable Arguments

Finally, both sides include arguments about how a decision in their favor is the

most equitable.  The United States argues that Mr. Lazarenko created the Balford Trust for the

purpose of protecting his assets from creditors.  In doing so he divested himself of ownership of

the property, and it would be inequitable for him to be able to come forward now and say that

while he does not have legal ownership he has sufficient control over the trust to be its beneficial

owner and challenge the forfeiture.  See U.S. Mem. in Support of Mot. to Strike at 39-41.  But

the Court must keep in mind that this opinion addresses only the constitutional standing part of

the inquiry, which it "should not . . . conflate" with the "merits determination that comes later." United States v. $17,900 in U.S. Currency, 859 F.3d at 1091 (citing United States v. One-Sixth Share, 326 F.3d at 41). If a claimant establishes standing, it is the government's burden to prove on the merits that the property is subject to forfeiture. See 18 U.S.C. § 983(c)(1). If the government meets that burden, only then must the claimant prove that his property is "unconnected to unlawful activity." United States v. $17,900 in U.S. Currency, 859 F.3d at 1091. It is only at the merits stage that the Court should consider the propriety of the claimant's interest.

Mr. Lazarenko argues that the Court should find that he has standing because it is possible that no one else has standing – so Mr. Lazarenko's claim is the only one that will put the government to its burden of proof on the merits. See Opp. at 42-45. But the "absence of an alternative claimant" does not relieve Mr. Lazarenko of his burden to show that he can "satisfy the dictates of Article III standing." United States v. Sum of $70,990,605, 234 F. Supp. 3d at 227 (noting that "the Supreme Court has repeatedly emphasized [that] the assumption that if claimants have no standing to sue, no one would have standing is not a reason to find standing") (internal citations omitted).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the United States' motion to strike Pavel Lazarenko's claim to the Balford Trust. An Order consistent with this Opinion will issue this same day.

SO ORDERED.

/s/
PAUL L. FRIEDMAN
DATE:  April 2, 2020                    United States District Judge