UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
UNITED STATES OF AMERICA,               )
                                        )
        Plaintiff,                      )
                                        )
    v.                                  )        Civil Action No. 04-0798 (PLF)
                                        )
ALL ASSETS HELD AT BANK JULIUS          )
Baer & Company, Ltd., Guernsey          )
Branch, account number 121128, in the   )
Name of Pavlo Lazarenko et al.,         )
                                        )
        Defendants In Rem.              )
_____ )


OPINION

        This matter is before the Court on the motion of the United States [Dkt. No. 1275]

to strike the claim of Pavel Lazarenko, also known as Pavlo Lazarenko, to the defendant assets

held in the name of Beranco Engineering Establishments, Ylorex Establishments, and Tanas AG

in Liechtenstein, and all assets traceable thereto (collectively, "Liechtenstein Accounts").  Also

before the Court is Mr. Lazarenko's cross-motion [Dkt. No. 1319] to amend his amended claim.

Upon consideration of the parties' written submissions, the relevant legal authorities, and the

entire record in this case, the Court will grant the motion to strike Mr. Lazarenko's claim to the

Liechtenstein Accounts and deny Mr. Lazarenko's cross-motion.[1]

_____

[1]        The documents reviewed in connection with the United States' motion to strike
include: the verified complaint for forfeiture in rem ("Complaint") [Dkt No. 1]; the first amended
verified complaint for forfeiture in rem ("Amended Complaint") [Dkt. No. 20]; Mr. Lazarenko's
claim to the amended complaint ("Amended Claim") [Dkt. No. 29]; Mr. Lazarenko's answer to
the amended complaint, 2011 ("2011 Answer") [Dkt. No. 268]; the United States' first set of
interrogatories to claimant Pavel Lazarenko ("US Interrog.") [Dkt. No. 365-2]; Mr. Lazarenko's
amended answer to the amended complaint, Feb. 2017 ("2017 Answer") [Dkt. No. 882];

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  History of this Civil Forfeiture Proceeding

The Court's prior opinions summarize the factual and procedural history of this case, starting with the criminal prosecution of Mr. Lazarenko in 2004 and continuing through this long-running in rem civil forfeiture proceeding.  See, e.g., United States v. All Assets Held at Bank Julius, Baer & Company, Ltd. ("All Assets VI"), 228 F. Supp. 3d 118, 120-21 (D.D.C. 2017); United States v. All Assets Held at Bank Julius Baer & Co. ("All Assets V"), 307 F.R.D. 249, 250-51 (D.D.C. 2014); United States v. All Assets Held at Bank Julius Baer & Co., Ltd. ("All Assets IV"), 959 F. Supp. 2d 81, 84-93 (D.D.C. 2013); United States v. All Assets Held at Bank Julius Baer & Co., Ltd. ("All Assets III"), 772 F. Supp. 2d 205, 207-08 (D.D.C. 2011); United States v. All Assets Held at Bank Julius Baer & Co., Ltd. ("All Assets II"), 664 F. Supp. 2d 97, 104-05 (D.D.C. 2009); United States v. All Assets Held at Bank Julius Baer & Co., Ltd. ("All Assets I"), 571 F. Supp. 2d 1, 3-6 (D.D.C. 2008).  In brief, Mr.

---

Mr. Lazarenko's second amended answer to the amended complaint, Aug. 2017 ("Second 2017 Answer") [Dkt. No. 998]; Mr. Lazarenko's notice of withdrawal of claim to account 0153633 in the name of Tanas AG ("Withdrawal") [Dkt. No. 1144]; the United States' motion to strike Mr. Lazarenko's claim from the Liechtenstein assets ("Mot. Strike") [Dkt. No. 1275]; the United States' memorandum in support of its motion to strike claimant Mr. Lazarenko's claim to the Liechtenstein assets ("Mem. Mot. Strike") [Dkt. No. 1275-1]; the United States' appendix accompanying its motion to strike Mr. Lazarenko's claim to the Liechtenstein assets ("US App'x") [Dkt. Nos. 1275-3 through 1275-6]; translations of portions of the US App'x ("Translations") [Dkt. No. 1275-7]; Mr. Lazarenko's opposition and cross-motion to amend his amended claim ("Opp.") [Dkt. No. 1319]; the 2020 Liechtenstein order freezing Mr. Lazarenko's Liechtenstein assets ("Freeze Order") [Dkt. No. 1319-5]; excerpts from the Liechtenstein criminal code ("Crim. Code") [Dkt. No. 1319-7]; Mr. Lazarenko's proposed amendment to his amended claim ("Prop. Amend.") [Dkt. No. 1321-1]; the United States' reply in support of its motion to strike and opposition to Mr. Lazarenko's cross-motion to amend ("US Reply and Opp.") [Dkt. No. 1338]; Mr. Lazarenko's reply in support of his motion to amend ("Lazarenko Reply") [Dkt. No. 1347]; additional excerpts from the Liechtenstein criminal code ("Crim. Code 2") [Dkt. No. 1347-1]; and the Liechtenstein statute on mutual legal assistance ("Mutual Assistance Statute") [Dkt. No. 1347-2].

Lazarenko was "a prominent Ukrainian politician who, with the aid of various associates, was 'able to acquire hundreds of millions of United States dollars through a variety of acts of fraud, extortion, bribery, misappropriation and/or embezzlement' committed during the 1990s." All Assets IV, 959 F. Supp. 2d at 85 (quoting the Amended Complaint ¶¶ 1, 10).

In May 2004, the United States filed an in rem forfeiture complaint seeking forfeiture of various funds on deposit in foreign bank accounts in Guernsey and Antigua and Barbuda. Complaint ¶ 1. The following year, in June 2005, the United States filed an amended complaint identifying additional accounts for forfeiture, including "[a]ll assets held at various accounts in Liechtenstein." Amended Complaint ¶ 5(i). The complaint states that

> [t]hese defendant assets were last valued at the equivalent of approximately $7 million in United States dollars and are held at:
>
> (i)    Verwaltungs-und PrivatBank AG account number 325.295.900, in the name of Beranco Engineering Establishments;
> (ii)   Verwaltungs-und PrivatBank AG account number 326.284.900, in the name of Ylorex Establishments;
> (iii)  LGT Bank in Liechtenstein AG account numbers 0153633 AB and 0153633 AC, in the name of Tanas AG;
> (iv)   Liechtensteinische Landesank AG in the name of NRKTO 7541 or Pavlo Lazarenko, including in, but not limited to, account numbers 527.908.09, 187.764.68, and 187.775.88.

