# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 04-cv-798 (PLF/GMH)** |
| | ) | |
| **ALL ASSETS HELD AT BANK JULIUS BAER** | ) | |
| **& CO., LTD., GUERNSEY BRANCH,** | ) | |
| **ACCOUNT NUMBER 121128, IN THE NAME** | ) | |
| **OF PAVLO LAZARENKO,** *et al.*, | ) | |
| | ) | |
| **Defendants** *In Rem*. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

In 2004, the United States filed this civil forfeiture case *in rem* against funds held in certain bank accounts the government alleges are traceable to money laundering and extortion activities of former Ukrainian Prime Minister Pavel Lazarenko. In July 2005, Mr. Lazarenko filed a claim to certain of the Defendant funds, including funds held in an account at Bank Julius Baer in Guernsey (the "Bank Julius Baer Guernsey Account"), asserting that he is their beneficial owner. In April 2020, Claimant Pavel Lazarenko submitted a motion for partial summary judgment as to the Bank Julius Baer Guernsey Account, claiming that the government cannot trace those funds to the criminal activity alleged in the operative complaint. In support of his motion, Mr. Lazarenko filed excerpts from a 2016 deposition of non-party Peter Kiritchenko. Those excerpts (ECF Nos. 1268-1, 1268-2, 1268-3) were filed under seal pursuant to a protective order entered in this case. Presently pending before the Court is Mr. Lazarenko's motion to unseal the excerpts of Mr. Kiritchenko's deposition testimony, arguing that the information contained in the excerpts is already in the public domain and that the public's right of access to judicial proceedings weighs in favor of their disclosure. Mr. Kiritchenko filed a two-page opposition as a *pro se* third party, asserting

that many of the facts in his testimony are not already in the public record and that their dissemination could lead to threats and other harm to him and his family.  The government took no position on the motion.  Mr. Lazarenko's motion to unseal is granted because, although not all of the information at issue is already publicly available, much of it is, and the strong presumption in favor of public access to judicial proceedings counsels in favor of unsealing.[1]

## I.    BACKGROUND

The history of this over-fifteen-year-old case is extensive.  Indeed, the history relevant to this motion reaches back as far as 1998, when Mr. Lazarenko was detained by Swiss authorities on suspicion of laundering money while he was a government official in Ukraine.  In 1999, Universal Trading & Investment Co. ("UTICO") filed a civil case (asserting it was the assignee of claims belonging to Ukraine) against Mr. Lazarenko and his associate, Mr. Kiritchenko, alleging that they and others "were participants in 'a criminal organization and enterprise designed to steal large sums of money from the Government of Ukraine.'"  *UTICO v. Kiritchenko*, No. C-99-3073, 2007 WL 2669841, at *1 (N.D. Cal. Sept. 7, 2007) (quoting the second amended complaint).  In May 2000, a grand jury in the United States District Court for the Northern District of California indicted Mr. Lazarenko on multiple counts related to allegations of money laundering committed while he was a government official in Ukraine; the first count of the indictment named Mr. Kiritchenko as a co-conspirator.  Indictment, *United States v. Lazarenko*, No. 00-cr-284 (N.D. Cal. May 18, 2000), ECF No. 1; *see also* Second Superseding Indictment, *United States v. Lazarenko*, No. 00-cr-284 (N.D. Cal. July 19, 2001), ECF No. 143.  One month later, a Swiss court convicted

---

[1] The most relevant docket entries for this Memorandum Opinion and Order are (1) the Second Amended Protective Order (ECF No. 1086); (2) Mr. Lazarenko's motion for summary judgment on the Bank Julius Baer Guernsey Account (ECF No. 1269); (3) the sealed transcript of excerpts of Mr. Kiritchenko's videotaped deposition (ECF Nos. 1268-1 through 1268-3); (4) Mr. Lazarenko's motion to unseal those excerpts (ECF No. 1297); (5) Mr. Kiritchenko's opposition to the motion (ECF No. 1307); and (6) Mr. Lazarenko's supplementary submissions (ECF Nos. 1390–1391).

Mr. Lazarenko in absentia of money laundering related to his abuse of public office in Ukraine for personal gain.  ECF No. 20 at 11.

In 2004, Mr. Lazarenko was convicted in the Northern District of California on fourteen money laundering counts, eight of which were affirmed by the Ninth Circuit in 2009.  *United States v. Lazarenko*, 564 F.3d 1026, 1037–40, 1047 (9th Cir. 2009).  At Mr. Lazarenko's criminal trial, Mr. Kiritchenko testified for five days as a cooperating witness for the government pursuant to a plea deal.  *See United States v. Lazarenko*, 624 F.3d 1247, 1250 n.3 (9th Cir. 2010) ("The government filed an information against Kiritchenko.  As part of a plea deal, he testified for the government at Lazarenko's trial.").  Mr. Kiritchenko testified about financial transactions alleg-edly made in connection with Mr. Lazarenko's corruption, bribery and extortion schemes in Ukraine, where Mr. Lazarenko demanded 50 percent of the profits from and 50 percent ownership of companies (including Mr. Kiritchenko's own company, Agrosnabsbyt) in exchange for letting them do business in the region.  *See* ECF No. 509-7 at 15–17.

