UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-0798 (PLF) |
| ) | |
| ALL ASSETS HELD AT BANK JULIUS ) | |
| Baer & Company, Ltd., Guernsey ) | |
| Branch, account number 121128, in the ) | |
| Name of Pavlo Lazarenko <u>et</u> <u>al</u>., ) | |
| ) | |
| Defendants <u>In</u> <u>Rem</u>. ) | |
| ) | |

OPINION

        This matter is before the Court on the motion [Dkt. No. 1256] of the United States

to strike the claims of Ekaterina Lazarenko and Lecia Lazarenko to the Balford Trust assets.

Upon consideration of the parties' written submissions, the relevant legal authorities, and the

entire record in this case, the Court will grant the United States' motion to strike.[1]

---

        [1]        The documents reviewed in connection with the United States' motion to strike
include:  the verified complaint for forfeiture <u>in</u> <u>rem</u> ("Complaint") [Dkt. No. 1]; the verified
claim and statement of interest by Alexander Lazarenko for himself and as agent for Lecia
Lazarenko and Ekaterina Lazareko ("First Claim") [Dkt. No. 4]; answer by the Lazarenko
children ("Answer") [Dkt. No. 8]; the first amended verified complaint for forfeiture <u>in</u> <u>rem</u>
("Amended Complaint") [Dkt. No. 20]; second verified claim and statement of interest by the
Lazarenko children ("Second Claim") [Dkt. No. 28]; the United States' motion to strike claimant
Pavel Lazarenko's claim to the Balford Trust ("Mot. Strike Pavel Lazarenko")
[Dkt. No. 554]; the declarations of Alasdair Davidson ("Davidson Decl.") [Dkt. No. 554-2] and
Gavin Ferguson ("Ferguson Decl.") [Dkt. No. 554-3]; the United States' appendix to its motion
to strike Pavel Lazarenko's claim to the Balford Trust ("US App'x") [Dkt. Nos 554-8
through 554-13]; the declarations of Nicholas Le Poidevin ("Le Poidevin Decl.") [Dkt.
No. 729-1] and Nicholas J. Barnes ("Barnes Decl.") [Dkt. No. 730]; Ekaterina Lazarenko's
verified claim and statement of interest ("Ekaterina Claim") [Dkt. No. 873]; Lecia Lazarenko's
verified claim and statement of interest ("Lecia Claim") [Dkt. No. 874]; the United States'

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  History of this Civil Forfeiture Proceeding

The Court's prior opinions summarize the factual and procedural history of this case, starting with the criminal prosecution of Mr. Pavel Lazarenko, also known as Pavlo Lazarenko, in 2004 and continuing through this long-running in rem civil forfeiture proceeding. See United States v. All Assets Held at Bank Julius Baer & Co., Ltd. ("All Assets XI"), Civil Action No. 04-0798, 2020 WL 7640213, at *2 (D.D.C. Nov. 23, 2020) (collecting prior opinions).  In brief, Mr. Lazarenko was "a prominent Ukrainian politician who, with the aid of various associates, was 'able to acquire hundreds of millions of United States dollars through a variety of acts of fraud, extortion, bribery, misappropriation and/or embezzlement' committed during the 1990s."  United States v. All Assets Held at Bank Julius Baer & Co., Ltd. ("All Assets IV"), 959 F. Supp. 2d 81, 85 (D.D.C. 2013) (quoting Amended Complaint ¶¶ 1, 10).

### B.  The United States' Motion to Strike the Lazarenko Children's Claim to the Balford Trust

In May 2004, the United States filed an in rem civil forfeiture complaint seeking forfeiture of, among other things, "[a]ll funds on deposit at Credit Suisse (Guernsey) Limited, in account number 41610 in the name of Samante Limited as Trustees of the Balford Trust."

---

motion to strike the claims of Ekaterina Lazarenko and Lecia Lazarenko to the Balford Trust ("Mot. Strike") [Dkt. No. 1256]; the United States' memorandum in support of its motion to strike the Lazarenko daughters ("Mem. Mot. Strike") [Dkt. No. 1256-1]; supplemental declaration of Alasdair Davidson ("Davidson Supp. Decl.") [Dkt. No. 1256-5]; the Lazarenko daughters' memorandum in opposition to the United States' motion to strike and cross-motion to modify the restraining order ("Opp.") [Dkt. No. 1327]; the third declaration of Nicholas J. Barnes ("Third Barnes Decl.") [Dkt. No. 1328-1]; the United States' reply in support of its motion to strike the Lazarenko daughters ("US Reply") [Dkt. No. 1351]; the United States' appendix to its reply ("US Reply App'x") [Dkt. No. 1351-2]; the United States' opposition to the Lazarenko daughters' motion to modify the restraining order ("Opp. Modify") [Dkt. No. 1352]; and the Lazarenko daughters' reply in support of their motion to modify the restraining order ("Lazarenko Daughters' Reply") [Dkt. No. 1361].

Complaint ¶ 5(b).  The next year, in June 2005, the United States filed an amended complaint identifying an additional bank account in Guernsey, account number 41950, and increasing the total Balford Trust assets sought to be forfeited to $147,919,401.13.  Amended Complaint ¶ 5(b). The amended complaint also identified an escrow account for the Balford Trust, account number 41843, with £ 14,308.52 pounds sterling of the United Kingdom.  Id. ¶ 5(c).

Alexander, Lecia, and Ekaterina Lazarenko (collectively, the "Lazarenko children") are "the three adult children of Pavel Lazarenko." United States v. All Assets Held at Bank Julius, Baer & Company, Ltd. ("All Assets VI"), 228 F. Supp. 3d 118, 121 (D.D.C. 2017). On June 29, 2004, Alexander Lazarenko, "for himself and as agent and attorney-in-fact for Lecia Lazarenko and Ekaterina Lazareko," filed a pro se verified claim stating their interest in the Balford Trust assets.  See First Claim at 1.  Alexander Lazarenko attached signed and notarized power of attorney forms to the claim, indicating that Lecia and Ekaterina Lazarenko (the "Lazarenko daughters") each empowered him to "represent all [of their] right, title and interest in the Balford Trust" in this litigation.  Id. at 5.  The claim asserted that the claimants "have a present beneficial interest in" the Balford Trust assets based on their status as "beneficiaries of the Balford Trust."  Id. at 3.  In addition to their claim, the Lazarenko children – with the assistance of counsel – filed a verified answer to the complaint.  Answer ¶ 73.

Following the filing of the 2005 amended complaint, the Lazarenko children filed a second pro se verified claim.  The claim stated their interest in "[a]ll assets held at Credit Suisse (Guernsey) Limited account numbers 41610 and 41950" because they are "the beneficiaries of the Balford Trust . . . and thereby have a present beneficial interest in and right to all said currency."  Second Claim at 3.  Alexander Lazarenko again attached signed and

notarized power of attorney forms.  The Lazarenko children did not, at that time, file an answer to the amended complaint.

In April 2015, the United States moved to strike the Lazarenko children's claims to the Balford Trust.  All Assets VI, 228 F. Supp. 3d at 122.  The United States argued that the Lazarenko children lacked statutory standing because they failed to file an answer to the amended complaint.  Id.  It further argued that Lecia and Ekaterina Lazarenko lacked statutory standing because they failed to verify their claim.  Id.  The Court denied the United States' motion, concluding that "it should excuse [the Lazarenko children's] failure to file an answer to the amended complaint in this case because that failure [had] not at all prejudiced the United States."  Id. at 126.  The Court also declined to strike the claims of Lecia and Ekaterina Lazarenko because they had filed their claim in accordance with the procedural rules in effect at the time their claim was filed.  Id. at 126-27.  The Court ordered the Lazarenko children to refile their claims in accordance with subsequently enacted procedural rules.  Id. at 127.

