## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:04-cv-00798-PLF |
| v. | ) | |
| | ) | |
| ALL FUNDS ON DEPOSIT AT BANK | ) | |
| Julius Baer & Company, Ltd., Guernsey | ) | |
| Branch, Account Number 121128, et al., | ) | |
| | ) | |
| Defendants *in rem*. | ) | |
| | ) | |
| | ) | |
| | ) | |

### OBJECTION TO AFFIDAVIT IN SUPPORT OF DEFAULT (DKT. 1483) AND MOTION TO ENFORCE SETTLEMENT AGREEMENT

The Liquidators of the Eurofed Bank Limited (the "Liquidators") hereby object to the Affidavit in Support of Default Against Defendant Milchenko Account Assets, Dkt. 1483, and move under Section 34 of the Settlement Agreement between the United States and the Liquidators, Dkt. 334, ¶34 ("Settlement Agreement"),[1] to enforce the terms of that agreement and prohibit the entry of a default. For the reasons set forth below, a default against the Milchenko Account is procedurally inappropriate, is inconsistent with the language of the Settlement Agreement, and will prejudice the Liquidators.

To begin, allowing the United States to obtain a default against the Milchenko Account is procedurally inappropriate. Default under Federal Rule of Civil Procedure 55 does <u>not</u> require the government to prove a connection between the funds at issue and Pavel Lazarenko's criminal conduct and does <u>not</u> allow for a meaningful opposition or hearing. A recent Clerk's default sought by the United States in this matter proves the

---

[1] The Settlement Agreement is attached as Exhibit A.

point. It was filed on a Friday and entered as a Clerk's order on Monday. Dkt. 1444 & 1445. There was no briefing before the Court. If the Clerk enters a default in this matter, the Liquidators will not have a meaningful opportunity to object before an order is entered.

The entry of a default will also prejudice the Liquidators' rights under the Settlement Agreement. In June 2014, the United States and the Liquidators reached an agreement, which the Court enforced in November of the same year. Dkt. Nos. 333 & 334. Under that agreement, the Liquidators retained certain rights to the Milchenko Account in Antigua. Indeed, the agreement expressly noted that the parties "anticipate that Antiguan law may require the Liquidators to make future distributions with respect to the Milchenko Account[.]" Dkt. 334, ¶24; see also ¶34. Recognizing the need for these future Antiguan proceedings, the Liquidators only dismissed their "claims to any and all Defendants in Rem in this action," id. ¶19 (underline added), meaning the forfeiture action in the District of Columbia. But they reserved their right to seek the Milchenko Account in Antigua. If there was any doubt, the parties also noted that they did not mean to dismiss claims relating to the Milchenko Account. "[I]n the event that Antiguan law requires future distributions with respect to the Milchenko Account," the agreement states, "such potential distributions are not intended to be dismissed from these forfeiture proceedings[.]" Dkt. 334, ¶24.

There is a reason that the parties allowed the Liquidators to retain certain rights to the Milchenko Account in Antigua. The Liquidators were the owners and holders of the account. Dkt. 304, at 24-26 (describing Antiguan law under which funds deposited in an Antiguan bank "become the property of the bank" including during the process of

liquidation). Accordingly, under Antiguan law, if no one else could prove a valid claim to the money, it would automatically revert to the Liquidators so they could distribute any funds not covered by a freeze or forfeiture order to the innocent depositors in Eurofed bank. Id. at 7 (setting forth the role of the Liquidators under the IBC Act). Because, at the time, Milchenko was dead, and no one – including the United States – had proven an interest in the Milchenko Account, the parties envisioned that the Milchenko Account could well revert to the Liquidators and be distributed through further liquidation proceedings in Antigua. Indeed, even to date – nearly 10 years after the parties entered their settlement – no one has presented a valid claim to the Milchenko funds.

The entry of a default, however, could be misused by the United States in ways that are inconsistent with rights of the Liquidators. Indeed, in the Settlement Agreement, the Liquidators agreed "not to, directly or indirectly, contest the execution or enforcement in any jurisdiction worldwide of any order issued by this Court for the restraint, maintenance, forfeiture, or disposition of any of the remaining Defendants in rem, . . . after approval of this Stipulation and Settlement Agreement." Dkt. 334, ¶25. Thus, once the government obtains its default, it could claim – improperly so – that the Liquidators are barred from challenging that default in any court, including in Antigua.

