UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| ALL ASSETS HELD AT BANK JULIUS, Baer & Company, Ltd., Guernsey Branch, account number 121128, in the name of Pavlo Lazarenko et al., | ) ) ) ) ) ) | Civil Action No. 04-0798 (PLF) |
| Defendants In Rem. | ) ) ) | |

OPINION AND ORDER

On September 25, 2025, this Court issued its Final Judgment and Final Order of Forfeiture ("Final Judgment") [Dkt. No. 1523]. Then, on October 10, 2025, Mr. Lazarenko moved to dismiss this action for lack of in rem jurisdiction ("Lazarenko MTD") [Dkt. No. 1527], and on October 23, 2025, he moved for reconsideration of the Court's final judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure ("Lazarenko Mot. Recon.") [Dkt. No. 1534]. The motions have been fully briefed.

Upon careful consideration of the parties' filings and the relevant legal authorities, the Court denies Mr. Lazarenko's motion to dismiss and his motion for reconsideration.

I.   FACTUAL AND PROCEDURAL BACKGROUND

The Court's prior opinions summarize the history of this case, starting with the criminal prosecution and conviction of Mr. Lazarenko and continuing through this long-running

in rem civil forfeiture proceeding. See United States v. All Assets Held at Bank Julius Baer & Co., Ltd., Civil Action No. 04-0798, 2020 WL 7640213, at *2 (D.D.C. Dec. 23, 2020) (summarizing prior opinions). What follows is an overview of facts relevant to Mr. Lazarenko's pending motions.

In this action, the government has sought forfeiture of over $250 million in "property traceable to a series of criminal fraud, extortion, bribery, misappropriation, embezzlement, and money laundering activities of former Ukrainian Prime Minister Pavlo Ivanovich Lazarenko and his associates." First Amended Verified Complaint for Forfeiture In Rem ("Am. Compl.") [Dkt. No. 20] ¶ 1. On August 1, 2024, this Court entered default judgment in favor of the United States against the following groups of defendant assets and all assets traceable thereto: (1) the assets held at Credit Suisse (Guernsey) Limited in the name of Samante Limited as Trustees of the Balford Trust and those held in the same bank in a related escrow account in the name of Credit Suisse Trust Limited—Escrow Account Re: BT Trust (the "Balford Trust Assets"), see id. ¶¶ 5(b), (c), (j); (2) the assets held in the name of Beranco Engineering Establishments, Ylorex Establishments, and Tanas AG at multiple banks in Liechtenstein (the "Liechtenstein Accounts"), see id. ¶¶ 5(i)(i)-(iii), (j); (3) the assets held in correspondent bank accounts in the name of European Federal Credit Bank Limited in Switzerland and Lithuania (the "Correspondent Assets"), see id. ¶¶ 5(f)-(h), (j); and (4) the assets formerly on deposit in an account at Eurofed Bank Limited of Antigua & Barbuda for the benefit of Alexander Milchenko (the "Milchenko Account Assets"). See id. ¶¶ 5(e), (j); see also Order of August 1, 2024 [Dkt. No. 1511]; Opinion of August 1, 2024 [Dkt. No. 1512].

Following entry of the Court's judgment, only three groups of defendant assets remained to be determined: (1) the defendant assets and all assets traceable thereto held in the

name of Pavlo Lazarenko at Bank Julius Baer (Guernsey) Ltd., see Am. Compl. ¶¶ 5(a), (j) (the "BJB Account"); (2) the defendant assets and all assets traceable thereto that remained in the Registrar's Account after the U.S.-Eurofed Settlement, see id. ¶¶ 5(d), (j) (the "Antiguan Res"); and (3) the defendant assets and all assets traceable thereto held in the name of NRKTO 7541 at Liechtensteinishce Landesbank AG. See id. ¶¶ 5(i), (j) (the "NRKTO Account Assets").