Id. ¶ 5(i)(i-iv). The complaint also names "all assets traceable" to the Liechtenstein accounts as defendants in rem. Amended Complaint ¶ 5(j). The complaint alleges that Mr. Lazarenko sought to conceal and layer criminal proceeds by "creating and causing the creation of various shell corporations and trusts and through the opening of numerous bank accounts," into which Mr. Lazarenko "and his associates would deposit or direct the deposit of money from individuals and businesses in Ukraine, and transfer or direct the transfer of money to Lazarenko or to entities he and his associates controlled." Id. ¶ 55. The Liechtenstein Accounts are among those into which Mr. Lazarenko "transferred the proceeds of [his] criminal conduct." See id. ¶ 77.

The complaint goes on to explain the timeline of the transfer of funds into the Liechtenstein Accounts; it states that "[b]etween approximately April 16 and August 8, 1998, Lazarenko opened several bank accounts in Liechtenstein, including various accounts at Liechtensteinische Landesbank AG and at least three accounts at LGT Bank in Liechtenstein AG."  Amended Complaint ¶ 114.  It further states that Mr. Lazarenko "was the beneficial owner of [those accounts], as well as the assets held in [those] accounts."  Id.  The complaint then alleges that in September 1999, assets with a total value of approximately $7 million in United States dollars were withdrawn from those accounts and deposited "into account number 325.295.900, in the name of Beranco Engineering Establishment at Verwaltungs-und PrivatBank: AG; account number 326.284.900, in the name of Ylorex Establishment at Verwaltungs-und PrivatBank: AG; account numbers 0153633 AB an 0153633 AC, in the name of Tanas AG at LGT Bank in Liechtenstein AG; and Lazarenko's NRKTO 7541 accounts at Liechtensteinische Landesbank AG."  Id. ¶ 119.

In July 2005, Mr. Lazarenko filed a verified claim in response to the United States' amended complaint.  See Amended Claim.  In his amended claim, Mr. Lazarenko stated that he "claims" all assets held in the Liechtenstein Accounts.  See id. at 1, ¶ 8.  He did not specify the nature of his interest in the assets.  See id. at 5.  In July 2005, Mr. Lazarenko also filed a motion to dismiss the amended complaint, which this Court denied in March 2007.  All Assets I, 571 F. Supp. 2d at 3.  Six years later, in November 2011, Mr. Lazarenko filed an answer to the amended complaint in which he "admit[ted] that the accounts in the name of Beranco Engineering, Ylorex Establishment and Tanas AG contain funds of which he is the beneficial owner."  2011 Answer ¶ 119.

On February 16, 2016, Mr. Lazarenko filed his fifth supplemental response to the United States' set of interrogatories.  <u>See</u> US App'x at 729.  In his interrogatory responses, Mr. Lazarenko states that he "has a legal interest in [the Liechtenstein Accounts] under the relation back doctrine."  <u>Id</u>. at 730.  He further states that "if the funds are forfeited to the United States, he cannot use the funds to pay [a] possible judgment to Ukraine."  <u>Id</u>.  Finally, his interrogatory responses state that he is the "owner" of the Liechtenstein Assets, <u>id</u>. at 731, and that he "knows that these funds belong to him but cannot identify the source of the funds without additional records," <u>id</u>. at 743.

Also in 2016, the United States filed a motion to strike Mr. Lazarenko's claim to the Balford Trust assets identified in the amended complaint.  <u>See</u> <u>United States v. All Assets Held at Bank Julius</u> ("<u>All Assets VII</u>"), Civil Action No. 04-0798, 2020 WL 1615870, at *3 (D.D.C. Apr. 2, 2020).  The United States argued that Mr. Lazarenko lacked constitutional standing to assert an interest in the Balford Trust because he had no ownership interest in the assets and did not "have a right to benefit from them."  <u>Id</u>. at *10.  The United States also pointed out that Mr. Lazarenko's amended claim asserted only a "residual and reversionary interest" in the Balford Trust, and argued that such an interest was insufficient to confer statutory standing.  <u>Id</u>. (quoting the Amended Claim at 5).

After conducting a painstaking and comprehensive analysis, this Court granted the United States' motion.  <u>See</u> <u>All Assets VII</u>, 2020 WL 1615870, at *19.  The Court found that Mr. Lazarenko could not "claim any interest in the Balford Trust assets other than a 'residual and reversionary interest' because that [was] the only interest he . . . included in his [amended] claim."  <u>Id</u>. at *11.  The Court further concluded that this interest was insufficient to confer standing, reasoning that because the Balford Trust was irrevocable and discretionary, Mr.

5

Lazarenko did not in fact have a residual or reversionary interest to the funds contained within the trust.  Id. at *10.  In other words, the Court concluded that the only interest asserted in Mr. Lazarenko's claim was unsupported by evidence.  The Court also found that Mr. Lazarenko lacked standing because, among other things, he lacked dominion and control over the Balford Trust.  Id. at *13-15.  The Court therefore struck Mr. Lazarenko's claim to the Balford Trust.

### B. The United States' Motion to Strike Pavel Lazarenko's Claim to the Liechtenstein Accounts

On May 15, 2020, the United States filed the instant motion to strike Mr. Lazarenko's claim to the Liechtenstein Accounts.  See Mot. Strike.[2]  The United States argues that Mr. Lazarenko lacks statutory, constitutional, and prudential standing to contest the forfeiture of the Liechtenstein Accounts.  Mem. Mot. Strike at 11.  Mr. Lazarenko opposes the motion, asserting that he has an interest in the Liechtenstein Accounts due to a Ukrainian lien on the accounts.  Opp. at 2.  He also asks for leave to amend his claim to reflect this interest.  Id. at 10-11.

## II. LEGAL STANDARDS

### A. Motion to Strike

In a forfeiture action brought in rem pursuant to a federal statute, at any time before trial, the United States "may move to strike a claim or answer . . . because the claimant

---

[2]      On April 2, 2019, Mr. Lazarenko filed a notice withdrawing his claim to account number 0153633 in the name of Tanas AG.  See Withdrawal at 1.  Magistrate Judge Harvey issued a report and recommendation recommending that Mr. Lazarenko's claim be dismissed with prejudice.  See Report and Recommendation of May 19, 2020 [Dkt. No. 1278] at 8.  This Court adopted and approved the report and recommendation and dismissed the claim with prejudice.  See Order of June 17, 2020 [Dkt. No. 1304] at 2.  In addition, the United States does not move to strike Mr. Lazarenko's claim to the Liechtensteinische Landesbank AG account.  Mot. Strike at 1 n.1.  The United States' motion therefore pertains only to the Beranco and Ylorex accounts.

lacks standing." SUPP. R. G(8)(c)(i)(B). Such a challenge to a party's claim and answer "may be presented . . . as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence." SUPP. R. G(8)(c)(ii)(B).