After Mr. Lazarenko's conviction, in which the jury found that he both conspired with and extorted money from Mr. Kiritchenko, Mr. Kiritchenko sought monetary restitution from Mr. Laz-arenko pursuant to the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663A, and the Victim and Witness Protection Act of 1982, 18 U.S.C. § 3663.  *See Lazarenko*, 624 F.3d at 1249–50.  In connection with his claim, Mr. Kiritchenko testified in a post-trial restitution proceeding that Mr. Lazarenko extorted money from him.[2]  *United States v. Lazaranko*, 555 F. Supp. 2d 1029, 1032 (N.D. Cal. 2008), *rev'd*, 624 F.3d 1247.  As Mr. Kiritchenko's restitution claim was proceed-ing, he testified about similar subjects—such as Mr. Lazarenko's demanded 50/50 split of Mr.

---

[2] The district court awarded Mr. Kiritchenko more than $19 million, but the Ninth Circuit reversed, denying Mr. Kiritchenko restitution as he was a "both a victim and a participant" in the money laundering scheme.  *Lazarenko*, 624 F.3d at 1250.

Kiritchenko's businesses—in a deposition taken in the *UTICO* case, excerpts of which were filed in connection with a motion for summary judgment in that action.  Annex D to Plaintiff's Motion for Summary Judgment Against Defendants Brancross U.S. Holdings Inc., BRC Property Holdings LLC, Xanadu Property Holdings, and Petro Kiritchenko, *UTICO*, No. C-99-3073 (N.D. Cal. July 6, 2007), ECF Nos. 1445–1449, 1451–1452.

Meanwhile, in May 2004—after Mr. Lazarenko's indictment in the Northern District of California but before his conviction in that case—the government filed this *in rem* civil forfeiture action seeking to recover more than $230 million contained in several overseas accounts that it asserts are traceable to a number of criminal schemes allegedly perpetrated by Mr. Lazarenko.[3] ECF No. 1.  As relevant here, the government alleges that all of the funds in the Bank Julius Baer Guernsey Account are traceable to Mr. Lazarenko's personal account at Bank Julius Baer in Zurich, Switzerland, which were themselves deposits from an entity called Nakosta.  ECF No. 1305 at 4–5.  The government asserts that those Nakosta funds were transferred to Mr. Lazarenko as part of the bribery and extortion schemes described by Mr. Kiritchenko in his deposition testimony. *Id.* at 6–7.

In April 2020, Mr. Lazarenko filed a motion for partial summary judgment as to funds held in the Bank Julius Baer Guernsey Account, claiming that the government cannot establish the connection between the Nakosta funds and the criminal activity alleged in the operative complaint in this case.  ECF No. 1269 at 1–2.  In support of that motion, Mr. Lazarenko filed excerpts from a deposition of Mr. Kiritchenko taken in this case in September 2016.  ECF Nos. 1268-1 through 1268-3 (excerpts from Mr. Kiritchenko's deposition transcript filed under seal).  Mr. Lazarenko filed those excerpts under seal because Mr. Kiritchenko had designated the deposition transcript

---

[3] The government filed an Amended Complaint in June 2005 noting that Mr. Lazarenko had been convicted in the Northern District of California.  ECF No. 20 at 11.

as "protected" pursuant to a protective order entered in this case.  As relevant here, that order provides that a party or non-party may so designate material when that party "reasonably believes" the material (1) "not to be in the public domain" and (2) to contain material such as personally identifiable information or information that is "otherwise confidential and/or sensitive."  ECF No. 1086 at 2, 11 (protective order); ECF No. 1258 (Mr. Lazarenko's motion to file documents, including Mr. Kiritchenko's deposition transcripts, under seal); ECF No. 1262 (order granting motion to file under seal).  Mr. Lazarenko argues that Mr. Kiritchenko's testimony helps prove that the government cannot establish a connection between the alleged criminal schemes and the Nakosta funds in the Bank Julius Baer Guernsey Account.  ECF No. 1269 at 5–7.  The government argues the opposite is true, and refers to the same testimony, in conjunction with expert reports and bank records, as proof that the funds in the Bank Julius Baer Guernsey Account are traceable to Mr. Lazarenko's criminal activity.  ECF No. 1305 at 6–7 (government's sealed opposition to Mr. Lazarenko's summary judgment motion as to the Bank Julius Baer Guernsey Account).