On February 1, 2017, each of the Lazarenko children filed an amended verified claim and statement of interest.  The claims of the Lazarenko daughters assert their interest in "[a]ll assets held at Credit Suisse (Guernsey) Limited, account numbers 41610, 41950, and 41843 in the name of Samante Limited as Trustees of the Balford Trust . . . ."  Ekaterina Claim at 1; Lecia Claim at 1.  They further assert that the Lazarenko daughters' "rights in the property are set forth in the Declaration of Trust."  Ekaterina Claim at 1; Lecia Claim at 1.

In July 2019, the United States filed a motion for sanctions against Alexander Lazarenko for failing to appear for a noticed deposition.  See United States v. All Assets Held at Bank Julius Baer & Co., Ltd., Civil Action No. 04-0798, 2019 WL 6970727, at *5 (D.D.C. Sept. 5, 2019).  The United States requested that Alexander Lazarenko's claim be dismissed or,

in the alternative, that he be required to appear for a deposition in Ukraine.  Id. at *2.  Magistrate

Judge Harvey issued a report and recommendation that concluded that "no sanction other than

dismissal of Alexander Lazarenko's claims would be effective."  He therefore recommended that

the government's motion for sanctions be granted in part and that Alexander Lazarenko's claims

be dismissed.  Id. at *9.  This Court adopted and approved Magistrate Judge Harvey's

recommendation and dismissed Alexander Lazarenko's claim to the Balford Trust.  United States

v. All Assets Held at Bank Julius Baer & Co., Ltd. ("All Assets VIII"), Civil Action

No. 04-0798, 2019 WL 6910067, at *1 (D.D.C. Dec. 19, 2019).

   In January 2016, the United States moved to strike Pavel Lazarenko's claim to the

Balford Trust assets.  See Mot. Strike Pavel Lazarenko.  The Court granted the United States'

motion in April 2020.  See United States v. All Assets Held at Bank Julius ("All Assets

IX"), 480 F. Supp. 3d 1, 6 (D.D.C. 2020).  The Court later denied Mr. Lazarenko's motion for

reconsideration of its opinion and order striking his claim to the Balford Trust.  See United States

v. All Assets Held at Bank Julius Baer & Co., Ltd., Civil Action No. 04-0798, 2020

WL 6591391, at *7 ("All Assets X") (D.D.C. Nov. 11, 2020).  The Lazarenko daughters

therefore are the only remaining claimants to the Balford Trust.

## II.  LEGAL FRAMEWORK

### A.  Motion to Strike

   In a forfeiture action brought in rem pursuant to a federal statute, at any time

before trial, the United States "may move to strike a claim or answer . . . because the claimant

lacks standing."  SUPP. R. G(8)(c)(i)(B).  Such a challenge to a party's claim and answer "may be

presented . . . as a motion to determine after a hearing or by summary judgment whether the

claimant can carry the burden of establishing standing by a preponderance of the evidence." Supp. R. G(8)(c)(ii)(B).

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); see Baumann v. District of Columbia, 795 F.3d 209, 215 (D.C. Cir. 2015); Fed. R. Civ. P. 56(a), (c). In making that determination, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Baumann v. District of Columbia, 795 F.3d at 215; Anderson v. Liberty Lobby, Inc., 477 U.S. at 255. A disputed fact is "material" if it "might affect the outcome of the suit under the governing law." Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). A dispute over a material fact is "genuine" if it could lead a reasonable jury to return a verdict in favor of the non-moving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Grimes v. District of Columbia, 794 F.3d 83, 94-95 (D.C. Cir. 2015).

Although all reasonable inferences must be drawn in favor of the non-moving party, that party's opposition to the summary judgment motion must consist of more than mere unsupported allegations or denials, and must instead be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-moving party is required to provide evidence that would permit a reasonable jury to find in her favor. Laningham v. U.S. Navy, 813 F.2d 1236, 1241 (D.C. Cir. 1987). For the purposes of the summary judgment motion, the specific facts as presented by the non-moving party "will be

taken to be true." Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).  If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see also Scott v. Harris, 550 U.S. at 380 ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'") (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment." Barnett v. PA Consulting Grp., Inc., 715 F.3d 354, 358 (D.C. Cir. 2013) (quoting Pardo-Kronemann v. Donovan, 601 F.3d 599, 604 (D.C. Cir. 2010)).  "The inquiry performed [at this phase] is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.

### B.  Standing in Civil Forfeiture Actions

"Civil forfeiture actions are brought against property, not people. The owner of the property may intervene to protect his interest." United States v. All Funds in Account Nos. 747.034/278, 747.009/278, & 747.714/278 in Banco Espanol de Credito, Spain, 295 F.3d 23, 25 (D.C. Cir. 2002).  Because the United States, rather than the claimant, is the plaintiff and bears the burden of proving the property's forfeitability, "[t]he function of standing in a forfeiture action is . . . truly threshold only—to ensure that the government is put to its proof only where someone with a legitimate interest contests the forfeiture." United States v.

$557,933.89, More or Less, in U.S. Funds, 287 F.3d 66, 79 (2d Cir. 2002); see also United States v. $17,900 in U.S. Currency, 859 F.3d 1085, 1089-90 (D.C. Cir. 2017).

Civil forfeiture actions are governed by the procedures set forth in 18 U.S.C. § 983 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"), a subset of the Federal Rules of Civil Procedure. When the government files a complaint for forfeiture, "any person claiming an interest in the seized property may file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules." 18 U.S.C. § 983(a)(4)(A); see also SUPP. R. G(5)(a).

When the government moves to strike a claim for lack of standing pursuant to Rule G(8)(c) of the Supplemental Rules, the claimant has the burden of "establishing standing by a preponderance of the evidence." SUPP. R. G(8)(c)(ii)(B). "To prevail, a claimant must meet both Article III and statutory standing requirements." United States v. $17,900 in U.S. Currency, 859 F.3d 1085, 1089 (D.C. Cir. 2017) (internal quotations omitted). "The term 'statutory standing' relates to a claimant's ability to show that he has satisfied whatever statutory requirements Congress has imposed for contesting a civil forfeiture action in federal court, while 'Article III standing' [or 'constitutional standing'] relates to the claimant's ability to show that he has a sufficient interest in the property to satisfy the case-or-controversy requirement of Article III of the Constitution." United States v. 8 Gilcrease Lane, Quincy Fla. 32351, 641 F. Supp. 2d 1, 5-6 (D.D.C. 2009) (citing Stefan D. Cassella, ASSET FORFEITURE IN THE UNITED STATES: A TREATISE ON FORFEITURE LAW § 9-4 at 326 (2006)). Here, the United States argues that the Lazarenko daughters lack only Article III, constitutional standing to contest forfeiture of the Balford Trust. See Mem. Mot. Strike at 13-14, 26.

Constitutional standing is one of the three "inter-related judicial doctrines" that – along with the requirements of mootness and ripeness – "ensure that federal courts assert jurisdiction only over 'Cases' and 'Controversies.'"  Worth v. Jackson, 451 F.3d 854, 855 (D.C. Cir. 2006) (quoting U.S. CONST. art. III, § 2).  Standing is an Article III requirement under which the plaintiffs must show, at an "irreducible constitutional minimum," that:  (1) they have suffered an injury in fact – the invasion of a legally protected interest; (2) the injury is fairly traceable to the defendant's conduct (a causal connection); and (3) a favorable decision on the merits likely will redress the injury.  See Lujan v. Defs. of Wildlife, 504 U.S. at 560-61; Worth v. Jackson, 451 F.3d at 858.  The alleged injury must be concrete and particularized and actual or imminent, not conjectural, hypothetical, or speculative.  See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016); Lujan v. Defs. of Wildlife, 504 U.S. at 560-61; Worth v. Jackson, 451 F.3d at 858.