This is not what the Settlement Agreement provided for at all. And this Court should not permit the United States to obtain the Milchenko Account through such an end-run around the Settlement Agreement and U.S. forfeiture law. The agreement provides that Antiguan law, not a non-merits-based U.S. default, governs the distribution of funds in Antigua. Id. ¶34. In fact, it references "liquidation proceedings" in Antigua, id. ¶34, anticipates "future distributions" that the Liquidators would make to innocent

depositors, id. ¶24, and even held out the possibility of future "forfeiture proceedings." Id. Not once, however, did it mention the word "default." The word was not discussed. And the Court did not mention it when it approved the settlement. Dkt. 333. If the parties intended to allow for a default, they clearly would have said so. Indeed, if the United States thought the agreement permitted a default over the Milchenko Account, it could have sought one eight years ago, immediately after the District Court and the High Court of Antigua approved the settlement. It did not. And that speaks volumes about what the parties intended.[2]

The history of this litigation also supports the conclusion that the Liquidators did not give up their claim over Milchenko Account. The Liquidators had claimed that Eurofed was "an innocent owner of all of the Defendants in Rem located in Antigua, Switzerland, and Lithuania," Dkt. 334, ¶6, which included "the Milchenko Account." Id. ¶¶10 & 15; see also Dkt. 33, ¶b. The United States sought to strike those claims, arguing that Eurofed lacked standing. Dkt. 334, ¶6. In August 2013, the Court held that the Liquidators had standing over the funds in Antigua, including the Milchenko Account, but that it lacked standing over the accounts in Switzerland, and Lithuania. Dkt. No. 304. It was this decision that spurred the parties to a settlement. In June 2014, they reached an agreement, which the Court enforced in November of the same year. Dkt. Nos. 333 & 334.

In that settlement, the United States agreed that the Liquidators were entitled to,

---

[2] To be sure, the Settlement Agreement states that "Eurofed makes no representations and takes no position regarding whether the alleged Milchenko Account is in fact held for the benefit of Alexander Milchenko or whether such funds are subject to forfeiture." Dkt. 334 ¶15. But even in this provision, the parties assumed there would be some "forfeiture" proceeding that would require the United States to prove, "in fact," a connection between the Milchenko Account and Lazarenko's illegal conduct. Id.

among other things, 22.54% of the European Fund, which included the funds in

Switzerland and Lithuania that had already been dismissed by the Court. Dkt. No. 334,

¶18. In exchange for that 22.54%, the Liquidators agreed to end their pursuit of those

funds in this action in the United States. Id. ¶18. What the Liquidators did not give up,

however, was their claim to the Milchenko Account in Antigua. Why would the

Liquidators take 22.54% on claims that they lost, but take 0% on a claim - to the

Milchenko Account - that they had won? They did not.

Finally, entering a Clerk's default would deprive the Court of its role, agreed to in

the Settlement Agreement, to resolve disputes regarding the meaning of that agreement.

Dkt. 334, ¶34. The United States has already filed a Motion for Entry of Default

Judgment and Order of Forfeiture Against Milchenko Account Assets, Dkt. 1484, and the

Liquidators intend to file a response to that Motion. The Liquidators believe that they

retain certain rights, under the terms of the Settlement Agreement, to the Milchenko

Account. The government disagrees. As the Settlement Agreement explains, the proper

place for "dispute[s]" about the meaning of the Settlement Agreement and how it "affects

the U.S. forfeiture proceedings will be in this Court."  Id. Default has no place in such a

dispute. And the Clerk need not wade into it when the proper place for this dispute is

before the Court.

When the parties entered their agreement in 2014, they did so with the

understanding that the Milchenko Account was different. The Liquidators held legal title

to those funds under Antiguan law, and the District Court had approved the Liquidators

claim to pursue those funds. Accordingly, the parties structured an agreement that

allowed for future proceedings – including distributions to innocent depositors – in

Antigua. A default is contrary to this agreement. For these reasons, and the ones set forth above, the Liquidators oppose a Clerk's default against the Milchenko Account on behalf of the United States and ask that the Clerk refer this matter to the Court for resolution in a manner consistent with the Settlement Agreement.

Dated: September 13, 2023                    Respectfully Submitted,

/s/ Paul M. Thompson
Paul M. Thompson
(D.C. Bar No. 973977)
McDermott Will & Emery LLP
500 North Capitol Street NW, N.W.
Washington, D.C. 20005-3096
Telephone:  202-756-8000
Facsimile:  202-756-8087

/s/ Gordon Greenberg
Gordon A. Greenberg
(Admitted Pro Hac Vice)
McDermott Will & Emery LLP
2049 Century Park East
Suite 3200
Los Angeles, CA  90067-3206
Telephone:  301-277-4110
Fax:  310-277-4730
McDermott Will & Emery LLP
*Counsel For Claimant*
*European Federal Credit Bank, In*
*Liquidation*