On September 22, 2025, the government moved for voluntary dismissal without prejudice of the three remaining defendant assets: the BJB Account, the NRKTO Account Assets, and the Antiguan Res. See United States' Motion for Voluntary Dismissal Without Prejudice of the BJB Account, the NRKTO Account, and the Antiguan Res, and for Entry of Final Judgment and Final Order of Forfeiture ("Govt. Mot.") [Dkt. No. 1522]. The government explained that because each of these three defendants in rem "has been forfeited in other proceedings or is believed to have been dissipated or both," the government "no longer seeks determination of its claims to these assets through this civil forfeiture action." Govt. Mot. at 1. The government further moved for entry of final judgment and a final order of forfeiture since dismissal of these three defendant assets "would resolve all remaining claims" in this action. Id.

On September 25, 2025, this Court granted the government's motion for voluntary dismissal and dismissed the BJB Account, the NRKTO Account Assets, and the Antiguan Res without prejudice. See Final Judgment [Dkt. No. 1523] at 5. Because these three assets were the only ones remaining in the litigation, the Court also issued its final judgment and final order of forfeiture as to the defaulted assets disposed of through the Court's 2024 default judgment. See id. at 5-7. Then the Court denied as moot all pending motions. See id. at 7.

The next day, on September 26, 2025, Mr. Lazarenko's counsel submitted a letter advising the Court that they had been preparing a response to the government's motion for

voluntary dismissal when the Court issued its final judgment.  See Letter to Judge Friedman [Dkt. No. 1524] at 1.  The Court granted Mr. Lazarenko time to respond to the government's motion, see Minute Order of October 3, 2025, and he responded on October 10, 2025.  See Pavel Lazarenko's Response to the Motion of the United States For Voluntary Dismissal [Dkt. No. 1528].  In his response, Mr. Lazarenko explained that while he "does not oppose the dismissal of the Government's last three claims"—that is, the dismissal of the BJB Account, the NRKTO Account Assets, and the Antiguan Res —"dismissing them without prejudice should not be permitted because of the irreparable harm it would inflict on Mr. Lazarenko."  Id. at 2.

Specifically, Mr. Lazarenko argues that dismissal of the three remaining assets without prejudice would "render substantial sums spent in this litigation defending the assets unnecessary and not subject to use in any subsequent litigation," and "would potentially impact Mr. Lazarenko's ability to seek or obtain attorney's fees."  Lazarenko's Response [Dkt. No. 1528] at 2-3.  The government replied on October 17, 2025, see United States' Reply to Lazarenko Response to United States Motion For Voluntary Dismissal of Three Assets [Dkt. No. 1530], and Mr. Lazarenko filed a surreply on October 23, 2025.  See Pavel Lazarenko's Surreply To The Government's Motion To Dismiss Without Prejudice [Dkt. No. 1533].

On October 10, 2025—the same day that Mr. Lazarenko responded to the government's motion for voluntary dismissal—Mr. Lazarenko moved to dismiss this action for lack of in rem jurisdiction.  See Lazarenko MTD [Dkt. No. 1527].  Mr. Lazarenko argues that this Court does not have "control, constructive or otherwise of the in rem defendants."  Id. at 1.  The government filed its opposition to Mr. Lazarenko's motion to dismiss on November 6, 2025.  See United States' Opposition to Claimant Lazarenko's Motion to Dismiss For Lack of In Rem Jurisdiction and Motion to Reconsider/Alter/Amend Pursuant to Rule 59(e) [Dkt. No. 1541].

4

Mr. Lazarenko replied on December 2, 2025. See Claimant Pavel Lazarenko's Reply in Support of His Motion to Dismiss and Motion to Reconsider, Alter, or Amend [Dkt. No. 1548].