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); see Baumann v. District of Columbia, 795 F.3d 209, 215 (D.C. Cir. 2015); FED. R. CIV. P. 56(a), (c). In making that determination, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Baumann v. District of Columbia, 795 F.3d at 215; Anderson v. Liberty Lobby, Inc., 477 U.S. at 255. A disputed fact is "material" if it "might affect the outcome of the suit under the governing law." Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). A dispute over a material fact is "genuine" if it could lead a reasonable jury to return a verdict in favor of the non-moving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Grimes v. District of Columbia, 794 F.3d 83, 94-95 (D.C. Cir. 2015).

Although all reasonable inferences must be drawn in favor of the non-moving party, that party's opposition to the summary judgment motion must consist of more than mere unsupported allegations or denials, and must instead be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-moving party is required to provide evidence that would permit a reasonable jury to find in

his favor.  Laningham v. United States Navy, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  If the

non-movant's evidence is "merely colorable" or "not significantly probative," summary

judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see also Scott v.

Harris, 550 U.S. at 380 ("[W]here the record taken as a whole could not lead a rational trier of

fact to find for the nonmoving party, there is 'no genuine issue for trial.'") (quoting Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"Credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge at summary

judgment." Barnett v. PA Consulting Grp., Inc., 715 F.3d 354, 358 (D.C. Cir. 2013) (quoting

Pardo-Kronemann v. Donovan, 601 F.3d 599, 604 (D.C. Cir. 2010)).  "The inquiry performed [at

this phase] is the threshold inquiry of determining whether there is the need for a trial – whether,

in other words, there are any genuine factual issues that properly can be resolved only by a finder

of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty

Lobby, Inc., 477 U.S. at 250.

### B.  Standing in Civil Forfeiture Actions

"Civil forfeiture actions are brought against property, not people. The owner of

the property may intervene to protect his interest." United States v. All Funds in Account

Nos. 747.034/278, 747.009/278, & 747.714/278 in Banco Espanol de Credito, Spain, 295

F.3d 23, 25 (D.C. Cir. 2002).  Civil forfeiture actions are governed by the procedures set forth

in 18 U.S.C. § 983 and the Supplemental Rules for Admiralty or Maritime Claims and Asset

Forfeiture Actions ("Supplemental Rules"), a subset of the Federal Rules of Civil Procedure.

When the government files a complaint for forfeiture, "any person claiming an interest in the

seized property may file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules."  18 U.S.C. § 983(a)(4)(A); see also SUPP. R. G(5)(a).

When the government moves to strike a claim for lack of standing pursuant to Supplemental Rule G(8)(c), the claimant has the burden of "establishing standing by a preponderance of the evidence."  SUPP. R. G(8)(c)(ii)(B).  "To prevail, a claimant must meet both Article III and statutory standing requirements."  United States v. $17,900 in U.S. Currency, 859 F.3d 1085, 1089 (D.C. Cir. 2017) (internal quotations omitted); see also All Assets VI, 228 F. Supp. 3d 118 at 122 (explaining that a claimant "must demonstrate Article III standing in addition to the separate, though partly overlapping, requirements of statutory standing").[3]  "The term 'statutory standing' relates to a claimant's ability to show that he has satisfied whatever statutory requirements Congress has imposed for contesting a civil forfeiture action in federal court, while 'Article III standing' [or 'constitutional standing'] relates to the claimant's ability to show that he has a sufficient interest in the property to satisfy the case-or-controversy requirement of Article III of the Constitution."  United States v. 8 Gilcrease Lane, Quincy Fla. 32351 ("United States v. 8 Gilcrease Lane"), 641 F. Supp. 2d 1, 5-6 (D.D.C. 2009) (citing Stefan D. Cassella, ASSET FORFEITURE IN THE UNITED STATES:  A TREATISE ON FORFEITURE LAW § 9-4 at 326 (2006)).

Because the United States, rather than the claimant, is the plaintiff and bears the burden of proving the property's forfeitability, "[t]he function of standing in a forfeiture action

---

[3]       There is some suggestion that the standing requirements imposed on a claimant in a forfeiture action are statutory or prudential, not constitutional, in nature.  See All Assets III, 772 F. Supp. 2d at 198 n.2 (citing United States v. $557,933.89, More or Less, in U.S. Funds, 287 F.3d 66, 78 n.9 (2d Cir. 2002)).  Because the United States argues that Mr. Lazarenko lacks all three types of standing, however, the Court need not decide that question here, and will address each type of standing in turn.

is . . . truly threshold only—to ensure that the government is put to its proof only where someone

with a legitimate interest contests the forfeiture."  United States v. $557,933.89, More or Less, in

U.S. Funds, 287 F.3d 66, 79 (2d Cir. 2002); see also United States v. $17,900 in U.S.

Currency, 859 F.3d at 1089-90.


## III.  STANDING

The United States moves to strike Pavel Lazarenko's claim to the Liechtenstein

Accounts, arguing that he does not have statutory, constitutional, or prudential standing to assert

a claim to those assets.  See Mem. Mot. Strike at 11.  Mr. Lazarenko opposes the motion,

asserting that he has both statutory and constitutional standing and that prudential considerations

are irrelevant.  See Reply at 6, 8, 10.  The Court will address each type of standing in turn.


### A.  Article III Constitutional Standing

#### 1.  Legal Standard

Standing is one of the three "inter-related judicial doctrines" that – along with the

requirements of mootness and ripeness – "ensure that federal courts assert jurisdiction only over

'Cases' and 'Controversies.'"  Worth v. Jackson, 451 F.3d 854, 855 (D.C. Cir. 2006) (quoting

U.S. CONST. art. III, § 2).  Standing is an Article III requirement under which the plaintiffs must

show, at an "irreducible constitutional minimum," that:  (1) they have suffered an injury in fact –

the invasion of a legally protected interest; (2) the injury is fairly traceable to the defendant's

conduct (a causal connection); and (3) a favorable decision on the merits likely will redress the

injury.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992); Worth v. Jackson, 451 F.3d

at 858.  The alleged injury must be concrete and particularized and actual or imminent, not

conjectural, hypothetical or speculative.  See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548

(2016); Lujan v. Defs. of Wildlife, 504 U.S. at 560-61; Worth v. Jackson, 451 F.3d at 858.

      "Standing is a threshold consideration in all cases, including civil forfeiture

cases."  United States v. One-Sixth Share of Mass Millions Lottery Ticket ("United States v.

One-Sixth Share"), 326 F.3d 36, 40 (1st Cir. 2003).  In the civil forfeiture context, the D.C.