Mr. Lazarenko now seeks to unseal the excerpts from Mr. Kiritchenko's deposition.  ECF 1297.  As noted, Mr. Lazarenko filed the excerpts under seal because Mr. Kiritchenko designated them as "protected" under the operative protective order (ECF No. 1258), apparently believing them not to be in the public domain and to contain confidential or sensitive information.  Mr. Lazarenko now contends that those excerpts were improperly designated because the identified information is already in the public domain and the material thus does not meet the first requirement of the protective order.  ECF No. 1279; ECF No. 1297.  Specifically, he contends that the subject matter of the excerpts was previously disclosed in Mr. Kiritchenko's public testimony at Mr. Lazarenko's 2004 criminal trial and the 2007 proceeding in which Mr. Kiritchenko sought restitution from Mr. Lazarenko; his deposition testimony in the *UTICO* case that was filed publicly

in connection with a motion for summary judgment in that action; and his statements to various law enforcement authorities, such as Swiss prosecutors and the FBI, which have been publicly filed in this action.  ECF No. 1297 at 2–3; ECF No. 1279-1.  Alternatively, Mr. Lazarenko argues that the public's right of access to judicial proceedings weighs in favor of disclosure.  ECF No. 1297 at 5.  Mr. Kiritchenko, proceeding as a *pro se* third party as to this dispute (although he has previously been represented by an attorney in matters related to this case), opposes the motion to unseal his testimony on the grounds that many facts contained within his deposition are not already in the public domain and that the public release of the material may lead to threats against him and his family.  ECF No. 1307.  The government has not taken a position on this motion.

## II.    LEGAL STANDARD

The D.C. Circuit has recognized that the common law right of public access to judicial proceedings and records "is fundamental to a democratic state."  *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (quoting *United States v. Hubbard*, 650 F.2d 293, 315 n.79 (D.C. Cir. 1980)).  Thus, there is a "strong presumption" in favor of such access.  *Hubbard*, 650 F.2d at 317.

"Public access to judicial records is not limitless, however."  *In re McCormick & Co., Pepper Prods. Mktg. & Sales Pracs. Litig.*, 316 F. Supp. 3d 455, 463 (D.D.C. 2018).  For example, Rule 26(c) of the Federal Rules of Civil Procedure permits a court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by limiting disclosure of information or requiring it to be filed under seal.  Fed. R. Civ. P. 26(c)(1). Nevertheless, even where a protective order has issued, a district court "cannot abdicate its responsibility to oversee the discovery process and determine whether filings should be made available to the public."  *McConnell v. FEC*, 251 F. Supp. 2d 919, 927 (D.D.C. 2003) (quoting *Proctor &*

*Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 227 (6th Cir. 1996)).  Thus, the mere fact that material

may be subject to a protective order limiting disclosure does not mean that it must remain shielded

from public disclosure.  *See, e.g.*, *In re McCormick & Co.*, MDL Docket No. 2665, No. 15-mc-

1825, 2017 WL 2560911, at *1 (D.D.C. June 13, 2017); *see also, e.g.*, *Joy v. North*, 692 F.2d 880,

893 (2d Cir. 1982) (noting that, notwithstanding the applicability of a protective order under Rule

26, "documents used by parties moving for, or opposing, summary judgment should not remain

under seal absent the most compelling reasons").  Rather, to determine whether a seal over judicial

records should be maintained, a court must "fully account for the various public and private inter-

ests at stake." *Metlife*, 865 F.3d at 666.  In the D.C. Circuit, that duty is dispatched by considering

the following six factors derived from its decision in *Hubbard*:

> (1) the need for public access to the documents at issue; (2) the extent of previous
> public access to the documents; (3) the fact that someone has objected to disclosure,
> and the identity of that person; (4) the strength of any property or privacy interests
> asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the
> purposes for which the documents were introduced during the judicial proceedings.

*EEOC v. Nat'l Children's Ctr., Inc.* 98 F.3d 1406, 1409 (D.C. Cir. 1996) (citing *Hubbard*, 650

F.2d at 317–22).  The burden is on the party seeking to restrict disclosure "to come forward with

specific reasons why the record, or any part thereof, should remain under seal." *Johnson v. Greater*

*Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1278 (D.C. Cir. 1991); *see also Aristotle Int'l, Inc. v. NGP*

*Software, Inc.*, 714 F. Supp. 2d 1, 16 (D.D.C. 2010).

## III.    DISCUSSION

Mr. Lazarenko first contends that the excerpts of Mr. Kiritchenko's deposition at issue

should be unsealed because the information included in them is not, in fact, susceptible to protec-

tion under the protective order in this case, having been disseminated in the public domain through

live testimony in Mr. Lazarenko's federal criminal case, deposition testimony filed on the public

docket in the *UTICO* case, and statements to law enforcement filed on the public docket in this case and elsewhere.  He further argues that, even if the material at issue were not already in the public domain, application of the *Hubbard* factors indicates that the deposition excerpts should be unsealed.  As discussed below, although Mr. Lazarenko has not sufficiently shown that all of the information included in the excerpts at issue is already publicly available, he has established that the strong interest in the public availability of judicial documents counsels in favor of unsealing.