"Standing is a threshold consideration in all cases, including civil forfeiture cases."  United States v. One-Sixth Share of Mass Millions Lottery Ticket ("United States v. One-Sixth Share"), 326 F.3d 36, 40 (1st Cir. 2003).  In the civil forfeiture context, the D.C. Circuit has explained that "the requirements for a claimant to demonstrate constitutional standing to challenge a forfeiture are very forgiving."  United States v. $17,900 in U.S. Currency, 859 F.3d at 1089 (citing United States v. Emor, 785 F.3d 671, 676 (D.C. Cir. 2015)) (alterations omitted).  "While some courts have focused on whether a party had an ownership or possessory interest under state law at the time of forfeiture, other courts have noted [that] it is the injury to the party seeking standing that remains the ultimate focus."  United States v. Emor, 785 F.3d at 676 (internal citations omitted); see also United States v. 8 Gilcrease Lane, Quincy Fla. 32351, 641 F. Supp. 2d at 6 ("[I]n a civil forfeiture case, a claimant's constitutional standing turns upon whether the claimant has a sufficient interest in the property to create a case or

controversy.") (citation omitted) (internal quotation marks omitted).  "In general, any colorable claim on the property suffices, if the claim of injury is "redressable, at least in part, by a return of the property."  United States v. Emor, 785 F.3d at 676 (citation omitted).

The nature of a claimant's asserted property interest is "defined by the law of the State" – or here, nation – "in which the interest arose."  United States v. One Lincoln Navigator, 328 F.3d 1011, 1013 (8th Cir. 2003); see also United States v. $100,348 in U.S. Currency, 354 F.3d 1110, 1119 (9th Cir. 2004); United States v. One-Sixth Share, 326 F.3d at 45.  But while state law defines a claimant's interest in specific property, "federal law determines the effect of [that] interest on [the claimant's] right to bring a claim."  United States v. U.S. Currency, $81,000.00, 189 F.3d 28, 33 (1st Cir. 1999) (citing United States v. Nat'l Bank of Com., 472 U.S. 713, 722 (1985)); see also United States v. 5 S 351 Tuthill Rd., 233 F.3d 1017, 1021 (7th Cir. 2000) ("State law defines and classifies property interests for purposes of the forfeiture statutes, while federal law determines the effect of the property interest on the claimant's standing."); United States v. BCCI Holdings, Luxembourg, S.A., 69 F. Supp. 2d 36, 57 (D.D.C. 1999) (same).

At the summary judgment stage, the question is "whether a fairminded jury could find that the claimant had standing on the evidence presented."  United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 638 (9th Cir. 2012).  "[A] claimant must prove by a preponderance of the evidence that he has a facially colorable interest in the res such that he would be injured if the property were forfeited to the United States; otherwise, no case or controversy exists capable of federal court adjudication."  United States v. $148,840.00 in U.S. Currency, 521 F.3d 1268, 1273 (10th Cir. 2008).  Each claimant must therefore "point to some evidence in the record that would allow a reasonable factfinder to conclude" that the claimant has "a cognizable

interest in the assets potentially subject to forfeiture." United States v. All Assets Held at Bank Julius Baer & Co. ("All Assets II"), 664 F. Supp. 2d 97, 104-05 (D.D.C. 2009).   When the government moves to strike a claim because the claimant lacks standing, courts must not conflate the standing inquiry "with the merits determination that comes later." United States v. One-Sixth Share, 326 F.3d at 41; see also United States v. One Lincoln Navigator, 328 F.3d at 1013; United States v. $17,900 in U.S. Currency, 859 F.3d at 1091.  "Although a claimant must make an initial evidentiary showing of such an interest, a claimant need not definitively prove the existence of that interest." United States v. $148,840 in U.S. Currency, 521 F.3d at 1273; see also United States v. $557,933.89, More or Less, in U.S. Funds, 287 F.3d at 79; United States v. 116 Emerson St., 942 F.2d 74, 78 (1st Cir. 1991).

"[S]tanding 'must be supported . . . with the manner and degree of evidence required at [each] successive stage[] of litigation.'" United States v. $17,900 in U.S. Currency, 859 F.3d at 1090 (citing Lujan v. Defs. of Wildlife, 504 U.S. at 561).  Further, "[a] variety of property interests may serve as the basis for a claimant's entitlement to contest a civil forfeiture, including not only ownership but also possessory and other lesser forms of interest." All Assets IV, 959 F. Supp. 2d at 99.  Accordingly, "[t]he type of interest claimed dictates the type of evidence required to establish standing." Id. at 99-100 (citing United States v. $148,840 in U.S. Currency, 521 F.3d at 1274).

### C.  The Balford Trust

The parties agree that the Lazarenko daughters' legal rights and limitations with respect to the Balford Trust are set forth in the declaration of trust.  See Mem. Mot. Strike at 9; Ekaterina Claim at 1 (stating that her "rights in the property are set forth in the Declaration of

Trust"); Lecia Claim at 1 (same).  The Balford Trust Declaration states that Guernsey law governs the trust.  Balford Trust Declaration ("Trust Decl.") ¶ 2(a) [US App'x 219].

Under Guernsey law, a trust exists when a trustee "holds or has vested in him . . . property which does not form . . . part of his own estate" either "for the benefit of another person" – a beneficiary – or "for any purpose, other than a purpose for the benefit only of the trustee."  See The Trusts (Guernsey) Law, 2007 ("Guernsey Trust Law") § 1(a) [US App'x 346].  The trust is created when the settlor – the person creating the trust – "transfers assets to another person (known as a trustee) who is entrusted with legal title to the trust assets." See *Offshore trusts*, OGIER (Feb. 26, 2018), https://www.ogier.com/publications/offshore-trusts. Upon creation of a trust in Guernsey, the settlor "divest[s] himself of legal ownership of the trust assets."  Id.  Pavel Lazarenko is the settlor of the Balford Trust.  All Assets IX, 480 F. Supp. 3d at 9.  The corporate trustee, Samante Limited, is the legal owner of the Balford Trust.  See Trust Decl., Establishment Checklist [US App'x 215].

The trust declaration states that the trustees "shall stand possessed of the Trust Fund and the income thereof" during the trust period.  Trust Decl. ¶ 3 [US App'x 220].  The trustees hold the trust fund for the benefit of four beneficiaries:  Alexander, Tamara, Lecia, and Ekaterina Lazarenko.  Id., Establishment Checklist [US App'x 215].  The Balford Trust is irrevocable, so no person or entity has the power to revoke the trust and have the funds revert to the settlor.  See id. ¶ 27 [US App'x 227]; All Assets IX, 480 F. Supp. 3d at 9.

The Balford Trust is a discretionary trust.  See Davidson Decl. ¶ 37; Ferguson Decl. at 5; Le Poidevin Decl. ¶ 17; Barnes Decl. ¶ 21.  Under Guernsey law, a discretionary trust is a form of trust in which "the shares of the funds distributed to the beneficiaries, if any, is determined by the trustees in their sole discretion."  Davidson Supp. Decl. ¶ 7; see also Ferguson

Decl. at 6 ("A discretionary trust . . . is a trust where the trustee has complete discretion as to which of the beneficiaries should benefit, when and to what extent."); JAMIE GLISTER & JAMES LEE, HANBURY & MARTIN: MODERN EQUITY ("GLISTER & JAMES"), § 9-006 at 193 (20th ed. 2015) ("The essential feature of a discretionary trust is that the property is conveyed to the trustees to . . . apply the income or the capital or both for the . . . beneficiaries in such proportions as the trustees shall, in their absolute discretion, think fit.").