In view of the parties' submissions concerning the Court's final judgment and Mr. Lazarenko's motion to dismiss, the Court ordered the parties to file "joint or separate status report(s) . . . address[ing] the following question: If the Court were to modify its Final Judgment to dismiss the[ ] three remaining assets with prejudice, would the Court's modification moot Claimant Pavel Lazarenko's Motion to Dismiss for Lack of In Rem Jurisdiction[?]" See Order of October 21, 2025 [Dkt. No. 1531] (emphasis added). On October 28, 2025, the parties each filed a separate status report. See Pavel Lazarenko's Status Report [Dkt. No. 1536]; the United States' Status Report [Dkt. No. 1537].

On October 23, 2025, Mr. Lazarenko moved for reconsideration of the Court's Final Judgment and Final Order of Forfeiture. See Lazarenko Mot. Recon. [Dkt. No. 1534]. The government filed its opposition to the motion on November 6, 2025. See United States' Opposition to Claimant Lazarenko's Motion to Dismiss For Lack of In Rem Jurisdiction and Motion to Reconsider/Alter/Amend Pursuant to Rule 59(e) [Dkt. No. 1541]. Mr. Lazarenko replied on December 2, 2025. See Claimant Pavel Lazarenko's Reply in Support of His Motion to Dismiss and Motion to Reconsider, Alter, or Amend ("Lazarenko Mot. Recon. Repl.") [Dkt. No. 1548]. Both of Mr. Lazarenko's pending motions are now ripe for decision.

## II.  LEGAL STANDARD

### A. Standing in Civil Forfeiture Actions

"Civil forfeiture actions are brought against property, not people. The owner of the property may intervene to protect his interest." United States v. All Funds in Account Nos. 747.034/278, 747.009/278, & 747.714/278 in Banco Espanol de Credito, Spain ("Banco

5

Espanol"), 295 F.3d 23, 25 (D.C. Cir. 2002).  In order for a third party to intervene in a civil forfeiture action and claim an interest in seized property, they must first demonstrate both "statutory standing"—that is, standing under the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions—and Article III standing.  See United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 743 F. Supp. 3d 204, 217 (D.D.C. 2024).  To demonstrate Article III standing in a civil forfeiture case, a claimant must show a "colorable claim on the [defendant] property," such as "an ownership or possessory interest."  United States v. $17,900.00 in U.S. Currency ("$17,900.00 in U.S. Currency"), 859 F.3d 1085, 1090 (D.C. Cir. 2017) (quoting United States v. Emor, 785 F.3d 671, 676 (D.C. Cir. 2015)).  If the third party makes such a showing, then "Article III's standing requirement is thereby satisfied because an owner or possessor of property that has been seized necessarily suffers an injury that can be redressed at least in part by the return of the seized property."  Id. (quoting United States v. $515,060.42 in U.S. Currency, 152 F.3d 491, 497 (6th Cir. 1998))

### B. Rule 59(e) Motions for Reconsideration

Rule 59(e) of the Federal Rules of Civil Procedure permits a party to file a motion to alter, amend, or reconsider a judgment within twenty-eight days of the judgment's entry. See FED. R. CIV. P. 59(e).  To prevail on a Rule 59(e) motion, the moving party must identify "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  Messina v. Krakower, 439 F.3d 755, 758 (D.C. Cir. 2006) (quoting Firestone v. Firestone ("Firestone"), 76 F.3d 1205, 1208 (D.C. Cir. 1996)).  "Manifest injustice" requires "at least (1) a clear and certain prejudice to the moving party that (2) is fundamentally unfair in light of governing law."  Mohammadi v. Islamic Republic of Iran ("Mohammadi"), 947 F. Supp. 2d 48, 78 (D.D.C. 2013), aff'd, 782 F.3d 9 (D.C. Cir. 2015).