Circuit has explained that "the requirements for a claimant to demonstrate constitutional standing

to challenge a forfeiture are very forgiving."  United States v. $17,900 in U.S. Currency, 859

F.3d 1089 (citing United States v. Emor, 785 F.3d 671, 676 (D.C. Cir. 2015)) (alterations

omitted).  "While some courts have focused on whether a party had an ownership or possessory

interest under state law at the time of forfeiture, other courts have noted [that] it is the injury to

the party seeking standing that remains the ultimate focus."  United States v. Emor, 785 F.3d

at 676 (internal citations omitted); see also United States v. 8 Gilcrease Lane, 641 F. Supp. 2d

at 6 ("[I]n a civil forfeiture case, a claimant's constitutional standing turns upon whether the

claimant has a sufficient interest in the property to create a case or controversy.") (citation

omitted) (internal quotation marks omitted).  "In general, any colorable claim on the property

suffices, if the claim of injury is "redressable, at least in part, by a return of the property."  United

States v. Emor, 785 F.3d at 676 (citations omitted).

      The nature of a claimant's asserted property interest is "defined by the law of the

State" – or here, nation – "in which the interest arose."  United States v. One Lincoln

Navigator, 328 F.3d 1011, 1013 (8th Cir. 2003); see also United States v. $100,348 in U.S.

Currency, 354 F.3d 1110, 1119 (9th Cir. 2004); United States v. One-Sixth Share, 326 F.3d

at 45.  But while state law defines a claimant's interest in specific property, "federal law

determines the effect of [that] interest on [the claimant's] right to bring a claim."  United

States v. U.S. Currency, $81,000.00, 189 F.3d 28, 33 (1st Cir. 1999) (citing United States v. National Bank of Commerce, 472 U.S. 713, 722 (1985)); see also United States v. 5 S 351 Tuthill Rd., 233 F.3d 1017, 1021 (7th Cir. 2000) ("State law defines and classifies property interests for purposes of the forfeiture statutes, while federal law determines the effect of the property interest on the claimant's standing."); United States v. BCCI Holdings, Luxembourg, S.A., 69 F. Supp. 2d 36, 57 (D.D.C. 1999) (same).

At the summary judgment stage, the question is "whether a fairminded jury could find that the claimant had standing on the evidence presented." United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 638 (9th Cir. 2012). In other words, "each claimant must point to some evidence in the record that would allow a reasonable factfinder to conclude" that the claimant has "a cognizable interest in the assets potentially subject to forfeiture." All Assets II, 664 F. Supp. 2d at 104-05. When the government moves to strike a claim because the claimant lacks standing, courts must not conflate the standing inquiry "with the merits determination that comes later." United States v. One-Sixth Share, 326 F.3d at 41; see also United States v. One Lincoln Navigator, 328 F.3d at 1013 ("This threshold burden is not rigorous: To have standing, a claimant . . . need only show a colorable interest in the property, redressable, at least in part, by a return of the property.") (internal quotation marks and citations omitted); United States v. $17,900 in U.S. Currency, 859 F.3d at 1091. "Although a claimant must make [this] initial evidentiary showing of such an interest, a claimant need not definitively prove the existence of that interest." United States v. $148,840 in U.S. Currency, 521 F.3d 1268, 1273 (10th Cir. 2008); see also United States v. $557,933.89, More or Less, in U.S. Funds, 287 F.3d at 79; United States v. 116 Emerson St., 942 F.2d 74, 78 (1st Cir. 1991).

"[S]tanding 'must be supported . . . with the manner and degree of evidence required at [each] successive stage[] of litigation.'" United States v. $17,900 in U.S. Currency, 859 F.3d at 1090 (citing Lujan v. Defs. of Wildlife, 504 U.S. at 561).  In response to a summary judgment motion, the claimant cannot rest on "mere allegations," but must "set forth . . . specific facts, which for purposes of the summary judgment motion will be taken to be true." Id. (citing Lujan v. Defs. of Wildlife, 504 U.S. at 561).  Further, "[a] variety of property interests may serve as the basis for a claimant's entitlement to contest a civil forfeiture, including not only ownership but also possessory and other lesser forms of interest." All Assets IV, 959 F. Supp. 2d at 99.  Accordingly, "[t]he type of interest claimed dictates the type of evidence required to establish standing." Id. at 99-100 (citing United States v. $148,840 in U.S. Currency, 521 F.3d at 1274).

For instance, when a claimant responding to a summary judgment motion predicates his claim on an ownership interest, the "manner and degree of evidence required" is the "assertion of ownership" combined with "some evidence of ownership." United States v. $17,900 in U.S. Currency, 859 F.3d at 1090 (citing United States v. $239,400, 795 F.3d 639, 642-43 (7th Cir. 2015)).  When assessing the "sufficiency and probity of the evidence that purports to demonstrate a colorable ownership interest," therefore, "courts generally look to 'indicia of dominion and control such as possession, title, and financial stake.'" All Assets IV, 959 F. Supp. 2d at 100 (citing United States v. $38,570 U.S. Currency, 950 F.2d 1108, 1113 (5th Cir. 1992)).

### 2.  Analysis

To have constitutional standing, Mr. Lazarenko "need only show a colorable interest in the property, redressable, at least in part, by a return of the property." United States v.

One Lincoln Navigator, 328 F.3d at 1013.  He cannot, however, rest on mere assertions, but must be able to point to evidence in the record that would allow a reasonable factfinder to conclude that he has a "cognizable interest in the assets."  See All Assets II, 664 F. Supp. 2d at 104-05. There are two possible sources for Mr. Lazarenko's interest in the Liechtenstein accounts: a restraining order issued in Liechtenstein or an asserted ownership interest.  The Court will address each source in turn.

### a.  Restraining Order

Mr. Lazarenko argues that he has an interest in the Liechtenstein Accounts based on a Ukrainian "restraining order" that freezes his assets pending resolution of criminal proceedings in Ukraine.  See Opp. at 8.  He contends that because Ukraine may ultimately seek to use the Liechtenstein Assets "to satisfy a judgment it seeks to obtain against Mr. Lazarenko," he has an interest in ensuring that the assets are not forfeited and instead remain available to satisfy that potential judgment.  See id. at 10.  The United States responds that this is insufficient to demonstrate that Mr. Lazarenko has a cognizable interest in the assets because he has not shown a legal basis for his interest under Ukrainian or Liechtenstein law.  See US Reply and Opp. at 4-5.  It further argues that Mr. Lazarenko's alleged injury is "conjectural, hypothetical, or speculative," and therefore insufficient to confer Article III standing.  Id. at 5.