### A.    Public Domain

Pursuant to the operative protective order in this case, "[i]f any [p]arty wishes to have certain information that was designated protected to be unprotected . . . , the [p]arties and/or relevant non-party or non-parties will confer and try to reach agreement.  If [they] . . . cannot reach agreement, either . . . may apply to the Court to resolve the matter in accordance with the Local Rules."  ECF No. 1086 at 9.  Counsel for Mr. Lazarenko has represented that they conferred with counsel for Mr. Kiritchenko to see if he would agree to "de-designate" the materials at issue and prepared a chart comparing the deposition testimony filed under seal in connection with the motion for partial summary judgment as to the Bank Julius Baer Guernsey Account with statements in the public domain that Mr. Lazarenko argues reveal the same information.  ECF No. 1297 at 3, 6–7; ECF No. 1308.  Counsel for Mr. Kiritchenko reportedly balked, asserting, according to Mr. Lazarenko, that, while the subjects addressed in the deposition testimony at issue were in the public domain, "the answer[s] to the[ ] specific questions [asked in the deposition] were not."  ECF No. 1297 at 4.  Negotiations having reached an impasse, Mr. Lazarenko first filed a letter brief bringing the dispute to the Court's attention (ECF No. 1279) and then, upon an order from the Court (ECF No. 1281), filed a motion seeking unsealing of the deposition excerpts (ECF No. 1297).

The bulk of the deposition testimony under seal concerns one of the schemes at the heart of Mr. Lazarenko's criminal trial by which—as described in the Ninth Circuit's decision affirming-in-part and reversing-in-part his convictions—he "required businesses to pay him fifty percent of their profits in exchange for his influence to make the businesses successful." *Lazarenko*, 564 F.3d at 1030.   More specifically, according to the Ninth Circuit, Mr. Lazarenko informed Mr. Kiritchenko at a meeting in 1992 that Mr. Lazarenko "worked with everyone '50-50,' which [Mr.] Kiritchenko interpreted as meaning that [Mr.] Lazarenko would control fifty percent of the business and take fifty percent of the profits." *Id.*

The deposition testimony at issue here provides certain assertions about which companies had such arrangements with Mr. Lazarenko and how the scheme was allegedly arranged and accomplished.   For example, Mr. Kiritchenko testified at his deposition in this case about the 1992 meeting at a bank in Warsaw when Mr. Lazarenko allegedly related the 50/50 arrangement he had with other businesses.   ECF No. 1268-3 at 3.   Mr. Kiritchenko further testified that third parties would deposit money into his own accounts—such as an account held in the name of Orphin—for Mr. Lazarenko and Mr. Kiritchenko would then transfer those funds to certain Swiss bank accounts controlled by Mr. Lazarenko.   ECF No. 1268-1 at 2; ECF No. 1268-2 at 3.   Among those third parties was Nakosta, which was controlled by two individuals known as Kokh and Krukayev (or Kurkhaev).   ECF No. 1268-1 at 2; ECF No. 1268-2 at 2.   Mr. Kiritchenko also testified at his deposition in this case that a farming business called Naukovy (or Naukovyi), which was directed by an individual known as Agrofonov, had a 60/40 rather than 50/50 arrangement with Mr. Lazarenko and that the transfer of funds from Naukovy to Mr. Lazarenko involved an entity known as Van der Ploeg.   ECF No. 1268-2 at 2; ECF No. 1268-3 at 2, 6.   Mr. Kiritchenko was asked about many companies other than Nakosta and Naukovy, as well, some of which he recognized as having

9

deposited money in his accounts to be transferred to Mr. Lazarenko, others about which he pro-tested ignorance. ECF No. 1268 at 2–3. However, he testified that he was unaware of the specific agreements behind the transfer of funds that any of those businesses—including Nakosta and Nau-kovy—had with Mr. Lazarenko. ECF No. 1268-2 at 3; ECF No. 1268-3 at 3.

In a series of submissions to the Court, Mr. Lazarenko has attempted to show that the in-formation included in the deposition excerpts at issue is available in the public domain, such as in publicly-available testimony and exhibits from Mr. Lazarenko's criminal trial (including Mr. Ki-ritchenko's restitution proceeding) and from the *UTICO* action, some of which have also been filed on the public docket in connection with various motions in this case. ECF Nos. 1297, 1308, 1390, 1391. He has adequately shown that much of the information in Mr. Kiritchenko's deposi-tion excerpts—and perhaps the information most material to the motion for summary judgment as to the Bank Julius Baer Guernsey Account—is publicly available. For example, Mr. Lazarenko points to Mr. Kiritchenko's testimony at the criminal trial discussing the 1992 meeting in Warsaw at which Mr. Lazarenko revealed the 50/50 arrangement and the participation of Nakosta in provid-ing money to Mr. Kiritchenko for Mr. Lazarenko's benefit. ECF No. 1390-3 at 8, 10–11 (attaching excerpts of the trial transcript from Mr. Lazarenko's criminal trial); *see also* ECF No. 1257-5 at 33–39 (same). He further points to exhibits from that same trial that show the names of bank accounts controlled by Mr. Kiritchenko and/or Mr. Lazarenko that were involved in the third-party payments and the names of the third-party companies that deposited funds in those accounts. *See, e.g.*, ECF No. 509-18 at 21–26; ECF No. 509-19 at 96–102; ECF No. 509-20 at 1–10, 30–42.