Consistent with Guernsey law, Samante Limited has broad discretion as trustees under the terms of the Balford Trust:  the trust declaration refers to the trustees' "absolute discretion" throughout the founding document.  See, e.g., Trust Decl. ¶ 11(a)  [US App'x 223] ("The Trustees shall exercise the powers and discretions vested in them as they shall think most expedient for the benefit of any of the persons actually or prospectively interested hereunder."); id. ¶ 11(b) [US App'x 223] ("[E]very discretion vested in the Trustees shall be absolute and uncontrolled and every power vested in them shall be exercisable at their absolute and uncontrolled discretion and the Trustees shall have the same discretion in deciding whether or not to exercise any such power.").  This broad discretion extends to any decision relating to the beneficiaries.  The trustees may, for example, "exercise (or refrain from exercising) any power or discretion for the benefit or any one or more of [the beneficiaries] without being obliged to consider the interest of the others or other."  Id. ¶ 11(a) [US App'x 223].  They may also "at any time . . . declare that any person . . . shall cease to be a Beneficiary."  Id. ¶ 7(b) [US App'x 222].  And they may "add to the class of Beneficiaries such one or more persons or charities . . . as [they] shall in their absolute discretion determine."  Id. ¶ 8(a) [US App'x 222].  The trustees' ability to add beneficiaries means that the class of beneficiaries is an open class.  See Le Poidevin Decl. ¶ 18.

The trustees' vast discretion also extends to distributions of income and capital. The trust declaration states that the trustees are empowered

> to pay[,] appropriate[,] or apply the whole or such part of the income of the Trust Fund as the Trustees may in their absolute discretion think fit to or for the maintenance or otherwise for the benefit of all <u>or such one or more exclusive of the other or others</u> of the Beneficiaries in such shares and proportions if more than one and generally in such manner as the Trustees shall in their absolute discretion think fit.

Trust Decl. ¶ 3(a) [US App'x 220] (emphasis added).  In other words, "it is in the Trustees' sole discretion to decide (in accordance with fiduciary obligations) what, if anything, any particular beneficiary will enjoy whether during the existence of the Trust or at its termination."  Davidson Decl. ¶ 38.

The Balford Trust is set to last for the maximum time permitted by Guernsey law, a duration of 100 years.  <u>See</u> Trust Decl. ¶ 1(m)(i) [US App'x 219]; Guernsey Trust Law § 16(2) [US App'x 362].  The trustees may, in their discretion, fix an earlier date for the trust to expire. <u>See</u> Trust Decl. ¶ 1(m)(ii) [US App'x 219].  At the expiration of the trust period, the trustees may apply

> both capital and income of the Trust Fund for all or <u>such one or more exclusive of the other or others</u> of the Beneficiaries in such shares and proportions if more than one and generally in such manner as the Trustees shall prior to or on the date of such expiration in their absolute discretion determine.

Trust Decl. ¶ 3(c) [US App'x 220] (emphasis added).  To the extent that the trustees do not distribute the trust assets before or at the end of the trust period, the assets go the beneficiaries "in equal shares absolutely."  <u>Id.</u>; <u>see also</u> Le Poidevin Decl. ¶ 19(2) ("At the end of the Trust Period, the capital and undistributed income is to go to one or more of the Beneficiaries, being shared out as the trustee in its absolute discretion determines, or to the extent that the trustee does

not determine on such a distribution, then to all beneficiaries then in existence in equal shares (clause 3(c)).").  Any trust property not distributed to the beneficiaries shall be distributed to "such charities as the Trustees shall in their absolute discretion determine."  Trust Decl. ¶ 3(d) [US App'x 220].  And any trust property not distributed to the beneficiaries or to the charities determined by the trustees shall go to "[t]he United Nations Educational Scientific and Cultural Organization" (UNESCO).  Id. ¶ 3(e) [US App'x 220].  While "the trustee[s] may exhaust the trust fund by exercising one or more of" these powers, "no beneficiary has a right to demand such an exercise."  Le Poidevin Decl. ¶ 23.

"Notwithstanding anything . . . conferring an absolute or uncontrolled discretion on the Trustees," however, certain powers and discretions "shall only be exercisable by the Trustees with the prior or simultaneous written consent of the Protector."  Trust Decl. ¶ 19(a) [US App'x 225].  The trust declaration lists Pavel Lazarenko as the Protector of the Balford Trust.  Id., Fifth Schedule [US App'x 228].  Guernsey law does not reference a trust "protector," but both parties' experts say this role likely falls under the Guernsey law's "trust official" definition, allowing for a person to have a function in the trust other than as settlor, trustee, enforcer, or beneficiary.  Guernsey Trust Law § 80(1) [US App'x 406]; see Davidson Decl. ¶ 18; Le Poidevin Decl. ¶ 31.  The Balford Trust specifies that certain "[p]owers and discretions of the Trustees . . . require the consent of the Protector."  Trust Decl., Fourth Schedule [US App'x 228].  The specific powers for which the trustees must seek consent from the Protector before exercising their discretion are:

Clause 1(m)(ii):  bringing forward the end of the Trust period,

Clause 2(b):  changing the governing law of the Trust,

Clause 3(a):  appropriating the whole or part of the income of the Trust fund to one or more of the beneficiaries,

15

> Clause 3(c):  determining which shares or proportions of the capital income of the Trust fund should be held for the beneficiaries upon the expiration of the Trust,
>
> Clause 3(d):  determining which charity capital and income of the Trust should be held for,
>
> Clause 4:  appointing and advancing the Trust fund or any part of it to the beneficiaries,
>
> Clause 7:  excluding beneficiaries,
>
> Clause 8:  adding beneficiaries,
>
> Clause 15(a):  appointing new or additional Trustees, and
>
> Clause 24:  varying all or any of the trust powers and provisions of the Declaration of Trust.

See id., Fourth Schedule [US App'x 228].  If the trustees request consent in writing, but do not receive "written consent or refusal of the Protector within 30 days . . . then the Protector shall be deemed to have consented."  Id. ¶ 19(a) [US App'x 225].

The trustees, moreover, are still bound by a duty to exercise their discretion. GLISTER & JAMES, § 9-020; see Third Barnes Decl. ¶ 28 ("Although their prospects of benefiting from the Trust are dependent on the Trustees' discretion, that discretion must be exercised rationally and in the interest of the Beneficiaries.").  A beneficiary with an interest in a discretionary trust, therefore, has a right to "compel the due administration of the trust; a *prima facie* right to obtain information and accounts from the trustees; and a right to bring a claim for breach of trust."  LYNTON TUCKER ET AL., LEWIN ON TRUSTS § 1-061 (20th ed. 2019).  A beneficiary, however, may not "necessarily benefit by the performance of the trustees' duty; as it is a duty, not to pay to that beneficiary, but to exercise their discretion."  Id.

D.  *Interests of Discretionary Beneficiaries Under Guernsey Law*

"A beneficial interest under a trust is certainly personal property belonging to a beneficiary that, subject to the terms of the trust concerned, can be disposed of how [the beneficiary] wishes."  Davidson Supp. Decl. ¶ 16.

> This means that, for example, a beneficiary with a beneficial fixed or life interest in a trust could pledge the interest to secure a loan or even sell it to a third party.  That life interest though, would have a readily assessable value (for example the right to the income from an estate or other trust property for the life of the beneficiary) which may be attractive to a third party purchaser.  However, whilst a discretionary interest may be similarly dealt with it would not have the same readily assessable value.