"The strictness with which [Rule 59(e)] motions are viewed is justified by the need to protect both the integrity of the adversarial process in which parties are expected to bring all arguments before the court, and the ability of the parties and others to rely on the finality of judgments." Mahoney v. United States Capitol Police Bd. ("Mahoney"), Civil Action No. 21-2314 (JEB), 2024 WL 4235429, at *2 (D.D.C. July 31, 2024) (quoting Mohammadi, 947 F. Supp. 2d at 77) (alteration in original). Accordingly, "although courts have 'considerable discretion in ruling on a Rule 59(e) motion,' such motions are 'disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances.'" Owen-Williams v. BB & T Servs., Inc., 797 F. Supp. 2d 118, 124 (D.D.C. 2011) (first quoting Piper v. U.S. Dep't of Justice, 312 F. Supp. 2d 17, 20 (D.D.C. 2004), then Niedermeier v. Office of Baucus, 153 F. Supp. 2d 23, 28 (D.D.C. 2001)). "Rule 59(e) does not provide a vehicle to 'relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" Schoenman v. FBI, 857 F. Supp. 2d 76, 80 (D.D.C. 2012) (quoting Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008)). Nor does Rule 59(e) provide a vehicle to express "mere disagreement" with a court's judgment. Wannall v. Honeywell Int'l, Inc., Civil Action No. 10-351 (BAH), 2013 WL 12321549, at *3 (D.D.C. Oct. 24, 2013).

### III.  DISCUSSION

The Court finds that Mr. Lazarenko lacks standing to move for dismissal of this case and reconsideration of the Court's final judgment. But even assuming that he has standing to further litigate on behalf of the defendant assets, his motions fail for independent reasons.

*A. Mr. Lazarenko Lacks Standing*

Mr. Lazarenko lacks standing to move for dismissal of this action and reconsideration of the Court's final judgment because he has no cognizable interest in any of the defendant assets. This Court has held in prior rulings that Mr. Lazarenko lacks standing to litigate on behalf of the Balford Trust, the Liechtenstein Accounts, and the Correspondent Assets, and struck Mr. Lazarenko's claims as to those defendant assets. See United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 743 F. Supp. 3d 204, 222-223, 231 (D.D.C. 2024) (summarizing prior rulings striking Lazarenko's claims to the Balford Trust, the Liechtenstein Accounts, and the Correspondent Assets for lack of standing). And if a claimant's claim is stricken for lack of standing in a civil forfeiture case, then "he is out of the case," "has no legally cognizable interest in the outcome of the forfeiture action," and "his motion to dismiss is moot." United States v. All Assets Held in Acct. No. XXXXXXXX, 471 F. Supp. 3d 192, 198-99 (D.D.C. 2020) (quoting United States v. $284,950.00 in U.S. Currency, 933 F.3d 971, 975 (8th Cir. 2019)); see also United States v. Fifty-Three Virtual Currency Accts., Civil Action No. 20-2227 (RC), 2025 WL 2732705, at *5 (D.D.C. Sept. 25, 2025) (explaining that once a claimant's claim is "stricken for lack of standing . . . the claimant is effectively no longer a party to the litigation.").[1]

That leaves the three remaining assets in this litigation: the BJB Account, the NRKTO Account Assets, and the Antiguan Res. In 2022, Judge Charles R. Breyer of the U.S. District Court for the Northern District of California, who presided over the criminal case

---

[1] As for the Milchenko Account Assets, Mr. Lazarenko had no claim to them at the default judgment stage, and therefore has no legally cognizable interest in the assets. See United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 743 F. Supp. 3d at 232 (explaining that aside from claims asserted by the Liquidators of Eurofed Bank Limited—which the Court found were without merit—there were "no remaining claims to the [Milchenko Account Assets].").