To reiterate, see supra Section III(A)(1), determining whether a claimant has an interest that satisfies constitutional standing requires a two-part inquiry.  First, a court must determine the nature of the claimant's interest by looking at the law of the nation in which the interest arose.  See All Assets VII, 2020 WL 1615870, at *8.  Then, a court must look to federal law to "determine[] the effect of that interest on the claimant's right to bring a claim."  Id. (quoting United States v. U.S. Currency, $81,000.00, 189 F.3d at 33) (alterations omitted)).

Mr. Lazarenko's asserted interest arose in Liechtenstein.  He therefore must show that he has an interest in the Liechtenstein Accounts under Liechtenstein law.  Mr. Lazarenko bases his interest on Ukraine's purported lien.  But Mr. Lazarenko cannot derive an interest from a party that itself has no interest.  To establish the nature of his interest, therefore, Mr. Lazarenko must first show that the restraint gives Ukraine an interest in the Liechtenstein Accounts under Liechtenstein law and then show that Ukraine's interest gives Mr. Lazarenko an interest under Liechtenstein law.  Finally, Mr. Lazarenko must demonstrate that his interest is constitutionally cognizable under United States law.

As to the question of whether Ukraine has an interest in the Liechtenstein Accounts, Mr. Lazarenko can clearly demonstrate that the Liechtenstein Accounts are frozen pending the resolution of a criminal case against him in Ukraine.  See Freeze Order.  But he misunderstands the nature of the restraint.  He mischaracterizes the restraint as a Ukrainian "lien" on the Liechtenstein Accounts.  See Opp. at 2, 10; Lazarenko Reply at 2.  He states that this "lien permits Ukraine to forfeit these accounts as substitute assets to satisfy Mr. Lazarenko's criminal debts."  Lazarenko Reply at 2.  The order freezing the Liechtenstein Accounts, however, states that Liechtenstein, at the request of Ukrainian authorities, froze the accounts "to ensure that illegally transferred funds are returned to Ukraine" and to preserve them "until a court decision has been made."  Freeze Order at 2, 3.  Mr. Lazarenko has presented no evidence that such an order constitutes a lien under Liechtenstein law.

Generally, a lien is a legally enforceable security interest in property.  See, e.g., SEC v. Credit Bancorp., Ltd., 297 F.3d 127, 138 (2d Cir. 2002).  Ukraine has merely sought Liechtenstein's assistance to restrain the assets in anticipation of prosecution; and Liechtenstein has granted that request as "part of the pre-judicial investigation in criminal proceedings."  See

Freeze Order at 2-3.  The order, on its face, does not guarantee that Ukraine will be able to forfeit these accounts, nor has Mr. Lazarenko offered other evidence to prove such a guarantee.  Mr. Lazarenko therefore has failed to show that Ukraine has a "legally protected interest" under Liechtenstein law that is being invaded by these forfeiture proceedings.  See Lujan v. Defs. of Wildlife, 504 U.S. at 560-61; cf. United States v. One-Sixth Share, 326 F.3d at 44 ("'[T]he federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property.'") (quoting United States v. $20,193.39, 16 F.3d 344, 346 (9th Cir. 1994) (collecting cases)); 18 U.S.C. § 983(d)(6)(B)(i) (stating that the term "owner" does not include "a person with only a general unsecured interest in, or claim against, the property or estate of another").

Even if Mr. Lazarenko could show that Ukraine has a legally enforceable interest in the Liechtenstein Accounts, he has failed to articulate how that would give him any interest in those assets under Liechtenstein law.  Although he need not definitively prove the existence of his alleged interest, see United States v. $148,840 in U.S. Currency, 521 F.3d at 1273, he must still offer some competent evidence to support his claimed interest in the accounts, see All Assets VII, 2020 WL 1615870, at *10 ("[W]hen assessing a motion to strike a claim as a summary judgment motion, the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial.") (citing Fed. R. Civ. P. 56(c)).  Mr. Lazarenko has not pointed the Court to any affidavits, declarations, or other significantly probative evidence to support his contention that Liechtenstein's restraint confers an interest on him.  He therefore has failed to meet his burden.

Mr. Lazarenko also has failed to show that any derivative, contingent interest he might have based on the Liechtenstein freeze order would be sufficient under United States law to give him standing as a claimant to the Liechtenstein Accounts.  See All Assets VII, 2020 WL 1615870, at *8.  Mr. Lazarenko argues that the proceedings in Liechtenstein are analogous to proceedings "in the United States brought pursuant to 28 U.S.C. § 2467" because "Section 2467 permits a district court to restrain property in the United States after a foreign court enters a forfeiture judgment."  Opp. at 8; see also 28 U.S.C. § 2467(b)(1) (permitting a foreign nation to apply to "have a forfeiture or confiscation judgment registered and enforced by a district court of the United States").  He purports to find support for his alleged interest in cases in which United States courts have determined that judgment creditors have standing to intervene in Section 2467 forfeiture proceedings.  See Opp. at 8-9 (citing In re $6, 871, 042.36, 217 F. Supp. 3d 84 (D.D.C. 2016), and In re Arelma, S.A., Misc. No. 16-1339, 2019 WL 3084706 (D.D.C. July 15, 2019)).  As the United States correctly points out, however, these cases, at best, "only support the right of the lienholder or secured judgment creditor to assert standing to contest the forfeiture of restrained assets or enforcement of a foreign forfeiture judgment."  US Reply and Opp. at 5.

In re $6,871,042.36 concerned the restraint and forfeiture of funds owned by Kesten Development Corporation ("Kesten"), a British Virgin Islands company.  217 F. Supp. 3d at 87-88.  In that case, liquidators of a bank had obtained a judgment against Kesten in the British Virgin Islands.  Id. at 88.  Two years later, Brazil obtained a judgment against Kesten. The Southern District of New York "recognized [recognized Brazil's] superior title to the [Kesten funds], [] ordered the United States to transfer the funds to the São Paulo Court," and granted Brazil's request for a protective order under Section 2467.  Id. at 89-90.  The bank

17

liquidators sought to intervene and dissolve the protective order.  Id. at 90.  The court concluded that the liquidators had standing because they "sustained an injury . . . because the Protective Order has placed on hold the resolution of the Liquidators' claim to the [Kesten funds]."  Id. at 93.  If that case is analogous to this case – a questionable proposition, given that Ukraine has not obtained any judgment against Mr. Lazarenko – it is Ukraine, not Mr. Lazarenko, that is the analogue to the liquidators.

The same is true for In re Arelma, S.A.  In that case, the district court found that a class of individuals in possession of two judgments against an estate had standing to intervene in the United States' effort to enforce a Philippines forfeiture judgment against that estate.  2019 WL 3084706, at *3.  Again, because Ukraine is the entity that Mr. Lazarenko urges has a "lien" on the Liechtenstein Accounts, it is Ukraine that stands in the place of the class in this analogy. Mr. Lazarenko therefore can find no support in this case.