However, the evidence on which Mr. Lazarenko has focused the Court's attention does not always include the level of detail included in the deposition excerpts. For example, Mr. Ki-ritchenko testified at his deposition in this case that Naukovy was involved with the Van der Ploeg

payments—specifically, he testified that the money he passed from Van der Ploeg to Mr. Lazarenko "came from Naukovyi" because "they were buying cows from Van Der Ploeg." ECF No. 1268-2 at 2. The trial exhibits Mr. Lazarenko cites as evidence that such information is already in the public domain do not mention Naukovy, but reflect deposits only from Van der Ploeg. ECF No. 509-18 at 21–26; ECF No. 509-20 at 1–9. The Court's own research has found that the relationship between livestock, Van der Ploeg, and Naukovy was included in testimony at Mr. Lazarenko's criminal trial because it is restated in the Ninth Circuit's decision affirming-in-part and vacating-in-part his convictions. *Lazarenko*, 564 F.3d at 1030–31. But that is not work the Court should have to do on its own. It is Mr. Lazarenko's motion before the Court and his burden to show he is entitled to the relief he seeks. In any case, the Court has been unable to verify that other information in Mr. Kiritchenko's deposition testimony is in the public domain. For example, he testified that Mr. Lazarenko had a 60/40 arrangement with Mr. Agrofonov of Naukovy. ECF No. 1268-3 at 6. Mr. Lazarenko points to nothing in the public record that indicates such an arrangement and the Court's research has located none.[4]

In short, although Mr. Lazarenko has established that much of the information included in Mr. Kiritchenko's protected deposition excerpts is publicly available, he has failed to establish that all of it is.

## B.    Presumption of Public Access to Judicial Records

Notwithstanding whether all of the facts included in the excerpts from Mr. Kiritchenko's 2016 deposition testimony can be found in the public domain, the testimony should be unsealed because, in accordance with the *Hubbard* six-factor balancing test, the significant interest in

---

[4] It is quite possible that such information is publicly available. However, it is not the Court's task to search for it; it is the movant's responsibility to provide it.

allowing public access to judicial proceedings outweighs any potential privacy interests or preju-

dicial concerns of the objecting party.  *See Hubbard*, 650 F.2d at 317.

        1.      Need for Public Access

The first *Hubbard* factor assesses the need for public access to the documents at issue.  This

factor derives from the long-standing belief that public access to judicial records "serves the im-

portant function[ ] of ensuring the integrity of judicial proceedings."  *Hubbard*, 650 F.2d at 314–

15.

"There is a stronger presumption of transparency in some judicial proceedings than in oth-

ers."  *Friedman v. Sebelius*, 672 F. Supp. 2d 54, 58 (D.D.C. 2009).  That presumption is particu-

larly strong in this case because [t]he appropriateness of making court files accessible is accentu-

ated in cases where the government is a party."  *Nat'l Children's Ctr.*, 98 F.3d at 1409 (quoting

*FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)).  "[I]n such circumstances,

the public's right to know what the executive branch is about coalesces with the concomitant right

of the citizenry to appraise the judicial branch."  *Standard Fin. Mgmt.*, 830 F.2d at 410; *see also*

*Hyatt v. Lee*, 251 F. Supp. 3d 181, 184 (D.D.C. 2017) ("The interest of the public and press in

access to civil proceedings is at its apex when the government is a party to the litigation.  Indeed,

the public has a strong interest in monitoring not only functions of the courts but also the positions

that its elected officials and government agencies take in litigation." (quoting *Doe v. Pub. Citizen*,

749 F.3d 246, 271 (4th Cir. 2014))).  Here, of course, the government is a party to the litigation,

which, in itself weighs in favor of disclosure.  Moreover, there is a particularly "strong presump-

tion of openness" for proceedings related to criminal matters.  *Friedman*, 672 F. Supp. 2d at 58.

To be sure, this is not technically a criminal case.   It is, however, an *in rem* forfeiture action

founded on allegations of illegal activity by Mr. Lazarenko brought by attorneys from the Asset