Id. ¶ 18.  This is because while the interest of a beneficiary of a discretionary trust may be characterized as "personal property," All Assets IX, 480 F. Supp. 3d at 9, the beneficiary's interest in such a trust under Guernsey law is a "mere 'hope' that a trustee may exercise its discretion to make a distribution in favour of a beneficiary," Davidson Supp. Decl. ¶ 18.  See also APPLEBY, GUIDE TO TRUSTS IN GUERNSEY ¶ 4.1 (2014) [Dkt. No. 554-10] (stating that beneficiaries of a discretionary trust "have . . . merely a hope that the trustees will exercise their discretion for their benefit"); Hon. Sir Anthony Mason, *Discretionary Trusts and Their Infirmities*, 20 TRUSTS & TRUSTEES 1039, 1045 (2014) ("[B]y reason of the uncertain scope of the distribution which may be made in favour of any given beneficiary, a beneficiary . . . [has only] an expectancy or mere possibility of a distribution.'").

A discretionary beneficiary's interest therefore "does not amount to any form of direct right or proprietary interest to the underlying assets irrespective of the fact that the discretionary interest itself is personal property belonging to the beneficiary."  Davidson Supp. Decl. ¶ 18; see also TUCKER ET AL., § 1-062.  Instead, a discretionary beneficiary only has a right "to be considered to benefit when the trustee exercises its discretion."  OGIER, *Offshore Trusts*;

see also TUCKER ET AL., § 1-061 (stating that a beneficiary "has a right to be considered as a potential recipient of benefit by the trustees and a right to have his interest protected by a court of equity"); see, e.g., United States v. All Assets Held in Account No. XXXXXXXX in name of Doraville Properties Corp. ("United States v. Doraville Properties"), 299 F. Supp. 3d 121, 135 (D.D.C. 2018) (concluding that discretionary beneficiaries had only "an expectancy interest in the favorable exercise of discretion by the trustee").

### III.  DISCUSSION

The United States moves to strike the claims of the Lazarenko daughters to the Balford Trust, arguing that they lack constitutional, Article III standing because they have no property or proprietary interest in the Balford Trust.  Mem. Mot. Strike at 2, 17.  The United States further argues that any interest the Lazarenko daughters may have in the Balford Trust is too remote and contingent to satisfy Article III standing requirements.  Id. at 2, 16.  The Lazarenko daughters contend that their status as discretionary beneficiaries gives them a constitutionally cognizable interest in the Balford Trust.  Opp. at 1-2.

To establish constitutional standing and defeat the United States' motion to strike, the Lazarenko daughters must show by a preponderance of the evidence that (1) their status as beneficiaries of a discretionary trust confers on them an interest in the Balford Trust under Guernsey law, and (2) a claimant with that interest in the Balford Trust has standing under U.S. federal law.  See All Assets IX, 480 F. Supp. 3d at 16.  The Court will take each issue in turn.

### A.  The Lazarenko Daughters' Interest in the Balford Trust

The Lazarenko daughters are discretionary beneficiaries of the Balford Trust.  As discretionary beneficiaries, during the life of the trust, the Lazarenko daughters have "no proprietary right to the Trust property, only a right to be considered by the Trustees to benefit."

Ferguson Decl. at 7 (citing Trust Decl. ¶ 3 [US App'x 220]); <u>see also</u> Third Barnes Decl. ¶ 21

("None of the Beneficiaries has a right to a distribution of any particular amount . . . or to any

distribution.").  And because the trustees of the Balford Trust have broad discretion with regard

to distributions of income and capital, the Lazarenko daughters have only a "hope" of receiving

anything under the trust.  <u>See</u> APPLEBY, GUIDE TO TRUSTS IN GUERNSEY ¶ 4.1.  They have an

interest, therefore, not in the actual trust assets, but in "the favorable exercise of discretion by the

trustee."  <u>See</u> <u>United States v. Doraville Properties</u>, 299 F. Supp. 3d at 135.  The Lazarenko

daughters therefore do not have a present, vested property interest in the Balford Trust.  Instead,

they have an "expectancy interest" in the trustees' discretion.  <u>See</u> <u>id</u>.

> The Lazarenko daughters also have an interest in the Balford Trust based on
paragraph 3(c) of the trust declaration.  That provision provides:

> > At the expiration of the Trust Period[,] Upon Trust as to both capital
> > and income of the Trust Fund[,] for all or such one or more[,]
> > exclusive of the other or others of the Beneficiaries[,] in such shares
> > and proportions if more than one and generally in such manner as
> > the Trustees shall[,] prior to or on the date of such expiration in their
> > absolute discretion determine[,] and in default of and subject to such
> > determination Upon Trust for such of the Beneficiaries as shall then
> > be in existence[,] and if more than one[,] in equal shares
> > absolutely[.]

Trust Decl. ¶ 3(c) [US App'x 220].  In other words, at the end of the trust period, the remaining

trust funds must go to then-surviving beneficiaries in equal shares.  <u>See</u> Le Poidevin Decl. ¶ 54;

Davidson Supp. Decl. ¶ 14.  At the time this provision becomes operative, therefore, the

Lazarenko daughters' interest in the defendant assets will be fixed.  <u>See</u> Le Poidevin Decl. ¶ 54.

A beneficial interest is "fixed" when there is "no discretion in the trustee or any other person to

vary . . . the quantum of [the beneficiaries] interests."  Mason, <u>supra</u>, at 1044.  Right now,

however,

> [t]hose interests . . . are both remote and fragile. They are remote
> because they fall into possession only at the end of the Trust Period.
> They are fragile because, as to each Beneficiary, (i) the interest is
> contingent on his or her survival to the end of the Trust Period, (ii)
> the trust fund may by then have been partly or wholly distributed
> under the trustee's prior dispositive powers, (iii) the Beneficiary
> may have been excluded by an exercise of the power of exclusion
> and (iv) even at the end of the Trust Period the trustee has a prior
> power to discriminate between the surviving Beneficiaries, so the
> interest may be defeated by an exercise of that power.

Le Poidevin Decl. ¶ 54. The Balford Trust will not expire until 100 years after the date it was

settled, unless the trustees exercise their "absolute discretion" to fix an earlier expiration date or

to distribute all of the income of the trust fund before 100 years have elapsed. See Trust Decl.

¶¶ 1(m)(i)-(ii), 3(a) [US App'x 220]; Guernsey Trust Law § 16(2) [US App'x 362]. In sum, the

Lazarenko daughters must contend with numerous uncertainties to have even a chance of

receiving a distribution at the end of the life of the trust. The Lazarenko daughters' interest

therefore is "no more than a contingent remainder, if that." Mason, supra, at 1045.

The Lazarenko daughters also argue that they have an interest in the Balford Trust

based on their "substantive rights" under Guernsey law to (1) demand information from the

trustees, (2) send letters of wishes to the trustees, and (3) bring legal action regarding any aspect

of the trust. Opp. at 10-12 (citing Guernsey Trust Law §§ 26, 38, 69). They state that these

statutory rights empower them to "impact every conceivable issue of the Trust." Id. at 10. But

the Lazarenko daughters' ability to influence the trust pursuant to Sections 26, 38, and 69 of

Guernsey Trust Law does not give them an interest in the defendant assets.