against Mr. Lazarenko, entered a final order of forfeiture as to the funds in the BJB Account and the NRKTO Account Assets.  See United States v. Lazarenko, Crim. No. 00-0284, Final Order of Forfeiture as to Funds Not to Exceed $2,794,502.80 Held at Bank Julius Baer (Guernsey) and Liechtensteinische Landesbank AG (N.D. Cal Jun. 3, 2022) [Dkt. No. 1780]; see also United States v. Lazarenko, Criminal No. 00-0284 (CRB), 2021 WL 3935278 (N.D. Cal. Aug. 20, 2021) (where Judge Breyer entered a preliminary order of forfeiture to the United States as to the two defendant assets).  The Ninth Circuit affirmed Judge Breyer's preliminary order of forfeiture, see United States v. Lazarenko, No. 21-10225, 2022 WL 4127712 (9th Cir. Sept. 12, 2022), and the Supreme Court denied certiorari.  See Lazarenko v. United States, 143 S. Ct. 2631 (mem) (2023).  Accordingly, as of June 2023, all right, title, and interest in the BJB Account and the NRKTO Account Assets has vested in the United States, see United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 743 F. Supp. 3d at 242, and Mr. Lazarenko lacks standing to litigate on behalf of those assets, including to challenge the dismissal of those assets.

As for the Antiguan Res, the Antiguan High Court of Justice entered an order on December 24, 2015, directing that the res "shall be paid forthwith into the Government Forfeiture Fund" of Antigua as forfeited property.  United States v. All Assets Held at Bank Julius Baer & Co., 244 F. Supp. 3d 188, 193 (D.D.C. 2017).  Though Mr. Lazarenko initially challenged Antigua's forfeiture of the res in Antiguan courts, see Lazarenko MTD at 10, he now acknowledges that the Antiguan Res was forfeited to the Government of Antigua and has dissipated.  See Lazarenko MTD at 12; see also Lazarenko Mot. Recon. at 35 (explaining of the Antiguan Res that "the funds are gone, the asset is dissipated, and the defendant-res no longer exists.").  Because all right, title, and interest in the Antiguan Res has either vested in the

9

Antiguan government or have been dissipated and are no longer available for forfeiture, Mr. Lazarenko lacks standing to challenge the dismissal of the Antiguan Res.[2]

In sum, this Court has already held that Mr. Lazarenko lacks standing to litigate on behalf of the Balford Trust, the Liechtenstein Accounts, and the Correspondent Assets. The BJB Account and the NRKTO Account Assets have been forfeited to the United States, and the Antiguan Res has been forfeited to the Antiguan government. Mr. Lazarenko therefore has no cognizable interest in any of the defendant assets, and lacks standing to further litigate on their behalf. For these reasons, the Court denies Mr. Lazarenko's motion to dismiss and motion for reconsideration of the Court's September 25, 2025 final judgment for lack of standing.

### B.  Mr. Lazarenko's Motion to Dismiss is Untimely

Even assuming that Mr. Lazarenko has standing, the Court finds that his motion to dismiss is untimely. The thrust of Mr. Lazarenko's motion is that, because this Court "does not have control, constructive or otherwise, of the in rem defendants," the Court lacks in rem jurisdiction and the case must be dismissed with prejudice. See Lazarenko MTD at 1. But this Court has already rejected Mr. Lazarenko's argument that constructive possession of defendant assets is required in order for the Court to have in rem jurisdiction. See United States v. All Assets Held at Bank Julius Baer & Co., Ltd., Civil Action No. 04-0798 (PLF), 2023 WL 5000213, at *19-20 (D.D.C. Aug. 4, 2023). With respect to 28 U.S.C. § 1355, the same

---

[2]  Though Mr. Lazarenko initially represented that he intended to negotiate with the Antiguan government to preserve some of the Antiguan Res assets, see United States v. All Assets Held at Bank Julius, 244 F. Supp. 3d 188, 194 (D.D.C. 2017), the government has since informed the Court that "the Antiguan authorities have advised that the Antiguan Res was transferred out of the Antiguan Forfeiture Fund." Joint Status Report [Dkt. No. 1519] at 3. The Court finds that forfeiture of the Antiguan Res to the Antiguan government therefore is likely final, and is "no longer subject to judicial review in the Antiguan courts." See id.

jurisdictional statute at issue here, the court of appeals has reached the same conclusion. See Banco Espanol, 295 F.3d at 26-27 (explaining that Section 1355(b) gives district courts "jurisdiction to order the forfeiture of property located in foreign countries.").