Finally, Mr. Lazarenko argues that he will suffer an injury if the funds in the Liechtenstein Accounts are made unavailable to satisfy a criminal judgment in Ukraine.  But this injury is insufficiently "concrete and particularized and actual or imminent" to satisfy Article III standing requirements.  See Spokeo, Inc. v. Robins, 136 S. Ct. at 1548.  It is possible that, at some point in the future, Ukraine will obtain a criminal judgment against Mr. Lazarenko.  It is also possible that, at that time, Ukraine will wish to satisfy that judgment using the funds in the Liechtenstein Accounts.  But this Court can only speculate as to whether or when these events might occur.  This Court certainly cannot be sure that the Liechtenstein Accounts are the only assets that Mr. Lazarenko might use to pay any potential future liability.  When the injury is this speculative, it does not amount to one "that can be redress[ed], at least in part, by a return of the property."  See United State v. One Lincoln Navigator, 328 F.3d at 1013; cf. Doraville

18

<u>Props</u>., 299 F. Supp. 3d at 137 (holding that beneficiaries of discretionary trusts who have only a future, contingent interest in trust assets have an interest that is too hypothetical to create standing to contest forfeiture of the trust assets).

Mr. Lazarenko has not carried his burden of showing, by a preponderance of the evidence, that the restraint of the Liechtenstein Accounts confers standing on him.

b.  <u>Ownership interest</u>

In his briefing, Mr. Lazarenko does not argue that he has an ownership interest in the Liechtenstein Accounts.  But because Mr. Lazarenko's 2016 interrogatory responses state that he is "owner" of the Liechtenstein Accounts, US App'x at 731, and ownership interests "may serve as the basis for a claimant's entitlement to contest a civil forfeiture," <u>All Assets IV</u>, 959 F. Supp. 2d at 99, this Court will briefly address whether he has demonstrated any ownership interest that could give him standing.

First, there is no evidence in the record to suggest that Mr. Lazarenko has an ownership interest in the Liechtenstein Assets.  In fact, the evidence suggests precisely the opposite.  The Liechtenstein Accounts are not held in Mr. Lazarenko's name.  Instead, they are held in the names of Beranco Engineering Establishments, Ylorex Establishments, and Tanas AG.  <u>See</u> US App'x at 513, 542; Translations at 5, 12.  Mr. Lazarenko is listed as neither an account signatory for nor a beneficial owner of the accounts.  <u>See</u> US App'x at 513, 518, Translations at 3, 11 (Beranco); US App'x at 532, 542, 544, Translations at 6, 8-10 (Ylorex); US App'x at 547, Translations at 4-5, 12-13 (Tanas).

Second, although case law indicates that "indicia of dominion and control," such as "possession, title, and financial stake," would be supportive of an ownership interest, Mr. Lazarenko has provided no such evidence.  <u>See</u> <u>All Assets VII</u>, 2020 WL 1615870, at *13.

Indeed, during the course of his criminal proceedings, he stated that he had "gifted assets in Liechtenstein" that "are under restraint and forfeiture in the DC forfeiture case, Antigua and Liechtenstein."  US App'x at 571.  He has also stated in interrogatory responses that "he never received bank statements for these accounts, or certainly did not receive them on a regular basis," and that he "has no specific recollection of any financial transactions or decision relating to these accounts."  Id. at 730.  Based on this evidence, Mr. Lazarenko would suffer no injury if the Liechtenstein Accounts were forfeited to the United States because he does not have even a facially colorable ownership interest in those accounts.  See United States v. Emor, 785 F.3d at 676 (stating that "it is the injury to the party seeking standing that remains the ultimate focus.").

Mr. Lazarenko has failed to show, by a preponderance of the evidence, that he has a colorable interest in the Liechtenstein Accounts.  See United States v. $557,933.89, More or Less, in U.S. Funds, 287 F.3d at 79.  The Court concludes that Mr. Lazarenko lacks constitutional standing to contest the forfeiture of the Liechtenstein Accounts.

## B.  Statutory Standing

### 1.  Legal Standard

In order to demonstrate statutory standing in an in rem forfeiture proceeding, a claimant must have "assert[ed] [their] interest in the property in the manner set forth in the Supplemental Rules."  All Assets VI, 228 F. Supp. 3d at 122 (citing 18 U.S.C. § 983(a)(4)(A); All Assets IV, 959 F. Supp. 2d at 96 n.10).  The statutory standing requirement is grounded in 18 U.S.C. § 983, which limits intervention in civil forfeiture actions to "any person claiming an interest in the seized property" who "file[s] a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules."  Id. at § 983(a)(4)(A).

Supplemental Rule C requires a claimant to file a "verified statement of right or interest" that "must describe the interest in the property that supports the person's demand for its restitution or right to defend the action."  SUPP. R. C(6)(a)(i)-(ii); see also 18 U.S.C. § 983(a)(4)(A) ("[A]ny person claiming an interest in the seized property may file a claim asserting such person's interest in the property[.]").  "This statement is known as a 'verified claim' and is essential to conferring statutory standing upon a claimant in a forfeiture action."  United States v. 8 Gilcrease Lane, 638 F.3d at 299 n.1 (alterations omitted) (citing United States v. $125,938.62, 370 F.3d 1325, 1328 (11th Cir. 2004) (per curiam)).  Supplemental Rule G requires that a claimant contesting the United States' forfeiture file a claim that "state[s] the claimant's interest in the property."  SUPP. R. G (5)(a)(i)(B).[4]

Courts generally expect claimants to "adhere strictly" to these statutory requirements governing civil forfeiture proceedings.  All Assets II, 664 F. Supp. 2d at 101; United States v. Funds from Prudential Securities, 300 F. Supp. 2d 99, 104 (D.D.C. 2004) ("[I]n order to have standing to challenge a forfeiture proceeding, a claimant must strictly comply with the pleading requirements of Supplemental Rule C(6).") (internal citation omitted) (referring to Supplemental Rule C(6), the predecessor of Supplemental Rules G(5) and G(6)).