Forfeiture and Money Laundering Section of the Criminal Division of the U.S. Department of Justice, as well as attorneys from the Criminal Division of the U.S. Attorney's Office for the District of Columbia.  Courts have recognized that such proceedings are, "in fact if not form, at least 'quasi-criminal' in nature."  *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1063 (9th Cir. 1994), *superseded by statute on other grounds*, Civil Asset Forfeiture Reform Act of 2000, Pub. L No. 106-185, 114 Stat. 202 (2000), *as recognized in United States v. $80,180.00 in U.S. Currency*, 303 F.3d 1182 (9th Cir. 2002); *cf. United States v. $15,270,885.69 on Deposit in Acct. No. 8900261137*, No. 99 Civ. 10255, 2000 WL 1234593, at *1 n.2 (S.D.N.Y. Aug. 31, 2000) (finding that allegations of criminal activity by the holder of funds weighed in favor of unsealing a civil forfeiture action).  Furthermore, the nature of Mr. Lazarenko's alleged criminal activities as a former Ukrainian public official and the hundreds of millions of dollars allegedly laundered through financial institutions in the United States suggest that this is a matter of some significant public concern, which also weighs in favor of disclosure.  *See In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 7 (D.D.C. 2013) (explaining that disclosure of documents relating to the deadly accident on public transportation—a "matter of significant public concern"— would cause an "incremental gain in public understanding of an immensely important historical occurrence." (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 602 (1978))).

Finally, "because the law presumes that the public is entitled to access the contents of judicial proceedings," it is the party arguing against disclosure that has the burden to "demonstrate the *absence* of a need for public access."  *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121,140–41 (D.D.C. 2012).  Mr. Kiritchenko has utterly failed to do so here.  Indeed, his opposition does not even address the presumption of public access, but instead states that on "a number of occasions" he and his family "have been threatened and suffered other harm" as a consequence

of "testimony [he] ha[s] given." ECF No. 1307. While such a claim may be taken into consideration when assessing the strength of the privacy interest involved, it does not show an absence of the need for public access to these judicial records. For these reasons, this factor weighs heavily in favor of disclosure.

2.       Extent of Prior Public Access

The second *Hubbard* factor concerns the extent of prior public access to the documents at issue. The fact that a document has been previously accessible to the public "weigh[s] in favor of subsequent access." *Hubbard*, 650 F.2d at 318 (explaining that though previous access cannot control the decision "concerning whether, when, and under what conditions the public should have access," this factor of previous access is relevant in deciding whether more liberal access should be granted); *see also Friedman*, 672 F. Supp. 2d at 59 (reasoning "that it is less harmful to release a document that was once public than to release one that has never been made publicly accessible").

The public has not previously had access to these specific deposition excerpts. However, as discussed above, a considerable amount of the information included in those excerpts is in the public domain. *See supra* Section III.A. This factor thus weighs in favor of disclosure of that information. *See In re Application of N.Y. Times Co. for Access to Certain Sealed Ct. Recs.*, 585 F. Supp. 2d 83, 93 (D.D.C. 2008) (ordering the disclosure of documents where "much of the critical information is already in the public forum," and the opposing party "introduced or re-introduced some of the details regarding the search warrants into the public forum himself"). As to the information for which Mr. Lazarenko has failed to establish prior public access, this factor is merely neutral. *See, e.g.*, *Am. Pro. Agency, Inc. v. NASW Assurance Servs., Inc.*, 121 F. Supp. 3d

21, 24 (D.D.C. 2013) ("The second *Hubbard* factor is 'neutral' where there has been no previous access.").

### 3.    Identity of the Party Objecting to Disclosure

The third *Hubbard* factor considers whether a party objects to the disclosure and the identity of the objecting party.  650 F.2d at 319.  In *Hubbard*, the D.C. Circuit held that a third party whose property and privacy rights were at issue was the proper party to object.  650 F.2d at 319.  Mr. Lazarenko concedes that Mr. Kiritchenko is the proper party to object.  ECF No. 1297 at 6.  This factor weighs in favor of keeping Mr. Kiritchenko's deposition excerpts sealed.

### 4.    Strength of Privacy or Property Interests

The fourth *Hubbard* factor examines the objecting party's privacy and/or property interests in the documents at issue.  650 F.2d at 320 (explaining the strong privacy interest in documents seized from a private area of a church).  The D.C. Circuit in *Hubbard* illustrated situations where the unsealing of documents would implicate cognizable interests because they contained material protected by attorney-client privilege, discussed tax returns, or included information about an individual's sex life, or other intimate details.  650 F.2d at 323–24.  Valid privacy and property interests are not limited to personal details, but may also include confidential business information that should be kept private for competitive business reasons.  *See Tavoulareas v. Wash. Post Co.*, 111 F.R.D. 653, 655–56 (D.D.C. 1986) (maintaining seal of private business information where a third party sufficiently demonstrated that the release of the information would harm its business).

The documents at issue here do not implicate any of those particularized privacy or property interests.  The deposition excerpts do not contain any intimate personal details.  While there are intimations of illegality included in the testimony, "allegations of . . . wrongdoing . . . do not implicate privacy interests," *DRC, Inc. v. Republic of Honduras*, No. 10-cv-0003 (PLF/AK), 2011

WL 13257869, at *6 (D.D.C. Aug. 22, 2011), nor is unsubstantiated worry about damage to one's reputation sufficiently substantial to weigh against public disclosure, *see, e.g.*, *Zapp v. Zhenli Ye Gon*, 746 F. Supp. 2d 145, 149–50 (D.D.C. 2010) (finding an unsupported and cursory argument that public disclosure of certain documents would damage an individual's reputation "d[id] not weight in favor of sealing" those documents).  The excerpts at issue do contain information regarding Mr. Lazarenko's business relationships, as well as Mr. Kiritchenko's role in Mr. Lazarenko's business dealings.  ECF No. 1268-1 through 1268-3.  However, Mr. Kiritchenko has not suggested that any of his ongoing business relationships would be harmed by disclosure of the currently sealed information.  *Cf. Tavoulareas*, 111 F.R.D. at 656.