This Court previously has concluded that "[t]he ability to write a letter of wishes

[is] . . . merely a 'suggestion' that does not constitute control over the Balford Trust indicative of

an ownership interest." All Assets IX, 480 F. Supp. 3d at 21. And the Lazarenko daughters have

produced no evidence to show that the trustees have ever acquiesced to any letter of wishes,

much less that letters of wishes written by the Lazarenko daughters would be binding on the

trustees.  See id. at 20-21 (concluding that Pavel Lazarenko did not have authority over the

Balford Trust based on his ability to write letters of wishes because those letters were not binding

on the trustees).  The Court therefore sees no reason to vary from its earlier conclusion.  The

Court has also previously concluded that having the right to sue under Section 69 of Guernsey

Trust Law does not support an interest in the Balford Trust.  The Court reasoned that "[i]f the

ability to go to court under Section 69 conferred standing, anyone could legitimately claim to

have standing as a claimant for the Balford Trust."  Id.  Again, the Court sees no reason why it

should vary from this conclusion now.  Finally, the Court concludes that while the Lazarenko

daughters do have a right to demand information from the trustees, this right does not support an

interest in the defendant assets.  Simply having access to information about the assets does not

mean that the Lazarenko daughters control those assets or the trustees' discretion with regard to

the assets.  Access to information merely guarantees that the beneficiaries can stay abreast of

how the trustees choose to exercise their control over the assets.  See United States v. Doraville

Properties, 299 F. Supp. 3d at 134 (concluding that beneficiaries' ability to demand information

and an accounting from the trustee "says nothing about whether claimants have any colorable

interest in specific assets of the trust"); see id. at 136 n.18.[2]

---

[2]       The Lazarenko daughters note that, pursuant to an agreement between the United States and Guernsey, the trustees of the Balford Trust have "reporting obligation to identify Ekaterina and Lecia Lazarenko to the IRS, irrespective if they receive a distribution."  They contend that the United States' belief "that discretionary beneficiaries under Guernsey law have sufficient property interests to require foreign financial institutions to turn over their names to the IRS" establishes standing.  Opp. at 18.  As the Court previously held with respect to Pavel Lazarenko, the Lazarenko daughters "cannot bypass the requirement to determine [their] interest in the Balford Trust under Guernsey law – the nation in which the interest arose – by looking instead at U.S. tax treatment of the Balford Trust."  All Assets IX, 480 F. Supp. 3d at 27.

This Court concludes that the Lazarenko daughters have two interests in the Balford Trust. The first is an interest in a favorable exercise of discretion by the trustees. The second is an interest in an equal share of any remaining trust corpus at the end of the trust term. The Court will now turn to the question of whether these interests are too remote and contingent to satisfy constitutional standing requirements.

### B. Standing Under U.S. Law

Again, in the civil forfeiture context, a claimant may establish standing if she asserts "any colorable claim on the property" as long as the claim of injury is "redressable, at least in part, by a return of the property." United States v. Emor, 785 F.3d at 676. The alleged injury must be "concrete and particularized and actual or imminent, not conjectural, hypothetical or speculative." All Assets IX, 480 F. Supp. 3d at 12. Such colorable claims are "typically [based on] an ownership or possessory interest." United States v. $17,900 in U.S. Currency, 859 F.3d at 1090.

Some circuits have held that other lesser forms of interest "may serve as the basis for a claimant's entitlement to contest forfeiture." All Assets IV, 959 F. Supp. 2d 81 at 99; see, e.g., United States v. 5 S 351 Tuthill Rd., 233 F.3d at 1022 (holding that the beneficiary of a land trust where the land could be sold "with or without consideration" had standing based on his fixed interest in any future proceeds of unknown value); United States v. $515,060.42 in U.S. Currency, 152 F.3d 491, 498 (6th Cir. 1998) ("A property interest less than ownership may also be sufficient to create standing."); United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1057 (9th Cir. 1994) ("In order to contest a forfeiture, a claimant . . . need not [have] an ownership interest; it can be any type of interest, including a possessory interest."). The D.C. Circuit, however, has not yet said whether interests more remote than ownership or possessory

interests would be sufficient to establish standing under U.S. law.  See All Assets IX, 480 F.

Supp. 3d at 16-17 (citing United States v. $17,900 in U.S. Currency, 859 F.3d at 1090).

   The United States argues that the Lazarenko daughters' interests are too

contingent and remote to support standing in this civil forfeiture action because the Lazarenko

daughters cannot show that they will ever receive a distribution from the Balford Trust.  Mem.

Mot. Strike at 20-21; US Reply at 7.  The United States relies in part upon United States v.

Doraville Properties, which also concerned an in rem civil forfeiture action.  In that case, eight

claimants asserted an interest in the defendant assets pursuant to their status as the beneficiaries

of two trusts.  United States v. Doraville Properties, 299 F. Supp. 2d at 124-25.  The trusts were

irrevocable, discretionary trusts governed by the laws of Singapore.  Under Singapore law, a

trustee of a discretionary trust "is typically given the authority in the trust deed to determine

whether to apply trust assets for the benefit of beneficiaries."  Id. at 125.  And under the terms of

the trusts, the trustee was empowered to

> pay or apply the income of the Trust Fund to or for the benefit of all
> or such one or more of the Beneficiaries exclusive of the other or
> others of them as shall for the time being be in existence and in such
> shares if more than one and in such manner generally as the Trustees
> shall in their absolute discretion from time to time think fit.

Id. at 126 (emphasis added).  The trustee also had "discretion to decline to distribute income to

any of the beneficiaries."  Id.  Finally, "the trustee could distribute all income and capital to some

combination of the non-claimant beneficiaries, leaving nothing for the claimants."  Id.

   Judge Bates concluded that the claimants, as discretionary beneficiaries, had no

more than "an expectancy interest in the favorable exercise of discretion by the trustee" derived

from the beneficiaries' "right to be considered for distributions, subject to the exercise of the

trustee's discretion and in conformance with the trustee's fiduciary duties."  United States v.

Doraville Properties, 299 F. Supp. 3d at 135.  He held that, because claimants "failed to provide

the Court with any authority in which a claimant with a similar unvested, contingent interest in

property was found to have standing to contest forfeiture," the claimants had "failed to satisfy

their burden of demonstrating standing by a preponderance of the evidence."  Id. at 137.

   This Court agrees with Judge Bates' analysis and likewise concludes that the

Lazarenko daughters' interest is too contingent to support standing.  Even if the Court ultimately

dismisses this forfeiture action as to the Balford Trust, it is merely speculative to assert that the

Lazarenko daughters will receive a distribution from the trust.  The trustees have broad

discretion to distribute trust funds to any, some, or none of the beneficiaries during the life of the

trust.  See Trust Decl. ¶ 3 [US App'x 220]; Trust Decl. ¶ 11 [US App'x 223].  The Lazarenko

daughters therefore are not entitled to any distributions but have merely a hope that the trustees

will exercise their discretion favorably at some point.

   Moreover, the Balford Trust will not expire until 100 years from the date of its

creation.  The trustees may change the trust's expiration date in their own discretion, but they

have not yet done so.  See Trust Decl. ¶ 1(m)(ii) [US App'x 219].  To be eligible for

distributions at the end of the trust period, therefore, the Lazarenko daughters must live

until 2097.  Assuming they live that long, they are even then only entitled to an equal share of

whatever remains in the trust at the end of the trust period.  But there is no guarantee that the

trustees will not have, in their discretion, dissipated the trust prior to the end of the trust period.

See Trust Decl. ¶ 3(a) [US App'x 220]; Davidson Decl. ¶ 38.  Indeed, if some amount remains in

the trust at the end of the trust period, the trustees are empowered to "apply . . . both capital and

income of the Trust Fund for all or such one or more exclusive of the other or others of the

Beneficiaries in such shares and proportions . . . as the Trustees shall prior to or on the date of

such expiration in their absolute discretion determine."  Trust Decl. ¶ 3(c) [US App'x 220]

(emphasis added).  The Lazarenko daughters' opportunity to be eligible for an "equal share" at

the end of the trust period therefore is highly contingent on the trustees' discretion as it is

exercised over the next seventy-six years.