Mr. Lazarenko acknowledges this Court's prior decision, but asserts that it "is not dispositive here" because of the additional constitutional arguments raised in Mr. Lazarenko's motion. Lazarenko MTD at 1 n.2. Specifically, Mr. Lazarenko argues that Article III of the Constitution and principles of due process require the Court to have control or constructive control over property in order to establish in rem jurisdiction. See id. at 5-9. Pointing to the D.C. Circuit's decision in Banco Espanol, Mr. Lazarenko argues that the court of appeals "has left open the possibility that a constitutional challenge to [Section 1355] could be viable." Id. at 3; see also Banco Espanol, 295 F.3d at 26 ("Unless the Constitution commands otherwise—and the claimant has raised no constitutional objections at all—the statute must be enforced.").

Whatever the force of Mr. Lazarenko's constitutional arguments, the Court finds that they are untimely. In some cases, a litigant's lack of diligence in asserting their rights "may bar an otherwise meritorious claim or defense if the delay prejudices other parties." United States v. All Assets Held at Credit Suisse (Guernsey) Ltd., 45 F.4th 426, 435 (D.C. Cir. 2022) (citing Menominee Indian Tribe v. United States, 614 F.3d 519, 531 (D.C. Cir. 2010)). In his motion to dismiss, Mr. Lazarenko once again advances his already-rejected constructive possession argument, repackaged as three "new" constitutional arguments. Pointing to Blanco Espanol, a D.C. Circuit case decided 23 years ago, and United States v. Nasri, 119 F.4th 1172 (9th Cir. 2024), an out-of-circuit opinion that has been withdrawn, Mr. Lazarenko asserts that "it would be unconstitutional for a court to proceed with a § 1355 civil forfeiture action without first establishing control or constructive control over the defendant-assets." Lazarenko MTD at 5.

11

The argument Mr. Lazarenko makes now has been available to him for over twenty years. He offers no justification for his extraordinary delay in raising this argument, and he makes no claim that he was unable to raise these objections to in rem jurisdiction before now. For this Court to overlook or disregard Mr. Lazarenko's twenty-plus year delay would cause prejudice to the government. The parties have been litigating this action since 2004, this Court has written over 45 opinions, and the docket currently contains over 1500 entries. Allowing Mr. Lazarenko to pursue this new line of argument at this late stage of litigation—after entry of final judgment—would force the government to relitigate and the Court to revisit long-settled jurisdictional questions.

Because Mr. Lazarenko could have pressed his current objections over twenty years ago, the Court declines to excuse his delay and consider his new constitutional arguments.

*C. Mr. Lazarenko's Motion for Reconsideration Fails on the Merits*

Even assuming that Mr. Lazarenko has standing to move for reconsideration of the Court's final judgement, his motion fails on the merits. Recall that in order to prevail on his motion under Rule 59(e) of the Federal Rules of Civil Procedure, Mr. Lazarenko must identify "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Messina v. Krakower, 439 F.3d at 758 (quoting Firestone, 76 F.3d at 1208). Mr. Lazarenko offers two bases for the Court to reconsider its final judgment: first, he asserts that there is a need to "prevent manifest injustice" because he "reasonably relied" on having fourteen days to respond to the government's motion for voluntary dismissal, "but this Court unexpectedly entered its Final Judgment only three days after the Government filed its motion." Lazarenko Mot. Recon. at 4.