While courts may "excuse" procedural failings "so long as the 'underlying goals of' the Supplemental Rules 'are not frustrated,'"  All Assets II, 664 F. Supp. 2d at 102 (citing United States v. Funds From Prudential Sec., 300 F.Supp.2d at 104 (collecting cases)), the Third Circuit has identified compliance with the Supplemental Rule C's verified claim requirement as

---

[4]        Supplemental Rule G went into effect on December 1, 2006.  See 2006 U.S. ORDER 20 (C.O. 20) (Apr. 12, 2006), available at http://www.supremecourt.gov/orders/courtorders/frcv06p.pdf (stating that Supplemental Rule G governs cases filed after December 1, 2006, and "insofar as just and practicable, all proceedings then pending").

the "most significant requirement," United States v. $487,825 in U.S. Currency, 484

F.3d 662, 664 (3d Cir. 2007), as amended (May 14, 2007); see also United States v. $39,557.00,

More or Less, in U.S. Currency, 683 F. Supp. 2d 335, 339 (D.N.J. 2010) (saying the same about

Supplemental Rule G).  This is because the requirement for a verified claim serves the dual

purposes of (1) forcing claimants to "come forward as quickly as possible . . . so that the court

may hear all interested parties and resolve the dispute without delay," and (2) minimizing "the

danger of false claims by requiring claims to be verified or solemnly affirmed."

United States v. $487,825 in U.S. Currency, 484 F.3d at 664-65; see also United States v. All

Funds on Deposit with R.J. O'Brien & Assocs., 783 F.3d 607, 618 (7th Cir. 2015).  "A claimant

who fails to file a verified [claim] has no standing to contest a forfeiture."  United

States v. $487,825 in U.S. Currency, 484 F.3d at 665.


## 2.   Analysis

Even if Mr. Lazarenko had satisfied constitutional standing requirements, he must

also satisfy statutory standing requirements.  See United States v. $17,900 in U.S. Currency, 859

F.3d at 1089.  The United States argues that Mr. Lazarenko lacks statutory standing to contest

forfeiture of the Liechtenstein Accounts because his claim "does not set forth the nature of" his

interest in the accounts.  See Mem. Mot. Strike at 12.  It also argues that Mr. Lazarenko's "most

recent answer to the Amended Complaint is equally unclear in establishing the nature of his

claim to the Defendant Liechtenstein [Accounts]."  Id.  Mr. Lazarenko contends that he has

statutory standing to contest the forfeiture of the Liechtenstein Accounts because he filed a

verified claim to the assets.  See Opp. at 6.  He also states that he "later provided interrogatory

responses about the nature of his claim to the Liechtensteiner [accounts]."  Id.  He alleges that

through a combination of these two filings, he has explained the nature of his interest in the accounts.  Id.

      While it is true that Mr. Lazarenko filed a verified claim as required by Supplemental Rule C, see SUPP. R. C(6)(a), merely filing a document entitled "verified claim" is not sufficient to satisfy the Supplemental Rules.  Supplemental Rule C also requires that the claim "describe the interest in the property that supports the person's demand for its restitution or right to defend the action."  SUPP. R. C(6)(a)(ii) (emphasis added); see also SUPP. R. G(5)(a)(i)(B) (requiring that a claimant contesting the United States' forfeiture file a claim that "state[s] the claimant's interest in the property").  This Mr. Lazarenko failed to do.  Although his amended claim states that he "claims" the Liechtenstein Accounts, nowhere does it describe his interest in those assets.  See generally Amended Claim.  The amended claim identifies specific interests in other defendant assets, but it is silent regarding the Liechtenstein Accounts.  See Amended Claim at 5.  Mr. Lazarenko therefore has not "adhere[d] strictly" to the statutory requirements governing civil forfeiture proceedings.  All Assets II, 664 F. Supp. 2d at 101.

      Mr. Lazarenko's interrogatory responses do not cure the deficiencies in his claim. The Supplemental Rules are clear: the verified claim, not some other filing, must describe the claimant's interest.  Of course, in forfeiture actions, courts may excuse procedural failings.  See All Assets II, 664 F. Supp. 2d at 102.  But courts may only do so when those procedural failings do not frustrate the underlying goals of the Supplemental Rules.  Id.  Mr. Lazarenko issued these interrogatory responses eleven years after filing his amended claim and only did so in response to interrogatories posed by the United States.  See U.S. App'x at 729.  The lapse in time between when Mr. Lazarenko filed his amended claim and when he first described his interest in his interrogatory responses frustrates the goals of the Supplemental Rules by preventing  the

Court from resolving this dispute "without delay."  See United States v. $487,825 in U.S. Currency, 484 F.3d at 664-66.

Mr. Lazarenko responds that the United States has long been "afforded the opportunity to follow up" on the nature of his interest in the Liechtenstein Accounts.  Opp. at 6. It is not the responsibility of the United States, however, to correct Mr. Lazarenko's flawed claim.  Moreover, the United States did follow up by posing the very interrogatories to which Mr. Lazarenko now turns for support.  See US Interrog.; US App'x at 729.  Mr. Lazarenko's responses to the interrogatories provide further support for the United States' argument that he lacks statutory standing.  Moreover, the Supplemental Rules place no time limit on the United States' ability to move to strike a claim for lack of standing.  See SUPP. R. G(8)(c)(i) (stating that the government may move to strike a claim for lack of standing "[a]t any time before trial").  The United States therefore is well within its rights to move to strike Mr. Lazarenko's claim now.

Mr. Lazarenko's amended answer similarly provides him no support for his position.  In its amended complaint, the United States alleges that Mr. Lazarenko "was the beneficial owner" of several foundations with bank accounts in Liechtenstein and also "was the beneficial owner" of the assets within those accounts.  Amended Complaint ¶ 114.  The complaint also alleges that the funds in those accounts were eventually transferred into the Liechtenstein Accounts.  Amended Complaint ¶ 119.  The complaint does not state that Mr. Lazarenko is the beneficial owner of the Liechtenstein Accounts themselves.  It says nothing about Mr. Lazarenko's relationship to the funds after they were settled in the Liechtenstein Accounts.  See generally Amended Complaint.

In his amended answer, Mr. Lazarenko admits "that funds belonging to him had been deposited in several bank accounts in Liechtenstein."  Second 2017 Answer ¶ 114.  He

further admits "that the accounts in the name of Beranco Engineering, Ylorex Establishment and Tanas AG contain funds of which he is the beneficial owner." Second 2017 Answer ¶ 119. As the United States correctly observes, however, Mr. Lazarenko does not specify in which "funds within each of the Defendant Liechtenstein [Accounts he] claims to have a beneficial ownership interest." Mem. Mot. Strike at 12 (citing SUPP. R. C(6)(a)(i)-(ii)). And, importantly, responsive pleadings should only "admit or deny the allegations asserted . . . by an opposing party." Fed. R. Civ. P. 8(b)(1)(B). They should not respond to unasserted allegations. The United States did not allege that Mr. Lazarenko was the beneficial owner of the Liechtenstein Accounts or of the funds now located therein. It only stated that he <u>had been</u> the beneficial owner of those funds when they were held in the previous accounts. <u>See</u> Amended Complaint ¶ 114-119. Mr. Lazarenko's admission of something that was not alleged cannot be used to satisfy the claim requirements of the Supplemental Rules.