Instead, Mr. Kiritchenko opposes the public release of his testimony on the grounds that he and his family have been "threatened and suffered other harm" on previous occasions "as a result of testimony [he] ha[s] given."  ECF No. 1307 at 2.  Mr, Lazarenko reports that Mr. Kiritchenko has asserted that such concerns are based on Mr. Kiritchenko's fear of harassment from certain individuals in Ukraine as a result of the release of his testimony.  ECF No. 1297 at 7.  Courts have recognized in other contexts that the fear that threats or harassment will result from the disclosure of information can "raise[ ] a measurable privacy concern that must be weighed against the public's interest in disclosure."  *Wood v. F.B.I.*, 432 F.3d 78, 88 (2d Cir. 2005) (Freedom of Information Act ("FOIA") case)); *see also Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1026 (9th Cir. 2008) (concluding that "the avoidance of harassment is a cognizable privacy interest" under a FOIA exemption).

However, vague, conclusory assertions of potential threats, without any evidence supporting a specific fear based on the release of the documents at issue, like Mr. Kiritchenko's concerns here, are not sufficient to weigh in favor of nondisclosure.  *See Grynberg v. BP P.L.C.*, 205 F.

Supp. 3d 1, 4 (D.D.C. 2016) ("Such 'vague assertions' . . . do not convince the Court that the disputed documents should be sealed."); *see also, e.g.*, *United States v. Antar*, 38 F.3d 1348, 1363 (3d Cir. 1994) (unsealing jury voir dire transcripts after trial because there was no evidence that "jurors were being harassed or that a threat of undue harassment was impending," and the "concern with harassment was hypothetical"); *Stein v. CIA*, 454 F. Supp. 3d 1, 33 (D.D.C. 2020) (holding, in a FOIA case, that the government's unsupported and conclusory assertion that release of information could subject an individual "to unwanted attention or harassment" was insufficient to protect that information from disclosure); *In re Up N. Plastics, Inc.*, 940 F. Supp. 229, 234 (D. Minn. 1996) (finding an unsupported, "speculative" fear that releasing a search warrant affidavit might expose cooperating witnesses to  harassment or intimidation insufficient to merit "the extraordinary measure of sealing the court's records").  Importantly, this is not a situation in which unsealing the material at issue would expose the role of a previously-undisclosed cooperating government witness in a criminal trial.  Rather, Mr. Kiritchenko's role and testimony in Mr. Lazarenko's criminal trial has been in the public domain for over fifteen years.  Indeed, Mr. Kiritchenko himself based his claim for restitution largely on matters discussed in that testimony, some of which are also included in the deposition excerpts he seeks to shield here.  *See, e.g.*, *Lazarenko*, 555 F. Supp. 2d at 1032–33.  What the public record apparently lacks is a handful of details in the deposition excerpts that—as best the Court can determine—were not included in his prior testimony or other publicly-available statements.  But Mr. Kiritchenko does not explain how placing those additional details in the public record will make him more a target of threats and harassment than he alleges he already is.  Therefore, the Court here finds that Mr. Kiritchenko's privacy and property interests in the continued sealing of the deposition testimony at issue here are weak.  This factor weighs in favor of unsealing the deposition transcript.

5.      Possibility of Prejudice to Those Opposing Disclosure

The fifth *Hubbard* factor concerns the possibility of prejudice to the individual or entity opposing disclosure.  "The possibility of prejudice refers to 'whether disclosure of the documents will lead to prejudice in future litigation to the party seeking the seal.'"  *United States ex rel. Durham v. Prospect Waterproofing, Inc.*, 818 F. Supp. 2d 64, 68 (D.D.C. 2011) (quoting *Friedman,* 672 F.Supp.2d at 60).  For this factor to weigh in favor of continued sealing, the party opposing disclosure "must have identified how the . . . disclosure" of the relevant material "causes . . . legal prejudice."  *Zapp*, 746 F. Supp. 2d at 150.  Here, Mr. Kiritchenko does not explain how disclosure would prejudice him in future litigation—indeed, he does not address the prospect of prejudice, at all.  In case after case in this Circuit, courts have found that an individual who fails to identify and support a claim of litigation prejudice, like Mr. Kiritchenko here, does not meet the burden under this factor.  *See, e.g., Gilliard v. McWilliams*, No. 16-cv-2007, 2019 WL 3304707, at *5 (D.D.C. July 23, 2019) (finding that the fifth factor "d[id] not weigh in favor of sealing" where the plaintiff failed to "provide any reasons why [ ] disclosure would lead to prejudice in any future litigation"); *Hamiduva v. Obama*, No. 08-cv-1221, 2015 WL 5176085, at *3 (D.D.C. Sept. 3, 2015) (finding the fifth factor "neutral" where the party seeking sealing "d[id] not allege that the disclosure of the documents would have any effect on future litigation."); *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 95–96 (D.D.C. 2014) (rejecting the plaintiffs' "speculative and generalized argument" that disclosure of litigation documents could cause prejudice by allowing other litigants to rely on the defendants' allegations in the case was insufficient to counsel in favor of sealing where the plaintiffs "d[id] not explain how or for what purpose future litigants would do so, or even provide any examples."); *DRC*, 2011 WL 13257869, at *7 ("DRC asserts in conclusory language that continued open access to false and defamatory statements would subject