   The Lazarenko daughters' attempts to distinguish United States v. Doraville

Properties fail.  They point out that, unlike the beneficiaries in United States v. Doraville

Properties, they have a beneficial interest in the Balford Trust.  Opp. at 16.  As this Court has

already explained, the Lazarenko daughters' interest is the right to be considered for distributions

by the trustees.  See supra Section II(D).  This is substantively the same interest considered by

Judge Bates.  See United States v. Doraville Properties, 299 F. Supp. 3d at 135.  They also argue

that this case is distinguishable because the class of beneficiaries here is smaller; no beneficiaries

have ever been added or removed; and the Balford Trust has a Protector who must consent to the

addition or removal of beneficiaries.  Opp. at 16.  These are immaterial distinctions.  Here, the

Protector, Pavel Lazarenko, must consent to the addition or removal of beneficiaries.  He might,

therefore, consent to the removal of his daughters or exercise his authority to block a distribution

to them.  Or he could approve large distributions to one or more of the other trust beneficiaries,

thus leaving no money for his daughters.  No one can reliably predict how Mr. Lazarenko will

act as Protector in the future.  These examples simply illustrate that the trustees' more fettered

discretion in this case does not detract from the contingency of the Lazarenko daughters' interest.

Neither does the number of beneficiaries make their interest less contingent.  Whether there are

two other beneficiaries or six, the trustees still have the discretion to make distributions "to one

or more [beneficiary] exclusive of the other or others."  Trust Decl. ¶ 3(a) [US App'x 220].

The Lazarenko daughters further contend that United States v. Doraville Properties was wrongly decided.  Opp. at 13.  For support, they point to a line of authorities establishing that "a plaintiff suffers a constitutionally cognizable injury by the loss of an *opportunity to pursue a benefit* . . . even though the plaintiff may not be able to show that it was *certain to receive* that benefit had it been accorded the lost opportunity."  CC Distribs., Inc. v. United States, 883 F.2d 146, 150 (D.C. Cir. 1989); see also W. Va. Ass'n of Cmty. Health Ctrs. v. Heckler, 734 F.2d 1570 (D.C. Cir. 1984); Regents of the Univ. of Cal. v. Bakke, 438 U.S. 365 (1978); Nat'l Ass'n of Neighborhood Health Ctrs. v. Mathews, 551 F.2d 321 (D.C. Cir. 1976).  The Lazarenko daughters argue that these cases stand for the proposition that a "*threatened* injury creates standing."  Opp. at 14.  It is, of course, true that a threatened injury may be sufficient to confer standing under some circumstances.  See Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013).  But the Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of possible future injury' are not sufficient."  Id.  As discussed above, the Lazarenko daughters cannot show such an imminent injury.

The Lazarenko daughters cite two other cases in support of their position: Scanlan v. Eisenberg, 669 F.3d 838 (7th Cir. 2012) and Thole v. U.S. Bank N.A., 140 S. Ct. 1615 (2020).  See Opp. at 5-9, 13.  These cases are inapposite.  In Scanlan v. Eisenberg, the Seventh Circuit concluded that a discretionary beneficiary had standing to enforce a trust.  This conclusion, however, was based on a principle of Illinois trust law that provided that "a beneficiary has an equitable interest in trust property."  669 F.3d at 843.  The Lazarenko daughters have not identified any similar equitable interest afforded to discretionary beneficiaries under Guernsey law.  Moreover, Scanlan v. Eisenberg concerned whether a discretionary

beneficiary has standing to sue a trustee <u>in personam</u> for breach of trust.  Such a case has no

bearing on whether the Lazarenko daughters have standing to contest an <u>in rem</u> forfeiture action.

<u>Thole v. U.S. Bank</u> is similarly inapposite.  In that case, the Lazarenko daughters argue, a

majority of the justices of the Supreme Court "recognized that beneficiaries have a legally

protected interest in protecting the trust corpus even without a concrete injury."  Opp. at 9.  But

such an interest is based on U.S. law.  Here, <u>Guernsey</u> law governs when identifying a

beneficiary's interest in trust property.

   Finally, the Lazarenko daughters argue that other courts in this district have

interpreted redressability "more broadly."  Opp. at 15 (citing <u>In re $6,871,042.36</u>, 217 F.

Supp. 3d 84, 87 (D.D.C. 2016) and <u>In re Arelma, S.A.</u>, No. MC 16-1339, 2019 WL 3084706,

at *1 (D.D.C. July 15, 2019)).  The parties seeking to establish standing in those cases, however,

are distinguishable from the Lazarenko daughters.  In <u>In re $6,871,042.36</u>, the Court concluded

that bank liquidators seeking to intervene in a civil forfeiture action had standing to intervene

because the United States had named the liquidators as interpleader defendants in a separate

action filed to resolve competing claims to those same funds.  217 F. Supp. 3d at 92.  In other

words, the United States had conceded that the bank liquidators had a present interest in the

defendant assets.  And in <u>In re Arelma, S.A.</u>, the class seeking to establish standing had already

obtained a secured judgment against the defendant assets, thus distinguishing it from "merely a

general unsecured creditor."  2019 WL 3084706, at *3.  The Lazarenko daughters, by contrast,

have no present, fixed interest in the Balford Trust, nor has the United States conceded that they

have any such interest.

   The Court concludes that the Lazarenko daughters' interest is insufficient to

confer standing because any alleged injury to such a contingent interest is simply too

hypothetical and speculative.  See Lujan v. Defs. of Wildlife, 504 U.S. at 560-61.  The lack of a

concrete, present interest precludes them from being able to establish that an injury to those

interests is "imminent."  See Spokeo, Inc. v. Robins, 136 S. Ct. at 1548.  The Court further

concludes that any injury to such an interest would not be redressable by return of the property

because of the uncertainty that the Lazarenko daughters will ever receive a distribution.  See

United States v. Emor, 785 F.3d at 676.  The Court will strike their claim to the Balford Trust.

## IV.  LITIGATING ON BEHALF OF THIRD PARTIES

The Lazarenko daughters argue, in the alternative, that the Court should permit

them to bring suit either on behalf of the trustees or as next friend for their brother, Alexander

Lazarenko.  Opp. at 23-24.  The Court will take each argument in turn.

### A.  Derivative Claim on Behalf of Trustees

The Lazarenko daughters argue that they should be permitted to assert a claim on

behalf of the trustees because "well-established principle[s] of trust law" enable a beneficiary to

"bring suit in a derivative capacity to vindicate the trust's interests when the trustee will not."

Opp. at 23 (citation omitted).  They contend that the trustees are precluded from asserting a claim

because of a plea agreement into which Credit Suisse AG – the parent company of Samante

Limited – entered in 2014.  Opp. at 23-24.  The United States responds that Samante Limited

was not precluded from filing a claim in 2004 when the complaint was filed or in 2006 when the

amended complaint was filed.  US Reply at 18-19.

The Court agrees with the United States that the Lazarenko daughters cannot

show that the trustees were precluded from filing a claim at the commencement of this litigation.

Indeed, Credit Suisse AG did not enter into a plea agreement with the United States until ten

years after the complaint in this case was first filed.  Moreover, as the Court has already

explained, Guernsey trust law governs this dispute.  See supra Section III(A)(1).  Principles of trust law that are "well-established" in the United States therefore have no bearing here.

The Lazarenko daughters also point out that "Mr. Barnes has stated in his affidavit that Guernsey has a procedure other than a 'derivative proceeding' that is used to compel the Trustees to act."  Opp. at 23 n.1.  But Mr. Barnes' declaration states only that Guernsey "procedures permit a beneficiary to institute proceedings against a trustee if they fail to act."  Third Barnes Decl. ¶ 39.  If the Lazarenko daughters believe that the trustees have failed in their duties, the appropriate remedy would be to bring a separate action against the trustees in Guernsey to compel proper administration of the trust.  They have never done so, despite knowing for almost seventeen years that the trustees had filed no claim to the Balford Trust in this proceeding.  And the Lazarenko daughters point to no provision of Guernsey law allowing them to bring a suit in a derivative capacity when the trustees decline to bring suit.  The Court will not permit the Lazarenko daughters to assert a claim on behalf of the trustees.

### B.  Next Friend Standing on Behalf of Alexander Lazarenko

The Lazarenko daughters also argue that they have next friend standing to assert a claim on behalf of their brother, Alexander Lazarenko, and their mother, Tamara Lazarenko, because both are unable to litigate their cause due to lack of access to U.S. courts.  Opp. at 24-26.

"'Next friend' standing originated in connection with petitions for habeas corpus, as early American courts allowed 'next friends' to appear 'on behalf of detained prisoners who [were] unable, usually because of mental incompetence or inaccessibility, to seek relief themselves.'"  Al-Aulaqi v. Obama, 727 F. Supp. 2d 1, 16 (D.D.C. 2010) (quoting Whitmore v. Arkansas, 495 U.S. 149, 162 (1990)).  Courts in this district, however, have held that "next friend standing is not limited to habeas cases, but instead may be invoked if plaintiffs can

sufficiently demonstrate its necessity." <u>Ali Jaber v. United States</u>, 155 F. Supp. 3d 70, 76 (D.D.C. 2016), <u>aff'd</u> <u>sub</u> <u>nom</u>. <u>Jaber v. United States</u>, 861 F.3d 241 (D.C. Cir. 2017).  To assert next friend standing, a party must satisfy two "firmly rooted prerequisites." <u>Whitmore v. Arkansas</u>, 495 U.S. at 163.  "First, a 'next friend' must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action.  Second, the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate . . . ." <u>Id</u>.  It is not clear whether next friend standing is properly applied in civil forfeiture actions.  But even assuming that it is, the Lazarenko daughters have failed to satisfy these two prerequisites.

First, the Lazarenko daughters have not shown that either Alexander or Tamara Lazarenko is "unable to litigate [his or her] own cause due to mental incapacity, lack of access to court, or other similar disability." <u>Whitmore v. Arkansas</u>, 495 U.S. at 165.  The Lazarenko daughters argue that Alexander Lazarenko "cannot travel to the United States to participate in this lawsuit because he cannot receive a visa from the Government" and cannot participate from Ukraine because he "remains concerned that any open association with his father and others in Ukraine may endanger his or his family's physical safety."  Opp. at 25.  They fail to mention, however, that Alexander Lazarenko participated in this case from his home in Ukraine for over a decade.  <u>See</u> <u>United States v. All Assets Held at Bank Julius Baer & Co., Ltd.</u>, 2019 WL 6970727, at *3 (stating that Alexander Lazarenko has lived in Ukraine for "many, many years").  More importantly, this Court has already struck the claim of Alexander Lazarenko to the Balford Trust.  <u>See</u> <u>All Assets VIII</u>, 2019 WL 6910067, at *1.  The Court adopted the report and recommendation of Magistrate Judge Harvey, who found that striking Alexander Lazarenko's claim was appropriate because, among other things, he had "flatly refus[ed] to

appear [for a deposition] based on unsupported allegations that sitting for the noticed deposition would endanger his safety and that of his family."  United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 2019 WL 6970727, at *7.  The Court was not persuaded by that explanation for failure to participate in 2019, and it continues to be unpersuaded in 2021.  The Lazarenko daughters cannot now assert next friend standing for their brother based on the same facts that resulted in his exclusion from this litigation.

Likewise, the Lazarenko daughters have not demonstrated that their mother lacks access to the courts in the United States.  They state that she "has been unable to return to the United States" since 1999 or 2000, when she was denied a visa.  Opp. at 25.  But that attempt to enter the United States was over twenty years ago – and four years before this litigation commenced.  The Lazarenko daughters have not presented any evidence that Tamara Lazarenko has since been denied entry to the United States.  Moreover, Tamara Lazarenko has never attempted to file a claim to the Balford Trust, despite that fact that physical presence in the United States is not required to file such a claim. Finally, the Lazarenko daughters have not explained why Tamara Lazarenko would be unable to participate in this litigation from Ukraine. They have not argued, for example, that telephone or video participation in court proceedings would be difficult or impossible.  Cf. Ali Jaber v. United States, 155 F. Supp. 3d at 76 (finding that residents of Yemen lacked consistent access to telephones and could therefore invoke next friend standing).  This Court need not accept the Lazarenko daughters' bald assertions that their mother lacks access to the courts.  See Al-Aulaqi v. Obama, 727 F. Supp. 2d at 17 n.3 (collecting cases where "courts have refused—even at the pleading stage—to accept unsubstantiated allegations that the real party in interest . . . 'lacks access to the courts'" and requiring that "claims pertaining to . . . inaccessibility have some 'support in the record.'").

Finally, the Lazarenko daughters cannot show that they are "truly dedicated to the best interests" of Alexander and Tamara Lazarenko.  Whitmore v. Arkansas, 495 U.S. at 163. Generally, a putative "'next friend' must provide some evidence that [she] is acting in accordance with the intentions or wishes of the real party in interest."  Al-Aulaqi v. Obama, 727 F. Supp. 2d at 20.  No such evidence has been provided here.  The Court is also doubtful that any such evidence could be provided.  The interests of the Lazarenko daughters are arguably at odds with the interests of Alexander and Tamara Lazarenko.  Each of these four individuals is a beneficiary of the Balford Trust.  As explained above, the trustees may at any time distribute trust funds to one of the beneficiaries at the expense of the others.  Thus, if the funds in the Trust are not ultimately forfeited to the United States, "a distribution in favor of one of the [Lazarenko daughters] would reduce the amount available to be distributed to the remaining beneficiaries." US Reply at 22.  The Court therefore cannot be sure that the Lazarenko daughters will act in the best interests of either Alexander or Lecia Lazarenko.  The Court will not permit the Lazarenko daughters to bring suit as next friend for Alexander Lazarenko or Tamara Lazarenko.

## V.  LITIGATING IN GUERNSEY

The Lazarenko daughters' opposition brief includes a cross-motion to modify this Court's order restraining the Balford Trust assets.  See Opp. at 26.  They argue that, if this Court strikes their claims to the Balford Trust, they should be permitted to "challenge the U.S. forfeiture action [in Guernsey] through a declaratory judgment action."  Id. at 27.  Their motion "incorporat[es] . . . the motion filed by their father," Pavel Lazarenko, to modify this Court's restraining order.  Id.  This Court has already denied Mr. Lazarenko's motion.  See All Assets X, 2020 WL 6591391, at *7.  For the reasons set forth in that opinion, this Court will deny the Lazarenko daughters' motion.

## VI.  CONCLUSION

For the foregoing reasons, the Court will grant the United States' motion [Dkt. No. 1256] to strike the claims of Ekaterina Lazarenko and Lecia Lazarenko to the Balford Trust and deny the cross-motion [Dkt. No. 1332] of Ekaterina Lazarenko and Lecia Lazarenko to modify this Court's restraining order.  An Order consistent with this Opinion will issue this same day.

SO ORDERED.


_/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  September 7, 2021