12

Mr. Lazarenko is correct that under D.C. Local Civil Rule 7(b), an opposing party has 14 days from the date of service to serve and file an opposition to any motion, unless the Court directs otherwise. The government filed its motion for voluntary dismissal without prejudice of the three remaining defendant assets and for entry of final judgment and final order of forfeiture on September 22, 2025 [Dkt. No. 1522]. The Court granted the government's motion for voluntary dismissal without prejudice three days later, on September 25, 2025 [Dkt. No. 1523]. It dismissed the three remaining defendant assets without prejudice, entered a final judgment and final order of forfeiture, and denied as moot all pending motions. See id. Mr. Lazarenko's counsel notified the Court the next day that they had been preparing a response to the government's motion when the Court entered its final judgment [Dkt. No. 1524]. The Court gave Mr. Lazarenko time to respond to the government's motion for voluntary dismissal, see Minute Order of October 3, 2025, and he responded on October 10, 2025 [Dkt. No. 1528].

In that response, Mr. Lazarenko did not object to the dismissal of the three defendant assets, but argued that the Court should have dismissed the assets with prejudice rather than without prejudice [Dkt. No. 1528]. The Court considered the parties' papers, and ordered them to file supplemental briefs addressing the following question: If the Court were to modify its Final Judgment to dismiss the[ ] three remaining assets with prejudice, would the Court's modification moot Claimant Pavel Lazarenko's Motion to Dismiss for Lack of In Rem Jurisdiction[?]" See Order of October 21, 2025 [Dkt. No. 1531] (emphasis added).

Given these facts, Mr. Lazarenko's argument that the Court must alter its judgment to "prevent manifest injustice" is unavailing. As discussed, "manifest injustice" requires "at least (1) a clear and certain prejudice to the moving party that (2) is fundamentally unfair in light of governing law." Mohammadi, 947 F. Supp. 2d at 78. Though the Court

13

entered its final judgment before Mr. Lazarenko filed a response to the government's motion, the Court subsequently granted Mr. Lazarenko time to file a response explaining his position, ordered supplemental briefing in light of his submission, and took his response and the parties' supplemental briefs under advisement when considering whether it should alter or amend its September 25, 2025 final judgment. Mr. Lazarenko therefore did not suffer "clear and certain prejudice," and any prejudice he may have suffered certainly was not "fundamentally unfair in light of governing law" such that relief under Rule 59(e) is warranted. See id.

Mr. Lazarenko further argues that he is entitled to relief under Rule 59(e) because there has been "an intervening explanation of applicable law (i.e., persuasive authority that the Court should follow)," and entry of a final judgment that is inconsistent with that case law "would be 'fundamentally unfair'" to Mr. Lazarenko. Lazarenko Mot. Recon. Repl. at 11-12 (quoting Slate v. American Broadcasting Cos., 12 F. Supp. 3d 30, 35-36 (D.D.C. 2013)). For one, neither "an intervening explanation of applicable law" nor a judicial action that a party perceives as "fundamentally unfair" to him are bases on which the Court may grant relief under Rule 59(e). See Messina v. Krakower, 439 F.3d at 758 (quoting Firestone, 76 F.3d at 1208) (explaining that courts may grant relief under Rule 59(e) when there is "an intervening change of controlling law . . . or the need to correct a clear error or prevent manifest injustice.") (emphasis added). And for another, the "intervening explanation of applicable law" that Mr. Lazarenko points to is the Ninth Circuit's opinion in United States v. Nasri, 119 F.4th 1172 (9th Cir. 2024), which has since been withdrawn. See United States v. Nasri, 159 F.4th 1159 (9th Cir. 2025).

Having disposed of Mr. Lazarenko's arguments, the Court denies Mr. Lazarenko's motion to dismiss and motion for reconsideration. Accordingly, it is hereby

ORDERED that Claimant Pavel Lazarenko's Motion to Dismiss For Lack of In Rem Jurisdiction [Dkt. No. 1527] is DENIED; and it is

FURTHER ORDERED that Pavel Lazarenko's Motion to Reconsider, Alter, or Amend Pursuant to Rule 59(e) [Dkt. No. 1534] is DENIED.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 12/19/25