Finally, to the extent that Mr. Lazarenko argues that the relation back doctrine gives him a legal interest in the Liechtenstein accounts because his later pleadings – namely, his answer – should be construed to amend his amended claim, the Court rejects that argument. <u>See</u> Opp. at 3 (quoting Mr. Lazarenko's 2016 interrogatory responses) (stating that Mr. Lazarenko "has a legal interest in these accounts under the relation back doctrine"). Rule 15(c) of the Federal Rules of Civil Procedure states that an "amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). This rule provides for relation back when an amended version of the <u>same</u> pleading is filed. Here, Mr. Lazarenko did not file an amended claim that

asserts an interest in the Liechtenstein Accounts.  Rather, he filed an answer and responses to interrogatories.  There is therefore nothing to relate back.[5]

For these reasons, the Court concludes that Mr. Lazarenko lacks statutory standing to contest forfeiture of the Liechtenstein Accounts.

## C.  Prudential Standing

### 1. Legal Standard

Prior to the Supreme Court's decision in Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014), prudential standing was understood to encompass "at least three broad principles:  'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'"  Id. at 126 (quoting Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2005)).  In Lexmark, however, the Court clarified that the zone-of-interests test is not a prudential consideration, but rather "requires [courts] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim."  Id. at 127.  "[P]ut another way, a court asks whether the [claimant] has a cause of action under the statute."  Crossroads Grassroots Pol'y

---

[5]    The Court notes that Mr. Lazarenko has long had the opportunity to amend his claim.  See All Assets VII, 2020 WL 1615870, at *11.  In 2015, Mr. Lazarenko indicated that he planned to amend his claim after this Court ruled on a motion for leave to amend his answer. See id.  The Court granted Mr. Lazarenko's motion for leave to amend his answer in January 2017.  See id. (citing United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 229 F. Supp. 3d 62 (D.D.C. 2017)).  Almost four years passed without Mr. Lazarenko seeking leave to amend his claim.  In his motion for reconsideration of the Court's decision in All Assets VII, Mr. Lazarenko for the first time requested leave to amend his claim to describe his interest in the Balford Trust.  See Civil Action No. 04-0798, 2020 WL 6591391, at *7.  This Court denied the request as futile.  See id. at *8.

Strategies v. FEC, 788 F.3d 312, 319 (D.C. Cir. 2015).  The Court in Lexmark also pointed out

that it had already moved the rule against "generalized grievances" out of the prudential standing

bucket.  See Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. at 137 n.3

(discussing Lance v. Coffman, 549 U.S. 437, 439 (2007) (per curiam); DaimlerChrysler Corp. v.

Cuno, 547 U.S. 332, 344-46 (2006); and Lujan v. Defs. of Wildlife, 504 U.S. 555, 573-74

(1992)).  Rather than invoking prudential concerns, the Court clarified, the prohibition on raising

generalized grievances exists because "such suits do not present constitutional 'cases' or

'controversies.'"  Id.

      Thus, the only remaining principle that may arguably be considered "prudential"

in nature is the rule against raising another person's legal rights.  Indeed, the Supreme Court has

characterized this rule as prudential as recently as June of 2020.  See June Med. Servs., L.L.C. v.

Russo, 140 S. Ct. 2103, 2117 (2020).  According to this rule, a party "generally must assert his

own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of

third parties."  Warth v. Saldin, 422 U.S. 490, 499 (1975).  "This rule assumes that the party with

the right has the appropriate incentive to challenge (or not challenge) governmental action and to

do so with the necessary zeal and appropriate presentation."  Kowalski v. Tesmer, 543

U.S. 125, 129 (2004).

### 2. Analysis

      The United States argues that Mr. Lazarenko violates prudential standing

principles by raising another person's legal rights.  See Mem. Mot. Strike at 17.  It states that

because Mr. Lazarenko gifted the funds in the Liechtenstein Accounts to his family members, he

is improperly raising their legal rights.  Id.  Mr. Lazarenko responds that prudential standing is

irrelevant because he is not raising a claim on any other party's behalf.  See Opp. at 10.  He

argues that the Court need not conduct a prudential standing analysis.  Because the Court has

already concluded that Mr. Lazarenko lacks both statutory and constitutional standing to contest

forfeiture of the Liechtenstein Accounts, the prudential standing question is not dispositive.

Moreover, the Court agrees with Mr. Lazarenko that he is clearly asserting his own standing to

contest forfeiture of the Liechtenstein Accounts.  A prudential standing analysis therefore is

unnecessary.

## IV.  LEAVE TO AMEND CLAIM

Mr. Lazarenko requests that, in the event the Court concludes that his claim is

insufficient, the Court grant him leave to amend his claim.  See Opp. at 11.  His proposed

amendment would state:

> I have an interest in these assets because the government of Ukraine
> has filed a lis pendens on all of the in rem accounts in Liechtenstein
> to satisfy any criminal judgment imposed against me in Ukraine.
> This lis pendens has been pending for many years.  If I prevail in
> this forfeiture action, the funds can be used to satisfy my debts to
> Ukraine.

Prop. Amend. at 1-2.  Mr. Lazarenko states that the United States would not be prejudiced by

permitting him to amend his claim because it has known of the nature of his interest for at least

four years.  Id.  The United States responds that the Court should deny Mr. Lazarenko's request

as futile because the amendment "would not clarify the nature of his claim to the Defendant

Liechtenstein Assets."  US Reply and Opp. at 8.

"Although the grant or denial of leave to amend is committed to a district court's

discretion, it is an abuse of discretion to deny leave to amend unless there is sufficient reason,

such as 'undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by

[previous] amendments . . . [or] futility of amendment."  Firestone v. Firestone, 76

F.3d 1205, 1208 (D.C. Cir. 1996) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).  The Court has concluded that the restraining order pertaining to the Liechtenstein Accounts does not afford Mr. Lazarenko an interest in those accounts that satisfies Article III standing requirements.  The proposed amendment, which purports to further explain this interest, does not alter this conclusion.  Mr. Lazarenko's proposed amendment therefore would be futile.  Mr. Lazarenko's motion for leave to amend his claim will be denied.

V. CONCLUSION

For the foregoing reasons, the Court will grant the United States' motion [Dkt. No. 1275] to strike Mr. Lazarenko's claim to the Liechtenstein Accounts and will deny Mr. Lazarenko's cross-motion [Dkt. No. 1319] to amend his amended claim.  An Order consistent with this Opinion will issue this same day.

SO ORDERED.

  /s/ _____
PAUL L. FRIEDMAN
United States District Judge

DATE:  December 23, 2020