it to prejudice.  DRC has not argued that it will be subject to litigation prejudice, only general damage to its ability to do business. . . .  Accordingly, the fifth factor weighs in favor of public access."); *Zapp*, 746 F. Supp. 2d at 150 ("[Because] Zapp does not claim that the Documents' continued disclosure cause[s] him legal prejudice, the Court finds that this factor does not weigh in favor of sealing the Documents.").  As in those cases, Mr. Kiritchenko has not established that the possibility of future litigation prejudice weighs against disclosure of the deposition excerpts.

6.     Purposes for which Documents were Introduced during Proceeding

The sixth *Hubbard* factor examines the purposes for which the documents were introduced during the proceeding.  Generally, there is a strong presumption of public access to documents that a litigant submits with the intention that the court will rely on them.  For example, in *Metlife, Inc. v. Financial Stability Oversight Council*, the D.C. Circuit ruled that the briefs and appendices were judicial records subject to the public right of access because they were filed before the district court's decision and "were intended to influence it."  865 F.3d 661, 668 (D.C. Cir. 2017) (further reasoning that "[w]ithout access to the sealed materials, it is impossible to know which parts of those materials persuaded the court and which failed to do so (and why)"); *see also, e.g.*, *Joy*, 692 F.2d at 893 (noting that, notwithstanding the applicability of a protective order, "documents used by the parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons"); *Hyatt v. Lee*, 251 F. Supp. 3d 181, 186 (D.D.C. 2017) (finding that the sixth factor weighed in favor of disclosure of, among other things, "the motions of the parties[ ] and the records and expert reports relied upon by the parties and presented to the Court in support of their motions for summary judgment"); *Herron v. Fannie Mae*, No. 10-cv-943, 2016 WL 10677615, at *4 (D.D.C. June 20, 2016) (finding that because the parties' summary judgment papers pertained "to the parties' direct claims and defenses" at issue in the action, "[t]ransparency

and access to th[e] documents [was] central to the integrity of the[ ] proceedings"); *Zapp*, 746 F. Supp. 2d at 151 (finding that where the plaintiff filed exhibits in conjunction with his summary judgment "intend[ing] for the [c]ourt to rely on these filings in adjudicating his dispute," this factor weighed in favor of disclosure).

Here, Mr. Lazarenko filed Mr. Kiritchenko's deposition excerpts in support of his motion summary judgment on the Bank Julius Baer Guernsey Account. ECF No. 1268-1 through 1268-3. In fact, Mr. Lazarenko cites the excerpts to emphasize that Mr. Kiritchenko did not have personal knowledge of the reason that funds were deposited in various accounts for Mr. Lazarenko's benefit, arguing that the testimony therefore cannot help the government to shoulder its burden to prove that the funds in the Bank Julius Baer Guernsey Account are traceable to the criminal activity alleged in this action. ECF No. 1269 at 6–7. The government's opposition to Mr. Lazarenko's motion for summary judgment also cites the deposition excerpts, in conjunction with expert reports and bank records, to argue that the funds in the Bank Julius Baer Guernsey Account were part of the alleged 50/50 bribery and extortion scheme. ECF No. 1305 at 6–7. The deposition excerpts at issue are thus significant pieces of evidence relating to the forfeitability of the funds at issue, which is the ultimate question. As such, this factor weighs in favor of unsealing the documents at issue.

*   *   *   *   *

In sum, the *Hubbard* factors weigh in favor of unsealing the excerpts of Mr. Kiritchenko's 2016 deposition testimony. The only factor that weighs in favor of maintaining the seal over these records is the fact that the proper party objects to unsealing. That, alone, is insufficient to override the strong presumption of public access to judicial records.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Claimant Lazarenko's motion to unseal excerpts of Mr. Kiritchenko's 2016 deposition transcript (ECF No. 1297) is **GRANTED**.  The Clerk of Court is respectfully directed to unseal the documents found at ECF Nos. 1268-1, 1268-2, and 1268-3.

**SO ORDERED.**

Date:   December 30, 2020

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE